# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| KAISER GYPSUM COMPANY, INC., et al.,[1] | : | Case No. 16-31602 (JCW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

## ORDER CONFIRMING THE JOINT PLAN OF REORGANIZATION OF KAISER GYPSUM COMPANY, INC. AND HANSON PERMANENTE CEMENT, INC., AS MODIFIED

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Kaiser Gypsum Company, Inc. (0188) and Hanson Permanente Cement, Inc. (7313). The Debtors' address is 300 E. John Carpenter Freeway, Irving, Texas 75062.

NAI-1514152687v6

**TABLE OF CONTENTS**

I.    GENERAL PROVISIONS REGARDING CONFIRMATION OF THE PLAN
      AND APPROVAL OF PLAN-RELATED DOCUMENTS ................................................ 5

      A.    MODIFICATIONS TO THE PLAN ................................................................. 5

      B.    CONFIRMATION OF THE PLAN ................................................................. 5

      C.    CONDITIONS TO CONFIRMATION AND CONSUMMATION OF
            THE PLAN .................................................................................................... 6

      D.    EFFECTS OF CONFIRMATION .................................................................. 6

      E.    APPROVAL, MODIFICATION AND EXECUTION OF
            PLAN-RELATED DOCUMENTS .................................................................. 7

II.   CLAIMS BAR DATES AND OTHER CLAIMS MATTERS ........................................ 8

      A.    GENERAL BAR DATE FOR ADMINISTRATIVE CLAIMS ...................... 8

      B.    BAR DATES FOR CERTAIN ADMINISTRATIVE CLAIMS ...................... 8

            1.    Professional Compensation ................................................................ 8

            2.    Ordinary Course Liabilities ................................................................ 9

      C.    BAR DATE FOR REJECTION DAMAGES CLAIMS ....................................... 9

III.  APPROVAL OF EXECUTORY CONTRACT AND UNEXPIRED LEASE
      PROVISIONS AND RELATED PROCEDURES ........................................................... 10

IV.   MATTERS RELATING TO IMPLEMENTATION OF THE PLAN ........................... 10

      A.    ACTIONS IN FURTHERANCE OF THE PLAN .............................................. 10

      B.    CREATION OF ASBESTOS PERSONAL INJURY TRUST ........................... 12

      C.    TRANSFERS OF PROPERTY TO, AND ASSUMPTION OF CERTAIN
            LIABILITIES BY, THE ASBESTOS PERSONAL INJURY TRUST .............. 13

            1.    Transfer of Books and Records to the Asbestos Personal Injury
                  Trust ................................................................................................. 13

            2.    Funding the Asbestos Personal Injury Trust ..................................... 14

            3.    Assumption of Certain Liability and Responsibility by the
                  Asbestos Personal Injury Trust ........................................................ 14

            4.    Indemnification by the Asbestos Personal Injury Trust .................... 15

      D.    RELEASE OF ENCUMBRANCES ................................................................. 15

      E.    EXEMPTIONS FROM TAXATION .............................................................. 15

V.    SETTLEMENTS, RELEASES AND EXCULPATION PROVISIONS. ....................... 16

VI.   OBJECTIONS TO CONFIRMATION. ......................................................................... 17

A.    RESOLUTION OF THE INFORMAL OBJECTION OF THE UNITED STATES DEPARTMENT OF JUSTICE ................................................................. 17

B.    OVERRULING OF CERTAIN OBJECTIONS TO CONFIRMATION ............ 18

VII.    DISCHARGE AND INJUNCTIONS ................................................................. 21

A.    DISCHARGE OF CLAIMS ............................................................................. 21

B.    INJUNCTIONS .................................................................................................. 21

1.    Issuance of the Asbestos Permanent Channeling Injunction ................... 21

2.    Protected Parties Under the Asbestos Permanent Channeling Injunction ................................................................................................... 22

3.    The Asbestos Permanent Channeling Injunction ..................................... 24

4.    The Environmental Injunction .................................................................. 25

5.    General Injunctions Related to Discharge or Releases Granted Pursuant to the Plan .............................................................................. 26

VIII.    DISSOLUTION OF THE ASBESTOS PERSONAL INJURY COMMITTEE AND DISCHARGE OF THE FUTURE CLAIMANTS' REPRESENTATIVE ............. 28

IX.    RETENTION OF JURISDICTION ................................................................. 28

A.    RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT .......... 28

B.    JURISDICTION RELATING TO ASBESTOS PERSONAL INJURY CLAIMS .......................................................................................................... 29

X.    NOTICE OF ENTRY OF CONFIRMATION ORDER ................................... 29

XI.    ORDER OF THE COURT ............................................................................... 30

**TABLE OF EXHIBITS**

| Exhibit | Exhibit Name |
|---------|--------------|
| A | Plan |
| B | Modifications |
| C | Confirmation Notice |
| D | Confirmation Notice — Publication Version |

# INTRODUCTION

WHEREAS, Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc. (together, the "Debtors" and, as reorganized entities after emergence, the "Reorganized Debtors"), proposed the Third Amended Joint Plan of Reorganization of Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc., dated October 14, 2019 [Conf. Exhibit 1],[2] as amended by the non-material modifications and clarifications set forth on the blackline of the Plan in Exhibit B attached hereto and incorporated herein by reference (as it may be amended, the "Plan");[3]

WHEREAS, on October 23, 2019, the Bankruptcy Court entered its Order (I) Approving the Debtors' Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Proposed Joint Plan of Reorganization and (III) Scheduling a Hearing on Confirmation of Proposed Joint Plan of Reorganization and Approving Related Notice Procedures [Conf. Exhibit 16] (the "Disclosure Statement Order"), by which the Bankruptcy Court, among other things, approved the Debtors' proposed disclosure statement (the "Disclosure Statement");

WHEREAS the Disclosure Statement Order established procedures for the solicitation and tabulation of votes to accept or reject the Plan and scheduled a hearing to

---

[2]     "D.I." refers to docket entries in the Debtors' lead bankruptcy case, 16-31602.

[3]     Capitalized terms and phrases used herein have the meanings given to them in the Plan. The rules of interpretation set forth in Section I.B.1 of the Plan apply to the Findings of Fact and Conclusions of Law (the "Findings and Conclusions"), which are being issued concurrently herewith, and to this Order (this "Confirmation Order"). In addition, in accordance with Section I.A of the Plan, any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

A copy of the Plan (without exhibits) is attached hereto as Exhibit A and incorporated herein by reference. Failure to reference or incorporate a specific portion of the Plan, the Plan's exhibits or Plan-Related documents (as defined in Section IV.A. below) in this Confirmation Order does not affect the validity of enforceability of such provision under the terms of this Confirmation Order.

consider Confirmation of the Plan for March 30, 2020, which hearing was continued to and held

on July 20, 2020 and July 22, 2020, with the Bankruptcy Court giving its oral ruling on August

13, 2020 (the "Confirmation Hearing");

WHEREAS, affidavits of service were executed by Prime Clerk LLC, the

Bankruptcy Court appointed notice, claims and solicitation agent ("Prime Clerk"), with respect to

the mailing of notice of the Confirmation Hearing and solicitation materials in respect of the Plan

in accordance with the Disclosure Statement Order (collectively, the "Affidavits of Service") and

were filed with the Bankruptcy Court [D.I. 1892, 1904, 1911, 1938, 1947, 1948, 2007, 2042,

2168, 2172, 2178];[4]

WHEREAS, the Declaration of Anna Jadonath [D.I. 1903] (the "Publication

Declaration") was filed with the Bankruptcy Court on November 14, 2019, regarding the

publication of the Notice of (I) Deadline for Casting Votes to Accept or Reject Proposed Joint

Plan of Reorganization, (II) Hearing to Consider Confirmation of Proposed Joint Plan of

Reorganization and (III) Related Matters and/or the other forms of publication notice approved

by the Bankruptcy Court as set forth in the Disclosure Statement Order;

WHEREAS, the Declaration of Cameron R. Azari, Esq. on Implementation of

Notice Regarding the Joint Plan of Reorganization of Kaiser Gypsum Company, Inc. and Hanson

Permanente Cement, Inc. [Conf. Exhibit 21] (the "Notice Declaration") was filed with the

Bankruptcy Court on July 1, 2020, attesting to publication notice of the Plan;

WHEREAS, the Declaration of James Daloia of Prime Clerk LLC Regarding the

Solicitation of Votes and Tabulation of Ballots Cast on the Third Amended Joint Plan of

---

[4]     The Affidavits of Service were filed on November 6, 2019, November 14, 2019, November 20, 2019, December 17, 2019, January 2, 2020, January 6, 2020, February 7, 2020, February 14, 2020, March 24, 2020, March 30, 2020 and April 20, 2020.

Reorganization of Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc.

[Conf. Exhibit 20] (the "Voting Agent Declaration") was filed with the Bankruptcy Court on July

1, 2020, attesting to the results of the tabulation of the properly executed and timely received

Ballots for the Plan as follows:

> **Class 4 Claimants**. The Debtors received 24,310 acceptances out of 24,310 votes from holders of Class 4 Asbestos Personal Injury Claims, with Class 4 claimants who voted in favor of the Plan holding Claims in the amount of $2,439,570,176.00 for voting purposes only, such acceptances being 100 percent in number and 100 percent in amount of all ballots received from holders of Class 4 Asbestos Personal Injury Claims (Voting Agent Decl. ¶ 10.);

WHEREAS, the Debtors made non-material modifications to the Plan, which are

set forth in Exhibit B attached hereto (collectively, the "Modifications");

WHEREAS, Truck Insurance Exchange ("Truck") filed an objection to the Plan

[D.I. 2070] and a consolidated response to the Plan Proponents' briefing [D.I. 2359] (together,

the "Objection"), as well as various affidavits in support of its Objection [Conf. Exhibits 37-53,

65-67] (the "Truck Affidavits");

WHEREAS, the Objecting Excess Insurers made the Objecting Excess Insurers'

Objections, and voluntarily withdrew them when the Plan was modified to insert, among other

things, Section IV.M.3.a., entitled, "Settlement with Truck;"

WHEREAS, the Debtors filed a memorandum of law in support of Confirmation

of the Plan [D.I. 2275] and a reply to Truck's consolidated response [D.I. 2377], and the

Asbestos Personal Injury Committee and the Future Claimants' Representative filed an omnibus

reply in support of the Plan [D.I. 2274] and a joint reply to Truck's consolidated response

[D.I. 2376] (collectively, the "Memoranda of Law");

-3-

WHEREAS, the declarations of Kevin O'Neal Holdeman [Conf. Exhibit 23], John D. Bittner [Conf. Exhibit 22], Charles E. McChesney II [Conf. Exhibit 19] and Lawrence Fitzpatrick [Conf. Exhibit 18] were submitted in support of the Plan (collectively, the "Declarations");

WHEREAS, the Court has reviewed the Plan, the Disclosure Statement, the Disclosure Statement Order, the Voting Agent Declaration, the Affidavits of Service, the Publication Declaration, the Notice Declaration, the Memoranda of Law, the Declarations, the Truck Affidavits and all other pleadings before the Court in connection with the Confirmation of the Plan, including the objections filed to the Plan;[5]

WHEREAS, the Court has considered the arguments of counsel made on the record at the Confirmation Hearing;

WHEREAS, the Court has considered all evidence presented and admitted into the record at the Confirmation Hearing;

WHEREAS, this Court has taken judicial notice of the papers and pleadings on file in these Reorganization Cases, including any related adversary proceedings;

WHEREAS the Court has made a *de novo* review of the record, including the Bankruptcy Court's proposed findings of fact and conclusions of law submitted in this matter;

WHEREAS, this Court has separately entered the Findings and Conclusions, including the findings that (a) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) the Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code and (c) venue of the Reorganization Cases is proper pursuant to 28 U.S.C. § 1408, and continues to be proper; and

---

[5]        Truck filed the only objection that remained unresolved as of the Confirmation Hearing.

-4-

WHEREAS, the Findings and Conclusions establish just cause for the relief granted herein;

THE COURT HEREBY ORDERS THAT:

## I. GENERAL PROVISIONS REGARDING CONFIRMATION OF THE PLAN AND APPROVAL OF PLAN-RELATED DOCUMENTS.

### A. MODIFICATIONS TO THE PLAN.

Pursuant to section 1127(a) of the Bankruptcy Code and Rule 3019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Modifications are authorized and approved in all respects.

### B. CONFIRMATION OF THE PLAN.

The Plan and all exhibits thereto are CONFIRMED in each and every respect, pursuant to section 1129 of the Bankruptcy Code; provided, however, that if there is any direct conflict between the terms of the Plan or any exhibit thereto and the terms of this Confirmation Order, the terms of this Confirmation Order shall control. All objections to the Plan, other than those withdrawn with prejudice (subject to Section IV.M.3.a of the Plan) in their entirety prior to, or on the record at, the Confirmation Hearing are either resolved on the terms set forth herein or overruled in their entirety. This Court's basis for overruling Truck's objections in their entirety are set forth in the Findings and Conclusions. The Findings and Conclusions are hereby incorporated by reference in their entirety, as if they were fully set forth herein.[6]

---

[6] The Court has considered and overruled each objection to the Plan raised by Truck, whether as part of its Complaint for Declaratory Relief [Adv. Proc. 19-3052, D.I. 1] or its objections filed with the Bankruptcy Court.

**C.  CONDITIONS TO CONFIRMATION
AND CONSUMMATION OF THE PLAN.**

Nothing in this Confirmation Order or in the Findings and Conclusions shall in any way affect the provisions of Article VIII of the Plan, which includes provisions regarding (i) the conditions precedent to Confirmation of the Plan and to the Effective Date of the Plan, (ii) the waiver of any such conditions and (iii) the effect that the nonoccurrence of such conditions may have with regard to the Plan and this Confirmation Order. Upon the satisfaction or waiver of the conditions contained in Section VIII.B of the Plan and the occurrence of the Effective Date, substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, shall be deemed to occur.

**D.  EFFECTS OF CONFIRMATION.**

Subject to section I.C of this Confirmation Order, notwithstanding any otherwise applicable law, immediately upon the entry of this Confirmation Order, the terms of the Plan and this Confirmation Order shall be binding upon all Entities, including the Debtors, the Reorganized Debtors, any and all holders of Claims, Demands or Interests (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan), any and all nondebtor parties in interest, including nondebtor parties to Executory Contracts and Unexpired Leases with any of the Debtors and any and all Entities who are parties to or are subject to the settlements, compromises, releases, waivers, discharges and injunctions described herein and in the Findings and Conclusions and the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing.

-6-

### E. APPROVAL, MODIFICATION AND EXECUTION OF PLAN-RELATED DOCUMENTS.

**1.** The Plan and all exhibits thereto, substantially in the form as they exist at the time of the entry of this Confirmation Order, including the documents relating to the Asbestos Personal Injury Trust, are approved in all respects.

**2.** All relevant parties, including the Debtors and the Asbestos Personal Injury Trustee, shall be authorized, without further action by this Court or the Bankruptcy Court, to execute the applicable Plan-Related Documents (as such capitalized term is defined in Section IV.A of this Confirmation Order) and make modifications to such documents in accordance with the Plan's terms, including Section XI.D of the Plan, and the terms of the Plan-Related Documents, if applicable, between the time of entry of this Confirmation Order and the Effective Date of the Plan.

**3.** The Parties[7] are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Section XI.D of the Plan. In addition, without the need for a further order or authorization of this Court or the Bankruptcy Court, or further notice to any Entities, but subject to the express provisions of this Confirmation Order and Section XI.D of the Plan, the Parties shall be authorized and empowered to make modifications to the documents Filed with this Court or the Bankruptcy Court, including exhibits to the Plan and documents forming part of the evidentiary record at the Confirmation Hearing, consistent with the terms of such documents in their reasonable business judgment as may be necessary.

---

[7] As defined in Plan Section 1.A.96.

## II.    CLAIMS BAR DATES AND OTHER CLAIMS MATTERS.

### A.    GENERAL BAR DATE FOR ADMINISTRATIVE CLAIMS.

Except as otherwise provided in Section III.A.1.d.i of the Plan and Section II.B below, unless previously Filed, requests for payment of Administrative Claims must be Filed with the Bankruptcy Court and served on the Reorganized Debtors at the addresses set forth in Section XI.K of the Plan no later than sixty (60) days after the Effective Date. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their respective property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the requesting party by 120 days after the Effective Date.

### B.    BAR DATES FOR CERTAIN ADMINISTRATIVE CLAIMS.

#### 1.    Professional Compensation.

Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, this Confirmation Order, the Fee Order or other order of the Bankruptcy Court a Final Fee Application no later than ninety (90) days after the Effective Date. A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Fee Claim pursuant to the Fee Order in its Final Fee Application.  Objections to any Final Fee Application must be Filed with the Bankruptcy Court and served on the Reorganized Debtors and the requesting party by the later of (i) eighty (80) days after the Effective Date and (ii) thirty (30) days after the Filing of the applicable Final Fee Application. To the extent necessary, this Confirmation Order shall amend and supersede any previously

entered order of the Bankruptcy Court, including the Fee Order, regarding the payment of Fee Claims. Any pending, Filed interim requests for a Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application. All fees outstanding and payable under the Fee Order, shall be paid promptly by the Debtors, and/or the DIP Lender, after the order approving the respective fees and expenses is entered.

### 2. Ordinary Course Liabilities.

Holders of Administrative Claims based on liabilities incurred by a Debtor in the ordinary course of its business, including any Intercompany Claims that are Administrative Claims, Administrative Claims of governmental units for Taxes (including Tax audit Claims relating to Tax years or portions thereof commencing after the Petition Date) and Administrative Claims arising from those contracts and leases of the kind described in Section V.E of the Plan, shall not be required to File or serve any request for payment of such Administrative Claims. Such Administrative Claims shall be satisfied pursuant to Section III.A.1.c of the Plan.

### C. BAR DATE FOR REJECTION DAMAGES CLAIMS.

Notwithstanding anything in the Bankruptcy Court's Order Establishing Bar Dates for Filing Proofs of Claim Other Than Asbestos Personal Injury Claims and Approving Related Relief [D.I. 553] to the contrary, if the rejection of an Executory Contract or Unexpired Lease pursuant to Section V.C of the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, their respective successors or their properties unless a Proof of Claim is Filed with the Bankruptcy Court and served on the Reorganized Debtors at the addresses set forth in Section XI.K of the Plan, on the latter to occur of (i) sixty (60) days after

the Effective Date and (ii) thirty (30) days after the date of the entry of an order rejecting such

Executory Contract or Unexpired Lease.

## III.    APPROVAL OF EXECUTORY CONTRACT AND UNEXPIRED LEASE PROVISIONS AND RELATED PROCEDURES.

A.     The Executory Contract and Unexpired Lease provisions of Article V of the Plan are hereby approved.

B.     This Confirmation Order shall constitute an order of the Court approving the assumptions and rejections described in Sections V.A and V.C of the Plan, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

## IV.    MATTERS RELATING TO IMPLEMENTATION OF THE PLAN.

### A.    ACTIONS IN FURTHERANCE OF THE PLAN.

1.     Pursuant to section 10-1008 of the Arizona Revised Statutes and section 55-14A-01 of the North Carolina Business Corporation Act and other comparable provisions of the laws of the States of Arizona and North Carolina or any other state governing corporations or other legal entities (collectively, the "State Reorganization Effectuation Statutes"), as applicable, and section 1142 of the Bankruptcy Code, without further action by this Court or the Bankruptcy Court or the respective stockholders or directors of any Debtor or Reorganized Debtor, the Debtors, the Reorganized Debtors and any officers of the appropriate Debtor or Reorganized Debtor (the "Responsible Officers"), are authorized to: (i) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order and the transactions contemplated thereby or hereby, including those transactions identified in Article IV of the Plan and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases and agreements necessary to implement,

-10-

effectuate and consummate the Plan (collectively, the "Plan-Related Documents"), including those contracts, instruments, releases and agreements identified in Article IV of the Plan.

2. To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the stockholders or directors of any of the Debtors or Reorganized Debtors, this Confirmation Order shall, pursuant to section 1142 of the Bankruptcy Code and the State Reorganization Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the stockholders or directors of the appropriate Debtor or Reorganized Debtor.

3. The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of any Debtor or Reorganized Debtor or Responsible Officer to take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order or the transactions contemplated thereby or hereby, subject to provisions in the Plan that require the Debtors or Reorganized Debtors to seek approval from other Parties. In addition to the authority to execute and deliver, adopt or amend, as the case may be, the contracts, instruments, releases and other agreements specifically approved in this Confirmation Order, each of the Debtors and the Reorganized Debtors is authorized and empowered, without further action by this Court or the Bankruptcy Court or such Debtors' or Reorganized Debtor's stockholders or directors, to take any and all such actions as any of its Responsible Officers may determine are necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order or the transactions contemplated thereby or hereby, subject to provisions in the Plan that require the Debtors or Reorganized Debtors to seek approval from other Parties.

-11-

**B. CREATION OF ASBESTOS PERSONAL INJURY TRUST.**

1. On the Effective Date, the Asbestos Personal Injury Trust shall be created in accordance with the Plan and the Asbestos Personal Injury Trust Agreement. The Asbestos Personal Injury Trust and the Asbestos Personal Injury Trustee are authorized and empowered to receive the property to be transferred to the Asbestos Personal Injury Trust pursuant to Section IV.K of the Plan.

2. Pursuant to the State Reorganization Effectuation Statutes, as applicable, and other appropriate provisions of applicable state laws governing corporations and other legal Entities and section 1142(b) of the Bankruptcy Code, without further action by this Court or the Bankruptcy Court or the stockholders or directors of any Reorganized Debtor, the Reorganized Debtors are authorized and directed to execute, deliver and perform their obligations under the Asbestos Personal Injury Trust Agreement and to execute, deliver, file and record all such other contracts, instruments, agreements and documents and take all such other actions as any of the Responsible Officers of the Reorganized Debtors may determine are necessary, appropriate or desirable in connection therewith. The Asbestos Personal Injury Trust Agreement, as in effect on the Effective Date, shall be substantially in the form of Exhibit I.A.16 to the Plan. The Asbestos Personal Injury Trust Distribution Procedures shall be substantially in the form of Exhibits I.A.19 to the Plan. On the Effective Date, the acknowledgment and release requirements set forth in the Order Lifting the Automatic Stay as to Certain Asbestos Personal Injury Claims [D.I. 1108] (the "Stay Order") will be no longer applicable and parties shall comply with the Asbestos Personal Injury Trust Distribution Procedures; provided, however, any acknowledgement and release or related documents executed prior to the Effective Date pursuant to the Stay Order will remain in full force and effect as to the Protected Parties; provided further,

-12-

however, that Uninsured Asbestos Claims may be brought against the Asbestos Personal Injury Trust consistent with the Asbestos Personal Injury Trust Distribution Procedures.

### C. TRANSFERS OF PROPERTY TO, AND ASSUMPTION OF CERTAIN LIABILITIES BY, THE ASBESTOS PERSONAL INJURY TRUST.

#### 1. Transfer of Books and Records to the Asbestos Personal Injury Trust.

a. As described in Section IV.J of the Plan, prior to or on the Effective Date, the Debtors shall establish, or cause to be established, a repository containing all the Debtors' books and records that are necessary for the defense of Asbestos Personal Injury Claims, including, without limitation, the historical asbestos personal injury claims database maintained by the Debtors, deposition transcripts, product identification evidence, information regarding sale and use of the products, claims settlement and payment information, and indexes and summaries relating to any such documents, and shall make that repository available to the Entities that are responsible for the processing or defense of Asbestos Personal Injury Claims, and that are entitled to review, copy or use such documents.[8]

b. Pursuant to the Plan and this Confirmation Order, to the extent the Debtors or Reorganized Debtors, as applicable, provide the Asbestos Personal Injury Trust access to any privileged books and records, such access shall not result in the destruction or waiver of any applicable privileges pertaining to such books and records. Further, pursuant to the Plan and this Confirmation Order, none of the Debtors, the Reorganized Debtors, Lehigh Hanson, or any of Lehigh Hanson's affiliates shall be liable for violating any confidentiality or privacy protections as a result of transferring the books and records to the Asbestos Personal

---

[8] For the avoidance of doubt, the Asbestos Personal Injury Trust shall have access to materials in the repository only to the extent it is the Entity defending or processing (which term shall not include the mere payment of the deductible portion of an Asbestos Personal Injury Claim) an Uninsured Asbestos Claim or a particular Asbestos Personal Injury Claim, and such determination shall be made by the Reorganized Debtors on a claim-by-claim basis.

-13-

Injury Trust, and the Asbestos Personal Injury Trust shall, upon receipt of the books and records, take appropriate steps to comply with any such applicable protections.

### 2. Funding the Asbestos Personal Injury Trust.

The Reorganized Debtors and/or Lehigh Hanson shall fund the Asbestos Personal Injury Trust in accordance with Section IV.K.2 of the Plan.

### 3. Assumption of Certain Liability and Responsibility by the Asbestos Personal Injury Trust.

Subject to the provisions of the Plan, on the Effective Date, upon creation of the Asbestos Personal Injury Trust, the Asbestos Personal Injury Trust, in consideration for the property transferred to the Asbestos Personal Injury Trust pursuant to Section IV.K of the Plan and in furtherance of the purposes of the Asbestos Personal Injury Trust and the Plan, shall assume all liability and responsibility, financial or otherwise, for all Asbestos Personal Injury Claims, and the Reorganized Debtors and the Protected Parties shall have no liability or responsibility, financial or otherwise, therefor, except that Holders of Insured Asbestos Claims may bring actions against the Reorganized Debtors to obtain the benefit of insurance coverage as set forth in Plan IV.O.1 and no release or discharge of any of the Parties, the Creditors' Committee or any Reorganized Debtor, or any of their respective present or former directors, officers, employees, members, subsidiaries, predecessors, successors, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives and agents, or the DIP Lender, in each case acting in such capacity, shall diminish, reduce or eliminate the duties or obligations of any Asbestos Insurer under any Asbestos Personal Injury Insurance Asset.

Except as otherwise provided in the Plan, the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures, the Asbestos Personal Injury Trust shall have all defenses, cross-claims, offsets, recoupments and rights of

-14-

indemnification, contribution, subrogation and similar rights regarding such Asbestos Personal Injury Claims that the Debtors, the Reorganized Debtors or applicable Protected Parties have or would have had under applicable law.

          **4.       Indemnification by the Asbestos Personal Injury Trust.**

          To the fullest extent provided in the Plan, the Asbestos Personal Injury Trust shall protect, defend, indemnify and hold harmless each Protected Party from and against any Asbestos Personal Injury Claim; provided, however, the sole and exclusive remedy for the Asbestos Personal Injury Trust's failure to satisfy the indemnification, defense and hold harmless obligations under this Section shall be the right of the Protected Parties to assert money damage claims against the Asbestos Personal Injury Trust.

      **D.     RELEASE OF ENCUMBRANCES.**

          Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article VI of the Plan, all Encumbrances against the property of any Estate shall be fully released and discharged, and all of the right, title and interest of any holder of such Encumbrances, including any rights to any collateral thereunder, shall revert to the applicable Reorganized Debtor and its successors and assigns.

      **E.     EXEMPTIONS FROM TAXATION.**

          Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp Tax or similar Tax: (i) the creation of any Encumbrances; (ii) the making or assignment of any lease or sublease; (iii) the execution and implementation of the Asbestos Personal Injury Trust Agreement, including the creation of the Asbestos Personal Injury Trust and any transfers to or by the Asbestos Personal Injury Trust; (iv) any Restructuring Transaction

-15-

and (v) the making or delivery of any deed or other instrument of transfer under, in furtherance

of or in connection with the Plan, including any merger agreements, agreements of consolidation,

restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments,

applications, certificates or statements executed or filed in connection with any of the foregoing

or pursuant to the Plan, including any merger agreements, agreements of consolidation,

restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments,

applications, certificates or statements executed or filed in connection with any of the foregoing

or pursuant to the Plan.

## V.     SETTLEMENTS, RELEASES AND EXCULPATION PROVISIONS.

A.     The Plan settlement, release, exculpation and injunction provisions as set forth in,

among others, sections IV.R.2, IV.R.3, IX.B, XI.A and XI.C of the Plan are approved in all

respects, are incorporated herein in their entirety, are so ordered and shall be immediately

effective on the Effective Date without further action by this Court, the Bankruptcy Court, any of

the parties to such provisions or any other party.

B.     As of June 30, 2020, the Debtors held $2,881,300.27 of Insolvent Insurers

Proceeds, which amount is held in a segregated bank account in accordance with the Bankruptcy

Court's February 16, 2018 Order Approving Settlement of Claim Against Insolvent Insurers

[D.I. 837]. At the Effective Date, an amount equal to 64.2% of such Insolvent Insurers Proceeds

shall be allocated and distributed pursuant to the Excess CIP Agreement (with 50% of the

Debtors' share under the Excess CIP Agreement distributed to the Trust and the remainder

distributed to the Debtors or Reorganized Debtors), and the remainder shall be utilized to satisfy

Allowed General Unsecured Claims pursuant to the Plan. In the event that the Debtors or

Reorganized Debtors receive additional Insolvent Insurers Proceeds, 64.2% of such additional

Insolvent Insurer Proceeds shall be allocated and distributed pursuant to the Excess CIP

-16-

Agreement (with 100% of the Debtors or Reorganized Debtors' share under the Excess CIP Agreement distributed to the Trust), and with the remaining proceeds to be distributed to the Reorganized Debtors.

## VI. OBJECTIONS TO CONFIRMATION.

### A. RESOLUTION OF THE INFORMAL OBJECTION OF THE UNITED STATES DEPARTMENT OF JUSTICE.

1. The informal objection to Confirmation lodged by the United States Department of Justice, to the extent not satisfied by the Modifications, is hereby resolved on the terms and subject to the conditions set forth below. The compromise contemplated by such resolution is fair, equitable and reasonable, in the best interests of the Debtors and their respective Estates and creditors and expressly approved pursuant to Bankruptcy Rule 9019.

2. Nothing in this Confirmation Order or the Plan discharges, releases, precludes or enjoins: (i) any police or regulatory liability to a governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") of the United States or of a State that is not a Claim as defined in section I.A.32 of the Plan; (ii) any Claim of a Governmental Unit of the United States arising on or after the Effective Date; (iii) any liability to a Governmental Unit of the United States or of a State under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Effective Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors. Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit of the United States or of a State from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Nothing in this Confirmation Order or the Plan shall affect any valid setoff or recoupment rights of the United States. Nothing in this Confirmation Order divests any tribunal of any jurisdiction it may have under police or

-17-

regulatory law to interpret this Confirmation Order or the Plan or to adjudicate any defense asserted under this Confirmation Order or the Plan. Notwithstanding the foregoing, nothing in this paragraph will in any way limit or alter the terms of the Asbestos Permanent Channeling Injunction set forth in Article IX.B.2 of the Plan or the Environmental Injunction set forth in Article IX.B.3 of the Plan.

## B. OVERRULING OF CERTAIN OBJECTIONS TO CONFIRMATION.

All objections not otherwise addressed herein or previously withdrawn are hereby overruled in their entirety.

### 1. Objection of Truck Insurance Exchange.

Truck objected to Confirmation on several grounds. The Court has considered the Truck Objection, the Truck Affidavits, the Memoranda of Law, the statements of counsel, briefs and all other testimony and evidence admitted as part of the Confirmation Hearing. For the reasons stated by the Bankruptcy Court on the record at the hearing of August 13, 2020, and set forth in the Findings and Conclusions, incorporated herein, the Court overrules Truck's objections in their entirety.

As reflected in the Findings and Conclusions, the Court has made the following findings and conclusions:[9]

  a.   Because the Plan is insurance neutral and returns Truck to the tort system exactly as it was prepetition, Truck does not have standing to advance confirmation issues such as contentions that: the Plan is collusive and not in good faith; the Debtors are not entitled to a

---

[9]   Failure of this Order to restate or specifically address any other finding or conclusion contained in the Findings and Conclusions shall not affect the validity of enforceability of such finding or conclusion. Any finding of fact shall constitute a finding of fact even if it is referred to as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is referred to as a finding of fact.

-18-

discharge; or the elements of 11 U.S.C. § 524(g) are not met. Truck also lacks standing to object to the structure and funding of the Asbestos Personal Injury Trust because Truck has no interest in the trust and the trust will have no effect on its legal or pecuniary interests.

b.      The Plan does not violate the spirit and purpose of section 524(g) of the Bankruptcy Code. The Court finds no requirement that all of a debtor's asbestos liabilities must be resolved by a section 524(g) trust, as opposed to being resolved in the tort system.

c.      The Court rejects Truck's argument that resolving asbestos cases in the tort system is unfair or constitutes bad faith. This Court is concerned for the same reasons that the bankruptcy court was concerned in *Garlock*, but this Court does not read *Garlock* as an indictment of the tort system or a ruling that a party cannot get a fair trial in state and federal courts. This Court is not inclined to indict its colleagues on the state benches, nor does the Court believe that a bankruptcy court in North Carolina is necessary to protect state courts from fraud. It is not within the province of this Court to mandate to state courts and other federal courts what kind of discovery is required in asbestos cases. The findings in *Garlock* have been widely debated, and indeed some state legislatures have taken steps to address these issues. State courts and litigants will

-19-

obviously be alert to what has been proposed in this case and can take their own actions.

d.      The Court has the jurisdiction and authority to make the finding at Plan art. VIII.A.3.u (the "Plan Finding"). The Plan Finding deals with core matters that arise under the Bankruptcy Code and could only arise in the context of a bankruptcy case, including findings and conclusions the Court must make regarding whether the Plan and the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code under section 1129(a)(1) and (2); whether the Plan has an adequate means of implementation and was proposed in good faith and not by any means forbidden by law under sections 1123(a)(5) and 1129(a)(3); whether the Plan is feasible under section 1129(a)(11); and whether the Plan meets the requirements of section 524(g). These are all statutory-based confirmation matters that fall within the jurisdiction of this Court under 28 U.S.C. § 1334 and that must be raised in the context of the Reorganization Cases.

e.      The Plan Finding is proper. Truck's contention that the Plan impairs its contractual rights is based on a false premise: the notion that its contract gives it the right to collaterally attack elsewhere a confirmation ruling and make determinations of the propriety of the parties' conduct in the course of this case.  Such

-20-

rights never existed under the Truck Policies, and to the extent they

did, they would be preempted by the Bankruptcy Code.

## VII. DISCHARGE AND INJUNCTIONS.

### A. DISCHARGE OF CLAIMS.

1. The Plan discharge provisions as set forth in Section IX.A of the Plan are approved in all respects, are incorporated herein in their entirety, are so ordered and shall be immediately effective on the Effective Date of the Plan without further action by this Court, the Bankruptcy Court or any other party.

2. To the extent set forth in the Plan, as of the Effective Date, pursuant to sections 524 and 1141 of the Bankruptcy Code, the Reorganized Debtors shall be discharged of all Claims and other debts and liabilities against the Debtors, in accordance with Section IX.A of the Plan. Notwithstanding the foregoing or anything else in the Plan or this Confirmation Order, no release or discharge of any of the Parties or any Reorganized Debtor, or any of their respective present or former directors, officers, employees, members, subsidiaries, predecessors, successors, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives and agents, or the DIP Lender, in each case acting in such capacity, shall diminish, reduce or eliminate the duties or obligations of any Asbestos Insurer under any Asbestos Personal Injury Insurance Asset.

### B. INJUNCTIONS.

1. **Issuance of the Asbestos Permanent Channeling Injunction.**

In connection with the creation of the Asbestos Personal Injury Trust, the Asbestos Permanent Channeling Injunction shall be, and hereby is, issued as of the Effective Date, pursuant to section 524(g) of the Bankruptcy Code.

**2. Protected Parties Under the Asbestos Permanent Channeling Injunction.**

In connection with the Asbestos Permanent Channeling Injunction, "<u>Protected Party</u>" means any of the following parties:

      a.     the Debtors;

      b.     the Reorganized Debtors;

      c.     the Protected Affiliates;

      d.     Lehigh Hanson;

      e.     current and former directors, officers, and employees of the Debtors, the Reorganized Debtors and the Protected Affiliates, including, without limitation, Lehigh Hanson, solely in their capacity as such;

      f.     as of February 15, 2018, current and former shareholders of the Debtors, the Reorganized Debtors and the Protected Affiliates, including, without limitation, Lehigh Hanson, solely in their capacity as such;

      g.     current and former in-house and outside attorneys, accountants, auditors, tax advisors and other professionals who have provided services to the Debtors, the Reorganized Debtors or the Protected Affiliates, including, without limitation, Lehigh Hanson, solely in their capacity as such;

      h.     Entities that, pursuant to the Plan or on or after the Effective Date, become a direct or indirect transferee of, or successor to, any assets of any Debtor or Reorganized Debtor, or the Asbestos Personal Injury Trust, but only to the extent that liability is asserted to exist by reason of such Entity becoming such a transferee or successor;

-22-

i.     Entities that, pursuant to the Plan or on or after the Effective Date, make a loan to any Debtor or Reorganized Debtor, or the Asbestos Personal Injury Trust or to a successor to, or transferee of, any assets of any Debtor or Reorganized Debtor, or the Asbestos Personal Injury Trust, but only to the extent that liability is asserted to exist by reason of it becoming such a lender;

j.     Entities, other than Asbestos Insurers, that are alleged to be directly or indirectly liable for the conduct of, claims against, or Demands on any Debtor or Reorganized Debtor, or the Asbestos Personal Injury Trust, to the extent that such alleged liability arises by reason of one or more of the following:

(i)     such Entity's ownership of a financial interest in any Debtor or Reorganized Debtor, or any past or present affiliate of any them, or any predecessor in interest of any of them;

(ii)     such Entity's involvement in the management of any Debtor, Reorganized Debtor or any predecessor in interest of any of them;

(iii)     such Entity's service as an officer, director or employee of any Debtor or Reorganized Debtor, any past or present affiliate of any of them, any predecessor in interest of any of them, or of any entity that owns or at any time has owned a financial interest in any Debtor or Reorganized Debtor, any past or present affiliate of any of them, or any predecessor in interest of any of them;

(iv)     such Entity's provision of insurance to any Debtor, Reorganized Debtor, any past or present affiliate of any of them, or any predecessor in interest of any of them, or any entity that owns or at any time has owned a financial interest in any Debtor or Reorganized Debtor, any past or present affiliate of any of them, or any predecessor in interest of any of them; and

(v)     such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of any Debtor, Reorganized Debtor, any past or present affiliate of any of them, any predecessor in interest of any of them, or any

entity that owns or at any time has owned a financial interest in any Debtor or Reorganized Debtor, any past or present affiliate of any of them, or any predecessor in interest of any of them.

k.      each Settling Asbestos Insurer.

**3.      The Asbestos Permanent Channeling Injunction.**

Pursuant to section 524(g) of the Bankruptcy Code, all Entities shall be permanently and forever stayed, restrained and enjoined from taking any actions against any Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Asbestos Personal Injury Claim, all of which shall be channeled to the Asbestos Personal Injury Trust for resolution as set forth in the Asbestos Personal Injury Trust Agreement and the related Asbestos Personal Injury Trust Distribution Procedures, including:

a.      commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including a judicial, arbitral, administrative or other proceeding) in any forum against any Protected Party or any property or interests in property of any Protected Party;

b.      enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against any Protected Party or any property or interests in property of any Protected Party;

c.      creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party;

-24-

d.     setting off, seeking reimbursement of, contribution from or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

e.     proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Personal Injury Trust Documents, except in compliance therewith.

For the avoidance of doubt, (a) the Asbestos Permanent Channeling Injunction shall not affect any claims or causes of action under Sections IV.L.1. and IV.L.2. of the Plan and (a) no Entity shall be so stayed, enjoined, or restrained from initiating or continuing a suit or other proceeding against any Debtor in name only for the purpose of recovering on an Asbestos Personal Injury Claim from a Non-Settling Asbestos Insurer.

**4.     The Environmental Injunction.**

In consideration of the undertakings of the Settled Environmental Insurers, and other consideration, and pursuant to their respective settlements with the Debtors and to preserve and promote further the agreements between and among the Debtors and any Settled Environmental Insurers, and pursuant to section 105 of the Bankruptcy Code:

a.     any and all Environmental Claims shall be treated, administered, determined and resolved under the procedures and protocols under the Plan as the sole and exclusive remedy with respect to Environmental Claims; and

b.     all Entities are hereby permanently stayed, enjoined, barred and restrained from doing any of the following against the Settled Environmental Insurers:

(i)     commencing or continuing in any manner any action or other proceeding of any kind with respect to any Environmental Claim against any of the Settled

-25-

Environmental Insurers or against the property of any of Settled Environmental Insurers;

(ii)    commencing or continuing in any manner any contribution, indemnity or other equitable action or other similar proceeding relating to the environmental settlements made in this bankruptcy case against any of the Settled Environmental Insurers or against the property of any of Settled Environmental Insurers;

(iii)    enforcing, attaching, collecting or recovering, by any manner or means, from any of the Settled Environmental Insurers, or the property of any of the Settled Environmental Insurers, any judgment, award, decree, payment or order relating to any Environmental Claim against any of the Settled Environmental Insurers; and

(iv)    creating, perfecting or enforcing any lien of any kind relating to any Environmental Claim against any of the Settled Environmental Insurers, or the property of the Settled Environmental Insurers.

The Environmental Injunction set forth in Section IX.B.3 of the Plan is an integral part of the Plan and is essential to the Plan's consummation and implementation. The Environmental Injunction shall inure to the benefit of the Settled Environmental Insurers, but shall not apply to any Debtor or Reorganized Debtor.

For the avoidance of doubt, the Environmental Injunction shall not apply to Asbestos Personal Injury Claims or to Asbestos Insurance Policy Claims arising from the payment of, or obligations arising from, Asbestos Personal Injury Claims.

**5.**     **General Injunctions Related to Discharge or Releases Granted Pursuant to the Plan.**

a.     **No Action on Account of Discharged Claims**.

In addition to the Asbestos Permanent Channeling Injunction and the Environmental Injunction set forth above, except as provided in the Plan or this Confirmation Order, as of the Effective Date, all Entities that have held, currently hold or may hold a Claim or

-26-

other debt or liability that is discharged pursuant to the terms of the Plan shall be permanently enjoined from taking any of the following actions on account of any such discharged Claim, debt or liability: (i) commencing or continuing in any manner any action or other proceeding against any Debtor, Reorganized Debtor or any of its property, other than to enforce any right to a Distribution pursuant to the Plan; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, the Reorganized Debtors or their respective property, other than as permitted pursuant to (i) above; (iii) creating, perfecting or enforcing any lien or encumbrance against any Debtor or Reorganized Debtor, or any of its property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any Debtor or Reorganized Debtor and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

b.    **No Actions on Account of Released Claims**.

In addition to the Asbestos Permanent Channeling Injunction and the Environmental Injunction set forth above, except as provided in the Plan or this Confirmation Order, as of the Effective Date, all Entities that have held, currently hold or may hold any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities that are released pursuant to the Plan shall be permanently enjoined from taking any of the following actions against any released Entity, or any of its property, on account of such released claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Encumbrance; (iv) asserting a setoff, right of

-27-

subrogation or recoupment of any kind against any debt, liability or obligation due to any

released Entity and (v) commencing or continuing any action, in any manner, in any place that

does not comply with or is inconsistent with the provisions of the Plan.

## VIII. DISSOLUTION OF THE ASBESTOS PERSONAL INJURY COMMITTEE AND DISCHARGE OF THE FUTURE CLAIMANTS' REPRESENTATIVE.

In accordance with Section XI.B of the Plan, on the Effective Date, the Asbestos

Personal Injury Committee and the Creditors' Committee shall dissolve and the members of the

Asbestos Personal Injury Committee and the Creditors' Committee shall be released and

discharged from all duties and obligations arising from or related to the Reorganization Cases.

Similarly, on the Effective Date, the Future Claimants' Representative shall be deemed released

and discharged from all duties and obligations from or related to the Reorganization Cases.

Subject to Section XI.B of the Plan, the Professionals retained by each of the Asbestos Personal

Injury Committee and the members thereof, the Creditors' Committee and the members thereof

and by the Future Claimants' Representative shall not be entitled to assert any Fee Claim for any

services rendered or expenses incurred by them in their capacity as such after the Effective Date,

except for services rendered and expenses incurred in connection with any applications for

allowance of compensation and reimbursement of expenses pending on the Effective Date or

Filed and served after the Effective Date pursuant to Section III.A.1.d.ii.A.

## IX. RETENTION OF JURISDICTION.

### A. RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT.

Notwithstanding the entry of this Confirmation Order and the occurrence of the

Effective Date, pursuant to Article X of the Plan, the Bankruptcy Court shall retain such

jurisdiction over the Reorganization Cases after the Effective Date as is legally permissible,

including jurisdiction over the matters described in Sections X.A.1 through X.A.17 of the Plan.

-28-

### B. JURISDICTION RELATING TO ASBESTOS PERSONAL INJURY CLAIMS.

Notwithstanding anything to the contrary in Article X of the Plan, the resolution of Asbestos Personal Injury Claims and the forum in which such resolution will be determined shall be governed by and in accordance with the Asbestos Personal Injury Trust Distribution Procedures.

### X. NOTICE OF ENTRY OF CONFIRMATION ORDER.

A. Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Reorganized Debtors are directed to serve, within twenty (20) business days after the occurrence of the Effective Date, a notice of the entry of this Confirmation Order, which shall include notice of the Bar Dates established by the Plan and this Confirmation Order and notice of the Effective Date, substantially in the form attached hereto as Exhibit C and incorporated herein by reference (the "Confirmation Notice"), on all parties that received notice of the Confirmation Hearing; provided, however, that, with respect to Asbestos Personal Injury Claims, the Reorganized Debtors shall be obligated to serve the Confirmation Notice only on counsel to holders of Asbestos Personal Injury Claims, to the extent that the holders of such Claims are represented by known counsel, unless such counsel requests otherwise in writing within ten (10) days of service of the Confirmation Notice.

B. As soon as practicable after the entry of this Confirmation Order, the Reorganized Debtors shall make copies of this Confirmation Order and the Confirmation Notice available on

the website established by Prime Clerk for these Reorganization Cases, available at

https://cases.primeclerk.com/kaisergypsum/.

C.      No later than twenty (20) Business Days after the Effective Date, the Reorganized

Debtors are directed to publish the version of the Confirmation Notice attached hereto as

Exhibit D once in (i) the national editions of *The Wall Street Journal and USA Today* and

(ii) various regional newspapers.[10]

## XI.      ORDER OF THE COURT.

The Plan is hereby confirmed in its entirety pursuant to section 1129 of the

Bankruptcy Code, and the Asbestos Permanent Channeling Injunction and Environmental

Injunction are hereby issued pursuant to section 524(g) of the Bankruptcy Code.

THIS ORDER IS HEREBY DECLARED TO BE IN
RECORDABLE FORM AND SHALL BE ACCEPTED BY ANY
RECORDING OFFICER FOR FILING AND RECORDING
PURPOSES WITHOUT FURTHER OR ADDITIONAL
ORDERS, CERTIFICATIONS OR OTHER SUPPORTING
DOCUMENTS.

Signed: July 27, 2021

Graham C. Mullen
United States District Judge

---

[10]      The regional newspapers are: Arizona Republic (Arizona); Honolulu Star-Advertiser (Hawaii); San Antonio Express News (Texas); Dallas Morning News (Texas); Seattle Times (Washington); San Jose Mercury News (California); Pittsburgh Post-Gazette (Pennsylvania); Austin American-Statesman (Texas); Portland Oregonian (Oregon); Orange County Register (California); San Bernardino Sun (California); Florida Times-Union (Florida); Spokesman-Review (Washington); Alaska Dispatch News (Alaska); Helena Independent Record (Montana); Camden Courier Post (New Jersey); Burlington County Times (New Jersey); Bellingham Herald (Washington); Bismarck Tribune (North Dakota); Columbian (Washington); Daily Review (California); East County Times (California); Eureka Times Standard (California); Fairbanks Daily News-Miner (Alaska); Idaho State Journal (Idaho); Kodiak Daily Mirror (Alaska); Meridian Press (Idaho); St. Helens Chronicle (Oregon); Tacoma News Tribune (Washington); Times Journal (Oregon); Tri-City Herald (Washington); Tyler Morning Telegraph (Texas); Whittier Daily News (California); Los Angeles Times (California); Albuquerque Journal (New Mexico) and WamPinRock News (Oregon).

NAI-1514152687v6

<u>**EXHIBIT A**</u>

**JOINT PLAN OF REORGANIZATION OF KAISER GYPSUM
COMPANY, INC. AND HANSON PERMANENTE CEMENT, INC.**

NAI-1514152687v6

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **Kaiser Gypsum Company, Inc.,** *et al.*, | : | **Case No. 16-31602 (JCW)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| _____ | : | |
| | : | |
| **Kaiser Gypsum Company, Inc.** | : | **Case No. 16-31602 (JCW)** |
| **Hanson Permanente Cement, Inc.** | : | **Case No. 16-31614 (JCW)** |
| | : | |
| | : | **THIRD AMENDED JOINT PLAN OF** |
| | : | **REORGANIZATION OF KAISER** |
| | : | **GYPSUM COMPANY, INC. AND HANSON** |
| | : | **PERMANENTE CEMENT, INC.** |
| | : | |
| _____ | : | |

Edwin Harron
Sharon Zieg
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
    - and-
Felton Parrish
HULL & CHANDLER
1001 Morehead Square Drive, Suite 450
Charlotte, North Carolina 28203

ATTORNEYS FOR FUTURE CLAIMANTS'
REPRESENTATIVE

Kevin C. Maclay
Todd E. Phillips
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle N.W., Suite 1100
Washington, D.C. 20005
    - and-
Sally Higgins
HIGGINS & OWENS,
524 East Boulevard
Charlotte, North Carolina 28203

ATTORNEYS FOR OFFICIAL COMMITTEE OF
ASBESTOS PERSONAL INJURY CLAIMANTS

Ben Hawfield, Jr.
MOORE & VAN ALLEN
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202

ATTORNEYS FOR LEHIGH HANSON, INC.

Dated: July 20, 2020

C. Richard Rayburn, Jr. (NC 6357)
John R. Miller, Jr. (NC 28689)
RAYBURN COOPER & DURHAM, P.A.
1200 Carillon
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 334-0891
Facsimile: (704) 377-1897
E-mail: rrayburn@rcdlaw.net
       jmiller@rcdlaw.net
    -and-
Gregory M. Gordon (TX 08435300)
Amanda S. Rush (TX 24079422)
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
E-mail: gmgordon@jonesday.com
       asrush@jonesday.com
    -and-
Paul M. Green (TX 24059854)
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
E-mail: pmgreen@jonesday.com

ATTORNEYS FOR DEBTORS

# TABLE OF CONTENTS

ARTICLE I   DEFINED TERMS, RULES OF INTERPRETATION AND
COMPUTATION OF TIME................................................................. 1

    A.    Defined Terms ......................................................................... 1

    B.    Rules of Interpretation and Computation of Time............................ 18

        1.    Rules of Interpretation ......................................................... 18

        2.    Computation of Time ........................................................... 19

ARTICLE II   CLASSES OF CLAIMS AND INTERESTS.................................... 19

ARTICLE III   TREATMENT OF CLAIMS AND INTERESTS............................. 20

    A.    Unclassified Claims ................................................................... 20

        1.    Payment of Administrative Claims............................................. 20

            a.    Administrative Claims in General................................. 20

            b.    Statutory Fees......................................................... 20

            c.    Ordinary Course Liabilities........................................ 20

            d.    Bar Dates for Administrative Claims............................ 20

        2.    Payment of Priority Tax Claims............................................... 21

            a.    Priority Tax Claims in General .................................... 21

            b.    Other Provisions Concerning Treatment of Priority Tax
Claims .................................................................. 21

    B.    Classified Claims ...................................................................... 22

        1.    Class 1 Claims (Priority Claims) ............................................. 22

        2.    Class 2 Claims (Secured Claims).............................................. 22

        3.    Class 3 Claims (General Unsecured Claims) ............................... 22

        4.    Class 4 Claims (Asbestos Personal Injury Claims)........................ 22

        5.    Class 5 Claims (Surety Bond Claims) ....................................... 23

        6.    Class 6 Claims (Intercompany Claims) ...................................... 23

        7.    Class 7 Interests (Stock Interests) ............................................. 23

ARTICLE IV   MEANS FOR IMPLEMENTATION OF THE PLAN ....................... 23

    A.    Continued Corporate Existence and Vesting of Assets in the Reorganized
Debtors................................................................................... 23

    B.    Restructuring Transactions .......................................................... 24

    C.    Transfers and Lease Transactions.................................................. 24

D. Corporate Governance, Directors and Officers, Employment-Related Agreements and Compensation Programs and Corporate Action ...................... 24

    1. Certificates of Incorporation and By-Laws of the Reorganized Debtors ......................................................................................... 24

    2. Directors and Officers of the Reorganized Debtors ................................ 25

    3. Employee Arrangements of the Reorganized Debtors ............................ 25

    4. Corporate Action .................................................................................... 25

E. Obtaining Cash for Plan Distributions ................................................................. 25

F. Creation of Asbestos Personal Injury Trust ........................................................ 26

G. Authority of the Asbestos Personal Injury Trust ................................................. 26

H. Appointment of Asbestos Personal Injury Trustee and Delaware Trustee .......... 26

I. Appointment of Future Claimants' Representative and TAC Members .............. 26

J. Document Repository ........................................................................................... 27

K. Transfers of Property to and Assumption of Certain Liabilities by the Asbestos Personal Injury Trust ........................................................................... 28

    1. Expenses of the Asbestos Personal Injury Trust ..................................... 28

    2. Funding the Asbestos Personal Injury Trust ........................................... 28

        a. Initial Payment ............................................................................ 28

        b. Payment Note .............................................................................. 28

        c. Phase 1 Claims ............................................................................ 28

        d. Asbestos Personal Injury Insurance Assets ................................ 28

    3. Assumption of Certain Liability and Responsibility by the Asbestos Personal Injury Trust ............................................................. 29

    4. Indemnification by the Asbestos Personal Injury Trust .......................... 29

    5. Authority of the Debtors ......................................................................... 29

L. Cooperation with Respect to Insurance Matters .................................................. 29

    1. Obligation to Cooperate with Respect to Insurance Matters ................... 29

    2. Enforcement of Reorganized Debtors' Obligations to Cooperate with Respect to Insurance Matters .......................................................... 30

M. Compromise of Insurance Policies ...................................................................... 33

    1. Dual Policies .......................................................................................... 33

    2. Separate Limit Policies .......................................................................... 33

Case 3:20-cv-00537-GCM   Document 52   Filed 07/28/21   Page 38 of 206

3.      Insurance Policies that Provide Coverage for Asbestos Personal Injury Claims but not for Environmental Claims ..................................... 33

        a.      Settlement with Truck .................................................................. 34

4.      Insurance Policies that Provide Coverage for Environmental Claims but not for Asbestos Personal Injury Claims ............................... 35

5.      Amendment of Insurance Policy Exhibits ............................................ 35

N.      Truck Obligations Regarding Deductibles ......................................................... 35

O.      Liquidation of Asbestos Personal Injury Claims ............................................... 36

1.      Insured Asbestos Claims ....................................................................... 36

2.      Uninsured Asbestos Claims ................................................................... 36

P.      Limitations On Judgment Recovery From Non-Settling Asbestos Insurers ........ 37

Q.      Insurance Neutrality .......................................................................................... 37

R.      Preservation of Rights of Action; Settlement of Claims and Releases ................ 38

1.      Preservation of Rights of Action by the Reorganized Debtors ............... 38

2.      Settlement of Certain Estate Claims ..................................................... 38

3.      Releases ............................................................................................... 39

        a.      General Releases of Debtors and Reorganized Debtors ............. 39

        b.      Release by the Debtors, Reorganized Debtors and Lehigh Hanson ...................................................................................... 39

        c.      General Releases by Holders of Claims or Interests ................... 40

        d.      Injunction Related to Releases ................................................... 40

S.      Release of Encumbrances .................................................................................. 41

T.      Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes .................................................................................................. 41

U.      Determination of the Insolvent Insurers Proceeds Dispute ................................. 41

V.      Compliance with QSF Regulations .................................................................... 41

W.      Surety Bond Obligations .................................................................................... 41

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............................................................................................................. 42

A.      Executory Contracts and Unexpired Leases to Be Assumed ............................... 42

1.      Assumption Generally .......................................................................... 42

2.      Assumptions of Executory Contracts and Unexpired Leases ................. 42

Case 3:20-cv-00537-GCM    Document 52    Filed 07/28/21    Page 39 of 206

| | | | |
|---|---|---|---|
| | 3. | Approval of Assumptions and Assumption Procedures | 43 |
| B. | | Payments Related to the Assumption of Executory Contracts and Unexpired Leases | 44 |
| C. | | Executory Contracts and Unexpired Leases to Be Rejected and Rejection Procedures | 44 |
| D. | | Obligations to Indemnify Directors, Officers and Employees | 45 |
| E. | | Contracts and Leases Entered Into After the Petition Date | 45 |
| F. | | Insurance Policies | 45 |
| | 1. | Assumed Insurance Policies | 45 |
| | 2. | Reservation of Rights | 46 |
| ARTICLE VI | | PROVISIONS GOVERNING DISTRIBUTIONS | 46 |
| A. | | Distributions for Claims Allowed as of the Effective Date | 46 |
| B. | | General Unsecured Claims Escrows | 46 |
| C. | | Method of Distributions to Holders of Claims | 47 |
| D. | | Compensation and Reimbursement for Services Related to Distributions | 47 |
| E. | | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 47 |
| | 1. | Delivery of Distributions | 47 |
| | 2. | Undeliverable Distributions Held by Disbursing Agents | 47 |
| | | a. Holding and Investment of Undeliverable Distributions | 47 |
| | | b. After Distributions Become Deliverable | 48 |
| | | c. Failure to Claim Undeliverable Distributions | 48 |
| F. | | Distribution Record Date | 48 |
| | 1. | No Recognition of Transfers after the Distribution Record Date | 48 |
| | 2. | Treatment of Certain Transfers | 48 |
| G. | | Means of Cash Payments | 48 |
| H. | | Timing and Calculation of Amounts to Be Distributed | 49 |
| | 1. | Timing of Distributions Under the Plan | 49 |
| | 2. | Allowed Claims | 49 |
| | 3. | Compliance with Tax Requirements | 49 |
| | | a. Withholding and Reporting | 49 |
| | | b. Backup Withholding | 49 |

| | | c. | Obligations of Distribution Recipients | 50 |

I. Setoffs .......................................................................................................... 50

J. Allocation of Payments ................................................................................. 50

**ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS** ............................. 51

A. Prosecution of Objections to Claims ............................................................. 51

    1. Objections to Claims ..................................................................... 51

    2. Authority to Prosecute Objections .............................................. 51

    3. Authority to Amend Schedules ................................................... 51

B. Treatment of Disputed Claims ...................................................................... 51

C. Distributions on Account of Disputed Claims Once Allowed ...................... 51

**ARTICLE VIII CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN** ...................................... 52

A. Conditions to Confirmation .......................................................................... 52

B. Conditions to the Effective Date ................................................................... 56

C. Waiver of Conditions to Confirmation or the Effective Date ...................... 57

D. Effect of Nonoccurrence of Conditions to the Effective Date ..................... 57

**ARTICLE IX DISCHARGE, INJUNCTION AND SUBORDINATION RIGHTS** ................. 57

A. Discharge of Claims ...................................................................................... 57

B. Injunctions .................................................................................................... 58

    1. General Injunctions ....................................................................... 58

        a. No Actions on Account of Discharged Claims ........................... 58

        b. No Actions on Account of Released Claims ............................... 58

        c. Recipients of Distribution Deemed to Consent ......................... 59

    2. Asbestos Permanent Channeling Injunction ............................... 59

        a. Asbestos Permanent Channeling Injunction ............................. 59

    3. Environmental Injunction ............................................................. 60

C. Subordination Rights .................................................................................... 61

**ARTICLE X RETENTION OF JURISDICTION** ......................................................... 61

A. Retention of Jurisdiction ............................................................................... 61

B. Consent to Jurisdiction .................................................................................. 62

C.    Jurisdiction of Litigating Asbestos Personal Injury Claims................................ 63

ARTICLE XI  MISCELLANEOUS PROVISIONS ................................................. 63

A.    DEQ Settlement ................................................................................ 63

B.    Dissolution of the Creditors' Committee and the Asbestos Personal Injury Committee ................................................................................ 63

C.    Limitation of Liability .......................................................................... 63

    1.    Liability for Actions in Connection with the Reorganization Cases........ 63

    2.    Rights of Action in Connection with the Reorganization Cases ............. 64

D.    Modification of the Plan and Exhibits ................................................. 64

E.    Headings ............................................................................................ 64

F.    Severability ........................................................................................ 65

G.    Successors and Assigns .................................................................... 65

H.    Service of Certain Plan Exhibits ........................................................ 65

I.    Effective Date Actions Simultaneous ................................................ 65

J.    Asbestos Personal Injury Trust Annual Report ................................. 65

K.    Service of Documents ........................................................................ 65

    1.    The Debtors and the Reorganized Debtors ............................................. 66

    2.    Future Claimants' Representative ............................................................. 66

    3.    The Asbestos Personal Injury Committee ............................................... 66

    4.    The Creditors' Committee ....................................................................... 67

    5.    The Bankruptcy Administrator for the Western District of North Carolina ................................................................................................... 67

    6.    Lehigh Hanson, Inc ................................................................................. 67

# TABLE OF EXHIBITS[1]

| | |
|---|---|
| Exhibit I.A.6 | Asbestos Insurance Policies |
| Exhibit I.A.16 | Asbestos Personal Injury Trust Agreement |
| Exhibit I.A.19 | Asbestos Personal Injury Trust Distribution Procedures |
| Exhibit I.A.47 | Delaware Trustee |
| Exhibit I.A.60 | Dual Policies |
| Exhibit I.A.98 | Form of Payment Note |
| Exhibit I.A.108 | List of Protected Affiliates |
| Exhibit I.A.119 | Separate Limit Policies |
| Exhibit I.A.120 | List of Settling Asbestos Insurance Companies |
| Exhibit IV.B | Description of Certain Restructuring Transactions |
| Exhibit IV.H | Trustee of Asbestos Personal Injury Trust |
| Exhibit IV.M.3 | List of Asbestos-Only Policies |
| Exhibit IV.M.4 | List of Environmental-Only Policies |
| Exhibit V.C | Schedule of Executory Contracts and Unexpired Leases to Be Rejected |

---

[1] To the extent not attached to and Filed with the Plan, Plan Exhibits shall be Filed and made available for review on the web site of Prime Clerk LLC ("Prime Clerk"), the Debtors' claims and noticing agent, at https://cases.primeclerk.com/kaisergypsum no later than ten (10) days before the deadline to object to confirmation of the Plan. The Debtors also will serve such Exhibits on their then current Bankruptcy Rule 2002 service list no later than ten (10) days before the deadline to object to confirmation of the Plan. The Debtors reserve the right to modify, amend, supplement, restate or withdraw any of the Exhibits after they are Filed. The Debtors shall File and shall make available on Prime Clerk's web site all modified, amended, supplemented or restated Exhibits as promptly as possible.

# INTRODUCTION

The Parties propose the following joint plan of reorganization for the resolution of the outstanding claims and demands against and equity interests in the Debtors pursuant to sections 524(g) and 1121(a) of title 11 of the United States Code. The Parties are co-proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code, and the Plan is supported by the following principal stakeholders, or representatives of such stakeholders, in the chapter 11 cases: the Debtors, the Debtors' indirect parent company, Lehigh Hanson, Inc., the Asbestos Personal Injury Committee and the Future Claimants' Representative. Reference is made to the Debtors' disclosure statement, filed contemporaneously with the Plan, for a discussion of the history, businesses, results of operations, historical financial information, projections and properties of the Debtors, and for a summary and analysis of the Plan. There also are other agreements and documents, which are or will be Filed with the Bankruptcy Court, that are referenced in the Plan or the Debtors' Disclosure Statement and that will be available for review.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

### A.     Defined Terms

As used in the Plan, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.      **"Administrative Claim"** means a Claim for costs and expenses of administration allowed under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the respective Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services and payments for leased equipment and premises), including Claims under the DIP Credit Agreement; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 330(a), 331 or 503 of the Bankruptcy Code, including Fee Claims; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

2.      **"Affiliate"** means an "affiliate," as defined in section 101(2)(B) of the Bankruptcy Code, of the Debtors.

3.      **"Allowed Claim"** means:

a.      a Claim (other than an Asbestos Personal Injury Claim) that (i) has been listed by a particular Debtor on its Schedules as other than disputed, contingent or unliquidated and (ii) is not a Disputed Claim;

b. a Timely Claim (other than an Asbestos Personal Injury Claim) that is not a Disputed Claim;

c. a Timely Claim (other than an Asbestos Personal Injury Claim) that is liquidated and allowed: (i) in any Stipulation of Amount and Nature of Claim executed by the Debtors or Reorganized Debtors and Claim holder; (ii) in any contract, instrument or other agreement entered into in connection with the Plan and, if prior to the Effective Date, approved by the Bankruptcy Court; (iii) in a Final Order; or (iv) pursuant to the terms of the Plan; or

d. a Claim (other than an Asbestos Personal Injury Claim) listed by a particular Debtor on its Schedules as other than disputed, contingent or unliquidated or a Timely Claim that the Debtors or Reorganized Debtors determine prior to the Claims Objection Bar Date (i) will not be subject to an objection or to an amendment to the Schedules and (ii) will be satisfied in accordance with the terms of the Plan on or after the Effective Date.

4. **"Allowed . . . Claim"** means an Allowed Claim in the particular Class or category specified.

5. **"Asbestos Coverage Litigation"** means the case captioned *Truck Insurance Exchange v. Kaiser Cement and Gypsum Corporation*, Court of Appeal of the State of California, Second Appellate District, Court of Appeal No. B278091, Superior Court No. BC249550.

6. **"Asbestos Insurance Policies"** means those insurance policies alleged by HPCI or any other party in the Asbestos Coverage Litigation and described on Exhibit I.A.6, as well as any other insurance policy of the Debtors providing, or potentially providing, for coverage for Asbestos Personal Injury Claims.

7. **"Asbestos Insurance Policy Claim"** means any claim against any Asbestos Insurer based on, arising under, or related to any Asbestos Insurance Policy or settlement related to any Asbestos Insurance Policy, including any claim for contribution, reimbursement, indemnity or subrogation, or bad faith refusal to settle related to any Asbestos Insurance Policy.

8. **"Asbestos Insurer"** means any Entity that has issued an Asbestos Insurance Policy and each of its affiliates, predecessors in interest, and agents, but only in relation to such Asbestos Insurance Policies, including those insurers who issued, subscribed to, or have acquired the obligations of an issuing or subscribing insurer through assignment, conveyance, merger, acquisition or other legal theory.

9. **"Asbestos Insurer Cooperation Obligations"** means, collectively, the Assistance and Cooperation, Inspection and Audit, and Notice of Occurrence provisions set out in the Asbestos Insurance Policies.

10. **"Asbestos Permanent Channeling Injunction"** means an order or orders of the Bankruptcy Court or the District Court, or the Bankruptcy Court and the District Court acting jointly and, if the Confirmation Order is entered by the Bankruptcy Court, affirmed by the District Court, in accordance with, and pursuant to, section 524(g) of the Bankruptcy Code permanently

and forever staying, restraining and enjoining any Entity from taking any actions against any Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Asbestos Personal Injury Claim, all of which shall be channeled to the Asbestos Personal Injury Trust for resolution as set forth in the Asbestos Personal Injury Trust Agreement and the related Asbestos Personal Injury Trust Distribution Procedures.

      **11.** **"Asbestos Personal Injury Claim"** means any and all Debtor Claims on account of or relating to death, bodily injury, sickness, disease, emotional distress, fear of cancer, medical monitoring or other personal injuries whatsoever (whether physical, emotional or otherwise) arising out of, based upon or resulting from, directly or indirectly, in whole or in part, Conduct, to the extent arising, directly or indirectly, from Conduct (including Conduct of any other Entity for whose Conduct the Debtors have or are alleged to have liability, but in all cases only to the extent of any of the Debtors' liability for such Conduct), including without limitation (a) any and all Asbestos Personal Injury Indirect Claims and (b) any and all Debtor Claims under agreements entered into by or on behalf of the Debtors prior to the Petition Date in settlement of Asbestos Personal Injury Claims. For the purpose of this definition, Asbestos Personal Injury Claims shall not include any claim by any present or former employee of any of the Debtors for benefits under a policy of workers' compensation insurance or for benefits under any state or federal workers' compensation statute or other statute providing compensation to an employee from an employer. For avoidance of doubt, an Asbestos Personal Injury Claim excludes any liability of the Protected Parties that is not liability of the Debtors, including, but not limited to, any liability of the Protected Parties (other than the Debtors) for their own asbestos or asbestos-containing products.

      **12.** **"Asbestos Personal Injury Committee"** means the Official Committee of Asbestos Personal Injury Claimants appointed pursuant to an order of the Bankruptcy Court entered on October 19, 2016 in the Reorganization Cases pursuant to section 1102 of the Bankruptcy Code and any duly appointed successors, as the same may be reconstituted from time to time. The members as of the date of the Plan are: Cleophus Rice, c/o Armand J. Volta, Jr., The Law Offices of Peter G. Angelos; Larry Eugene Watson, c/o Alan R. Brayton, Brayton Purcell LLP; Jerry Gabrel, c/o John D. Cooney, Cooney & Conway; Bernard Kunes, II, Individually and as Special Administrator of the Estate of Bernard Kunes, Deceased, c/o Beth Gori, Gori Julian & Associates, P.C.; Margaret Tocco, Individually and as Special Administrator of the Estate of Peter Tocco, Deceased, c/o Perry J. Browder, Simmons Hanly Conroy LLC; Ronald Earl Auen and Sherrie Auen, c/o Steven Kazan, Kazan, McClain, Satterley & Greenwood; Stanley J. Anderson c/o Connie J. Anderson – POA, c/o James L. Ferraro, Kelley & Ferraro, LLP; Lauren Lougher, as Administratrix of the Estate of John Lougher, Deceased, c/o Joseph W. Belluck, Belluck & Fox, LLP; Marta Poling-Goldenne, As Successor-In-Interest to David Poling-Goldenne, Deceased c/o Peter A. Kraus, Waters & Kraus, LLP; Patricia Hoff, Individually and as Personal Representative of David Hoff, Deceased, c/o Matthew P. Bergman, Bergman Draper Ladenburg, PLLC; Lois Annette Beach, c/o Joseph F. Rice, Motley Rice LLC. The committee is chaired by Mr. Cooney.

      **13.** **"Asbestos Personal Injury Indirect Claim"** means any and all Debtor Claims asserted by a party that is not an Asbestos Insurer for contribution, reimbursement, subrogation or indemnification, or any other indirect or derivative recovery, on account of or with respect to any Asbestos Personal Injury Claim. Notwithstanding the foregoing, any Protected Party

Indemnification Claim shall not be deemed to be or treated as an Asbestos Personal Injury Indirect Claim or an Asbestos Personal Injury Claim, and the Asbestos Personal Injury Trust shall pay such claims in accordance with the terms of the Asbestos Personal Injury Trust Documents and the Plan.

14. **"Asbestos Personal Injury Insurance Assets"** means (a) all of the Debtors' rights related to or arising under their Asbestos Insurance Policies (but not the policies themselves) to the fullest extent that those rights are related to coverage for Asbestos Personal Injury Claims, and (b) all claims and causes of action that the Debtors or Reorganized Debtors have, or may have in the future, against any Asbestos Insurer that are related to the Debtors' asbestos-containing products or the Asbestos Personal Injury Claims, including, but not limited to, claims or causes of action for a bad-faith refusal to settle. For the avoidance of doubt, Asbestos Personal Injury Insurance Assets include all rights to coverage and insurance proceeds under the Asbestos Insurance Policies that are related to coverage for Asbestos Personal Injury Claims, together with all rights to insurance coverage and insurance proceeds related to Asbestos Personal Injury Claims under any settlement agreements and/or other agreements or stipulations, including without limitation the Excess CIP Agreement, as well as the right, on behalf of the Debtors, to compromise with or grant a full release to one or more of the Asbestos Insurers of any such insurance rights, whether under any such policy or settlement agreement.

15. **"Asbestos Personal Injury Trust"** means the trust that is to be established pursuant to section 524(g) of the Bankruptcy Code and in accordance with the Plan, the Confirmation Order and the Asbestos Personal Injury Trust Agreement, which trust will satisfy the requirements of section 524(g) of the Bankruptcy Code and section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder.

16. **"Asbestos Personal Injury Trust Agreement"** means that certain Asbestos Personal Injury Trust Agreement, executed by the Debtors and the Asbestos Personal Injury Trustee, substantially in the form of Exhibit I.A.16.

17. **"Asbestos Personal Injury Trust Appellate Costs"** means if the Asbestos Personal Injury Trust determines to continue pursuing the Phase 1 Claims following the entry of a decision by the California Court of Appeal or, if there is a remand by that court, the Superior Court, completely resolving the Phase 1 Claims in favor of Truck, including through any further appeals or post-decision motions, all costs of pursuing the Phase 1 Appeal, including reasonable attorneys' fees and expenses incurred by the Asbestos Personal Injury Trust from that point forward.

18. **"Asbestos Personal Injury Trust Assets"** means, collectively: (a) $49.0 million in cash; (b) the Payment Note; (c) the Phase 1 Claims; and (d) the Asbestos Personal Injury Insurance Assets.

19. **"Asbestos Personal Injury Trust Distribution Procedures"** means the Asbestos Personal Injury Trust Distribution Procedures, to be implemented by the Asbestos Personal Injury Trust pursuant to the terms and conditions of the Plan and the Asbestos Personal Injury Trust Agreement governing the resolution of Asbestos Personal Injury Claims, substantially in the form of Exhibit I.A.19.

20.  **"Asbestos Personal Injury Trust Documents"** means, collectively: (a) the Asbestos Personal Injury Trust Agreement; (b) the Asbestos Personal Injury Trust Distribution Procedures; and (c) the other agreements, instruments and documents governing the establishment and administration of the Asbestos Personal Injury Trust, as the same may be amended or modified from time to time, in accordance with the terms thereof.

21.  **"Asbestos Personal Injury Trust Expenses"** means, as to the Asbestos Personal Injury Trust, all costs, Taxes and expenses of or imposed on such trust, including but not limited to: (a) compensation expenses of such trust; (b) legal, accounting and other professional fees and expenses of such trust; (c) other disbursements and expenses relating to the implementation and operation of such trust; and (d) Asbestos Personal Injury Trust Appellate Costs.

22.  **"Asbestos Personal Injury Trust Termination Date"** means the date on which the Asbestos Personal Injury Trust terminates as set forth in the Asbestos Personal Injury Trust Agreement.

23.  **"Asbestos Personal Injury Trustee"** means the person appointed to serve as trustee of the Asbestos Personal Injury Trust to administer Asbestos Personal Injury Claims pursuant to the terms of the Asbestos Personal Injury Trust Agreement, or as subsequently may be appointed pursuant to the terms of the Asbestos Personal Injury Trust Agreement.

24.  **"Bankruptcy Administrator"** means the Bankruptcy Administrator for the Western District of North Carolina.

25.  **"Bankruptcy Code"** means title 11 of the United States Code, as in effect on the Petition Date or thereafter amended with retroactive applicability to the Reorganization Cases.

26.  **"Bankruptcy Court"** means the United States Bankruptcy Court for the Western District of North Carolina having jurisdiction over the Reorganization Cases.

27.  **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended with retroactive applicability to the Reorganization Cases.

28.  **"Bar Date"** means the applicable bar date by which a proof of Claim or a request for payment of an Administrative Claim must be or must have been Filed, as established by an order of the Bankruptcy Court, including the Confirmation Order.

29.  **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)), the day after Thanksgiving and any date on which the Bankruptcy Court is closed by law or order.

30.  **"By-Laws"** means, with respect to a Reorganized Debtor, the by-laws, regulations or other comparable document of such Reorganized Debtor, to be amended and restated in accordance with Section IV.D.1.

**31.** **"Certificate of Incorporation"** means, with respect to any Reorganized Debtor, the articles or certificate of incorporation or other comparable document of such Reorganized Debtor, to be amended and restated in accordance with Section IV.D.1.

**32.** **"Claim"** means a "claim," as defined in section 101(5) of the Bankruptcy Code, against any Debtor.

**33.** **"Claims Objection Bar Date"** means, for all Claims (other than Asbestos Personal Injury Claims) the latest of: (a) 120 days after the Effective Date; (b) 60 days after the Filing of a proof of Claim for such Claim; and (c) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules or an order of the Bankruptcy Court.

**34.** **"Class"** means a class of Claims or Interests, as described in Article II, pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**35.** **"Conduct"** means the presence of or exposure to asbestos or asbestos containing products or things alleged to have been designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, or in any other way made available, or present at any premises owned, leased, occupied or operated, by either of the Debtors or any other Entity for whose products, acts, omissions, business, or operations either of the Debtors has liability or is alleged to have liability.

**36.** **"Confirmation"** means the entry of the Confirmation Order on the docket of the District Court.

**37.** **"Confirmation Date"** means the date on which the Bankruptcy Court and the District Court acting jointly, or the District Court enters the Confirmation Order on its docket.

**38.** **"Confirmation Hearing"** means, collectively, the hearing or hearings held by the Bankruptcy Court or the District Court on Confirmation of the Plan, as such hearing or hearings may be continued from time to time.

**39.** **"Confirmation Order"** means the order of the District Court, the Bankruptcy Court and the District Court acting jointly, or, if an order is entered by the Bankruptcy Court, the order of the District Court affirming the Bankruptcy Court's order, that confirms the Plan pursuant to section 1129 of the Bankruptcy Code.

**40.** **"Creditors' Committee"** means the Official Committee of Unsecured Creditors appointed pursuant to an order of the Bankruptcy Court entered on October 14, 2016 in the Reorganization Cases pursuant to section 1102 of the Bankruptcy Code and any duly appointed successors, as the same may be reconstituted from time to time. The members as of the date of the Plan are: The Boeing Company and Ash Grove Cement Company.

**41.** **"Cure Amount Claim"** means a Claim based upon a Debtor's defaults pursuant to an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by that Debtor under section 365 of the Bankruptcy Code.

42.     **"Debtor Appellate Costs"** means the Truck Appeal Costs together with the First Stage Costs.

43.     **"Debtor Claims"** means any and all claims, commitments, obligations, suits, judgments, damages (whether compensatory, exemplary, punitive or otherwise), Demands, debts, causes of action and liabilities of any kind or nature, of or against the Debtors or any Protected Party, to the full extent, but only to the extent, of the Debtors' liability, whether liquidated or unliquidated, fixed or contingent, direct or indirect, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, equity or otherwise, including, without limitation, under any legal or equitable theory. whatsoever, including without limitation piercing the corporate veil, alter ego, successor liability, fraudulent conveyance, fraudulent concealment, conspiracy, enterprise liability, market share, joint venture, loss of consortium, medical monitoring, negligence, failure to warn, wrongful death, survivorship, or any other legal or equitable theory.

44.     **"Debtors"** means, together, the above-captioned debtors and debtors in possession identified on the cover page to this Plan.

45.     **"Deductible"** means (a) $5,000 per paid Asbestos Personal Injury Claim for all paid claims with a first exposure date on or before December 31, 1975; (b) $50,000 per paid Asbestos Personal Injury Claim for all paid claims with a first exposure date between January 1, 1976 and March 31, 1981, inclusive; and (c) $100,000 per paid Asbestos Personal Injury Claim for all paid claims with a first exposure date between April 1, 1981 and March 31, 1983, inclusive.

46.     **"Deficiency Claim"** means a General Unsecured Claim for the difference between (a) the aggregate amount of an Allowed Claim and (b) the value received on account of the portion of such Allowed Claim that is a Secured Claim.

47.     **"Delaware Trustee"** means the Entity or Entities appointed to serve as the "Delaware Trustee" for the Asbestos Personal Injury Trust pursuant to Section IV.H and the terms of the Asbestos Personal Injury Trust Agreement, as identified in Exhibit I.A.47, or as subsequently may be appointed pursuant to the terms of the Asbestos Personal Injury Trust Agreement.

48.     **"Demand"** means a "demand," as defined in section 524(g)(5) of the Bankruptcy Code, against any Debtor.

49.     **"DEQ"** means the Oregon Department of Environmental Quality.

50.     **"DEQ Settlement"** means the settlement among the Debtors, Lehigh Hanson and DEQ as approved by the DEQ Settlement Order and further documented in the Consent Judgment entered in the Circuit Court of the State of Oregon for the County of Columbia; provided that the DEQ Settlement shall be subject to and governed by the terms and conditions of the Consent Judgment and the Term Sheet, and that all conditions to the effectiveness of the DEQ Settlement set forth therein shall have been satisfied or waived in writing; and, provided further, that in the event of any inconsistency between the terms of the DEQ Settlement, as so defined, and the DEQ Settlement Order, the terms and conditions of the DEQ Settlement shall govern.

**51.** **"DEQ Settlement Order"** means the Order Approving Settlement with the Oregon Department of Environmental Quality entered by the Bankruptcy Court on May 7, 2019.

**52.** **"DIP Credit Agreement"** means, collectively: (a) that Debtor-in-Possession Loan and Security Agreement; (b) all amendments thereto and extensions thereof; and (c) all security, guaranty and other documents and agreements related to the documents identified in (a) and (b), including, without limitation, any termination letters.

**53.** **"DIP Lender"** means Lehigh Hanson, Inc., a Delaware corporation, as the lender under the DIP Credit Agreement.

**54.** **"Disbursing Agent"** means any of the Reorganized Debtors, in their capacity as a disbursing agent pursuant to Section VI.C., or any Third Party Disbursing Agent, but shall not include any disbursing agent for or with respect to the Asbestos Personal Injury Trust.

**55.** **"Disclosure Statement"** means the written disclosure statement that relates to the Plan, including the exhibits thereto, approved by the Bankruptcy Court as containing adequate information pursuant to section 1125 of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules, as such disclosure statement may be amended, modified, or supplemented from time to time.

**56.** **"Disputed Claim"** means (other than with respect to an Asbestos Personal Injury Claim):

        a. if no proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, (i) a Claim that is listed on a Debtor's Schedules as disputed, contingent or unliquidated or (ii) a Claim that is not listed on a Debtor's Schedules; or

        b. if a Timely Claim, a Claim for which an objection, complaint or request for estimation has been Filed by the applicable Debtor, Reorganized Debtor or, prior to the Confirmation Date, any other party in interest, by the Claims Objection Bar Date, and such objection has not been withdrawn or denied by a Final Order.

**57.** **"Distribution"** means one or more payments or distributions under the Plan of cash, notes, interests or other property, as applicable, to the holders of Allowed Claims (other than Asbestos Personal Injury Claims or distributions made to the Asbestos Personal Injury Trust).

**58.** **"Distribution Record Date"** means the Confirmation Date.

**59.** **"District Court"** means the United States District Court for the Western District of North Carolina having jurisdiction over these Reorganization Cases.

**60.** **"Dual Policies"** means those insurance policies described on Exhibit I.A.60 which provide or may provide coverage for Asbestos Personal Injury Claims and Environmental Claims under a shared combined aggregate limit.

**61.** **"Effective Date"** means the earliest possible date, as determined by the Debtors, the Asbestos Personal Injury Committee and the Future Claimants' Representative, that is a Business Day on or after the date on which all conditions to the effective date in Section VIII.B. have been met or waived pursuant to Section VIII.C.

**62.** **"Encumbrance"** means, with respect to any asset, any mortgage, lien, pledge, charge, security interest, assignment or encumbrance of any kind or nature in respect of such asset (including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction).

**63.** **"Entity"** means an individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization or government or any political subdivision thereof, or other person or entity.

**64.** **"Environmental Claim**" means a Claim of any Entity against any Debtor: (a) relating to alleged violations of, or noncompliance with, or liability arising under any federal or state environmental laws or regulations; or (b) relating to Pollution (defined as actual, alleged, or threatened pollution, contamination, damage, injury, or harm to any land, soil, watercourse, surface water, ground water, body of water, the air and/or atmosphere and/or any other tangible thing, or to any person or other living thing, relating to the actual, alleged, or threatened release, discharge, disposal, application, dissemination, use or escape (including emission or seepage) of smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases, waste materials, oil, petroleum or petroleum derivatives, other irritants, contaminants or pollutants from any facility, structure, vehicle, premises, landfill, disposal site or other property owned or operated by the Debtors or at or to which such substances were generated, stored, transported, distributed, sold, produced, or disposed of by the Debtors or for which the Debtors may be liable by contract or by statute, or otherwise, including all sites or locations referenced in the actions pending in California state court and Oregon state court to determine insurance coverage, regardless of whether substances were known to be, or in, fact, were hazardous, contaminating or polluting substances at any particular time), including: (i) any Claim of actual, alleged, threatened, or feared personal injury, bodily injury, sickness, or disease; (ii) any Claim of actual, alleged, threatened, or feared property damage, including damage, destruction, loss of use, diminished value or any economic loss; (iii) any Claim relating to actual, alleged, threatened, or feared damage to, destruction of, or limitation or loss of use of natural resources; (iv) any Claim seeking to compel (through injunctive or equitable relief or otherwise), the enforcement of federal, state or local statutes, rules, regulations, ordinance or government directive or the testing, study, investigation, prevention or remediation of actual, alleged, threatened, or feared Pollution or any Claim for such costs; (v) any Claim for nuisance, trespass, interference with quiet enjoyment of property, bad faith, sanctions, punitive or exemplary damages, statutory fines, or penalties; or (vi) any Claim for costs or expenses incurred by any Entity for the testing study, investigation, prevention, or remediation of actual, alleged, threatened, or feared Pollution, or incurred in order to comply with any environmental statute, rule, regulation, ordinance, or government directive. For the avoidance of doubt, Asbestos Personal Injury Claims and Asbestos Insurance Policy Claims do not fall within the definition of Environmental Claims.

65.	**"Estate"** means, as to each Debtor, the estate created for that Debtor in its Reorganization Case pursuant to section 541 of the Bankruptcy Code.

66.	**"Escrow Agent"** means the escrow agent designated to administer and make distributions from the General Unsecured Claims Escrows.

67.	**"Executory Contract and Unexpired Lease"** and **"Executory Contract or Unexpired Lease"** means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code and the Confirmation Order.

68.	**"Excess CIP Agreement"** means that certain December 2013 Excess Coverage In Place Settlement Agreement.

69.	**"Fee Claim"** means a Claim under sections 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other Entity for services rendered or expenses incurred in the Reorganization Cases.

70.	**"Fee Order"** means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals entered by the Bankruptcy Court on November 7, 2016.

71.	**"File," "Filed" or "Filing"** means file, filed or filing with the Bankruptcy Court, the District Court or their authorized designees, as applicable, in the Reorganization Cases.

72.	**"Final Fee Application"** means an application for final allowance of the Professional's aggregate Fee Claim as described in Section III.A.1.d.ii.A.

73.	**"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction that has been entered on the docket in any Reorganization Case or the docket of any other court of competent jurisdiction, and has not been reversed, stayed, modified or amended, and as to which (a) the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or (b) any appeal that has been taken or any petition for certiorari that has been filed timely has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied.

74.	**"First Stage Costs"** means all costs of pursuing the Phase 1 Claims, including reasonable attorneys' fees and expenses, incurred by the plaintiff until the earlier of (a) the entry of a decision by the California Court of Appeal in the Phase 1 Appeal or, if there is a remand by that court, the California Superior Court, resolving the Phase 1 Claims or (b) a settlement of the Phase 1 Claims.

75.	**"Future Claimants' Representative"** means Lawrence Fitzpatrick (or any court appointed alternative or successor), the legal representative for persons who might subsequently assert Demands against any of the Debtors, who was appointed pursuant to order of the Bankruptcy Court dated October 19, 2016.

**76.** **"General Unsecured Claim"** means a Deficiency Claim and any Claim that is not a Cure Amount Claim, Administrative Claim, Priority Tax Claim, Priority Claim, Secured Claim, Asbestos Personal Injury Claim, or Intercompany Claim.

**77.** **"General Unsecured Claims Escrows"** means two escrow accounts funded through (a) settlement amounts paid by Settled Environmental Insurers and (b) the Lehigh Hanson General Unsecured Claim Contribution held by the Escrow Agent to facilitate distributions to holders of Allowed General Unsecured Claims. On the Effective Date, the funds deposited into the General Unsecured Claims Escrows will total the aggregate amount of all Allowed General Unsecured Claims as of the Effective Date.

**78.** "**HeidelbergCement"** means HeidelbergCement AG.

**79.** **"HPCI"** means Debtor Hanson Permanente Cement, Inc., an Arizona corporation.

**80.** **"Insolvent Insurers Proceeds"** means the proceeds of the Debtors' claims for insurance coverage against OIC Run-Off Limited (formerly The Orion Insurance Company plc) and The London and Overseas Insurance Company Limited (formerly The London and Overseas Company plc), which proceeds are being or will be held by the Debtors in a separate bank account.

**81.** **"Insolvent Insurers Proceeds Dispute"** means the dispute among the Asbestos Personal Injury Committee, the Future Claimants' Representative, certain insurers and the Creditors' Committee regarding to what extent the Debtors or other parties are entitled to the Insolvent Insurers Proceeds.

**82.** **"Insurance Policies"** means the insurance policies covering or potentially covering the Asbestos Personal Injury Claims and the Environmental Claims, as described in Exhibits I.A.6, I.A.60, I.A.119, IV.M.3 and IV.M.4.

**83.** **"Insured Asbestos Claim"** means an Asbestos Personal Injury Claim that is covered by any Asbestos Insurance Policy.

**84.** **"Insurer Coverage Defenses"** means all defenses at law or in equity that any Asbestos Insurer may have under applicable non-bankruptcy law to provide insurance coverage to or for Asbestos Personal Injury Claims that have been channeled to and assumed by the Asbestos Personal Injury Trust pursuant to the Plan, except for (a) any defense that the transfer of the Debtors' rights as to Asbestos Personal Injury Insurance Assets pursuant to the Plan is invalid or unenforceable or otherwise breaches the terms of such coverage and (b) any defense that the drafting, proposing, confirmation or consummation of a plan of reorganization (as opposed to the terms, operation, effect or unreasonableness of any of the Plan or the Exhibits to the Plan) and/or the discharge and/or release of the Debtors from liability for Asbestos Personal Injury Claims pursuant to the Plan operates to, or otherwise results in, the elimination of or the reduction in any obligation such insurers may have under such transferred rights as to the Asbestos Personal Injury Insurance Assets.

85. **"Intercompany Claim"** means any Claim, including an Administrative Claim, by HeidelbergCement or any direct or indirect subsidiary of HeidelbergCement, including a Debtor, against a Debtor.

86. **"Interest"** means the rights of any holder of the stock of any Debtor and the rights of any Entity to purchase or demand the issuance of any of the stock of any Debtor, including: (a) redemption, conversion, exchange, voting, participation and dividend rights; (b) liquidation preferences; and (c) rights under stock options and warrants.

87. **"Inter-Insurer rights"** means the rights of one Asbestos Insurer to recover from any other Asbestos Insurer based on theories of contribution, indemnity, subrogation or other right to reimbursement, whether those rights are based upon contract, statute, equity or case law.

88. **"Internal Revenue Code"** means title 26 of the United States Code, 26 U.S.C. § 1 *et seq.*

89. **"IRS"** means the Internal Revenue Service of the United States of America.

90. **"Kaiser Gypsum"** means Debtor Kaiser Gypsum Company, Inc., a North Carolina corporation.

91. **"Lehigh Hanson"** means Lehigh Hanson, Inc., a Delaware corporation.

92. **"Lehigh Hanson General Unsecured Claim Contribution"** means a payment of Lehigh Hanson into the General Unsecured Claims Escrows in an amount no less than the total amount of all Allowed General Unsecured Claims as of the Effective Date, less the amount contributed to the General Unsecured Claims Escrows by the Settled Environmental Insurers, less any amount contributed to the General Unsecured Claims Escrows by the Debtors, but not to exceed the amount specified in Section IV.E of this Plan.

93. **"Non-Settling Asbestos Insurer"** means any Asbestos Insurer who is not a Settling Asbestos Insurer.

94. **"Objecting Excess Insurers"** means Certain Underwriters at Lloyd's, London, Certain London Market Companies, Columbia Casualty Company, National Fire Insurance Company of Hartford, The Continental Insurance Company, Granite State Insurance Company, Lexington Insurance Company, The Insurance Company of the State of Pennsylvania, Evanston Insurance Company, TIG Insurance Company, Allstate Insurance Company, solely as successor in interest to Northbrook Excess & Surplus Insurance Company, formerly Northbrook Insurance Company, First State Insurance Company, New England Reinsurance Company, Allianz Underwriters Insurance Company, Fireman's Fund Insurance Company, and Westchester Fire Insurance Company.

95. **"Objecting Excess Insurers' Objections"** means the Plan objections and motions to dismiss, set out in docket numbers 919, 1053, 2066, 2067, 2069, 2071, 2073 and 2075 of the Bankruptcy Court docket, and any objections to any post-confirmation settlement with Truck.

**96.** **"Parties"** means, collectively, the Debtors, Lehigh Hanson, the Asbestos Personal Injury Committee and the Future Claimants' Representative.

**97.** **"Payment Default"** means the failure by the Reorganized Debtors to pay the Payment Note in full on or before the fifth anniversary of the Effective Date.

**98.** **"Payment Note"** means a note, issued to the Asbestos Personal Injury Trust by the Reorganized Debtors as co-obligors in the principal amount of $1.0 million, in substantially the form of Exhibit I.A.98. As reflected in Exhibit I.A.98, the Payment Note will (a) beginning on the second anniversary of the Effective Date, bear interest at a rate of 10 percent per annum; (b) mature on the fifth anniversary of the Effective Date; (c) be secured by the Pledge; and (d) provide for payment in full of the principal amount of the Payment Note on or before the Payment Note's maturity date. As further reflected in Exhibit I.A.98, upon the occurrence of a Payment Default, the Asbestos Personal Injury Trust may, upon written notice to the Reorganized Debtors, foreclose on the Pledge. During the period in which the Payment Default has occurred and is continuing interest will accrue at a per annum rate of 10 percent on the amount of the unpaid principal. A Payment Default shall not provide a basis for the Asbestos Personal Injury Trust to contend that a material breach of the Plan has occurred or that any Protected Party is no longer entitled to the protections provided to such Protected Party pursuant to the Plan, including without limitation the protections of the Asbestos Permanent Channeling Injunction, the related indemnification by the Asbestos Personal Injury Trust, and the settlement of the Estates' claims.

**99.** **"Permanente Property"** means HPCI's cement plant, rock plant and quarry (including the minerals) located in Santa Clara County, California.

**100.** **"Petition Date"** means September 30, 2016.

**101.** **"Phase 1 Appeal"** means HPCI's appeal of the January 5, 2015 Statement of Decision in the Asbestos Coverage Litigation that is pending in the California Court of Appeal under Case No. B278091.

**102.** **"Phase 1 Claims"** means those claims of HPCI (asserted on its own and on Kaiser Gypsum's behalf) against Truck for Truck's withholding of deductible amounts in July 2007, as alleged by HPCI in its Cross-Complaint against Truck in the Asbestos Coverage Litigation, and as tried to the court in November 2014 and reflected in a January 5, 2015 Statement of Decision, and as encompassed within the Phase 1 Appeal.

**103.** **"Plan"** means this joint plan of reorganization for the Debtors and all Exhibits attached hereto or referenced herein, as the same may be amended, modified or supplemented.

**104.** **"Pledge"** means 100 percent of the equity of each Reorganized Debtor.

**105.** **""Priority Claim"** means a Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

**106.** **"Priority Tax Claim"** means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

107.     **"Professional"** means any professional employed in the Reorganization Cases pursuant to sections 327, 328 or 1103 of the Bankruptcy Code or any professional or other Entity seeking compensation or reimbursement of expenses in connection with the Reorganization Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

108.     **"Protected Affiliates"** means the parties identified on Exhibit I.A.108.

109.     **"Protected Party"** means any of the following parties:

      a.      the Debtors;

      b.      the Reorganized Debtors;

      c.      the Protected Affiliates;

      d.      Lehigh Hanson;

      e.      current and former directors, officers, and employees of the Debtors, the Reorganized Debtors and the Protected Affiliates, including without limitation Lehigh Hanson, solely in their capacity as such;

      f.      as of February 15, 2018, current and former shareholders of the Debtors, the Reorganized Debtors and the Protected Affiliates, including without limitation Lehigh Hanson, solely in their capacity as such;

      g.      current and former in-house and outside attorneys, accountants, auditors, tax advisors and other professionals who have provided services to the Debtors, the Reorganized Debtors and the Protected Affiliates, including without limitation Lehigh Hanson, solely in their capacity as such;

      h.      Entities that, pursuant to the Plan or on or after the Effective Date, become a direct or indirect transferee of, or successor to, any assets of any Debtor or Reorganized Debtor, or the Asbestos Personal Injury Trust, but only to the extent that liability is asserted to exist by reason of such Entity becoming such a transferee or successor;

      i.      Entities that, pursuant to the Plan or on or after the Effective Date, make a loan to any Debtor or Reorganized Debtor, or the Asbestos Personal Injury Trust or to a successor to, or transferee of, any assets of any Debtor or Reorganized Debtor, or the Asbestos Personal Injury Trust, but only to the extent that liability is asserted to exist by reason of it becoming such a lender;

      j.      Entities, other than Asbestos Insurers, that are alleged to be directly or indirectly liable for the conduct of, claims against, or Demands on any Debtor or Reorganized Debtor, or the Asbestos Personal Injury Trust, to the extent that such alleged liability arises by reason of one or more of the following:

1.   such Entity's ownership of a financial interest in any Debtor or Reorganized Debtor, or any past or present affiliate of any them, or any predecessor in interest of any of them;

2.   such Entity's involvement in the management of any Debtor, Reorganized Debtor or any predecessor in interest of any of them;

3.   such Entity's service as an officer, director or employee of any Debtor or Reorganized Debtor, any past or present affiliate of any of them, any predecessor in interest of any of them, or of any entity that owns or at any time has owned a financial interest in any Debtor or Reorganized Debtor, any past or present affiliate of any of them, or any predecessor in interest of any of them;

4.   such Entity's provision of insurance to any Debtor, Reorganized Debtor, any past or present affiliate of any of them, or any predecessor in interest of any of them, or any entity that owns or at any time has owned a financial interest in any Debtor or Reorganized Debtor, any past or present affiliate of any of them, or any predecessor in interest of any of them; and

5.   such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of any Debtor, Reorganized Debtor, any past or present affiliate of any of them, any predecessor in interest of any of them, or any entity that owns or at any time has owned a financial interest in any Debtor or Reorganized Debtor, any past or present affiliate of any of them, or any predecessor in interest of any of them.

k.      each Settling Asbestos Insurer.

**110.     "Protected Party Indemnification Claims"** mean any and all claims, including claims for related fees and costs, of a Protected Party under the indemnification described in Section IV.K.4.

**111.     "Quarterly Distribution Date"** means the last Business Day of the month following the end of each calendar quarter after the Effective Date; provided, however, that if the Effective Date is within forty-five (45) days of the end of a calendar quarter, the first Quarterly Distribution Date shall be the last Business Day of the month following the end of the first calendar quarter after the calendar quarter including the Effective Date.

**112.     "Recovery Actions"** means, collectively and individually, preference actions, fraudulent conveyance actions and other claims or causes of action under sections 510, 544, 547, 548, 549, 550 and 553(b) of the Bankruptcy Code and other similar state law claims and causes of action.

**113.** **"Reinstated"** or **"Reinstatement"** means the treatment of a Claim or Interest, at the applicable Reorganized Debtor's sole discretion, in accordance with one of the following:

> a. The legal, equitable and contractual rights to which such Claim or Interest entitles the holder will be unaltered; or

> b. Notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default:

>> i. any such default that occurred before the applicable Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, will be cured;

>> ii. the maturity of such Claim or Interest as such maturity existed before such default will be reinstated;

>> iii. the holder of such Claim or Interest will be compensated for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

>> iv. the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest will not otherwise be altered.

**114.** **"Reorganization Case"** means: (a) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor in the Bankruptcy Court; and (b) when used with reference to all Debtors, the chapter 11 cases pending for the Debtors in the Bankruptcy Court.

**115.** **"Reorganized . . ."** means, when used in reference to a particular Debtor, such Debtor on and after the Effective Date.

**116.** **"Restructuring Transactions"** means, collectively, those mergers, consolidations, restructurings, dispositions, liquidations, dissolutions or other transactions that the Debtors or Reorganized Debtors determine to be necessary or appropriate to effect a corporate restructuring of their respective businesses or otherwise to simplify the overall corporate structure and intercompany arrangements of the Reorganized Debtors, including without limitation the Restructuring Transactions set forth on Exhibit IV.B.

**117.** **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, restated, modified or supplemented.

**118.** **"Secured Claim"** means a Claim (other than an Asbestos Personal Injury Claim) that is secured by a lien on property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest

in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.

**119.** **"Separate Limit Policies"** means those insurance policies described on Exhibit I.A.119 that provide or may provide coverage for Asbestos Personal Injury Claims and Environmental Claims under separate limits applicable to Asbestos Personal Injury Claims and Environmental Claims.

**120.** **"Settling Asbestos Insurer"** means each Asbestos Insurer listed on Exhibit I.A.120 and any Asbestos Insurer that, after the Confirmation Hearing, enters into a settlement with the Asbestos Personal Injury Trust that (a), in the determination of the Asbestos Personal Injury Trust, the TAC and the Future Claimants' Representative, justifies treating such Asbestos Insurer as a Protected Party and (b) is approved by the Bankruptcy Court.

**121.** **"Settled Environmental Insurers"** means any Entity that has subscribed or issued an insurance policy that provides coverage for Environmental Claims, which has bought back such coverage from the Debtors pursuant to a settlement agreement approved by the Bankruptcy Court, and is protected by the environmental injunction as set forth in Section IX.B.3 and a bar order under section 363 of the Bankruptcy Code.

**122.** **"Stock Interests of . . ."** means, when used with reference to a particular Debtor, the Interests issued by such Debtor.

**123.** **"Stipulation of Amount and Nature of Claim"** means a stipulation or other agreement between the applicable Debtor or Reorganized Debtor and a holder of a Claim (other than an Asbestos Personal Injury Claim) or Interest establishing the allowed amount or nature of such Claim or Interest that is (a) entered into in accordance with any Claim settlement procedures established in these Reorganization Cases; (b) permitted or contemplated by the Plan or (c) approved by order of the Bankruptcy Court.

**124.** **"Surety Bond Claims"** means, collectively, (a) proof of Claim number 4 filed by Zurich American Insurance Company; (b) proof of Claim number 5 filed by Fidelity & Deposit Company of Maryland; and (c) proof of Claim numbers 22 and 25 filed by Lexon Insurance Company and Bond Safeguard Company.

**125.** **"Surety Bond Program"** means, collectively, the (a) Debtors' surety bonds maintained in the ordinary course of business; (b) surety payment and indemnity agreements, setting forth a surety's rights against the Debtors, and the Debtors' obligations to pay and indemnify such surety from any loss, cost, or expense that the surety may incur, in each case, on account of the issuance of any surety bonds on behalf of the Debtors; (c) surety collateral agreements governing collateral, if any, in connection with the Debtors' surety bonds; and/or (d) ordinary course premium payments to the sureties for the Debtors' surety bonds.

**126.** **"Surety Bond Obligations"** means all the Debtors' obligations arising under the Surety Bond Program.

**127.** **"TAC"** means the Trust Advisory Committee for the Asbestos Personal Injury Trust.

**128.** **"Tax"** means: (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental, withholding or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other Entity.

**129.** **"Third Party Disbursing Agent"** means an Entity designated by Reorganized HPCI to act as a Disbursing Agent pursuant to Section VI.C.

**130.** **"Timely Claim"** means a Claim (other than an Asbestos Personal Injury Claim) for which a proof of Claim or request for payment of Administrative Claim was Filed by the applicable Bar Date or is otherwise determined to be timely Filed by a Final Order of the Bankruptcy Court.

**131.** **"Truck"** means Truck Insurance Exchange.

**132.** **"Truck Appeal Costs"** means if Truck continues litigation in respect of the Phase 1 Claims following the entry of a decision by the California Court of Appeal, or if there is a remand by that court, the Superior Court, resolving the Phase 1 Claims in favor of the plaintiff, in whole or part, all costs of pursuing the Phase 1 Claims, including reasonable attorneys' fees and expenses, until such litigation is finally resolved either by (a) a court decision or (b) settlement.

**133.** **"Uninsured Asbestos Claim"** means an Asbestos Personal Injury Claim for which there is no coverage provided by any Asbestos Insurance Policy.

## B. Rules of Interpretation and Computation of Time

### 1. Rules of Interpretation

For purposes of the Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan or Confirmation Order; (d) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors, assigns and affiliates; (e) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) the words "includes" or "including" are not limiting; (h) captions and headings to Articles and Sections are inserted for convenience of

reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) subject to the provisions of any contract, certificate of incorporation, by-laws, or similar constituent document, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (j) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

### 2.     Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## CLASSES OF CLAIMS AND INTERESTS

Claims and Interests, except Administrative Claims, and Priority Tax Claims, are placed in Classes as follows:

| **Class** | **Claims or Interests** |
| --- | --- |
| Class 1 | Priority Claims |
| Class 2 | Secured Claims |
| Class 3 | General Unsecured Claims |
| Class 4 | Asbestos Personal Injury Claims |
| Class 5 | Surety Bond Claims |
| Class 6 | Intercompany Claims |
| Class 7 | Stock Interests |

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, and Priority Tax Claims, as described in Section III.A., have not been classified and thus are excluded from the foregoing Classes. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

# ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

**A.** **Unclassified Claims**

**1.** **Payment of Administrative Claims**

**a.** **Administrative Claims in General**

Except as specified in this Section III.A.1., and subject to the bar date provisions herein, unless otherwise agreed by the holder of an Administrative Claim and the applicable Debtor or Reorganized Debtor, each holder of an Allowed Administrative Claim shall receive, in full satisfaction of its Administrative Claim, cash equal to the allowed amount of such Administrative Claim either (i) as soon as practicable after the Effective Date or (ii) if the Administrative Claim is not allowed as of the Effective Date, thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order or a Stipulation of Amount and Nature of Claim is executed by the applicable Reorganized Debtor and the holder of the Administrative Claim.

**b.** **Statutory Fees**

On or before the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930, as determined at the Confirmation Hearing by the Bankruptcy Court or the District Court, as applicable, shall be paid in cash equal to the amount of such Administrative Claims. All fees payable pursuant to 28 U.S.C. § 1930 shall be paid by the Reorganized Debtors in accordance therewith until the closing of the Reorganization Cases pursuant to section 350(a) of the Bankruptcy Code.

**c.** **Ordinary Course Liabilities**

Allowed Administrative Claims based on liabilities incurred by a Debtor in the ordinary course of its business (including any Intercompany Claims that are Administrative Claims, Administrative Claims of governmental units for Taxes and Administrative Claims arising from those contracts and leases of the kind described in Section V.E.) shall be satisfied by the applicable Reorganized Debtor pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims, without any further action by the holders of such Administrative Claims or further approval of the Bankruptcy Court.

**d.** **Bar Dates for Administrative Claims**

**i.** **General Bar Date Provisions**

Except as otherwise provided in Section III.A.1.d.ii., unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors, pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than sixty (60) days after the Effective Date. Holders of Administrative Claims that are required to File and serve a request for payment of such

Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their respective property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the requesting party no later than 120 days after the Effective Date.

### ii.     Bar Dates for Certain Administrative Claims

#### A.     Professional Compensation

Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of the Bankruptcy Court a Final Fee Application no later than (ninety) 90 days after the Effective Date. A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Fee Claim pursuant to the Fee Order in its Final Fee Application. Objections to any Final Fee Application must be Filed and served on the Reorganized Debtors and the requesting party by the later of (1) eighty (80) days after the Effective Date or (2) thirty (30) days after the Filing of the applicable Final Fee Application. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court, including the Fee Order, regarding the payment of Fee Claims. Any pending, Filed interim requests for a Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application.

#### B.     Ordinary Course Liabilities

Holders of Administrative Claims based on liabilities incurred by a Debtor in the ordinary course of its business, including any Intercompany Claims that are Administrative Claims, Administrative Claims of governmental units for Taxes and Administrative Claims arising from those contracts and leases of the kind described in Section V.E., shall not be required to File or serve any request for payment of such Administrative Claims. Such Administrative Claims shall be satisfied pursuant to Section III.A.1.c.

### 2.     Payment of Priority Tax Claims

#### a.     Priority Tax Claims in General

Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the holder of a Priority Tax Claim and the applicable Debtor or Reorganized Debtor, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Priority Tax Claim, payment in full of the allowed amount of the Priority Tax Claim on the later of the Effective Date or as soon as practicable after the date when such Claim becomes an Allowed Claim.

#### b.     Other Provisions Concerning Treatment of Priority Tax Claims

Notwithstanding the provisions of Section III.A.2.a., any Claim on account of any penalty arising with respect to or in connection with an Allowed Priority Tax Claim that does not compensate the holder for actual pecuniary loss shall be treated as a Class 3 Claim, and the

holder (other than as the holder of a Class 3 Claim) may not assess or attempt to collect such penalty from the Reorganized Debtors or their respective property.

**B. Classified Claims**

**1. Class 1 Claims (Priority Claims) are unimpaired.** On the Effective Date, each holder of an Allowed Claim in Class 1 shall receive cash in an amount equal to such Allowed Claim unless the holder of such Claim agrees to less favorable treatment.

**2. Class 2 Claims (Secured Claims) are unimpaired.** On the Effective Date, unless otherwise agreed by the holder of an Allowed Claim in Class 2 and the applicable Debtor or Reorganized Debtor, each holder of a Claim in Class 2 shall receive treatment in accordance with Option A or B below, at the option of the applicable Debtor or Reorganized Debtor. Any Allowed Deficiency Claim of a holder of an Allowed Secured Claim shall be entitled to treatment as an Allowed Class 3 Claim.

> **Option A:** Claims in Class 2 that are Allowed Claims and with respect to which the applicable Debtor or Reorganized Debtor elects Option A shall be paid in full in cash.

> **Option B:** Claims in Class 2 that are Timely Claims and with respect to which the applicable Debtor or Reorganized Debtor elects Option B shall be Reinstated.

**3. Class 3 Claims (General Unsecured Claims) are unimpaired.** On the Effective Date, each holder of an Allowed Claim in Class 3 shall receive cash in an amount equal to such Allowed Claim including any post-petition interest as ordered by the Bankruptcy Court unless the holder of such Claim agrees to less favorable treatment.

**4. Class 4 Claims (Asbestos Personal Injury Claims) are impaired**. On the Effective Date, all Asbestos Personal Injury Claims shall be channeled to the Asbestos Personal Injury Trust, which shall be funded pursuant to Section IV.K.2. All Asbestos Personal Injury Claims shall be resolved pursuant to the terms of Section IV.O.1 and Section IV.O.2., the Asbestos Personal Injury Trust Agreement, the Asbestos Personal Injury Trust Distribution Procedures and any other Asbestos Personal Injury Trust Document. Except as provided in Section IV.O.1, pursuant to section 524(g) of the Bankruptcy Code, the Plan and the Confirmation Order shall permanently and forever stay, restrain and enjoin any Entity from taking any actions against any Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Asbestos Personal Injury Claim, all of which shall be channeled to the Asbestos Personal Injury Trust for resolution as set forth in the Asbestos Personal Injury Trust Agreement and the related Asbestos Personal Injury Trust Distribution Procedures, including permanently and forever staying, restraining and enjoining any Entity from any of the following, with respect to Asbestos Personal Injury Claims:

> **a.** commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including a judicial, arbitral, administrative or other proceeding) in any forum against any Protected Party or any property or interests in property of any Protected Party;

**b.** enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against any Protected Party or any property or interests in property of any Protected Party;

**c.** creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party;

**d.** setting off, seeking reimbursement of, contribution from or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

**e.** proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Personal Injury Trust Documents, except in compliance therewith.

For the avoidance of doubt, no Entity shall be so stayed, enjoined, or restrained from initiating or continuing a suit or other proceeding against any Debtor in name only for the purpose of recovering on an Asbestos Personal Injury Claim from a Non-Settling Asbestos Insurer.

**5.** **Class 5 Claims (Surety Bond Claims) are unimpaired.** On the Effective Date, each Surety Bond Claim in Class 5 shall be Reinstated.

**6.** **Class 6 Claims (Intercompany Claims) are unimpaired.** On the Effective Date, each Intercompany Claim in Class 6 shall be Reinstated.

**7.** **Class 7 Interests (Stock Interests) are unimpaired.** On the Effective Date, Stock Interests of the Debtors shall be Reinstated, and holders of such Stock Interests shall retain such Interests, subject to the Restructuring Transactions provisions of Section IV.B.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.** **Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided herein (and subject to the Restructuring Transactions provisions of Section IV.B.), each Debtor will, as a Reorganized Debtor, continue to exist after the Effective Date as a separate corporate or other legal Entity, with all the powers of a corporation or other legal Entity under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable state law. Except as otherwise provided herein (and subject to the Restructuring Transactions provisions of Section IV.B.), as of the Effective Date, all property of the respective Estates of the Debtors, and any property acquired by a Debtor or Reorganized Debtor under the Plan, will vest in the applicable Reorganized Debtor, free and clear of all Claims, Encumbrances and Interests.

For the avoidance of doubt, the funds deposited into the General Unsecured Claims Escrows will be used solely to make distributions to holders of Allowed General Unsecured Claims, and the Debtors and Reorganized Debtors will not hold any legal or equitable interest in such funds deposited in the General Unsecured Claims Escrows, in accordance with Section VI.B, below. On and after the Effective Date, each Reorganized Debtor may operate its businesses and may use, acquire and dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, each Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including fees and expenses relating to the preparation of Professional fee applications) without application to the Bankruptcy Court.

**B.      Restructuring Transactions**

On or after the Confirmation Date, the applicable Debtor or Reorganized Debtor may take such actions as the Debtors or Reorganized Debtors determine to be necessary or appropriate to effectuate, implement and consummate the Restructuring Transactions, including without limitation the Restructuring Transactions set forth on Exhibit IV.B.; provided, however, that no Restructuring Transactions other than the Restructuring Transactions set forth on Exhibit IV.B. shall be implemented prior to the Effective Date without the written consent of the Asbestos Personal Injury Committee and the Future Claimants' Representative, which consent shall not be unreasonably withheld. The actions to effectuate, implement and consummate the Restructuring Transactions may include: (1) the execution and delivery of appropriate agreements or other documents that carry out the provisions of the Plan and that satisfy the applicable requirements of applicable state law; and (2) the filing of appropriate instruments pursuant to applicable state law.

**C.      Transfers and Lease Transactions**

On or after the Confirmation Date, non-debtor Lehigh Cement Company LLC will transfer its interest in certain real property located in Kosse, Limestone County, Texas and Kunkletown, Monroe County, Pennsylvania (together, the "Real Properties"), together with its rights under certain leases related to the Real Properties, to Kaiser Gypsum. The actions to effectuate, implement and consummate these transactions may include: (1) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with the provisions of the Plan and that satisfy the applicable requirements of applicable state law; and (2) the filing of appropriate instruments pursuant to applicable state law.

**D.      Corporate Governance, Directors and Officers, Employment-Related Agreements and Compensation Programs and Corporate Action**

**1.      Certificates of Incorporation and By-Laws of the Reorganized Debtors**

As of the Effective Date, the Certificate of Incorporation and the By-Laws of each Reorganized Debtor will be in such form as the Debtors may determine. The initial Certificate of Incorporation and By-Laws of each Reorganized Debtor, among other things, shall prohibit

the issuance of nonvoting equity securities to the extent required by section 1123(a) of the Bankruptcy Code. After the Effective Date, each such Entity shall be permitted to amend and restate its Certificate of Incorporation or By-Laws pursuant to applicable state law and the terms and conditions of such constituent documents.

### 2. Directors and Officers of the Reorganized Debtors

Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, the initial directors and officers of each Reorganized Debtor shall be the directors and officers of such Debtor immediately prior to the Effective Date. Each such director and officer shall serve from and after the Effective Date until his or her successor is duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the terms of the Certificate of Incorporation and By-Laws of the relevant Reorganized Debtor (as the same may be amended after the Effective Date) and applicable state law.

### 3. Employee Arrangements of the Reorganized Debtors

As of the Effective Date, the Reorganized Debtors shall be authorized to: (a) maintain, amend or revise existing employment, indemnification and other arrangements with their active and retired directors, officers and employees, subject to the terms and conditions of any such agreement; and (b) enter into new employment, indemnification and other arrangements with active and retired directors, officers and employees; all as determined by the board of directors of the applicable Reorganized Debtor.

### 4. Corporate Action

Pursuant to section 1142 of the Bankruptcy Code, section 10-1008 of the Arizona Revised Statutes and section 55-14A-01 of the North Carolina Business Corporation Act, the following (which shall occur and be deemed effective as of the date specified in the documents effectuating the same or, if no date is so specified, the Effective Date) shall be authorized and approved in all respects and for all purposes without any requirement of further action by stockholders or directors of any of the Debtors or the Reorganized Debtors or by any other Entity: (a) the initial Certificates of Incorporation and By-Laws of the Reorganized Debtors; (b) the initial directors and officers of the Reorganized Debtors; (c) the Distribution of cash pursuant to the Plan; (d) the creation of the Asbestos Personal Injury Trust, and the funding thereof; (e) other corporate actions that are necessary or appropriate to effectuate, implement and consummate the provisions of the Plan, including the Restructuring Transactions provisions of Section IV.B.; and (f) the adoption, execution, delivery and performance of all contracts, instruments, releases and other agreements and documents related to any of the foregoing (including the Asbestos Personal Injury Trust Agreement and the Payment Note).

### E. Obtaining Cash for Plan Distributions

All cash payments to be made pursuant to the Plan shall be funded by the applicable Reorganized Debtor. All cash necessary for a Reorganized Debtor to fund such cash payments pursuant to the Plan shall be obtained through a combination of one or more of the following: (1) such Reorganized Debtor's cash balances and cash generated by the operations of such Reorganized Debtor; (2) any Tax refunds actually received by such Reorganized Debtor;

(3) contributions to or on behalf of such Reorganized Debtor by Lehigh Hanson; (4) proceeds of certain of the Debtors' insurance policies or (5) such other means of financing or funding as determined by the board of directors of such Reorganized Debtor.

On the Effective Date, Lehigh Hanson shall contribute to the Reorganized Debtors, as necessary to satisfy Allowed General Unsecured Claims, up to $28.15 million in cash minus the amount of the Insolvent Insurers Proceeds to which the Debtors are entitled.

## F.     Creation of Asbestos Personal Injury Trust

As of the Effective Date, the Asbestos Personal Injury Trust shall be created. The Asbestos Personal Injury Trust is intended to be one or more "qualified settlement funds" within the meaning of the Treasury Regulations issued under section 468B of the Internal Revenue Code. The purpose of the Asbestos Personal Injury Trust shall be to, among other things: (1) resolve all asserted Asbestos Personal Injury Claims in accordance with the Plan, Asbestos Personal Injury Trust Agreement, the Asbestos Personal Injury Trust Distribution Procedures and the Confirmation Order; (2) preserve, hold, manage, maximize and liquidate the assets of the Asbestos Personal Injury Trust for use in resolving Asbestos Personal Injury Claims; and (3) qualify at all times as one or more qualified settlement funds.  On the Effective Date, all right, title, and interest in and to the Asbestos Personal Injury Trust Assets, and any proceeds thereof, will be transferred to, and vested in, the Asbestos Personal Injury Trust, free and clear of all Claims, Demands, Stock Interests, Encumbrances, and other interests of any Entity, without any further action of the Bankruptcy Court or any Entity.

## G.     Authority of the Asbestos Personal Injury Trust

As of the Effective Date, without any further action of the Bankruptcy Court or any Entity, except as otherwise expressly set forth in the Plan, the Asbestos Personal Injury Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to or arising from any asset, liability, or responsibility of the Asbestos Personal Injury Trust, including but not limited to any actions arising from or related to the Asbestos Personal Injury Insurance Assets and the Phase 1 Claims.

## H.     Appointment of Asbestos Personal Injury Trustee and Delaware Trustee

On the Confirmation Date, effective as of the Effective Date, in accordance with the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures, the Entities selected jointly by the Asbestos Personal Injury Committee and the Future Claimants' Representative to serve as the Asbestos Personal Injury Trustee (as identified in Exhibit IV.H) and the Delaware Trustee shall be appointed to serve as the Asbestos Personal Injury Trustee for the Asbestos Personal Injury Trust. All subsequent Asbestos Personal Injury Trustees and Delaware Trustees shall be appointed in accordance with the terms of the Asbestos Personal Injury Trust Agreement.

## I.     Appointment of Future Claimants' Representative and TAC Members

The Future Claimants' Representative shall serve as the legal representative for the purpose of protecting the shared interests of holders of Demands pursuant to the terms of the

Asbestos Personal Injury Trust Agreement, on and after the Effective Date, and shall have the functions and rights provided in the Asbestos Personal Injury Trust Documents. The initial members of the TAC will be identified in the Asbestos Personal Injury Trust Agreement.

## J.       Document Repository

Prior to or on the Effective Date, the Debtors shall establish a repository containing all the books and records of the Debtors that are necessary for the defense of Asbestos Personal Injury Claims, including without limitation the historical asbestos personal injury claims database maintained by the Debtors, deposition transcripts, product identification evidence, information regarding sale and use of the products, claims settlement and payment information, and indexes and summaries relating to any such documents, and shall make that repository available to the Entities that are responsible for the processing or defense of Asbestos Personal Injury Claims, and that are entitled to review, copy or use such documents. For the avoidance of doubt, the Asbestos Personal Injury Trust shall have access to materials in this repository only to the extent it is the Entity defending or processing (which term shall not include the mere payment of the deductible portion of an Asbestos Personal Injury Claim) an Uninsured Asbestos Claim or a particular Asbestos Personal Injury Claim, and such determination shall be made by the Reorganized Debtors on a claim-by-claim basis. Any dispute over whether the Asbestos Personal Injury Trust shall have access to the materials in this repository shall be resolved by the Bankruptcy Court. Notwithstanding anything to the contrary herein, holders of Asbestos Personal Injury Claims may pursue and obtain information stored in this repository through discovery to the full extent permitted by applicable law. The Asbestos Personal Injury Trust shall be obligated to compensate the Reorganized Debtors for all out-of-pocket costs reasonably incurred after the Effective Date in connection with establishing and maintaining the repository.

Notwithstanding the foregoing or any other provisions of the Plan, the sole and exclusive remedy for the Asbestos Personal Injury Trust's failure to reimburse such out-of-pocket costs, or for its failure to pay any other amounts due to the Reorganized Debtors, shall be the right of the Reorganized Debtors to assert money damage claims against the Asbestos Personal Injury Trust, and such failure shall not relieve the Reorganized Debtors of any of their obligations hereunder, or otherwise, to the extent such obligations exist.

Pursuant to the Plan and the Confirmation Order, to the extent the Debtors or Reorganized Debtors, as applicable, provide access to the Asbestos Personal Injury Trust to any privileged books and records, such access shall not result in the destruction or waiver of any applicable privileges pertaining to such books and records. If the preservation of privilege pertaining to such books and records is challenged or disapproved by the Bankruptcy Court or the District Court and if the Asbestos Personal Injury Trust determines that it needs access to such information, the Reorganized Debtors will, at the sole cost and expense of the Asbestos Personal Injury Trust (which cost and expense shall be reasonable), enter into arrangements to permit the Asbestos Personal Injury Trust to have access to such books and records, to the extent such access does not result in the destruction or waiver of any applicable privileges. Further, pursuant to the Plan and the Confirmation Order, none of the Debtors, the Reorganized Debtors, Lehigh Hanson, or any Affiliates shall be liable for violating any confidentiality or privacy protections as a result of providing the Asbestos Personal Injury Trust access to the books and

records, and the Asbestos Personal Injury Trust shall take appropriate steps to comply with any such applicable protections.

**K.** **Transfers of Property to and Assumption of Certain Liabilities by the Asbestos Personal Injury Trust**

**1.** **Expenses of the Asbestos Personal Injury Trust**

The Asbestos Personal Injury Trust shall pay all Asbestos Personal Injury Trust Expenses. The Reorganized Debtors shall have no obligation to pay such expenses, except for Debtor Appellate Costs.

**2.** **Funding the Asbestos Personal Injury Trust**

On the Effective Date, the Reorganized Debtors and/or Lehigh Hanson, as applicable, shall transfer to the Asbestos Personal Injury Trust the Asbestos Personal Injury Trust Assets as follows:

**a.** **Initial Payment**

One or more of the Reorganized Debtors and/or Lehigh Hanson on behalf of and as a contribution to such Reorganized Debtors will pay an aggregate of $49.0 million in cash to the Asbestos Personal Injury Trust.

**b.** **Payment Note**

The Reorganized Debtors, as co-obligors, shall issue the Payment Note to the Asbestos Personal Injury Trust.

**c.** **Phase 1 Claims**

The Reorganized Debtors shall transfer to the Asbestos Personal Injury Trust the Phase 1 Claims, free and clear of any liens, claims or encumbrances, including any rights of setoff based on any liability of the Debtors. The Debtors or the Reorganized Debtors shall pay all Debtor Appellate Costs. The Asbestos Personal Injury Trust shall pay all Asbestos Personal Injury Trust Appellate Costs. If the Asbestos Personal Injury Trust ultimately obtains any recovery with respect to Phase 1 Claims, whether as a result of settlement or judgment that exceeds $12 million, the Asbestos Personal Injury Trust shall remit to the Debtors or the Reorganized Debtors any amounts remaining, in excess of $12 million, after the Asbestos Personal Injury Trust Appellate Costs have been deducted from the full recovery amount.

**d.** **Asbestos Personal Injury Insurance Assets**

The Reorganized Debtors shall transfer to the Asbestos Personal Injury Trust the Asbestos Personal Injury Insurance Assets.

### 3. Assumption of Certain Liability and Responsibility by the Asbestos Personal Injury Trust

Subject to the provisions of the Plan, and in consideration for the transfer of the Asbestos Personal Injury Trust Assets to the Asbestos Personal Injury Trust pursuant to Section IV.K.2. and in furtherance of the purposes of the Asbestos Personal Injury Trust and the Plan, the Asbestos Personal Injury Trust shall assume liability and responsibility, financial and otherwise, for all Asbestos Personal Injury Claims. The Asbestos Personal Injury Trust shall have all defenses, cross-claims, offsets and recoupment rights, as well as rights of indemnification, contribution, subrogation and similar rights, and any other rights regarding Uninsured Asbestos Claims that any Debtor, Reorganized Debtor or Protected Party has or would have had under applicable law.

### 4. Indemnification by the Asbestos Personal Injury Trust

The Asbestos Personal Injury Trust shall protect, defend, indemnify and hold harmless each Protected Party from and against any Asbestos Personal Injury Claim; provided, however, the sole and exclusive remedy for the Asbestos Personal Injury Trust's failure to satisfy the indemnification, defense and hold harmless obligations under this Section shall be the right of the Protected Parties to assert money damage claims against the Asbestos Personal Injury Trust.

### 5. Authority of the Debtors

Effective on the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary or appropriate to enable the Reorganized Debtors to implement effectively the provisions of the Plan and the Asbestos Personal Injury Trust Agreement.

## L. Cooperation with Respect to Insurance Matters

### 1. Obligation to Cooperate with Respect to Insurance Matters

The Reorganized Debtors will cooperate with the Asbestos Personal Injury Trust and use reasonable efforts to take or cause to be taken all actions and to do or cause to be done all things that the Asbestos Personal Injury Trust may reasonably consider necessary to effectuate the transfer of the Asbestos Personal Injury Insurance Assets to the Asbestos Personal Injury Trust. By way of illustration and not limitation, the Reorganized Debtors will be obligated: (a) to provide the Asbestos Personal Injury Trust with copies of insurance policies and settlement agreements included within or relating to the Asbestos Personal Injury Insurance Assets; (b) to provide the Asbestos Personal Injury Trust with other information in the Reorganized Debtors' possession, custody or control that is reasonably necessary to the Asbestos Personal Injury Trust's efforts with respect to insurance coverage for Asbestos Personal Injury Claims; (c) to execute further assignments or allow the Asbestos Personal Injury Trust to pursue claims relating to the Asbestos Personal Injury Insurance Assets in a Reorganized Debtor's name (subject to appropriate disclosure of the fact that the Asbestos Personal Injury Trust is doing so and the reasons why it is doing so), including by means of arbitration, alternative dispute resolution proceedings or litigation; and (d) to facilitate actions to enforce judgments obtained by the claimants or the Asbestos Personal Injury Trust against Asbestos Insurers, if necessary.

To the extent that any transfer or portion of a transfer of the Asbestos Personal Injury Insurance Assets to the Asbestos Personal Injury Trust is determined to be invalid by a court of competent jurisdiction, upon request of the Asbestos Personal Injury Trust and at the cost of the Asbestos Personal Injury Trust, the Reorganized Debtors shall: (a) take all reasonable actions, including those as may be requested by the Asbestos Personal Injury Trust, with respect to such assets, including, but not limited to, prosecution of any insurance coverage and/or breach of contract action or other action, for the benefit of, and to the extent reasonably requested by, the Asbestos Personal Injury Trust; and (b) immediately transfer any amounts recovered under or on account of any such assets to the Asbestos Personal Injury Trust. The Asbestos Personal Injury Trust will be obligated to compensate the Reorganized Debtors for all out-of-pocket costs reasonably incurred on or after the Effective Date in connection with providing assistance to the Asbestos Personal Injury Trust pursuant to this Section, including without limitation out-of-pocket costs and expenses, consultant and expert fees, and attorneys' fees. Any acts taken pursuant to this Section shall not be deemed to waive and shall not constitute a waiver of any applicable privilege, confidence, or work product protection as against any third party. The Reorganized Debtors shall have a continuing obligation to satisfy the Assistance and Cooperation, Inspection and Audit, and Notice of Occurrence Provisions set out in the Asbestos Insurance Policies. Any out-of-pocket costs incurred by the Reorganized Debtors in carrying out such obligations shall be reimbursed by the Asbestos Personal Injury Trust. The sole and exclusive remedy for the Asbestos Personal Injury Trust's failure to reimburse such out-of-pocket costs shall be the right of the Reorganized Debtors to assert money damage claims against the Asbestos Personal Injury Trust.

2. **Enforcement of Reorganized Debtors' Obligations to Cooperate with Respect to Insurance Matters**

a. The Reorganized Debtors shall have a continuing obligation to satisfy the Asbestos Insurer Cooperation Obligations. Any out-of-pocket costs incurred by the Reorganized Debtors in carrying out the Asbestos Insurer Cooperation Obligations shall be reimbursed by the Asbestos Personal Injury Trust. The Reorganized Debtors' obligations under this provision shall be ongoing until such time when all Asbestos Insurance Policies have either been settled or exhausted.

b. If an Asbestos Personal Injury Insurance Asset does not provide coverage for an Asbestos Personal Injury Claim pursued against the Reorganized Debtors in the tort system pursuant to Section IV.O.1. because a court determines in a Final Order that the Reorganized Debtors failed to satisfy or otherwise perform any of the Asbestos Insurer Cooperation Obligations, the Asbestos Personal Injury Trust, the TAC, the Future Claimants' Representative, and the holder (the "Denied Asbestos Personal Injury Claimant") of the applicable Asbestos Personal Injury Claim (the "Denied Asbestos Personal Injury Claim"), each individually or in any combination jointly, may seek (1) specific performance directing the Reorganized Debtors to cure their breach of the Asbestos Insurer Cooperation Obligations, and/or (2) payment from the Reorganized Debtors for the judgment or settlement amount of the Denied Asbestos Personal Injury Claim.

Regardless of which remedy is sought, the party may also seek payment from the Reorganized Debtors for reasonable attorneys' fees expended in pursuing such relief from the Reorganized Debtors.

      **c.** Within forty-five (45) calendar days of receiving notice that an Asbestos Insurer contests coverage for an Asbestos Personal Injury Claim asserted against the Reorganized Debtors because the Reorganized Debtors are alleged to have failed to satisfy or otherwise perform the Asbestos Insurer Cooperation Obligations (a "<u>Notice</u>"), the Asbestos Personal Injury Trust and the holder of such Asbestos Personal Injury Claim shall provide to the Reorganized Debtors any documents or information they respectively received from the Asbestos Insurer denying, rejecting or disclaiming coverage. If such information is not provided to the Reorganized Debtors within forty-five (45) days of receipt, then the Reorganized Debtors shall have no obligations under Section IV.L.2 with respect to such Asbestos Personal Injury Claim, unless the failure to provide such information as required did not unfairly prejudice the Reorganized Debtors.

      **d.** Within forty-five (45) calendar days of receiving a Notice, the Reorganized Debtors shall provide to the Asbestos Personal Injury Trust and the holder of the applicable Asbestos Personal Injury Claim (1) any documents or information they received from the Asbestos Insurer denying, rejecting or disclaiming coverage and (2) any documentation or other information they have within their possession, custody, or control regarding the Reorganized Debtors' efforts to satisfy any of the Asbestos Insurer Cooperation Obligations in respect of the applicable Asbestos Personal Injury Claim. The Asbestos Personal Injury Trust or the holder of the Asbestos Personal Injury Claim or both may assert an action against the Asbestos Insurer seeking coverage for the Asbestos Personal Injury Claim, and shall provide timely notice to the Reorganized Debtors of any action seeking such coverage. The Reorganized Debtors agree that a finding that they failed to satisfy or otherwise perform any of the Asbestos Insurer Cooperation Obligations may be made regardless of whether they are a named party in any such action and agree to be bound by any such finding in a Final Order. In the event that the action brought against the Asbestos Insurer pursuant to this Section IV.L.2.d results in a Final Order providing that the Asbestos Insurer does not have a coverage obligation for the Asbestos Personal Injury Claim and the basis for the finding that there is no such coverage obligation may be because the Reorganized Debtors failed to satisfy or otherwise perform any of the Asbestos Insurer Cooperation Obligations, then the Asbestos Personal Injury Trust or the holder of the Asbestos Personal Injury Claim or both may bring a subsequent direct action against the Reorganized Debtors for the sole purpose of seeking the finding described in Section IV.L.2.b.

      **e.** In the event any of the parties identified in Section IV.L.2.b as having rights with respect to a Denied Asbestos Personal Injury Claim seeks payment or specific performance related to a Denied Asbestos Personal Injury

Claim, the Reorganized Debtors shall, within thirty (30) calendar days of receiving notice of the Denied Asbestos Personal Injury Claim, either (a) remit payment of (i) the judgment or settlement amount of the Denied Asbestos Personal Injury Claim to the Asbestos Personal Injury Trust or the Denied Asbestos Personal Injury Claimant, as applicable, and if payment of the amount of the Denied Asbestos Personal Injury Claim is made to the Asbestos Personal Injury Trust, the Asbestos Personal Injury Trust shall in turn remit payment to the Denied Asbestos Personal Injury Claimant, and (ii) reasonable attorneys' fees expended in enforcing the rights provided in Section IV.L.2, except for any attorneys' fees expended in connection with a direct action against the Reorganized Debtors permitted by Section IV.L.2.d (collectively, the "Legal Fees") to the appropriate party, or (b) attempt to cure the breach of the Asbestos Insurer Cooperation Obligations. If the Reorganized Debtors successfully cure their breach such that the Asbestos Insurer reverses its previous denial of coverage and pays the Denied Asbestos Personal Injury Claim in full, the Reorganized Debtors shall have no obligation to pay the Denied Asbestos Personal Injury Claim; the Reorganized Debtors shall, however, remain liable for paying the Legal Fees, and shall remit payment of such Legal Fees to the appropriate party. If the Reorganized Debtors are unable to cure their breach of the Asbestos Insurer Cooperation Obligations, the Reorganized Debtors shall pay to the Asbestos Personal Injury Trust or the Denied Asbestos Personal Injury Claimant, as applicable, the judgment or settlement amount of the Denied Asbestos Personal Injury Claim and shall remit the Legal Fees to the appropriate party.

      **f.**      Lehigh Hanson shall fully guarantee the Reorganized Debtors' performance of any payment obligations they incur with respect to the Asbestos Insurance Policies, including, but not limited to, any obligations the Reorganized Debtors incur under Section IV.L.2 and shall pay directly to the Reorganized Debtors, within fourteen (14) calendar days of receiving notice of the Reorganized Debtors' failure to pay a Denied Asbestos Personal Injury Claim and related Legal Fees or otherwise, the amount of any such payment obligation so that the Reorganized Debtors may distribute the funds. Notwithstanding the foregoing, payment obligations of the Reorganized Debtors under this paragraph shall not include any obligation the Asbestos Personal Injury Trust has expressly assumed hereunder, including the Deductibles and any obligations for which the Asbestos Personal Injury Trust has agreed hereunder to reimburse the Reorganized Debtors.

      **g.**      Nothing in Section IV.L.2 is intended to preclude, limit, or otherwise impair, any other claims, causes of action, or remedies that may be available to the Asbestos Personal Injury Trust, the TAC, the Future Claimants' Representative, or any holders of Asbestos Personal Injury Claims, under otherwise applicable non-bankruptcy law or the Plan and its Exhibits, related to Asbestos Personal Injury Claims. In particular, nothing in Section IV.L.2 is intended to bar or preclude holders of Asbestos Personal Injury Claims from pursuing any action directly against Asbestos Insurers

related to Asbestos Personal Injury Claims or Denied Asbestos Personal Injury Claims, including actions under Section 11580 of the California Insurance Code and its subdivisions, or any related or similar statute in any jurisdiction.

**M.    Compromise of Insurance Policies**

**1.    Dual Policies**

The Reorganized Debtors or their assignee(s) shall not compromise any part of the Dual Policies absent the prior written consent of the TAC, the Future Claimants' Representative and the Asbestos Personal Injury Trust, such consent not to be unreasonably withheld, and the Asbestos Personal Injury Trust (conditioned on the express consent of the TAC and the Future Claimants' Representative) shall not compromise any part of the Dual Policies absent the prior written consent of the Reorganized Debtors or their assignee(s), such consent not to be unreasonably withheld. If a dispute arises as to whether a party's lack of consent is reasonable, such dispute may be presented to the Bankruptcy Court for resolution. After the Effective Date, should the Bankruptcy Court or appellate court, if applicable, find in favor of the party withholding consent, the other party shall pay the reasonable attorneys' fees and costs of the party withholding consent.

**2.    Separate Limit Policies**

The Reorganized Debtors or their assignee(s) are entitled to settle that portion of the Separate Limit Policies that does not provide coverage for Asbestos Personal Injury Claims. The TAC, Future Claimants' Representative and the Asbestos Personal Injury Trust are entitled to notice and review of any proposed settlement but may only object on the grounds that the proposed settlement releases or otherwise impairs coverage for Asbestos Personal Injury Claims. Also with respect to Separate Limit Policies, the Asbestos Personal Injury Trust (conditioned on the express consent of the TAC and the Future Claimants' Representative) is entitled to settle that portion of the Separate Limit Policies that does not provide coverage for Environmental Claims. The Reorganized Debtors or their assignee(s) are entitled to notice and review of any proposed settlement but may object only on the grounds that the proposed settlement releases or otherwise impairs coverage for Environmental Claims. If a dispute arises as to whether a proposed settlement releases or otherwise impairs coverage for Asbestos Personal Injury Claims, or Environmental Claims, as applicable, such dispute may be presented to the Bankruptcy Court for resolution. After the Effective Date, should the Bankruptcy Court, or appellate court if applicable, find in favor of the objecting party, the other party shall pay the reasonable attorneys' fees and costs of the objecting party.

**3.    Insurance Policies that Provide Coverage for Asbestos Personal Injury Claims but not for Environmental Claims**

With respect to insurance policies that provide coverage for Asbestos Personal Injury Claims but not for Environmental Claims (a list of such policies is attached as Exhibit IV.M.3), and also any policies that may provide coverage for Asbestos Personal Injury Claims, but not for Environmental Claims that are not included on Exhibits I.A.60, I.A.119, IV.M.3 and IV.M.4, the

Asbestos Personal Injury Trust (conditioned on the express consent of the TAC and the Future Claimants' Representative) may settle such Asbestos Personal Injury Insurance Assets and the Reorganized Debtors or their assignee(s) shall have no standing to object.

### a. Settlement with Truck

If the Asbestos Personal Injury Trust seeks approval of a settlement with Truck, the Objecting Excess Insurers may object to approval of such settlement (notice, hearing, and the Court's approval of which are required before Truck may become a "Settling Asbestos Insurer"). The Objecting Excess Insurers may object to the settlement to the same extent and on the same grounds that they could have objected (a) to the settlement if the settlement had been reached, and approval of it had been sought before Confirmation and (b) to the Plan had such a settlement been set forth in the Plan; without limiting the foregoing, any objections based on projections with respect to events that had not occurred as of the Confirmation Hearing shall be based on information that was known or knowable as of the Confirmation Hearing. The Objecting Excess Insurers may not argue that either the Bankruptcy Court or the District Court lacked jurisdiction to confirm the Plan; provided, however, for the avoidance of doubt, the objections set forth in the preceding sentence are preserved. The Asbestos Personal Injury Trust may oppose the Objecting Excess Insurers' Objections and assert any additional arguments or bases for opposition to such objections on any ground, including grounds that were or could have been advanced by the Debtors, the Asbestos Personal Injury Committee or the Future Claimants' Representative in opposition to the Objecting Excess Insurers' Objections. The relief available to the Objecting Excess Insurers, if one or more of them prevails on one or more such objection(s), shall be limited, to (a) denying the motion to approve the settlement with Truck; (b) granting the Objecting Excess Insurers adequate protection of their Inter-Insurer Rights, if any, against Truck; and/or (c) modifying the Asbestos Permanent Channeling Injunction to exclude any restriction on the Objecting Excess Insurers' pursuing their Inter-Insurer Rights, if any, against Truck, in all cases subject to the Court's determination that such relief is appropriate under principles of law and equity. For the avoidance of doubt, and not by way of limitation, none of the Objecting Excess Insurers' Objections will be deemed moot because of substantial consummation of the Plan, Confirmation of the Plan, the Plan becoming final and non-appealable, or the closing of the Reorganization Cases. For the avoidance of doubt, the Objecting Excess Insurers shall not be entitled to, and shall not seek, any other relief with respect to a settlement with Truck against the Debtors, the Reorganized Debtors, Lehigh Hanson or any of their affiliates, nor any relief with respect to the implementation, effectiveness, or consummation of the Plan (as long as the Plan is not materially altered before Confirmation). The Objecting Excess Insurers' agreement not to seek such relief, however, shall not operate to limit the relief that may be available to the Objecting Excess Insurers against the Asbestos Personal Injury Trust, or to the Asbestos Personal Injury Trust.

Upon the filing by the Asbestos Personal Injury Trust of a motion to approve a settlement with Truck, the Asbestos Personal Injury Trust shall move the Court to set a status conference on such motion on a date that is no less than twenty (20) days after the filing of such motion, or such other date as directed by the Court, without prejudice to the rights of any party to seek a longer or shorter period of time based upon the facts and circumstances that might then exist. At the status conference, any party may request that the Court set a briefing schedule for any objections to the motion, set an evidentiary hearing to consider the merits of the motion and any

objections thereto (unless no party requests an evidentiary hearing), establish a schedule for discovery relating to the motion and any objections thereto, and any other party may object to such request.

Any settlement between the Asbestos Personal Injury Trust and Truck shall not contain any provision that excuses Truck from its obligation to continue to defend the underlying asbestos personal injury cases until such time as any order approving such settlement (if any such order is entered) has become a Final Order. Further, and notwithstanding anything else contained in the Plan or the Confirmation Order, unless and until the Court enters an order (which has become a Final Order) approving a Truck settlement that might provide otherwise (and without prejudice to the rights of the Objecting Excess Insurers' rights to object to the entry of such an order as provided above), the Objecting Excess Insurers' rights under the law, the Excess CIP Agreement, and the Asbestos Insurance Policies that relate to the defense of the underlying asbestos claims are preserved against Truck if it ceases defending any of the underlying asbestos cases.

### 4. Insurance Policies that Provide Coverage for Environmental Claims but not for Asbestos Personal Injury Claims

With respect to insurance policies that provide coverage for Environmental Claims but not for Asbestos Personal Injury Claims (a list of such policies is attached as Exhibit IV.M.4) and any policies that may provide coverage for Environmental Claims but not for Asbestos Personal Injury Claims that are not included on Exhibits I.A.60, I.A.119, IV.M.3 and IV.M.4, the Reorganized Debtors or their assignee(s) may settle such policies and the TAC, Future Claimants' Representative and the Asbestos Personal Injury Trust shall have no standing to object.

### 5. Amendment of Insurance Policy Exhibits

If a dispute regarding the lists of Dual Policies and Separate Limit Policies arises after the Confirmation Hearing, it may be presented to the Bankruptcy Court. After the Confirmation Hearing, Exhibits I.A.60, I.A.119, IV.M.3 and IV.M.4 may only be amended by written agreement of the Parties, or if after the Effective Date, the Asbestos Personal Injury Trust, the Reorganized Debtors and Lehigh Hanson. For any Insurance Policy not previously included as an Exhibit to this Plan that the Asbestos Personal Injury Trust, the Reorganized Debtors or Lehigh Hanson contend should be added to Exhibits I.A.60, I.A.119, IV.M.3 and IV.M.4 after Confirmation, and about which there is a dispute among such parties, such dispute may be presented to the Bankruptcy Court for resolution.

### N. Truck Obligations Regarding Deductibles

Notwithstanding any provision in any Asbestos Insurance Policy to the contrary, Truck shall have no obligation to pay, and shall not pay, any Deductible under any applicable Asbestos Insurance Policy to holders of Asbestos Personal Injury Claims or any other Entity. The Asbestos Personal Injury Trust shall satisfy such Deductible to holders of Insured Asbestos Claims in accordance with the terms, provisions and procedures of the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures. Other than

with respect to Deductibles, the Asbestos Personal Injury Trust shall not assume responsibility pursuant to the Plan for any other expenses owed to Truck, or that may become owed to Truck in the future, in connection with Asbestos Personal Injury Claims.

## O.     Liquidation of Asbestos Personal Injury Claims

### 1.     Insured Asbestos Claims

Holders of Insured Asbestos Claims may initiate, continue and/or prosecute suit against the Reorganized Debtors in the tort system to obtain the benefit of insurance coverage under the Asbestos Insurance Policies, unless and until the Asbestos Personal Injury Trust, with the consent of the TAC and the Future Claimants' Representative, has settled (other than pursuant to the Excess CIP Agreement) all rights to coverage for Asbestos Personal Injury Claims applicable to the Asbestos Personal Injury Claim of a particular holder, in which event such holder shall pursue payment of its Asbestos Personal Injury Claim from the Asbestos Personal Injury Trust in accordance with the Asbestos Personal Injury Trust Distribution Procedures. In the event that a holder of an Insured Asbestos Claim commences such an action, the complaint may name the applicable Reorganized Debtor(s) as a defendant(s) and shall be deemed by operation of law to be an action against the applicable Reorganized Debtor(s). Notwithstanding the foregoing, the Reorganized Debtors shall have no obligation to answer, appear or otherwise participate in the action in any respect other than as set forth in this Plan and as may be necessary to maintain coverage under the Asbestos Insurance Policies, and any judgment that may be obtained in the action cannot be enforced against the assets of the Reorganized Debtors, other than from the Asbestos Insurance Policies. Such actions may be filed in any court where the applicable Debtor would have been subject to in personam jurisdiction as of the Petition Date or any other court of competent jurisdiction and process may be served upon a person or entity appointed by the Reorganized Debtors to serve as agent, who shall tender such actions to Truck or, if appropriate, to any other applicable Asbestos Insurers in compliance with the notice provisions of the applicable Asbestos Insurance Policies. Nothing in this Section IV.O. is intended to affect any cause of action or right to bring a cause of action held by any holder of an Asbestos Personal Injury Claim directly against any Asbestos Insurer. The portion of any Insured Asbestos Claim that is not covered by any Asbestos Insurance Policy shall be paid in accordance with the terms, provisions and procedures of the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures.

### 2.     Uninsured Asbestos Claims

Each Uninsured Asbestos Claim will be determined and paid in accordance with the terms, provisions and procedures of the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures. The sole recourse of a holder of an Uninsured Asbestos Claim on account of such Claim will be to the Asbestos Personal Injury Trust and such holder will have no right whatsoever at any time to assert its Uninsured Asbestos Claim against any Protected Party.

**P.        Limitations On Judgment Recovery From Non-Settling Asbestos Insurers**

To the extent that any Non-Settling Asbestos Insurer has an Asbestos Insurance Policy Claim against one or more Settling Asbestos Insurers with respect to an Asbestos Personal Injury Claim that it could have asserted against such Settling Asbestos Insurers but for the Asbestos Permanent Channeling Injunction provided under the Plan (hereafter, "Contribution Claims"), the judgment liability (if any) of the Non-Settling Asbestos Insurer to the holder of such Asbestos Personal Injury Claim shall be reduced dollar-for-dollar by the amount (if any) of the Contribution Claims established pursuant to this Section IV.P. The court hearing the Asbestos Personal Injury Claim shall employ such procedures as that court determines are appropriate to determine prior to entry of judgment the validity and amount of any Contribution Claims (and the corresponding reduction in the amount of the holder's recovery) as if, and to the same extent, they were asserted against the Settling Asbestos Insurers. The holder of the Asbestos Personal Injury Claim may assert the legal or equitable rights, if any, of the Settling Asbestos Insurers in the action. The Bankruptcy Court may modify this judgment reduction provision or grant such other relief in any order approving a settlement with any Asbestos Insurer as appropriate and necessary to adequately protect the Inter-Insurer Rights, if any, of any Non-Settling Asbestos Insurer.

**Q.        Insurance Neutrality**

Nothing in the Plan, any Exhibit to the Plan, the Confirmation Order, any finding of fact and/or conclusion of law with respect to the Confirmation of the Plan, or any order or opinion entered on appeal from the Confirmation Order shall limit the right of any Asbestos Insurer to assert any Insurer Coverage Defense; provided, however, that (a) the transfer of rights in and under the Asbestos Personal Injury Insurance Assets to the Asbestos Personal Injury Trust is valid and enforceable and transfers such rights under the Asbestos Personal Injury Insurance Assets as the Debtors may have, and that such transfer shall not affect the liability of any Asbestos Insurer, and (b) the discharge and release of the Debtors and Reorganized Debtors from all Claims and the injunctive protection provided to the Debtors, Reorganized Debtors and Protected Parties with respect to Claims as provided herein shall not affect the liability of any Asbestos Insurer, except to the extent that any such Asbestos Insurer is also a Settling Asbestos Insurer. Notwithstanding anything in this Section IV.Q. to the contrary, nothing in this Section IV.Q. shall affect or limit, or be construed as affecting or limiting, (a) the binding effect of the Plan and the Confirmation Order on the Debtors, the Reorganized Debtors, the Asbestos Personal Injury Trust or the beneficiaries of the Asbestos Personal Injury Trust or (b) the protection afforded to any Settling Asbestos Insurer by the Asbestos Permanent Channeling Injunction. Further, nothing in this Section IV.Q. is intended or shall be construed to preclude otherwise applicable principles of res judicata or collateral estoppel from being applied against any Asbestos Insurer with respect to any issue that is actually litigated by such Asbestos Insurer as part of its objections to Confirmation of the Plan.

**R. Preservation of Rights of Action; Settlement of Claims and Releases**

**1. Preservation of Rights of Action by the Reorganized Debtors**

Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code and to the fullest extent possible under applicable law, the Reorganized Debtors shall retain and may enforce, and shall have the right to enforce, any claims, demands, rights and causes of action that any Debtor or Estate may hold against any Entity, including any Recovery Actions. The Reorganized Debtors or their successors or assignees may pursue such retained claims, demands, rights or causes of action, as appropriate, in accordance with the best interests of the Reorganized Debtors or their successors or assignees holding such claims, demands, rights or causes of action. Further, the Reorganized Debtors retain their right to File and pursue, and shall have the sole right to File and pursue, any adversary proceedings against any trade creditor or vendor related to debit balances or deposits owed to any Debtor.

**2. Settlement of Certain Estate Claims**

    **a.** Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, any and all claims against the Protected Parties that are or would have been property of the Debtors' Estates or could have been brought by the Debtors' Estates, including without limitation Recovery Actions and any claims based upon a legal or equitable theory of liability in the nature of veil piercing, alter ego, successor liability, vicarious liability, fraudulent transfer, malpractice, breach of fiduciary duty, waste, fraud or conspiracy, except for Intercompany Claims, shall be deemed settled, released and extinguished. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims and the Bankruptcy Court's finding that such compromise or settlement is in the best interest of the Debtors, Reorganized Debtors and their respective Claim and Interest holders and is fair, equitable and reasonable.

    **b.** Pursuant to Bankruptcy Rule 9019 and in consideration for the releases and other benefits provided under the Plan, any and all claims against the holders of Asbestos Personal Injury Claims who received payments in respect of their claims from the Debtors, Lehigh Hanson, or any predecessor or affiliate of the Debtors or Lehigh Hanson prior to Petition Date, and their professionals (but only with respect to their representation of or work for such holders in connection with such payments), that are or would have been property of any of the Debtors' Estates or could have been brought by any of the Debtors' Estates or any Protected Party, including without limitation Recovery Actions, and any claims based upon a legal or equitable theory of liability, in each case arising out of, based upon or resulting from payments to holders of Asbestos Personal Injury Claims from the Debtors, Lehigh Hanson or any predecessor or affiliate of the Debtors or Lehigh Hanson prior to the Petition Date, shall be deemed settled, released and extinguished. The entry

of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims and the Bankruptcy Court's finding that such compromise or settlement is in the best interest of the Debtors, the Reorganized Debtors and their respective Claim and Interest holders and is fair, equitable and reasonable.

3.    **Releases**

a.    **General Releases of Debtors and Reorganized Debtors**

**Except as otherwise expressly set forth in the Plan, and except to the extent it would diminish, reduce or eliminate the duties or obligations of any Asbestos Insurer under any Asbestos Personal Injury Insurance Asset, as of the Effective Date, the Debtors and the Reorganized Debtors are released from all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, arising out of, based upon or resulting from, directly or indirectly, in whole or in part, any act, omission, transaction or other occurrence taking place on or prior to the Effective Date.   Notwithstanding the foregoing, the releases set forth in this paragraph will not become effective with respect to holders of General Unsecured Claims until the General Unsecured Claims Escrows have been funded as set forth herein.**

b.    **Release by the Debtors, Reorganized Debtors and Lehigh Hanson**

**1.    Without limiting any other provision of the Plan, as of the Effective Date, the Debtors and the Reorganized Debtors, on behalf of themselves and their respective affiliates, Estates and successors and assigns, and any and all Entities who may purport to claim by, through, for or because of them, shall be deemed to forever release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, against each of the present and former directors, officers, employees, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives and agents of the Debtors, the DIP Lender and DEQ, in each case acting in such capacity, arising out of, based upon or resulting from, directly or indirectly, in whole or in part, any act, omission, transaction or other occurrence taking place on or prior to the Effective Date with respect to the Reorganization Cases, the Plan or the DEQ Settlement, except for the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.**

**2.    Without limiting any other provision of the Plan, as of the Effective Date, the Debtors, the Reorganized Debtors and Lehigh Hanson, on behalf of themselves and their respective affiliates, Estates and successors and assigns, and any and all Entities who may purport to claim by, through, for or because of them, shall be deemed to forever release,**

waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, against holders of Asbestos Personal Injury Claims who received payments in respect of their claims from the Debtors, Lehigh Hanson, or any predecessor or affiliate of the Debtors or Lehigh Hanson prior to Petition Date, and their professionals (but only with respect to their representation of or work for such holders in connection with such payments), including without limitation Recovery Actions, in each case arising out of, based upon or resulting from payments to holders of Asbestos Personal Injury Claims from the Debtors, Lehigh Hanson or any predecessor or affiliate of the Debtors or Lehigh Hanson prior to Petition Date.

### c. General Releases by Holders of Claims or Interests

Without limiting any other provision of the Plan or the Bankruptcy Code, as of the Effective Date, in consideration for, among other things, the obligations of the Debtors and the Reorganized Debtors under the Plan, each holder of a Claim or Interest that votes in favor of the Plan or is deemed to accept the Plan shall be deemed to forever release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, against any of the Parties, the Creditors' Committee or any Reorganized Debtor, or any of their respective present or former directors, officers, employees, members, subsidiaries, predecessors, successors, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives and agents, or the DIP Lender, in each case acting in such capacity, arising out of, based upon or resulting from, directly or indirectly, in whole or in part, any act, omission, transaction or other occurrence taking place on or prior to the Effective Date and in any way relating to the Reorganization Cases or the Plan (which release shall be in addition to the discharge of Claims provided herein and under the Confirmation Order and the Bankruptcy Code) Notwithstanding the foregoing, no release or discharge of any of the Parties, the Creditors' Committee or any Reorganized Debtor, or any of their respective present or former directors, officers, employees, members, subsidiaries, predecessors, successors, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives and agents, or the DIP Lender, in each case acting in such capacity, shall diminish, reduce or eliminate the duties or obligations of any Asbestos Insurer under any Asbestos Personal Injury Insurance Asset.

### d. Injunction Related to Releases

Except as otherwise expressly provided in the Plan, including in Section IV.O.1., the Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities released pursuant to the Plan.

**S.      Release of Encumbrances**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article VI, all Encumbrances against the property of any Estate shall be fully released and discharged, and all of the right, title and interest of any holder of such Encumbrances, including any rights to any collateral thereunder, shall revert to the applicable Reorganized Debtor and its successors and assigns.

**T.      Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes**

Each officer of each Debtor and Reorganized Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements and documents and take such actions as may be necessary or appropriate to effect and implement the provisions of the Plan, including the Restructuring Transactions provisions of Section IV.B. The secretary or any assistant secretary of each Debtor or Reorganized Debtor shall be authorized to certify or attest to any of the foregoing actions. Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp Tax or similar Tax: (1) the creation of any Encumbrances; (2) the making or assignment of any lease or sublease; (3) the execution and implementation of the Asbestos Personal Injury Trust Agreement, including the creation of the Asbestos Personal Injury Trust and any transfers to or by the Asbestos Personal Injury Trust; (4) any Restructuring Transaction; or (5) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments, applications, certificates or statements executed or filed in connection with any of the foregoing or pursuant to the Plan.

**U.      Determination of the Insolvent Insurers Proceeds Dispute**

The Confirmation Order shall approve the agreed resolution of the Insolvent Insurers Proceeds Dispute.

**V.      Compliance with QSF Regulations**

The Debtors and the Reorganized Debtors shall take all actions required of them as "transferor," and the Asbestos Personal Injury Trustees shall take all actions required of them as "administrator," pursuant to Treasury Regulations promulgated under section 468B of the Internal Revenue Code. Pursuant to such Treasury Regulations, the Asbestos Personal Injury Trustees as "administrator" shall be responsible for all tax reporting and withholding requirements in respect of distributions made from the Asbestos Personal Injury Trust.

**W.      Surety Bond Obligations**

Notwithstanding any other provisions of the Plan, on the Effective Date, all rights of any party related to the Surety Bond Program shall not be altered by the Plan. The applicable Reorganized Debtor hereby reaffirms and ratifies the Surety Bond Obligations arising under the

Surety Bond Program, which shall continue to be in full force and effect, and the Surety Bond Obligations are not discharged or released by the Plan in any way. On the Effective Date, all liens and security interests, if any, granted pursuant to or in connection with the Surety Bond Program shall have the priorities established in respect thereof under applicable non-bankruptcy law, and shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination pursuant to the Plan or the Confirmation Order. The Surety Bond Program and all Surety Bond Obligations shall be treated by the Reorganized Debtors in the ordinary course of business as if the Reorganization Cases had not been commenced. For the avoidance of any doubt, and with a reservation of rights to all parties, any agreements related to the Surety Bond Program to which a Debtor is party will vest in the applicable Reorganized Debtor, and to the extent such agreements are considered to be executory contracts, then, notwithstanding anything contained in Article V to the contrary, the Plan will constitute a motion to assume such agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code. Nothing in the Plan shall affect in any way any surety's rights against any non-debtor, or any non-debtor's rights against a surety, including under the Surety Bond Program or with regard to the Surety Bond Obligations.

## ARTICLE V

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

**A.      Executory Contracts and Unexpired Leases to Be Assumed**

**1.      Assumption Generally**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, including the Restructuring Transactions provisions of Section IV.B., on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the applicable Debtor or Reorganized Debtor shall assume each of its respective Executory Contracts and Unexpired Leases other than those listed on Exhibit V.C; provided, however, that the Debtors reserve the right, at any time prior to the Effective Date, to amend Exhibit V.C to: (a) delete any Executory Contract or Unexpired Lease listed therein, thus providing for its assumption pursuant hereto; or (b) add any Executory Contract or Unexpired Lease to Exhibit V.C, thus providing for its rejection pursuant to this Section V.A.1. The Debtors shall provide notice of any amendments to Exhibit V.C to the parties to the Executory Contracts or Unexpired Leases affected thereby and to the parties on the then-applicable service list in the Reorganization Cases. Nothing herein shall constitute an admission by a Debtor or Reorganized Debtor that any contract or lease is an Executory Contract or Unexpired Lease or that a Debtor or Reorganized Debtor has any liability thereunder.

**2.      Assumptions of Executory Contracts and Unexpired Leases**

Each Executory Contract or Unexpired Lease assumed under Section V.A.1. shall include any modifications, amendments, supplements or restatements to such contract or lease.

### 3. Approval of Assumptions and Assumption Procedures

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions described in Section V.A.1., pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The procedures for assumption of an Executory Contract or Unexpired Lease are as follows:

a.      After the entry of the Confirmation Order, the Debtors shall serve upon each party to an Executory Contract or Unexpired Lease being assumed pursuant to the Plan notice of: (i) the contract or lease being assumed or assumed and assigned; (ii) the Cure Amount Claim, if any, that the applicable Debtor believes it would be obligated to pay in connection with such assumption; and (iii) the procedures for such party to object to the assumption or assumption and assignment of the applicable contract or lease or the amount of the proposed Cure Amount Claim.

b.      Any Entity wishing to object to (i) the proposed assumption of an Executory Contract or Unexpired Lease under the Plan or (ii) the proposed amount of the related Cure Amount Claim must File and serve on counsel to the Debtors a written objection setting forth the basis for the objection within twenty (20) days of service of the notice described in Section V.A.3.a.

c.      If no objection to the proposed assumption or Cure Amount Claim is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease: (i) the proposed assumption of the Executory Contract or Unexpired Lease shall be approved in accordance with the Plan and the Confirmation Order, effective as of the Effective Date, without further action of the Bankruptcy Court; and (ii) the Cure Amount Claim identified by the Debtors in the notice shall be fixed and shall be paid in accordance with the Plan on or after the Effective Date, without further action of the Bankruptcy Court, to the appropriate contract or lease party identified on the notice.

d.      If an objection to the proposed assumption or Cure Amount Claim is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease, the Debtors or Reorganized Debtors, as applicable, and the objecting party may resolve such objection by stipulation, without further action of the Bankruptcy Court.

e.      If an objection to the proposed assumption or Cure Amount Claim is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease and the parties are unable to resolve such objection: (i) the Debtors or Reorganized Debtors may File a reply to such objection no later than thirty (30) days after the Filing and service of such objection and ask the Bankruptcy Court to schedule a hearing on the particular objection and the related reply at an appropriate time; or (ii) the Debtors or Reorganized Debtors, as applicable, may designate the

Executory Contract or Unexpired Lease underlying such objection for rejection pursuant to Section V.C. and amend Exhibit V.C. accordingly.

**B.    Payments Related to the Assumption of Executory Contracts and Unexpired Leases**

To the extent that a Cure Amount Claim constitutes a monetary default, such Cure Amount Claim associated with each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor or Reorganized Debtor assuming such contract or lease or the assignee of such Debtor or Reorganized Debtor, if any:  (1) by payment of the Cure Amount Claim in cash on the Effective Date or (2) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease. Pursuant to section 365(b)(2)(D) of the Bankruptcy Code, no Cure Amount Claim shall be allowed for a penalty rate or other form of default rate of interest. If there is a dispute regarding:  (1) the amount of any Cure Amount Claim; (2) the ability of the applicable Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (3) any other matter pertaining to assumption of such contract or lease, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption. For assumptions of Executory Contracts or Unexpired Leases between Debtors, the Reorganized Debtor assuming such contract may cure any monetary default (1) by treating such amount as either a direct or indirect contribution to capital or Distribution (as appropriate) or (2) through an intercompany account balance in lieu of payment in cash.

**C.    Executory Contracts and Unexpired Leases to Be Rejected and Rejection Procedures**

On the Effective Date, each Executory Contract and Unexpired Lease listed on Exhibit V.C shall be rejected pursuant to section 365 of the Bankruptcy Code. Each contract and lease listed on Exhibit V.C shall be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. Listing a contract or lease on Exhibit V.C shall not constitute an admission by a Debtor or Reorganized Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that a Debtor or Reorganized Debtor has any liability thereunder. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The appropriate procedures for rejection of an Executory Contract or Unexpired Lease are as follows:

**1.**    After the entry of the Confirmation Order, the Debtors shall serve upon each party to an Executory Contract or Unexpired Lease being rejected pursuant to the Plan notice of such proposed rejection.

**2.**    Any Entity wishing to object to the proposed rejection of an Executory Contract or Unexpired Lease under the Plan must File and serve on counsel to the Debtors a written objection setting forth the basis for the objection within twenty (20) days of service of the notice described in Section V.C.1.

**3.** If no objection to the proposed rejection is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease, the proposed rejection of the applicable Executory Contract or Unexpired Lease shall be approved in accordance with the Plan and the Confirmation Order, effective as of the Effective Date, without further action of the Bankruptcy Court.

**4.** If an objection to the proposed rejection is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease, the Debtors or Reorganized Debtors, as applicable, and the objecting party may resolve such objection by stipulation, without further action of the Bankruptcy Court.

**5.** If an objection to the proposed rejection is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease and the parties are unable to resolve such objection, the Debtors or Reorganized Debtors, as applicable, may File a reply to such objection no later than thirty (30) days after the Filing and service of such objection and ask the Bankruptcy Court to schedule a hearing on the particular objection and the related reply at an appropriate time.

**D.     Obligations to Indemnify Directors, Officers and Employees**

The obligations of each Debtor or Reorganized Debtor to indemnify any individual serving as one of its directors, officers or employees prior to or following the Petition Date by reason of such individual's prior or future service in such a capacity or as a director, officer or employee of any Debtor or other Entity, to the extent provided in the applicable Certificate of Incorporation or By-Laws, by statutory law or by written agreement, policies or procedures of or with such Debtor, shall be deemed and treated as executory contracts that are assumed by the applicable Debtor or Reorganized Debtor pursuant to the Plan and section 365 of the Bankruptcy Code as of the Effective Date. Accordingly, such indemnification obligations shall survive and be unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date.

**E.     Contracts and Leases Entered Into After the Petition Date**

Notwithstanding any other provision of the Plan, and subject to the Restructuring Transactions provisions of Section IV.B., contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, shall be performed by the Debtor or Reorganized Debtor liable thereunder in accordance with the terms and conditions of such contracts and leases in the ordinary course of its business. Accordingly, such contracts and leases and other obligations (including any assumed Executory Contracts and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

**F.     Insurance Policies**

**1.     Assumed Insurance Policies**

The Debtors do not believe that the insurance policies issued to any Debtor, including the Insurance Policies, prior to the Petition Date constitute executory contracts. To the extent such

insurance policies are considered to be executory contracts, then, notwithstanding anything contained in Article V to the contrary, the Plan will constitute a motion to assume such insurance policies, which include but are not limited to the Debtors' workers' compensation and liability, product and property insurance policies maintained by The Home Insurance Company, and authorize the Reorganized Debtors to pay all future obligations, if any, in respect thereof. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, their respective estates and all parties in interest in the Reorganization Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective date, no payments are required to cure any defaults of any Debtor existing as of the Confirmation Date with respect to each such insurance policy.

### 2. Reservation of Rights

Nothing contained in the Plan will constitute a waiver of any claim, right or cause of action that a Debtor, a Reorganized Debtor or the Asbestos Personal Injury Trust, as the case may be, may hold against the insurer under any policy of insurance or insurance agreement, except to the extent the insurer is a Settling Asbestos Insurer.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

### A. Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided in the Plan, Distributions to be made on the Effective Date to holders of Claims that are Allowed Claims as of the Effective Date shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than: (1) sixty (60) days after the Effective Date or (2) such later date when the applicable conditions of Section V.B. (regarding cure payments for Executory Contracts and Unexpired Leases being assumed), Section VI.E.2. (regarding undeliverable Distributions) or Section VI.G.3. (regarding compliance with Tax requirements) are satisfied. Distributions on account of Claims that become Allowed Claims after the Effective Date shall be made pursuant to Section VI.H.2. Any Claim that is disallowed by order of the Bankruptcy Court (or the District Court) prior to the Effective Date shall be deemed expunged (to the extent not already expunged) as of the Effective Date without the necessity for further Bankruptcy Court approval and the holder of any such Claim shall not be entitled to any Distribution under the Plan.

### B. General Unsecured Claims Escrows

On the Effective Date, the General Unsecured Claims Escrows shall be fully funded. The Debtors and Reorganized Debtors will not hold any legal or equitable interest in the funds deposited in the General Unsecured Claims Escrows and such funds shall not be considered property of the Reorganized Debtors and any liens, charges, Claims, Encumbrances and Interests granted under the Plan shall not extend to an interest in the funds held in the General Unsecured Claims Escrow. The funds in the General Unsecured Claims Escrow shall be reserved solely for

the benefit of the holders of Class 3 General Unsecured Claims, including any General Unsecured Claims that are Disputed Claims, pending determination of their entitlement thereto under the terms of the Plan. To the extent there are funds remaining in any General Unsecured Claims Escrow after payment in full of all Allowed General Unsecured Claims in accordance with the Plan (the "Remaining Funds"), Lehigh Hanson shall hold an interest in those funds and may request one or more distributions from the Escrow Agent for payment of the Remaining Funds.

## C.     Method of Distributions to Holders of Claims

The Reorganized Debtors or Third Party Disbursing Agents as the Reorganized Debtors may employ in their sole discretion shall make all Distributions of cash and other instruments or documents required under the Plan. Each Disbursing Agent shall serve without bond, and any Disbursing Agent may employ or contract with other Entities to assist in or make the Distributions required by the Plan.

## D.     Compensation and Reimbursement for Services Related to Distributions

Each Third Party Disbursing Agent providing services related to Distributions pursuant to the Plan shall receive from the Reorganized Debtors, without further Bankruptcy Court approval, reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services. These payments shall be made on terms agreed to with the Reorganized Debtors and shall not be deducted from Distributions to be made pursuant to the Plan to holders of Allowed Claims receiving Distributions.

## E.     Delivery of Distributions and Undeliverable or Unclaimed Distributions

### 1.     Delivery of Distributions

Distributions to holders of Allowed Claims (other than Asbestos Personal Injury Claims) shall be made by a Disbursing Agent (a) at the addresses set forth on the respective proofs of Claim Filed by holders of such Claims, (b) at the addresses set forth in any written certification of address change delivered to the Disbursing Agent (including pursuant to a letter of transmittal delivered to a Disbursing Agent) after the date of Filing of any related proof of Claim, or (c) at the addresses reflected in the applicable Debtor's Schedules if no proof of Claim has been Filed and the Disbursing Agent has not received a written notice of a change of address.

### 2.     Undeliverable Distributions Held by Disbursing Agents

#### a.     Holding and Investment of Undeliverable Distributions

If any Distribution to a holder of an Allowed Claim is returned to a Disbursing Agent as undeliverable, no further Distributions shall be made to such holder unless and until the applicable Disbursing Agent is notified by written certification of such holder's then-current address. Undeliverable Distributions shall remain in the possession of the applicable Disbursing Agent pursuant to this Section VI.E.2.a. until such time as a Distribution becomes deliverable. Undeliverable cash shall be held in segregated bank accounts in the name of the applicable Disbursing Agent for the benefit of the potential claimants of such funds. Any Disbursing Agent

holding undeliverable cash shall invest such cash in a manner consistent with the Reorganized Debtors' investment and deposit guidelines.

### b. After Distributions Become Deliverable

On each Quarterly Distribution Date, the applicable Disbursing Agent shall make all Distributions that become deliverable to holders of Allowed Claims (other than Asbestos Personal Injury Claims) during the preceding calendar quarter, to the extent not distributed earlier at the discretion of the applicable Disbursing Agent.

### c. Failure to Claim Undeliverable Distributions

Any holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable Distribution to be made by a Disbursing Agent within one year after the later of (i) the Effective Date and (ii) the last date on which a Distribution was attempted to be made to such holder shall have its claim for such undeliverable Distribution discharged and shall be forever barred from asserting any such claim against the Reorganized Debtors or their respective property. Unclaimed Distributions shall become property of the respective Reorganized Debtor, free of any restrictions thereon, including the right of any state or other government to escheat such property, and any such Distributions held by a Third Party Disbursing Agent shall be returned to the applicable Reorganized Debtor. Nothing contained in the Plan shall require any Debtor, Reorganized Debtor or Disbursing Agent to attempt to locate any holder of an Allowed Claim.

## F. Distribution Record Date

### 1. No Recognition of Transfers after the Distribution Record Date

A Disbursing Agent shall have no obligation to recognize the transfer or sale of any interest or participation in, any Claim that occurs after the close of business on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make Distributions only to those holders of Allowed Claims that are holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date.

### 2. Treatment of Certain Transfers

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date shall be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

## G. Means of Cash Payments

Except as otherwise specified herein, cash payments made pursuant to the Plan to holders of Claims shall be in United States currency by checks drawn on a domestic bank selected by the Reorganized Debtors or Lehigh Hanson, as applicable, or, at the option of the Reorganized Debtors or Lehigh Hanson, as applicable, by wire transfer from a domestic bank; <u>provided</u>,

however, that cash payments to foreign holders of Allowed Claims may be made, at the option of the Reorganized Debtors or Lehigh Hanson, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

## H.    Timing and Calculation of Amounts to Be Distributed

### 1.    Timing of Distributions Under the Plan

Any Distribution to be made by any Debtor or Reorganized Debtor pursuant to the Plan shall be deemed to have been timely made if made within sixty (60) days after the time therefor specified in the Plan.  Except as otherwise provided in the Plan, no interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the Effective Date. However, and for the avoidance of doubt, the funding of (a) the Asbestos Personal Injury Trust pursuant to Section IV.K.2 and (b) the General Unsecured Claims Escrows pursuant to Section VI.B shall occur on the Effective Date.

### 2.    Allowed Claims

On the Effective Date, each holder of an Allowed Claim (other than an Asbestos Personal Injury Claim) shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class. On each Quarterly Distribution Date, Distributions also shall be made pursuant to Section VII.C. to holders of Disputed Claims in any such Class that were allowed during the preceding calendar quarter, to the extent not distributed earlier at the discretion of the applicable Disbursing Agent. Such quarterly Distributions also shall be in the full amount that the Plan provides for Allowed Claims in the applicable Class.

### 3.    Compliance with Tax Requirements

#### a.    Withholding and Reporting

In connection with the Plan, to the extent applicable, each Disbursing Agent shall comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision of the Plan to the contrary, each Disbursing Agent shall be authorized to take any actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including applying a portion of any cash Distribution to be made under the Plan to pay applicable Tax withholding, requiring Claim holders to submit appropriate certifications or establishing other mechanisms such Disbursing Agent believes are reasonable and appropriate. To the extent that any Claim holder fails to submit appropriate certifications required by a Disbursing Agent or to comply with any other mechanism established by a Disbursing Agent to comply with Tax withholding requirements, such Claim holder's Distribution may, in such Disbursing Agent's reasonable discretion, be deemed undeliverable and subject to Section VI.E.2.

#### b.    Backup Withholding

Without limiting the generality of the foregoing, in accordance with the Internal Revenue Code's backup withholding rules, a holder of a Claim may be subject to backup withholding with

respect to Distributions made pursuant to the Plan, unless the holder (i) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (ii) provides at the applicable Disbursing Agent's request a completed IRS Form W-9 (or substitute therefor) on which the holder includes a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income. Among other things, to receive any post-petition interest, if requested by a Disbursing Agent, a holder of an Allowed Claim shall be required to establish an exemption from backup withholding or to make arrangements with respect to the payment of backup withholding. Non-U.S. Allowed Claim holders may be required by the applicable Disbursing Agent to provide a completed IRS Form W-8BEN or W-8BEN-E, as applicable (or other applicable Form W-8 or successor form), to establish an exemption from or a treaty-reduced rate of withholding on interest distributed pursuant to the Plan. Unless a Disbursing Agent, in its discretion, determines otherwise, no Distributions on account of post-petition interest shall be made to a holder of an Allowed Claim until such time as the holder of such Claim establishes exemption from withholding or provides the applicable IRS Form.

### c. Obligations of Distribution Recipients

Notwithstanding any other provision of the Plan, each Entity receiving a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other Tax obligations.

## I.     Setoffs

Except with respect to claims of a Debtor or Reorganized Debtor released pursuant to the Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Reorganized Debtors or, as instructed by the applicable Reorganized Debtor, a Third Party Disbursing Agent may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Claim (before any Distribution is made on account of such Claim) the claims, rights and causes of action of any nature that the applicable Debtor or Reorganized Debtor may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the applicable Debtor or Reorganized Debtor of any claim, right or cause of action that the Debtor or Reorganized Debtor may possess against such a Claim holder.

## J.     Allocation of Payments

Amounts paid to holders of Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess being allocated to accrued but unpaid interest on such Claims.

## ARTICLE VII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**A.      Prosecution of Objections to Claims**

**1.      Objections to Claims**

Objections to Claims (other than Asbestos Personal Injury Claims) must be Filed and served on the holders of such Claims by the Claims Objection Bar Date, and, if Filed prior to the Effective Date, such objections will be served on the parties on the then-applicable service list in the Reorganization Cases. If an objection has not been Filed to a proof of Claim or an amendment has not been made to the Schedules with respect to a scheduled Claim by the Claims Objection Bar Date, the Claim to which the proof of Claim or Schedules relates will be treated as an Allowed Claim if such Claim has not been earlier allowed.

**2.      Authority to Prosecute Objections**

After the Effective Date, the Reorganized Debtors shall have the authority to File (if applicable), settle, compromise, withdraw or litigate to judgment objections to all Claims (other than Asbestos Personal Injury Claims), including pursuant to any alternative dispute resolution or similar procedures approved by the Bankruptcy Court. After the Effective Date, the Reorganized Debtors may settle, compromise or otherwise resolve any Disputed Claim or any objection or controversy relating to any Claim without approval of the Bankruptcy Court.

**3.      Authority to Amend Schedules**

The Debtors or the Reorganized Debtors shall have the authority to amend the Schedules with respect to any Claim (other than Asbestos Personal Injury Claims) and to make Distributions based on such amended Schedules without approval of the Bankruptcy Court. If any such amendment to the Schedules reduces the amount of or changes the nature or priority of such Claim, the Debtor or Reorganized Debtor shall provide the holder of such Claim with notice of such amendment and such holder shall have twenty (20) days to File an objection to such amendment with the Bankruptcy Court. If no such objection is Filed, the Debtor or Reorganized Debtor may proceed with Distributions based on such amended Schedules without approval of the Bankruptcy Court.

**B.      Treatment of Disputed Claims**

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.

**C.      Distributions on Account of Disputed Claims Once Allowed**

On each Quarterly Distribution Date, the applicable Disbursing Agent shall make all Distributions on account of any Disputed Claim that has become an Allowed Claim during the preceding calendar quarter, to the extent not distributed earlier at the discretion of the applicable

Disbursing Agent. Such Distributions shall be made pursuant to the provisions of the Plan governing the applicable Class.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

**A.      Conditions to Confirmation**

The following shall be conditions to Confirmation unless such conditions shall have been duly waived pursuant to Section VIII.C.:

1.      The Confirmation Order shall have been entered by the Bankruptcy Court and the District Court acting jointly, or by the Bankruptcy Court or the District Court acting separately (and, if the Confirmation Order is entered separately by the Bankruptcy Court, shall have been fully affirmed by the District Court), and shall be reasonably acceptable in form and substance to the Parties.

2.      The Plan shall be acceptable in all respects to the Parties, and all Exhibits to the Plan shall be (a) acceptable in all respects to the Parties and (b) consistent with section 524(g) of the Bankruptcy Code and the terms of the Plan.

3.      The Bankruptcy Court and the District Court acting jointly, or the Bankruptcy Court or the District Court acting separately shall have made the following findings, each of which shall be contained in the Confirmation Order and each of which, if the Confirmation Order is entered separately by the Bankruptcy Court, shall be fully affirmed by the District Court:

a.      The Asbestos Permanent Channeling Injunction is to be implemented in connection with the Plan and the Asbestos Personal Injury Trust.

b.      The Asbestos Personal Injury Trust, as of the Effective Date, shall assume all liability and responsibility, financial and otherwise, for all Asbestos Personal Injury Claims, and, upon such assumption, no Protected Party shall have any liability or responsibility, financial or otherwise, therefor.

c.      As of the Petition Date, each Debtor had been named as a defendant in a personal injury or wrongful death action seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products.

d.      The Asbestos Personal Injury Trust will be funded in whole or in part by securities of the Reorganized Debtors and by the obligation of the Reorganized Debtors to make future payments, which payments may be funded by contributions from Lehigh Hanson to the Reorganized Debtors.

e.     The Asbestos Personal Injury Trust, by the exercise of rights granted under the Plan, would be entitled to own, if specified contingencies occur, a majority of the voting shares of each of the Reorganized Debtors.

f.     The Asbestos Personal Injury Trust shall use its assets or income to pay Asbestos Personal Injury Claims, including Demands.

g.     Each of the Debtors is likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Claims that are addressed by the Asbestos Permanent Channeling Injunction.

h.     The actual amounts, numbers and timing of such future Demands cannot be determined.

i.     Pursuit of such Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Claims and future Demands.

j.     The terms of the Asbestos Permanent Channeling Injunction, including any provisions barring actions against third parties pursuant to section 524(g)(4)(A) of the Bankruptcy Code, are set out in the Plan.

k.     The Plan establishes, in Class 4 (Asbestos Personal Injury Claims), a separate class of the claimants whose Claims are to be addressed by the Asbestos Personal Injury Trust.

l.     At least two-thirds (2/3) in amount and 75% in number of those voting Claims in Class 4 (Asbestos Personal Injury Claims) have voted in favor of the Plan.

m.     Pursuant to court orders or otherwise, the Asbestos Personal Injury Trust shall operate through mechanisms, such as structured, periodic or supplemental payments, pro rata distributions, matrices or periodic review of estimates of the numbers and values of Asbestos Personal Injury Claims, that provide reasonable assurance that the Asbestos Personal Injury Trust shall value, and be in a financial position to pay, Asbestos Personal Injury Claims, including Demands, in substantially the same manner.

n.     Each Protected Party is identifiable from the terms of the Asbestos Permanent Channeling Injunction by name or as part of an identifiable group, and each Protected Party is or may be alleged to be directly or indirectly liable for the conduct of, Claims against or Demands on a Debtor to the extent that such alleged liability arises by reason of one or more of the following:

(i)  such Entity's ownership of a financial interest in any Debtor, Reorganized Debtor, any past or present Affiliate of any

Debtor or Reorganized Debtor, or any predecessor in interest of any Debtor or Reorganized Debtor;

(ii)  such Entity's involvement in the management of any Debtor, Reorganized Debtor or predecessor in interest of any Debtor or Reorganized Debtor;

(iii)  such Entity's service as an officer, director or employee of any Debtor, Reorganized Debtor, any past or present Affiliate of any Debtor or Reorganized Debtor, or any predecessor in interest of any Debtor or Reorganized Debtor or Entity that owns or at any time has owned a financial interest in any Debtor, Reorganized Debtor, any past or present Affiliate of any Debtor or Reorganized Debtor, or any predecessor in interest of any Debtor or Reorganized Debtor; or

(iv)  such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of any Debtor, Reorganized Debtor, any past or present Affiliate of any Debtor or Reorganized Debtor, any predecessor in interest of any Debtor or Reorganized Debtor or of an Entity that owns or at any time has owned a financial interest in any Debtor, Reorganized Debtor, any past or present Affiliate of any Debtor or Reorganized Debtor, or any predecessor in interest of any Debtor or Reorganized Debtor, including (A) involvement in providing financing (debt or equity) or advice to an Entity involved in such a transaction or (B) acquiring or selling a financial interest in any Entity as part of such transaction.

o.      The Future Claimants' Representative was appointed as part of the proceedings leading to issuance of the Asbestos Permanent Channeling Injunction for the purpose of protecting the rights of all persons, whether known or unknown, that might subsequently assert, directly or indirectly, against any Debtor an Asbestos Personal Injury Claim that is a Demand addressed in the Asbestos Permanent Channeling Injunction and channeled to the Asbestos Personal Injury Trust.

p.      Identifying each Protected Party (by name or as part of an identifiable group, as applicable) in the Asbestos Permanent Channeling Injunction is fair and equitable with respect to individuals that might subsequently assert Demands against each such Protected Party, in light of the benefits provided, or to be provided, to the Asbestos Personal Injury Trust by or on behalf of any such Protected Party.

q.      The Plan and the Asbestos Personal Injury Trust Documents comply with section 524(g) of the Bankruptcy Code in all respects.

r.      The Plan and its Exhibits are a fair, equitable and reasonable resolution of the liability of the Debtors for the Asbestos Personal Injury Claims.

s.      The Future Claimants' Representative has adequately and completely fulfilled his duties, responsibilities and obligations as the representative for the individuals referred to in the finding set forth in Section VIII.A.3.o. above in accordance with section 524(g) of the Bankruptcy Code.

t.      Adequate and sufficient notice of the Plan and the Confirmation Hearing, as well as all deadlines for objecting to the Plan, has been given to (i) all known creditors and holders of Interests, (ii) parties that requested notice in accordance with Bankruptcy Rule 2002 (including the Asbestos Personal Injury Committee and the Future Claimants' Representative), (iii) all parties to Executory Contracts and Unexpired Leases, (iv) all taxing authorities listed on the Debtors' Schedules or in the Debtors' Claims database, in each case, (v) the Department of the Treasury by service upon the District Director of the IRS, (vi) state attorney generals and state departments of revenue for states in which any of the Debtors have conducted business, and (vii) the Securities and Exchange Commission, (A) in accordance with the solicitation procedures governing such service and (B) in substantial compliance with Bankruptcy Rules 2002(b), 3017 and 3020(b). Such transmittal and service were adequate and sufficient to bind, among other parties, any holder of an Asbestos Personal Injury Claim, and no other or further notice is or shall be required.

u.      The Debtors' conduct in connection with and throughout these Reorganization Cases, including, but not limited to, their negotiations with the ad hoc committee of asbestos personal injury claimants and the pre-petition future claimants' representative, and the commencement of these Reorganization Cases, as well as the drafting, negotiation, proposing, confirmation, and consummation of the Plan, and their opposition to any other plan of reorganization, does not and has not violated any Asbestos Insurer Cooperation Obligations contained in any Asbestos Insurance Policies, nor was such conduct a breach of any express or implied covenant of good faith and fair dealing. The Objecting Excess Insurers' consent to this finding in the particular facts and circumstances of these Reorganization Cases is expressly without prejudice to the rights of any party to contend that such a finding is or is not appropriate in any subsequent bankruptcy case not involving these Debtors.

4.      The Bankruptcy Court and the District Court, as required, shall have entered the Asbestos Permanent Channeling Injunction, which may be included in the Confirmation Order, and the Asbestos Permanent Channeling Injunction and the Confirmation Order are reasonably acceptable to the Parties.

5.      The settlement with the United States, on behalf of the Environmental Protection Agency and the United States Department of Interior, acting through the U.S. Fish and Wildlife Service, and the United States Department of Commerce, acting through the National Oceanic and Atmospheric Administration, the DEQ Settlement and the agreements with certain insurers related to such Claims have been approved by the Bankruptcy Court.

## B.      Conditions to the Effective Date

The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to Section VIII.C.

1.      The District Court or the Bankruptcy Court and the District Court acting jointly shall have entered an order (contemplated to be part of the Confirmation Order) in form and substance reasonably acceptable to the Parties approving and authorizing the Debtors and the Reorganized Debtors to take all actions necessary or appropriate to effectuate, implement and consummate the Plan and the Restructuring Transactions, including the execution, delivery and performance of contracts, instruments, releases and other agreements or documents created in connection with the Plan and the Restructuring Transactions.

2.      The Confirmation Order shall have been entered by the Bankruptcy Court and the District Court acting jointly, or by the Bankruptcy Court or the District Court acting separately (and, if the Confirmation Order is separately entered by the Bankruptcy Court, has been fully affirmed by the District Court) and shall have become a Final Order.

3.      No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

4.      The Confirmation Order and the Asbestos Permanent Channeling Injunction shall be in full force and effect.

5.      No fact or circumstance shall prevent the Asbestos Personal Injury Trust from receiving the Asbestos Personal Injury Trust Assets upon occurrence of the Effective Date.

6.      The Asbestos Personal Injury Trustees shall have been selected and shall have executed and delivered the Asbestos Personal Injury Trust Agreement.

7.      The Asbestos Personal Injury Trust shall have been funded in accordance with Section IV.K.2.

8.      Each of the documents and agreements contemplated by the provisions and Exhibits of the Plan to be executed and delivered as of the Effective Date shall have been fully executed and delivered in form and substance acceptable to the Debtors and to the Asbestos Personal Injury Committee and Future Claimants' Representative and shall be fully enforceable in accordance with their terms.

9.      A settlement agreement in a form acceptable to the Debtors regarding the Lower Duwamish Waterway site and a consent judgment in a form acceptable to the Debtors regarding

the St. Helens site have each been approved by a court with jurisdiction to approve such settlement agreement or enter such consent judgment.

10.     All terms and conditions to the effectiveness of the DEQ Settlement, other than the occurrence of the Effective Date, shall have been satisfied or waived in writing.

The Effective Date shall occur as of 12:01 a.m., prevailing Eastern Time on the date that the Debtors or Reorganized Debtors file a notice with the Bankruptcy Court stating that the Effective Date has occurred because each of the conditions to the Effective Date has been satisfied or waived in accordance with the Plan.

## C.     Waiver of Conditions to Confirmation or the Effective Date

The conditions to Confirmation set forth in Section VIII.A. and the conditions to the Effective Date set forth in Section VIII.B. may be waived in whole or part in writing by the Debtors, subject to the consent of Lehigh Hanson, the Asbestos Personal Injury Committee and the Future Claimants' Representative, at any time without an order of the Bankruptcy Court or the District Court; provided, however, waiver of the condition to the Effective Date set forth in Section VIII.B.10. also requires the DEQ's consent. Confirmation and the Effective Date will occur irrespective of whether any claims allowance process or related litigation has been completed.

## D.     Effect of Nonoccurrence of Conditions to the Effective Date

If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section VIII.C., then upon motion by the Debtors, Lehigh Hanson, the Asbestos Personal Injury Committee and/or the Future Claimants' Representative made before the time that each such condition has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the Filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to this Section VIII.D., (1) the Plan shall be null and void in all respects, including with respect to the discharge of Claims; and (2) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights, including any claims or defenses, of the Parties or any other party in interest.

## ARTICLE IX

## DISCHARGE, INJUNCTION
## AND SUBORDINATION RIGHTS

## A.     Discharge of Claims

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan shall be in exchange for and in complete satisfaction and discharge of all Claims, and including any interest accrued on Claims

from the Petition Date. Except as provided in the Plan or in the Confirmation Order, Confirmation shall, as of the Effective Date, discharge the Debtors from all Claims or other liabilities that arose on or before the Effective Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of a Claim based on such debt has accepted the Plan.

In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination, as of the Effective Date, of a discharge of all Claims and other debts and liabilities against the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against a Debtor at any time, to the extent that such judgment relates to a discharged Claim, debt or liability. Nothing contained in the foregoing discharge shall, to the full extent provided under section 524(e) of the Bankruptcy Code, affect the liability of any other Entity on, or the property of any other Entity for, any debt of the Debtors that is discharged under this Plan.

Notwithstanding any provision of the Plan to the contrary, Confirmation shall not discharge (1) the Debtors from any debt of a kind specified in 11 U.S.C. § 1141(d)(6) or (2) the Debtors' obligations under their settlement agreements with the Settled Environmental Insurers.

## B.    Injunctions

### 1.    General Injunctions

#### a.    No Actions on Account of Discharged Claims

Except as provided in the Plan, including in Section IV.O.1., or the Confirmation Order, as of the Effective Date, all Entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged pursuant to the terms of the Plan shall be permanently enjoined from taking any of the following actions on account of any such discharged Claim, debt or liability:  (i) commencing or continuing in any manner any action or other proceeding against any Debtor or Reorganized Debtor, or any of its property, other than to enforce any right to a Distribution pursuant to the Plan; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against any Debtor or Reorganized Debtor, or any of its property, other than as permitted pursuant to (i) above; (iii) creating, perfecting or enforcing any lien or encumbrance against any Debtor or Reorganized Debtor, or any of its property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any Debtor or Reorganized Debtor; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

#### b.    No Actions on Account of Released Claims

Except as provided in the Plan, including in Section IV.O.1., or the Confirmation Order, as of the Effective Date, all Entities that have held, currently hold or may hold any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities that are released pursuant to the Plan shall be permanently enjoined from taking any of

the following actions against any released Entity, or any of its property, on account of such released claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released Entity; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

### c.  Recipients of Distribution Deemed to Consent

By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim receiving Distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in Section IX.B.

### 2.  Asbestos Permanent Channeling Injunction

### a.  Asbestos Permanent Channeling Injunction

**Pursuant to section 524(g) of the Bankruptcy Code, and except as otherwise provided in the Plan, including Section IV.O.1., the Plan and the Confirmation Order shall permanently and forever stay, restrain and enjoin any Entity from taking any actions against any Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Asbestos Personal Injury Claim, all of which shall be channeled to the Asbestos Personal Injury Trust for resolution as set forth in the Asbestos Personal Injury Trust Agreement and the related Asbestos Personal Injury Trust Distribution Procedures, including permanently and forever staying, restraining and enjoining any Entity from any of the following:**

**1.  commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including a judicial, arbitral, administrative or other proceeding) in any forum against any Protected Party or any property or interests in property of any Protected Party;**

**2.  enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against any Protected Party or any property or interests in property of any Protected Party;**

**3.  creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party;**

**4.  setting off, seeking reimbursement of, contribution from or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and**

**5.** proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Personal Injury Trust Documents, except in compliance therewith.

For the avoidance of doubt, the Asbestos Permanent Channeling Injunction shall not affect any claims or causes of action under Sections IV.L.1. and IV.L.2. hereof.

**3.** **Environmental Injunction**

In consideration of the undertakings of the Settled Environmental Insurers, and other consideration, and pursuant to their respective settlements with the Debtors and to preserve and promote further the agreements between and among the Debtors and any Settled Environmental Insurers, and pursuant to section 105 of the Bankruptcy Code:

**a.** any and all Environmental Claims shall be treated, administered, determined and resolved under the procedures and protocols under the Plan as the sole and exclusive remedy with respect to Environmental Claims; and

**b.** all Entities are hereby permanently stayed, enjoined, barred and restrained from doing any of the following against the Settled Environmental Insurers:

**(i)** commencing or continuing in any manner any action or other proceeding of any kind with respect to any Environmental Claim against any of the Settled Environmental Insurers or against the property of any of Settled Environmental Insurers;

**(ii)** commencing or continuing in any manner any contribution, indemnity or other equitable action or other similar proceeding relating to the environmental settlements made in this bankruptcy case against any of the Settled Environmental Insurers or against the property of any of Settled Environmental Insurers;

**(iii)** enforcing, attaching, collecting or recovering, by any manner or means, from any of the Settled Environmental Insurers, or the property of any of the Settled Environmental Insurers, any judgment, award, decree, payment or order relating to any Environmental Claim against any of the Settled Environmental Insurers; and

**(iv)** creating, perfecting or enforcing any lien of any kind relating to any Environmental Claim against any of the Settled Environmental Insurers, or the property of the Settled Environmental Insurers.

The injunction set forth set forth in this Section IX.B.3 (the "Environmental Injunction") is an integral part of the Plan and is essential to the Plan's consummation and implementation. The Environmental Injunction shall inure to the benefit of the Settled Environmental Insurers, but shall not apply to any Debtor or Reorganized Debtor.

**For the avoidance of doubt, the Environmental Injunction shall not apply to Asbestos Personal Injury Claims, or to Asbestos Insurance Policy Claims arising from the payment of, or obligations arising from, Asbestos Personal Injury Claims.**

### C.      Subordination Rights

The classification and manner of satisfying Claims and Interests under the Plan does not take into consideration subordination rights, and nothing in the Plan or Confirmation Order shall affect any subordination rights that a holder of a Claim may have with respect to any Distribution to be made pursuant to the Plan, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code or otherwise.

## ARTICLE X

## RETENTION OF JURISDICTION

### A.      Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Reorganization Cases after the Effective Date as is legally permissible, including jurisdiction to:

1.      Hear and determine any proceeding that involves the validity, applicability, construction, enforceability or modification of the Asbestos Permanent Channeling Injunction or the application of section 524(g) of the Bankruptcy Code to the Asbestos Permanent Channeling Injunction;

2.      Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (other than Asbestos Personal Injury Claims) or Interest, including the resolution of any request for payment of any Administrative Claim or the resolution of any objections to the allowance, priority or classification of Claims (other than Asbestos Personal Injury Claims) or Interests;

3.      Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

4.      Resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor or Reorganized Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any Cure Amount Claims;

5.      Ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6.      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any application, involving the Debtors that may

be pending on the Effective Date or brought thereafter, including issues related to the Insolvent Insurers Proceeds Dispute;

7.　　　　Enter such orders as may be necessary or appropriate to effectuate, implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements and documents entered into or delivered in connection with the Plan or the Confirmation Order;

8.　　　　Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

9.　　　　Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code;

10.　　　　Issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the effectuation, implementation, consummation or enforcement of the Plan or the Confirmation Order;

11.　　　　Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or Distributions pursuant to the Plan are enjoined or stayed;

12.　　　　Determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan or the Confirmation Order;

13.　　　　Determine matters concerning state, local and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for Taxes;

14.　　　　Adjudicate any claims or causes of action under Section IV.L.2;

15.　　　　Enforce remedies upon any default under the Plan;

16.　　　　Hear and determine any other matters not inconsistent with the Bankruptcy Code; and

17.　　　　Enter a final decree closing the Reorganization Cases.

## B.　　Consent to Jurisdiction

Upon default under the Plan, the Parties consent to the jurisdiction of the Bankruptcy Court, and agree that it shall be the preferred forum for all proceedings relating to any such default.

### C. Jurisdiction of Litigating Asbestos Personal Injury Claims

Notwithstanding anything to the contrary in this Article X, the resolution of Asbestos Personal Injury Claims and the forum in which such claims will be litigated shall be governed by and in accordance with the Asbestos Personal Injury Trust Distribution Procedures.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

### A. DEQ Settlement

The DEQ Settlement, as defined herein and subject to the terms and conditions thereof, is incorporated in full in the Plan and shall remain in full force and effect following entry of the Confirmation Order, including the mutual general release among DEQ, Lehigh Hanson, certain affiliates of Lehigh Hanson and the Debtors. For the avoidance of doubt, in the event of any inconsistency between the DEQ Settlement, as defined herein, and any other provision of the Plan, the terms and conditions of the DEQ Settlement shall govern.

### B. Dissolution of the Creditors' Committee and the Asbestos Personal Injury Committee

On the Effective Date, the Creditors' Committee and the Asbestos Personal Injury Committee shall dissolve and the respective members of such committees shall be released and discharged from all duties and obligations arising from or related to the Reorganization Cases. The members of and the Professionals retained by the Creditors' Committee or the Asbestos Personal Injury Committee or by the Future Claimants' Representative shall not be entitled to assert any Fee Claim for any services rendered or expenses incurred after the Effective Date, except for services rendered and expenses incurred in connection with (i) any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Section III.A.1.d.ii.A and (ii) participation in an appeal from the Confirmation Order, but only to the extent the appeal raises issues specific to the treatment of creditors represented by the respective committee or Future Claimants' Representative.

Effective as of the Effective Date, the TAC shall succeed to, and exclusively hold, the attorney-client privilege and any other privilege held by the Asbestos Personal Injury Committee and shall enjoy the work product protections that were applicable or available to the Asbestos Personal Injury Committee before its dissolution. Further, the TAC shall be a party in interest on and after the Effective Date within the meaning of section 1109(b) of the Bankruptcy Code.

### C. Limitation of Liability

#### 1. Liability for Actions in Connection with the Reorganization Cases

The Debtors, the Reorganized Debtors, the Future Claimants' Representative, the Asbestos Personal Injury Committee, the Creditors' Committee, the DIP Lender, Lehigh Hanson, DEQ, and their respective directors, officers, employees, affiliates, subsidiaries, predecessors,

successors, members, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives and agents, acting in such capacity, shall neither have nor incur any liability to any Entity for any act taken or omitted to be taken in connection with, related to or arising out of the Reorganization Cases or the consideration, formulation, preparation, dissemination, Confirmation, effectuation, implementation or consummation of the Plan or Exhibits or any transaction proposed in connection with the Reorganization Cases or any contract, instrument, release or other agreement or document entered into or delivered, or any other act taken or omitted to be taken, in connection therewith; provided, however, that the foregoing provisions of this Section XI.C.1. shall have no effect on: (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; or (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

### 2. Rights of Action in Connection with the Reorganization Cases

Notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in interest and none of their respective directors, officers, employees, affiliates, subsidiaries, predecessors, successors, members, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives or agents shall have any right of action against any of the Debtors, the Reorganized Debtors, the Creditors' Committee, the Future Claimants' Representative, the Asbestos Personal Injury Committee, the DIP Lender, Lehigh Hanson, and DEQ or any of their respective directors, officers, employees, affiliates, subsidiaries, predecessors, successors, members, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives and agents, acting in such capacity, for any act or omission in connection with, relating to or arising out of the Reorganization Cases or the consideration, formulation, preparation, dissemination, Confirmation, effectuation, implementation or consummation of the Plan or any transaction or document created or entered into, or any other act taken or omitted to be taken, in connection therewith, except for: (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; or (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

### D. Modification of the Plan and Exhibits

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Parties reserve the right to alter, amend or modify the Plan and the Exhibits to the Plan at any time before its substantial consummation.

### E. Headings

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**F.      Severability**

After the Effective Date, any provision of the Plan, any Exhibit hereto, any instrument, agreement or other document executed in connection with the Plan, or the Confirmation Order, that is determined to be prohibited, unenforceable, or invalid by a court of competent jurisdiction or any other governmental Entity with appropriate jurisdiction may be deemed ineffective as to any jurisdiction in which such provision is prohibited, unenforceable, or invalidated to the extent of such prohibition, unenforceability, or invalidation, without invalidating the effectiveness of the remaining provisions of the Plan, the Plan Exhibits, any instruments, agreements, or other documents executed in connection with the Plan, or the Confirmation Order or affecting the validity or enforceability of such provision and such remaining provisions in any other jurisdiction.

**G.      Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**H.      Service of Certain Plan Exhibits**

Certain Exhibits are not being Filed or served with copies of the Plan. The Debtors shall File such Exhibits no later than ten (10) days before the deadline to object to Confirmation. Once Filed, the Debtors shall make available for review the relevant Exhibits on their web site at https://cases.primeclerk.com/kaisergypsum.

**I.      Effective Date Actions Simultaneous**

Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. Actions required to be taken after the Effective Date or as soon as thereafter as is reasonably practicable shall be deemed to have been taken on the Effective Date.

**J.      Asbestos Personal Injury Trust Annual Report**

Notwithstanding the closing of the Reorganization Cases under section 350 of the Bankruptcy Code, the Clerk of the Bankruptcy Court shall accept for filing the Asbestos Personal Injury Trust's annual report without the requirement that any party in interest file a request to reopen the case.

**K.      Service of Documents**

Any pleading, notice or other document required by the Plan or Confirmation Order to be served on or delivered to the Debtors, the Reorganized Debtors, the Creditors' Committee, the Future Claimants' Representative, the Asbestos Personal Injury Committee or the Bankruptcy Administrator must be sent by overnight delivery service, courier service or messenger to:

1.      **The Debtors and the Reorganized Debtors**

C. Richard Rayburn, Jr.
John R. Miller, Jr.
RAYBURN COOPER & DURHAM, P.A.
1200 Carillon
227 West Trade Street
Charlotte, North Carolina 28202

     -and-

Gregory M. Gordon
Amanda Rush
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201

     -and-

Paul M. Green
JONES DAY
717 Texas, Suite 3300
Houston, Texas  77002

2.      **Future Claimants' Representative**

Edwin Harron
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801

     - and-

Felton Parrish
HULL & CHANDLER
1001 Morehead Square Drive, Suite 450
Charlotte, North Carolina 28203

3.      **The Asbestos Personal Injury Committee**

Kevin Maclay
Todd E. Phillips
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle N.W., Suite 1100
Washington, D.C. 20005

     - and-

Sally Higgins
HIGGINS & OWENS
524 East Boulevard
Charlotte, North Carolina 28203

**4.  The Creditors' Committee**

Ira L. Herman
BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020

-and-

Jeffrey Rhodes
BLANK ROME LLP
1825 Eye Street NW
Washington, DC 20006

-and-

Andrew T. Houston
MOON WRIGHT & HOUSTON, PLLC,
121 W. Trade Street, Suite 1950
Charlotte, North Carolina 28202

**5.  The Bankruptcy Administrator for the Western District of North Carolina**

Alexandria Kenny
402 West Trade Street, Suite #200
Charlotte, North Carolina 28202

**6.  Lehigh Hanson, Inc.**

Ben Hawfield, Jr.
Hillary B. Crabtree
MOORE &VAN ALLEN
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202

Dated:  July 20, 2020

Respectfully submitted,


HANSON PERMANENTE CEMENT
COMPANY


/s/ Charles E. McChesney II
Charles E. McChesney II
Vice President, Secretary and Director

ASBESTOS PERSONAL INJURY
COMMITTEE

/s/ Alan R. Brayton
Alan R. Brayton


FUTURE CLAIMANTS'
REPRESENTATIVE

/s/ Lawrence Fitzpatrick
Lawrence Fitzpatrick

KAISER GYPSUM COMPANY, INC.


/s/ Charles E. McChesney II

Charles E. McChesney II
Vice President, Secretary and Director


LEHIGH HANSON, INC.


/s/ Carol L. Lowry
Carol L. Lowry
Vice President and General Counsel

## EXHIBIT B

**MODIFICATIONS TO THE JOINT PLAN OF REORGANIZATION OF KAISER GYPSUM COMPANY, INC. AND HANSON PERMANENTE CEMENT, INC.**

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

|  |  |  |
|---|---|---|
| **In re:** | : | **Chapter 11** |
|  | : |  |
| **Kaiser Gypsum Company, Inc.,** *et al.,* | : | **Case No. 16-31602 (JCW)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |

|  |  |  |
|---|---|---|
|  | : |  |
| **Kaiser Gypsum Company, Inc.** | : | **Case No. 16-31602 (JCW)** |
| **Hanson Permanente Cement, Inc.** | : | **Case No. 16-31614 (JCW)** |
|  | : |  |
|  | : | **THIRD AMENDED JOINT PLAN OF** |
|  | : | **REORGANIZATION OF KAISER** |
|  | : | **GYPSUM COMPANY, INC. AND** |
|  | : | **HANSON PERMANENTE CEMENT, INC.** |
|  | : |  |

Edwin Harron
Sharon Zieg
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
    - and -
Felton Parrish
HULL & CHANDLER
1001 Morehead Square Drive, Suite 450
Charlotte, North Carolina 28203

ATTORNEYS FOR FUTURE CLAIMANTS'
REPRESENTATIVE

Kevin C. Maclay
Todd E. Phillips
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle N.W., Suite 1100
Washington, D.C. 20005
    - and -
Sally Higgins
HIGGINS & OWENS,
524 East Boulevard
Charlotte, North Carolina 28203

ATTORNEYS FOR OFFICIAL COMMITTEE OF
ASBESTOS PERSONAL INJURY CLAIMANTS

Ben Hawfield, Jr.
MOORE & VAN ALLEN
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202

ATTORNEYS FOR LEHIGH HANSON, INC.

Dated: ~~October 14~~July 20, ~~2019~~2020

A. Richard Rayburn, Jr. (NC 6357)
John R. Miller, Jr. (NC 28689)
RAYBURN COOPER & DURHAM, P.A.
1200 Carillon
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 334-0891
Facsimile: (704) 377-1897
E-mail: rrayburn@rcdlaw.net
       jmiller@rcdlaw.net
    -and-
Gregory M. Gordon (TX 08435300)
Amanda S. Rush (TX 24079422)
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
E-mail: gmgordon@jonesday.com
       asrush@jonesday.com
    -and-
Paul M. Green (TX 24059854)
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
E-mail: pmgreen@jonesday.com

ATTORNEYS FOR DEBTORS

NAI-1505596661v915

# TABLE OF CONTENTS

ARTICLE I    DEFINED TERMS, RULES OF INTERPRETATION AND
COMPUTATION OF TIME ................................................................1

                                        A.      Defined Terms ..1

    B.     Rules of Interpretation and Computation of Time ......................18

                          1.     Rules of Interpretation ..18

        2.     Computation of Time ..................................~~18~~19

ARTICLE II   CLASSES OF CLAIMS AND INTERESTS ................................19

ARTICLE III  TREATMENT OF CLAIMS AND INTERESTS ......................~~19~~20

    A.     Unclassified Claims ..........................................................~~19~~20

        1.     Payment of Administrative Claims ............................~~19~~20

            a.     Administrative Claims in General ..................~~19~~20

                        b.     Statutory Fees ...................................20

                        c.     Ordinary Course Liabilities ....................20

            d.     Bar Dates for Administrative Claims ...................20

        2.     Payment of Priority Tax Claims ................................21

            a.     Priority Tax Claims in General .........................21

            b.     Other Provisions Concerning Treatment of Priority Tax
Claims ....................................................................21

    B.     Classified Claims ...............................................................~~21~~22

        1.     Class 1 Claims (Priority Claims) ..............................~~21~~22

        2.     Class 2 Claims (Secured Claims) ..............................~~21~~22

        3.     Class 3 Claims (General Unsecured Claims) ...................22

        4.     Class 4 Claims (Asbestos Personal Injury Claims) ............22

        5.     Class 5 Claims (Surety Bond Claims) ...........................23

        6.     Class 6 Claims (Intercompany Claims) ..........................23

        7.     Class 7 Interests (Stock Interests) ...............................23

ARTICLE IV  MEANS FOR IMPLEMENTATION OF THE PLAN ...................23

    A.     Continued Corporate Existence and Vesting of Assets in the Reorganized
Debtors .........................................................................23

    B.     Restructuring Transactions ..............................................~~23~~24

    C.     Transfers and Lease Transactions .........................................24

D.     Corporate Governance, Directors and Officers, Employment-Related Agreements and Compensation Programs and Corporate Action ............ 24

     1.     Certificates of Incorporation and By-Laws of the Reorganized Debtors ............ 24

     2.     Directors and Officers of the Reorganized Debtors ............ ~~24~~25

     3.     Employee Arrangements of the Reorganized Debtors ............ ~~24~~25

           4.     Corporate Action ............ 25

E.     Obtaining Cash for Plan Distributions ............ 25

F.     Creation of Asbestos Personal Injury Trust ............ ~~25~~26

G.     Authority of the Asbestos Personal Injury Trust ............ 26

H.     Appointment of Asbestos Personal Injury Trustee and Delaware Trustee ............ 26

I.     Appointment of Future Claimants' Representative and TAC Members ............ 26

J.     Document Repository ............ ~~26~~27

K.     Transfers of Property to and Assumption of Certain Liabilities by the Asbestos Personal Injury Trust ............ ~~27~~28

     1.     Expenses of the Asbestos Personal Injury Trust ............ ~~27~~28

     2.     Funding the Asbestos Personal Injury Trust ............ ~~27~~28

           a.     Initial Payment ............ 28

           b.     Payment Note ............ 28

           c.     Phase 1 Claims ............ 28

           d.     Asbestos Personal Injury Insurance Assets ............ 28

     3.     Assumption of Certain Liability and Responsibility by the Asbestos Personal Injury Trust ............ ~~28~~29

     4.     Indemnification by the Asbestos Personal Injury Trust ............ ~~28~~29

     5.     Authority of the Debtors ............ 29

L.     Cooperation with Respect to Insurance Matters ............ 29

     1.     Obligation to Cooperate with Respect to Insurance Matters ............ 29

     2.     Enforcement of Reorganized Debtors' Obligations to Cooperate with Respect to Insurance Matters ............ 30

M.     Compromise of Insurance Policies ............ ~~32~~33

           1.     Dual Policies ............ ~~32~~33

| | | |
|---|---|---|
| 2. | Separate Limit Policies | 33 |
| 3. | Insurance Policies that Provide Coverage for Asbestos Personal Injury Claims but not for Environmental Claims | 33 |
| | a. Settlement with Truck | ~~33~~34 |
| 4. | Insurance Policies that Provide Coverage for Environmental Claims but not for Asbestos Personal Injury Claims | 35 |
| 5. | Amendment of Insurance Policy Exhibits | 35 |
| N. | Truck Obligations Regarding Deductibles | 35 |
| O. | Liquidation of Asbestos Personal Injury Claims | ~~35~~36 |
| 1. | Insured Asbestos Claims | ~~35~~36 |
| 2. | Uninsured Asbestos Claims | 36 |
| P. | Limitations On Judgment Recovery From Non-Settling Asbestos Insurers | ~~36~~37 |
| Q. | Insurance Neutrality | 37 |
| R. | Preservation of Rights of Action; Settlement of Claims and Releases | ~~37~~38 |
| 1. | Preservation of Rights of Action by the Reorganized Debtors | ~~37~~38 |
| 2. | Settlement of Certain Estate Claims | ~~37~~38 |
| 3. | Releases | ~~38~~39 |
| | a. General Releases of Debtors and Reorganized Debtors | ~~38~~39 |
| | b. Release by the Debtors, Reorganized Debtors and Lehigh Hanson | 39 |
| | c. General Releases by Holders of Claims or Interests | ~~39~~40 |
| | d. Injunction Related to Releases | 40 |
| S. | Release of Encumbrances | ~~40~~41 |
| T. | Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes | ~~40~~41 |
| U. | Determination of the Insolvent Insurers Proceeds Dispute | 41 |
| V. | Compliance with QSF Regulations | 41 |
| W. | Surety Bond Obligations | 41 |
| ARTICLE V | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 42 |
| A. | Executory Contracts and Unexpired Leases to Be Assumed | 42 |

|   |   |   |   |
|---|---|---|---|
| | 1. | Assumption Generally | 42 |
| | 2. | Assumptions of Executory Contracts and Unexpired Leases | 42 |
| | 3. | Approval of Assumptions and Assumption Procedures | ~~42~~43 |
| B. | | Payments Related to the Assumption of Executory Contracts and Unexpired Leases | ~~43~~44 |
| C. | | Executory Contracts and Unexpired Leases to Be Rejected and Rejection Procedures | 44 |
| D. | | Obligations to Indemnify Directors, Officers and Employees | 45 |
| E. | | Contracts and Leases Entered Into After the Petition Date | 45 |
| F. | | Insurance Policies | 45 |
| | 1. | Assumed Insurance Policies | 45 |
| | 2. | Reservation of Rights | 46 |

ARTICLE VI  PROVISIONS GOVERNING DISTRIBUTIONS ........ 46

| | | | |
|---|---|---|---|
| A. | | Distributions for Claims Allowed as of the Effective Date | 46 |
| B. | | General Unsecured Claims Escrows | 46 |
| ~~B~~C. | | Method of Distributions to Holders of Claims | ~~46~~47 |
| ~~C~~D. | | Compensation and Reimbursement for Services Related to Distributions | ~~46~~47 |

~~D~~E. Delivery of Distributions and Undeliverable or Unclaimed Distributions ........ 47

| | | | |
|---|---|---|---|
| | 1. | Delivery of Distributions | 47 |
| | 2. | Undeliverable Distributions Held by Disbursing Agents | 47 |
| | | a. Holding and Investment of Undeliverable Distributions | 47 |
| | | b. After Distributions Become Deliverable | ~~47~~48 |
| | | c. Failure to Claim Undeliverable Distributions | ~~47~~48 |
| ~~E~~F. | | Distribution Record Date | 48 |
| | 1. | No Recognition of Transfers after the Distribution Record Date | 48 |
| | 2. | Treatment of Certain Transfers | 48 |
| ~~F~~G. | | Means of Cash Payments | 48 |
| ~~G~~H. | | Timing and Calculation of Amounts to Be Distributed | ~~48~~49 |
| | 1. | Timing of Distributions Under the Plan | ~~48~~49 |
| | 2. | Allowed Claims | ~~48~~49 |

3. Compliance with Tax Requirements .................................................. 49

     a. Withholding and Reporting ........... 49

     b. Backup Withholding ................. 49

     c. Obligations of Distribution Recipients ........ ~~49~~50

H.I. Setoffs ........................................................... 50

I.J. Allocation of Payments ......................................... 50

ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS ............... ~~50~~51

  A. Prosecution of Objections to Claims ..................... ~~50~~51

     1. Objections to Claims ~~50~~51

    2. Authority to Prosecute Objections ........... ~~50~~51

    3. Authority to Amend Schedules ..................... 51

  B. Treatment of Disputed Claims ........................... 51

  C. Distributions on Account of Disputed Claims Once Allowed ........ 51

ARTICLE VIII CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN ................... ~~51~~52

  A. Conditions to Confirmation ............................. ~~51~~52

  B. Conditions to the Effective Date ...................... ~~55~~56

  C. Waiver of Conditions to Confirmation or the Effective Date ......... ~~56~~57

  D. Effect of Nonoccurrence of Conditions to the Effective Date ........ ~~56~~57

ARTICLE IX DISCHARGE, INJUNCTION AND SUBORDINATION RIGHTS ........... 57

  A. Discharge of Claims ................................... 57

     B. Injunctions ............ ~~57~~58

     1. General Injunctions ........... ~~57~~58

     a. No Actions on Account of Discharged Claims ......... ~~57~~58

     b. No Actions on Account of Released Claims ............ 58

     c. Recipients of Distribution Deemed to Consent ........ ~~58~~59

    2. Asbestos Permanent Channeling Injunction ........... ~~58~~59

     a. Asbestos Permanent Channeling Injunction ......... ~~58~~59

    3. Environmental Injunction ....................... ~~59~~60

  C. Subordination Rights ................................. ~~60~~61

Case 3:20-cv-00537-GCM   Document 52   Filed 07/28/21   Page 118 of 206

ARTICLE X    RETENTION OF JURISDICTION ................................................. ~~60~~61

    A.    Retention of Jurisdiction .................................................. ~~60~~61

    B.    Consent to Jurisdiction ..................................................... 62

    C.    Jurisdiction of Litigating Asbestos Personal Injury Claims .......... ~~62~~63

ARTICLE XI    MISCELLANEOUS PROVISIONS ................................................ ~~62~~63

    A.    DEQ Settlement ............................................................... ~~62~~63

    B.    Dissolution of the Creditors' Committee and the Asbestos Personal Injury Committee .................................................. ~~62~~63

    C.    Limitation of Liability ...................................................... 63

        1.    Liability for Actions in Connection with the Reorganization Cases ..... 63

        2.    Rights of Action in Connection with the Reorganization Cases .......... ~~63~~64

    D.    Modification of the Plan and Exhibits .................................... 64

                E.    Headings ........... 64

                F.    Severability ......... ~~64~~65

    G.    Successors and Assigns ..................................................... ~~64~~65

    H.    Service of Certain Plan Exhibits .......................................... ~~64~~65

    I.    Effective Date Actions Simultaneous ..................................... ~~64~~65

    J.    Asbestos Personal Injury Trust Annual Report ........................ 65

    K.    Service of Documents ...................................................... 65

        1.    The Debtors and the Reorganized Debtors ...................... ~~65~~66

        2.    Future Claimants' Representative ................................. 66

        3.    The Asbestos Personal Injury Committee ....................... 66

        4.    The Creditors' Committee ......................................... ~~66~~67

        5.    The Bankruptcy Administrator for the Western District of North Carolina ................................................... 67

                6.    Lehigh Hanson, Inc. ......... 67

## TABLE OF EXHIBITS[1]

Exhibit I.A.6          Asbestos Insurance Policies

Exhibit I.A.16         Asbestos Personal Injury Trust Agreement

Exhibit I.A.19         Asbestos Personal Injury Trust Distribution Procedures

Exhibit I.A.47         Delaware Trustee

Exhibit I.A.60         Dual Policies

Exhibit I.A.~~92~~98     Form of Payment Note

Exhibit I.A.~~102~~108   List of Protected Affiliates

Exhibit I.A.~~113~~119   Separate Limit Policies

Exhibit I.A.~~114~~120   List of Settling Asbestos Insurance Companies

Exhibit IV.B           Description of Certain Restructuring Transactions

Exhibit IV.H           Trustee of Asbestos Personal Injury Trust

Exhibit IV.M.3         List of Asbestos-Only Policies

Exhibit IV.M.4         List of Environmental-Only Policies

Exhibit V.C            Schedule of Executory Contracts and Unexpired Leases to Be Rejected

---

[1]     To the extent not attached to and Filed with the Plan, Plan Exhibits shall be Filed and made available for review on the web site of Prime Clerk LLC ("Prime Clerk"), the Debtors' claims and noticing agent, at https://cases.primeclerk.com/kaisergypsum no later than ten (10) days before the deadline to object to confirmation of the Plan. The Debtors also will serve such Exhibits on their then current Bankruptcy Rule 2002 service list no later than ten (10) days before the deadline to object to confirmation of the Plan. The Debtors reserve the right to modify, amend, supplement, restate or withdraw any of the Exhibits after they are Filed. The Debtors shall File and shall make available on Prime Clerk's web site all modified, amended, supplemented or restated Exhibits as promptly as possible.

# INTRODUCTION

The Parties propose the following joint plan of reorganization for the resolution of the outstanding claims and demands against and equity interests in the Debtors pursuant to sections 524(g) and 1121(a) of title 11 of the United States Code. The Parties are co-proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code, and the Plan is supported by the following principal stakeholders, or representatives of such stakeholders, in the chapter 11 cases: the Debtors, the Debtors' indirect parent company, Lehigh Hanson, Inc., the Asbestos Personal Injury Committee and the Future Claimants' Representative. Reference is made to the Debtors' disclosure statement, filed contemporaneously with the Plan, for a discussion of the history, businesses, results of operations, historical financial information, projections and properties of the Debtors, and for a summary and analysis of the Plan. There also are other agreements and documents, which are or will be Filed with the Bankruptcy Court, that are referenced in the Plan or the Debtors' Disclosure Statement and that will be available for review.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

### A.    Defined Terms

As used in the Plan, capitalized terms have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.    **"Administrative Claim"** means a Claim for costs and expenses of administration allowed under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the respective Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services and payments for leased equipment and premises), including Claims under the DIP Credit Agreement; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 330(a), 331 or 503 of the Bankruptcy Code, including Fee Claims; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

2.    **"Affiliate"** means an "affiliate," as defined in section 101(2)(B) of the Bankruptcy Code, of the Debtors.

3. **"Allowed Claim"** means:

      a. a Claim (other than an Asbestos Personal Injury Claim) that (i) has been listed by a particular Debtor on its Schedules as other than disputed, contingent or unliquidated and (ii) is not a Disputed Claim;

      b. a Timely Claim (other than an Asbestos Personal Injury Claim) that is not a Disputed Claim;

      c. a Timely Claim (other than an Asbestos Personal Injury Claim) that is liquidated and allowed: (i) in any Stipulation of Amount and Nature of Claim executed by the Debtors or Reorganized Debtors and Claim holder; (ii) in any contract, instrument or other agreement entered into in connection with the Plan and, if prior to the Effective Date, approved by the Bankruptcy Court; (iii) in a Final Order; or (iv) pursuant to the terms of the Plan; or

      d. a Claim (other than an Asbestos Personal Injury Claim) listed by a particular Debtor on its Schedules as other than disputed, contingent or unliquidated or a Timely Claim that the Debtors or Reorganized Debtors determine prior to the Claims Objection Bar Date (i) will not be subject to an objection or to an amendment to the Schedules and (ii) will be satisfied in accordance with the terms of the Plan on or after the Effective Date.

4. **"Allowed . . . Claim"** means an Allowed Claim in the particular Class or category specified.

5. **"Asbestos Coverage Litigation"** means the case captioned *Truck Insurance Exchange v. Kaiser Cement and Gypsum Corporation*, Court of Appeal of the State of California, Second Appellate District, Court of Appeal No. B278091, Superior Court No. BC249550.

6. **"Asbestos Insurance Policies"** means those insurance policies alleged by HPCI or any other party in the Asbestos Coverage Litigation and described on Exhibit I.A.6, as well as any other insurance policy of the Debtors providing, or potentially providing, for coverage for Asbestos Personal Injury Claims.

7. **"Asbestos Insurance Policy Claim"** means any claim against any Asbestos Insurer based on, arising under, or related to any Asbestos Insurance Policy or settlement related to any Asbestos Insurance Policy, including any claim for contribution, reimbursement, indemnity or subrogation, or bad faith refusal to settle related to any Asbestos Insurance Policy.

8. **"Asbestos Insurer"** means any Entity that has issued an Asbestos Insurance Policy and each of its affiliates, predecessors in interest, and agents, but only in relation to such Asbestos Insurance Policies, including those insurers who issued, subscribed to, or have acquired the obligations of an issuing or subscribing insurer through assignment, conveyance, merger, acquisition or other legal theory.

**9.**    **"Asbestos Insurer Cooperation Obligations"** means, collectively, the Assistance and Cooperation, Inspection and Audit, and Notice of Occurrence provisions set out in the Asbestos Insurance Policies.

**10.**    **"Asbestos Permanent Channeling Injunction"** means an order or orders of the Bankruptcy Court or the District Court, or the Bankruptcy Court and the District Court acting jointly and, if the Confirmation Order is entered by the Bankruptcy Court, affirmed by the District Court, in accordance with, and pursuant to, section 524(g) of the Bankruptcy Code permanently and forever staying, restraining and enjoining any Entity from taking any actions against any Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Asbestos Personal Injury Claim, all of which shall be channeled to the Asbestos Personal Injury Trust for resolution as set forth in the Asbestos Personal Injury Trust Agreement and the related Asbestos Personal Injury Trust Distribution Procedures.

**11.**    **"Asbestos Personal Injury Claim"** means any and all Debtor Claims on account of or relating to death, bodily injury, sickness, disease, emotional distress, fear of cancer, medical monitoring or other personal injuries whatsoever (whether physical, emotional or otherwise) arising out of, based upon or resulting from, directly or indirectly, in whole or in part, Conduct, to the extent arising, directly or indirectly, from Conduct (including Conduct of any other Entity for whose Conduct the Debtors have or are alleged to have liability, but in all cases only to the extent of any of the Debtors' liability for such Conduct), including without limitation (a) any and all Asbestos Personal Injury Indirect Claims and (b) any and all Debtor Claims under agreements entered into by or on behalf of the Debtors prior to the Petition Date in settlement of Asbestos Personal Injury Claims. For the purpose of this definition, Asbestos Personal Injury Claims shall not include any claim by any present or former employee of any of the Debtors for benefits under a policy of workers' compensation insurance or for benefits under any state or federal workers' compensation statute or other statute providing compensation to an employee from an employer. For avoidance of doubt, an Asbestos Personal Injury Claim excludes any liability of the Protected Parties that is not liability of the Debtors, including, but not limited to, any liability of the Protected Parties (other than the Debtors) for their own asbestos or asbestos-containing products.

**12.**    **"Asbestos Personal Injury Committee"** means the Official Committee of Asbestos Personal Injury Claimants appointed pursuant to an order of the Bankruptcy Court entered on October 19, 2016 in the Reorganization Cases pursuant to section 1102 of the Bankruptcy Code and any duly appointed successors, as the same may be reconstituted from time to time.  The members as of the date of the Plan are:  Cleophus Rice, c/o Armand J. Volta, Jr., The Law Offices of Peter G. Angelos; Larry Eugene Watson, c/o Alan R. Brayton, Brayton Purcell LLP; Jerry Gabrel, c/o John D. Cooney, Cooney & Conway; Bernard Kunes, II, Individually and as Special Administrator of the Estate of Bernard Kunes, Deceased, c/o Beth Gori, Gori Julian & Associates, P.C.; Margaret Tocco, Individually and as Special Administrator of the Estate of Peter Tocco, Deceased, c/o Perry J. Browder, Simmons Hanly Conroy LLC; Ronald Earl Auen and Sherrie Auen, c/o Steven Kazan, Kazan, McClain, Satterley & Greenwood; Stanley J. Anderson c/o Connie J. Anderson – POA, c/o James L. Ferraro, Kelley & Ferraro, LLP; Lauren Lougher, as Administratrix of the Estate of John Lougher, Deceased, c/o Joseph W. Belluck, Belluck & Fox, LLP; Marta Poling-Goldenne, As Successor-In-Interest to David Poling-Goldenne, Deceased c/o Peter A. Kraus, Waters & Kraus, LLP; Patricia Hoff, Individually

and as Personal Representative of David Hoff, Deceased, c/o Matthew P. Bergman, Bergman Draper Ladenburg, PLLC; Lois Annette Beach, c/o Joseph F. Rice, Motley Rice LLC. The committee is chaired by Mr. Cooney.

13. **"Asbestos Personal Injury Indirect Claim"** means any and all Debtor Claims asserted by a party that is not an Asbestos Insurer for contribution, reimbursement, subrogation or indemnification, or any other indirect or derivative recovery, on account of or with respect to any Asbestos Personal Injury Claim. Notwithstanding the foregoing, any Protected Party Indemnification Claim shall not be deemed to be or treated as an Asbestos Personal Injury Indirect Claim or an Asbestos Personal Injury Claim, and the Asbestos Personal Injury Trust shall pay such claims in accordance with the terms of the Asbestos Personal Injury Trust Documents and the Plan.

14. **"Asbestos Personal Injury Insurance Assets"** ~~mean~~means (a) all of the Debtors' rights related to or arising under their Asbestos Insurance Policies (but not the policies themselves) to the fullest extent that those rights are related to coverage for Asbestos Personal Injury Claims, and (b) all claims and causes of action that the Debtors or Reorganized Debtors have, or may have in the future, against any Asbestos Insurer that are related to the Debtors' asbestos-containing products or the Asbestos Personal Injury Claims, including, but not limited to, claims or causes of action for a bad-faith refusal to settle. For the avoidance of doubt, Asbestos Personal Injury Insurance Assets include all rights to coverage and insurance proceeds under the Asbestos Insurance Policies that are related to coverage for Asbestos Personal Injury Claims, together with all rights to insurance coverage and insurance proceeds related to Asbestos Personal Injury Claims under any settlement agreements and/or other agreements or stipulations, including without limitation the Excess CIP Agreement, as well as the right, on behalf of the Debtors, to compromise with or grant a full release to one or more of the Asbestos Insurers of any such insurance rights, whether under any such policy or settlement agreement.

15. **"Asbestos Personal Injury Trust"** means the trust that is to be established pursuant to section 524(g) of the Bankruptcy Code and in accordance with the Plan, the Confirmation Order and the Asbestos Personal Injury Trust Agreement, which trust will satisfy the requirements of section 524(g) of the Bankruptcy Code and section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder.

16. **"Asbestos Personal Injury Trust Agreement"** means that certain Asbestos Personal Injury Trust Agreement, executed by the Debtors and the Asbestos Personal Injury Trustee, substantially in the form of Exhibit I.A.16.

17. **"Asbestos Personal Injury Trust Appellate Costs"** means if the Asbestos Personal Injury Trust determines to continue pursuing the Phase 1 Claims following the entry of a decision by the California Court of Appeal or, if there is a remand by that court, the Superior Court, completely resolving the Phase 1 Claims in favor of Truck, including through any further appeals or post-decision motions, all costs of pursuing the Phase 1 Appeal, including reasonable attorneys' fees and expenses incurred by the Asbestos Personal Injury Trust from that point forward.

18. **"Asbestos Personal Injury Trust Assets"** means, collectively: (a) $49.0 million in cash; (b) the Payment Note; (c) the Phase 1 Claims; and (d) the Asbestos Personal Injury Insurance Assets.

19. **"Asbestos Personal Injury Trust Distribution Procedures"** means the Asbestos Personal Injury Trust Distribution Procedures, to be implemented by the Asbestos Personal Injury Trust pursuant to the terms and conditions of the Plan and the Asbestos Personal Injury Trust Agreement governing the resolution of Asbestos Personal Injury Claims, substantially in the form of Exhibit I.A.19.

20. **"Asbestos Personal Injury Trust Documents"** means, collectively: (a) the Asbestos Personal Injury Trust Agreement; (b) the Asbestos Personal Injury Trust Distribution Procedures; and (c) the other agreements, instruments and documents governing the establishment and administration of the Asbestos Personal Injury Trust, as the same may be amended or modified from time to time, in accordance with the terms thereof.

21. **"Asbestos Personal Injury Trust Expenses"** means, as to the Asbestos Personal Injury Trust, all costs, Taxes and expenses of or imposed on such trust, including but not limited to: (a) compensation expenses of such trust; (b) legal, accounting and other professional fees and expenses of such trust; (c) other disbursements and expenses relating to the implementation and operation of such trust; and (d) Asbestos Personal Injury Trust Appellate Costs.

22. **"Asbestos Personal Injury Trust Termination Date"** means the date on which the Asbestos Personal Injury Trust terminates as set forth in the Asbestos Personal Injury Trust Agreement.

23. **"Asbestos Personal Injury Trustee"** means the person appointed to serve as trustee of the Asbestos Personal Injury Trust to administer Asbestos Personal Injury Claims pursuant to the terms of the Asbestos Personal Injury Trust Agreement, or as subsequently may be appointed pursuant to the terms of the Asbestos Personal Injury Trust Agreement.

24. **"Bankruptcy Administrator"** means the Bankruptcy Administrator for the Western District of North Carolina.

25. **"Bankruptcy Code"** means title 11 of the United States Code, as in effect on the Petition Date or thereafter amended with retroactive applicability to the Reorganization Cases.

26. **"Bankruptcy Court"** means the United States Bankruptcy Court for the Western District of North Carolina having jurisdiction over the Reorganization Cases.

27. **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended with retroactive applicability to the Reorganization Cases.

28. **"Bar Date"** means the applicable bar date by which a proof of Claim or a request for payment of an Administrative Claim must be or must have been Filed, as established by an order of the Bankruptcy Court, including the Confirmation Order.

29. **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)), the day after Thanksgiving and any date on which the Bankruptcy Court is closed by law or order.

30. **"By-Laws"** means, with respect to a Reorganized Debtor, the by-laws, regulations or other comparable document of such Reorganized Debtor, to be amended and restated in accordance with Section IV.D.1.

31. **"Certificate of Incorporation"** means, with respect to any Reorganized Debtor, the articles or certificate of incorporation or other comparable document of such Reorganized Debtor, to be amended and restated in accordance with Section IV.D.1.

32. **"Claim"** means a "claim," as defined in section 101(5) of the Bankruptcy Code, against any Debtor.

33. **"Claims Objection Bar Date"** means, for all Claims (other than Asbestos Personal Injury Claims) the latest of: (a) 120 days after the Effective Date; (b) 60 days after the Filing of a proof of Claim for such Claim; and (c) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules or an order of the Bankruptcy Court.

34. **"Class"** means a class of Claims or Interests, as described in Article II, pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

35. **"Conduct"** means the presence of or exposure to asbestos or asbestos containing products or things alleged to have been designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, or in any other way made available, or present at any premises owned, leased, occupied or operated, by either of the Debtors or any other Entity for whose products, acts, omissions, business, or operations either of the Debtors has liability or is alleged to have liability.

36. **"Confirmation"** means the entry of the Confirmation Order on the docket of the District Court.

37. **"Confirmation Date"** means the date on which the Bankruptcy Court and the District Court acting jointly, or the District Court enters the Confirmation Order on its docket.

38. **"Confirmation Hearing"** means, collectively, the hearing or hearings held by the Bankruptcy Court or the District Court on Confirmation of the Plan, as such hearing or hearings may be continued from time to time.

39. **"Confirmation Order"** means the order of the District Court, the Bankruptcy Court and the District Court acting jointly, or, if an order is entered by the Bankruptcy Court, the order of the District Court affirming the Bankruptcy Court's order, that confirms the Plan pursuant to section 1129 of the Bankruptcy Code.

**40.** **"Creditors' Committee"** means the Official Committee of Unsecured Creditors appointed pursuant to an order of the Bankruptcy Court entered on October 14, 2016 in the Reorganization Cases pursuant to section 1102 of the Bankruptcy Code and any duly appointed successors, as the same may be reconstituted from time to time. The members as of the date of the Plan are: The Boeing Company and Ash Grove Cement Company.

**41.** **"Cure Amount Claim"** means a Claim based upon a Debtor's defaults pursuant to an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by that Debtor under section 365 of the Bankruptcy Code.

**42.** **"Debtor Appellate Costs"** means the Truck Appeal Costs together with the First Stage Costs.

**43.** **"Debtor Claims"** means any and all claims, commitments, obligations, suits, judgments, damages (whether compensatory, exemplary, punitive or otherwise), Demands, debts, causes of action and liabilities of any kind or nature, of or against the Debtors or any Protected Party, to the full extent, but only to the extent, of the Debtors' liability, whether liquidated or unliquidated, fixed or contingent, direct or indirect, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, equity or otherwise, including, without limitation, under any legal or equitable theory. whatsoever, including without limitation piercing the corporate veil, alter ego, successor liability, fraudulent conveyance, fraudulent concealment, conspiracy, enterprise liability, market share, joint venture, loss of consortium, medical monitoring, negligence, failure to warn, wrongful death, survivorship, or any other legal or equitable theory.

**44.** **"Debtors"** means, together, the above-captioned debtors and debtors in possession identified on the cover page to this Plan.

**45.** **"Deductible"** means (a) $5,000 per paid Asbestos Personal Injury Claim for all paid claims with a first exposure date on or before December 31, 1975; (b) $50,000 per paid Asbestos Personal Injury Claim for all paid claims with a first exposure date between January 1, 1976 and March 31, 1981, inclusive; and (c) $100,000 per paid Asbestos Personal Injury Claim for all claims with a first exposure date between April 1, 1981 and March 31, 1983, inclusive.

**46.** **"Deficiency Claim"** means a General Unsecured Claim for the difference between (a) the aggregate amount of an Allowed Claim and (b) the value received on account of the portion of such Allowed Claim that is a Secured Claim.

**47.** **"Delaware Trustee"** means the Entity or Entities appointed to serve as the "Delaware Trustee" for the Asbestos Personal Injury Trust pursuant to Section IV.H and the terms of the Asbestos Personal Injury Trust Agreement, as identified in Exhibit I.A.47, or as subsequently may be appointed pursuant to the terms of the Asbestos Personal Injury Trust Agreement.

**48.** **"Demand"** means a "demand," as defined in section 524(g)(5) of the Bankruptcy Code, against any Debtor.

49. **"DEQ"** means the Oregon Department of Environmental Quality.

50. **"DEQ Settlement"** means the settlement among the Debtors, Lehigh Hanson and DEQ as approved by the DEQ Settlement Order and further documented in the Consent Judgment entered in the Circuit Court of the State of Oregon for the County of Columbia; provided that the DEQ Settlement shall be subject to and governed by the terms and conditions of the Consent Judgment and the Term Sheet, and that all conditions to the effectiveness of the DEQ Settlement set forth therein shall have been satisfied or waived in writing; and, provided further, that in the event of any inconsistency between the terms of the DEQ Settlement, as so defined, and the DEQ Settlement Order, the terms and conditions of the DEQ Settlement shall govern.

51. **"DEQ Settlement Order"** means the Order Approving Settlement with the Oregon Department of Environmental Quality entered by the Bankruptcy Court on May 7, 2019.

52. **"DIP Credit Agreement"** means, collectively: (a) that Debtor-in-Possession Loan and Security Agreement; (b) all amendments thereto and extensions thereof; and (c) all security, guaranty and other documents and agreements related to the documents identified in (a) and (b), including, without limitation, any termination letters.

53. **"DIP Lender"** means Lehigh Hanson, Inc., a Delaware corporation, as the lender under the DIP Credit Agreement.

54. **"Disbursing Agent"** means any of the Reorganized Debtors, in their capacity as a disbursing agent pursuant to Section VI.~~B~~C., or any Third Party Disbursing Agent, but shall not include any disbursing agent for or with respect to the Asbestos Personal Injury Trust.

55. **"Disclosure Statement"** means the written disclosure statement that relates to the Plan, including the exhibits thereto, approved by the Bankruptcy Court as containing adequate information pursuant to section 1125 of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules, as such disclosure statement may be amended, modified, or supplemented from time to time.

56. **"Disputed Claim"** means (other than with respect to an Asbestos Personal Injury Claim):

        a.      if no proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, (i) a Claim that is listed on a Debtor's Schedules as disputed, contingent or unliquidated or (ii) a Claim that is not listed on a Debtor's Schedules; or

        b.      if a Timely Claim, a Claim for which an objection, complaint or request for estimation has been Filed by the applicable Debtor, Reorganized Debtor or, prior to the Confirmation Date, any other party in interest, by the Claims Objection Bar Date, and such objection has not been withdrawn or denied by a Final Order.

57. **"Distribution"** means one or more payments or distributions under the Plan of cash, notes, interests or other property, as applicable, to the holders of Allowed Claims (other

than Asbestos Personal Injury Claims or distributions made to the Asbestos Personal Injury Trust).

**58.** **"Distribution Record Date"** means the Confirmation Date.

**59.** **"District Court"** means the United States District Court for the Western District of North Carolina having jurisdiction over these Reorganization Cases.

**60.** **"Dual Policies"** means those insurance policies described on Exhibit I.A.60 which provide or may provide coverage for Asbestos Personal Injury Claims and Environmental Claims under a shared combined aggregate limit.

**61.** **"Effective Date"** means the earliest possible date, as determined by the Debtors, the Asbestos Personal Injury Committee and the Future Claimants' Representative, that is a Business Day on or after the date on which all conditions to the effective date in Section VIII.B. have been met or waived pursuant to Section VIII.C.

**62.** **"Encumbrance"** means, with respect to any asset, any mortgage, lien, pledge, charge, security interest, assignment or encumbrance of any kind or nature in respect of such asset (including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction).

**63.** **"Entity"** means an individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization or government or any political subdivision thereof, or other person or entity.

**64.** **"Environmental Claim"** means a Claim of any Entity against any Debtor: (i~~a~~) relating to alleged violations of, or noncompliance with, or liability arising under any federal or state environmental laws or regulations; or (ii~~b~~) relating to Pollution (defined as actual, alleged, or threatened pollution, contamination, damage, injury, or harm to any land, soil, watercourse, surface water, ground water, body of water, the air and/or atmosphere and/or any other tangible thing, or to any person or other living thing, relating to the actual, alleged, or threatened release, discharge, disposal, application, distribution, use or escape (including emission or seepage) of smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases, waste materials, oil, petroleum or petroleum derivatives, other irritants, contaminants or pollutants from any facility, structure, vehicle, premises, landfill, disposal site or other property owned or operated by the Debtors or at or to which such substances were generated, stored, transported, distributed, sold, produced, or disposed of by the Debtors or for which the Debtors may be liable by contract or by statute, or otherwise, including all sites or locations referenced in the actions pending in California state court and Oregon state court to determine insurance coverage, regardless of whether substances were known to be, or, in fact, were hazardous, contaminating or polluting substances at any particular time), including: (a~~i~~) any Claim of actual, alleged, threatened, or feared personal injury, bodily injury, sickness, or disease; (b~~ii~~) any Claim of actual, alleged, threatened, or feared property damage, including damage, destruction, loss of use, diminished value or any economic loss; (c~~iii~~) any Claim relating to actual, alleged, threatened, or feared damage to, destruction of, or limitation or loss of use of natural resources; (d~~iv~~) any Claim

seeking to compel (through injunctive or equitable relief or otherwise), the enforcement of federal, state or local statutes, rules, regulations, ordinance or government directive or the testing, study, investigation, prevention or remediation of actual, alleged, threatened, or feared Pollution or any Claim for such costs; (e~~v~~) any Claim for nuisance, trespass, interference with quiet enjoyment of property, bad faith, sanctions, punitive or exemplary damages, statutory fines, or penalties; or (~~f~~vi) any Claim for costs or expenses incurred by any Entity for the testing study, investigation, prevention, or remediation of actual, alleged, threatened, or feared Pollution, or incurred in order to comply with any environmental statute, rule, regulation, ordinance, or government directive. For the avoidance of doubt, Asbestos Personal Injury Claims and Asbestos Insurance Policy Claims do not fall within the definition of Environmental Claims.

**65.** **"Estate"** means, as to each Debtor, the estate created for that Debtor in its Reorganization Case pursuant to section 541 of the Bankruptcy Code.

**66.** **"Escrow Agent"** means the escrow agent designated to administer and make distributions from the General Unsecured Claims Escrows.

**~~66~~67.** **"Executory Contract and Unexpired Lease" and "Executory Contract or Unexpired Lease"** ~~mean~~means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code and the Confirmation Order.

**~~67~~68.** **"Excess CIP Agreement"** means that certain December 2013 Excess Coverage In Place Settlement Agreement.

**~~68~~69.** **"Fee Claim"** means a Claim under sections 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other Entity for services rendered or expenses incurred in the Reorganization Cases.

**~~69~~70.** **"Fee Order"** means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals entered by the Bankruptcy Court on November 7, 2016.

**~~70~~71.** **"File," "Filed" or "Filing"** means file, filed or filing with the Bankruptcy Court, the District Court or their authorized designees, as applicable, in the Reorganization Cases.

**~~71~~72.** **"Final Fee Application"** means an application for final allowance of the Professional's aggregate Fee Claim as described in Section III.A.1.d.ii.A.

**~~72~~73.** **"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction that has been entered on the docket in any Reorganization Case or the docket of any other court of competent jurisdiction, and has not been reversed, stayed, modified or amended, and as to which (a) the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or (b) any appeal that has been taken or any petition for certiorari that has been filed timely has been withdrawn or

resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied.

73**74.** **"First Stage Costs"** means all costs of pursuing the Phase 1 Claims, including reasonable attorneys' fees and expenses, incurred by the plaintiff until the earlier of (a) the entry of a decision by the California Court of Appeal in the Phase 1 Appeal or, if there is a remand by that court, the California Superior Court, resolving the Phase 1 Claims or (b) a settlement of the Phase 1 Claims.

74**75.** **"Future Claimants' Representative"** means Lawrence Fitzpatrick (or any court appointed alternative or successor), the legal representative for persons who might subsequently assert Demands against any of the Debtors, who was appointed pursuant to order of the Bankruptcy Court dated October 19, 2016.

75**76.** **"General Unsecured Claim"** means a Deficiency Claim and any Claim that is not a Cure Amount Claim, Administrative Claim, Priority Tax Claim, Priority Claim, Secured Claim, Asbestos Personal Injury Claim, or Intercompany Claim.

**77.** **"General Unsecured Claims Escrows"** means two escrow accounts funded through (a) settlement amounts paid by Settled Environmental Insurers and (b) the Lehigh Hanson General Unsecured Claim Contribution held by the Escrow Agent to facilitate distributions to holders of Allowed General Unsecured Claims. On the Effective Date, the funds deposited into the General Unsecured Claims Escrows will total the aggregate amount of all Allowed General Unsecured Claims as of the Effective Date.

76**78.** "**HeidelbergCement**" means HeidelbergCement AG.

77**79.** **"HPCI"** means Debtor Hanson Permanente Cement, Inc., an Arizona corporation.

78**80.** **"Insolvent Insurers Proceeds"** means the proceeds of the Debtors' claims for insurance coverage against OIC Run-Off Limited (formerly The Orion Insurance Company plc) and The London and Overseas Insurance Company Limited (formerly The London and Overseas company**Company** plc), which proceeds are being or will be held by the Debtors in a separate bank account pending a further order of the Bankruptcy Court.

79**81.** **"Insolvent Insurers Proceeds Dispute"** means the dispute among the Asbestos Personal Injury Committee, the Future Claimants' Representative, certain insurers and the Creditors' Committee regarding to what extent the Debtors or other parties are entitled to the Insolvent Insurers Proceeds.

80**82.** **"Insurance Policies"** mean**means** the insurance policies covering or potentially covering the Asbestos Personal Injury Claims and the Environmental Claims, as described in Exhibits I.A.6, I.A.60, I.A.102119, IV.M.3 and IV.M.4.

81**83.** **"Insured Asbestos Claim"** means an Asbestos Personal Injury Claim that is covered by any Asbestos Insurance Policy.

**82**<u>84</u>. **"Insurer Coverage Defenses"** means all defenses at law or in equity that any Asbestos Insurer may have under applicable non-bankruptcy law to provide insurance coverage to or for Asbestos Personal Injury Claims that have been channeled to and assumed by the Asbestos Personal Injury Trust pursuant to the Plan, except for (a) any defense that the transfer of the Debtors' rights as to Asbestos Personal Injury Insurance Assets pursuant to the Plan is invalid or unenforceable or otherwise breaches the terms of such coverage and (b) any defense that the drafting, proposing, confirmation or consummation of a plan of reorganization (as opposed to the terms, operation, effect or unreasonableness of any of the Plan or the Exhibits to the Plan) and/or the discharge and/or release of the Debtors from liability for Asbestos Personal Injury Claims pursuant to the Plan operates to, or otherwise results in, the elimination of or the reduction in any obligation such insurers may have under such transferred rights as to the Asbestos Personal Injury Insurance Assets.

**83**<u>85</u>. **"Intercompany Claim"** means any Claim, including an Administrative Claim, by HeidelbergCement or any direct or indirect subsidiary of HeidelbergCement, including a Debtor, against a Debtor.

**84**<u>86</u>. **"Interest"** means the rights of any holder of the stock of any Debtor and the rights of any Entity to purchase or demand the issuance of any of the stock of any Debtor, including: (a) redemption, conversion, exchange, voting, participation and dividend rights; (b) liquidation preferences; and (c) rights under stock options and warrants.

<u>87.</u> <u>**"Inter-Insurer rights"** means the rights of one Asbestos Insurer to recover from any other Asbestos Insurer based on theories of contribution, indemnity, subrogation or other right to reimbursement, whether those rights are based upon contract, statute, equity or case law.</u>

**85**<u>88</u>. **"Internal Revenue Code"** means title 26 of the United States Code, 26 U.S.C. § 1 *et seq*.

**86**<u>89</u>. **"IRS"** means the Internal Revenue Service of the United States of America.

**87**<u>90</u>. **"Kaiser Gypsum"** means Debtor Kaiser Gypsum Company, Inc., a North Carolina corporation.

**88**<u>91</u>. **"Lehigh Hanson"** means Lehigh Hanson, Inc., a Delaware corporation.

<u>92.</u> <u>**"Lehigh Hanson General Unsecured Claim Contribution"** means a payment of Lehigh Hanson into the General Unsecured Claims Escrows in an amount no less than the total amount of all Allowed General Unsecured Claims as of the Effective Date, less the amount contributed to the General Unsecured Claims Escrows by the Settled Environmental Insurers, less any amount contributed to the General Unsecured Claims Escrows by the Debtors, but not to exceed the amount specified in Section IV.E of this Plan.</u>

**89**<u>93</u>. **"Non-Settling Asbestos Insurer"** means any Asbestos Insurer who is not a Settling Asbestos Insurer.

<u>94.</u> <u>**"Objecting Excess Insurers"** means Certain Underwriters at Lloyd's, London, Certain London Market Companies, Columbia Casualty Company, National Fire Insurance</u>

Company of Hartford, The Continental Insurance Company, Granite State Insurance Company, Lexington Insurance Company, The Insurance Company of the State of Pennsylvania, Evanston Insurance Company, TIG Insurance Company, Allstate Insurance Company, solely as successor in interest to Northbrook Excess & Surplus Insurance Company, formerly Northbrook Insurance Company, First State Insurance Company, New England Reinsurance Company, Allianz Underwriters Insurance Company, Fireman's Fund Insurance Company, and Westchester Fire Insurance Company.

**95.** **"Objecting Excess Insurers' Objections"** means the Plan objections and motions to dismiss, set out in docket numbers 919, 1053, 2066, 2067, 2069, 2071, 2073 and 2075 of the Bankruptcy Court docket, and any objections to any post-confirmation settlement with Truck.

~~90~~96. **"Parties"** means, collectively, the Debtors, Lehigh Hanson, the Asbestos Personal Injury Committee and the Future Claimants' Representative.

~~91~~97. **"Payment Default"** means the failure by the Reorganized Debtors to pay the Payment Note in full on or before the fifth anniversary of the Effective Date.

~~92~~98. **"Payment Note"** means a note, issued to the Asbestos Personal Injury Trust by the Reorganized Debtors as co-obligors in the principal amount of $1.0 million, in substantially the form of Exhibit I.A.~~92~~98. As reflected in Exhibit I.A.~~92~~98, the Payment Note will (a) beginning on the second anniversary of the Effective Date, bear interest at a rate of 10 percent per annum.~~,~~; (b) mature on the fifth anniversary of the Effective Date.~~,~~; (c) be secured by the Pledge.~~,~~; and (d) provide for payment in full of the principal amount of the Payment Note on or before the Payment Note's maturity date. As further reflected in Exhibit I.A.~~92~~98, upon the occurrence of a Payment Default, the Asbestos Personal Injury Trust may, upon written notice to the Reorganized Debtors, foreclose on the Pledge. During the period in which the Payment Default has occurred and is continuing interest will accrue at a per annum rate of 10 percent on the amount of the unpaid principal. A Payment Default shall not provide a basis for the Asbestos Personal Injury Trust to contend that a material breach of the Plan has occurred or that any Protected Party is no longer entitled to the protections provided to such Protected Party pursuant to the Plan, including without limitation the protections of the Asbestos Permanent Channeling Injunction, the related indemnification by the Asbestos Personal Injury Trust, and the settlement of the Estates' claims.

~~93~~99. **"Permanente Property"** means HPCI's cement plant, rock plant and quarry (including the minerals) located in Santa Clara County, California.

~~94~~100. **"Petition Date"** means September 30, 2016.

~~95~~101. **"Phase 1 Appeal"** means HPCI's appeal of the January 5, 2015 Statement of Decision in the Asbestos Coverage Litigation that is pending in the California Court of Appeal under Case No. B278091.

~~96~~102. **"Phase 1 Claims"** means those claims of HPCI (asserted on its own and on Kaiser Gypsum's behalf) against Truck for Truck's withholding of deductible amounts in July 2007, as alleged by HPCI in its Cross-Complaint against Truck in the Asbestos Coverage Litigation, and

as tried to the court in November 2014 and reflected in a January 5, 2015 Statement of Decision, and as encompassed within the Phase 1 Appeal.

~~97~~103. **"Plan"** means this joint plan of reorganization for the Debtors and all Exhibits attached hereto or referenced herein, as the same may be amended, modified or supplemented.

~~98~~104. **"Pledge"** means 100 percent of the equity of each Reorganized Debtor.

~~99~~105. **""Priority Claim"** means a Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

~~100~~106. **"Priority Tax Claim"** means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

~~101~~107. **"Professional"** means any professional employed in the Reorganization Cases pursuant to sections 327, 328 or 1103 of the Bankruptcy Code or any professional or other Entity seeking compensation or reimbursement of expenses in connection with the Reorganization Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

~~102~~108. **"Protected Affiliates"** means the parties identified on Exhibit I.A.~~102~~108.

~~103~~109. **"Protected Party"** means any of the following parties:

       a.      the Debtors;

       b.      the Reorganized Debtors;

       c.      the Protected Affiliates;

       d.      Lehigh Hanson;

       e.      current and former directors, officers, and employees of the Debtors, the Reorganized Debtors and the Protected Affiliates, including without limitation Lehigh Hanson, solely in their capacity as such;

       f.      as of February 15, 2018, current and former shareholders of the Debtors, the Reorganized Debtors and the Protected Affiliates, including without limitation Lehigh Hanson, solely in their capacity as such;

       g.      current and former in-house and outside attorneys, accountants, auditors, tax advisors and other professionals who have provided services to the Debtors, the Reorganized Debtors and the Protected Affiliates, including without limitation Lehigh Hanson, solely in their capacity as such;

       h.      Entities that, pursuant to the Plan or on or after the Effective Date, become a direct or indirect transferee of, or successor to, any assets of any Debtor or Reorganized Debtor, or the Asbestos Personal Injury Trust, but

only to the extent that liability is asserted to exist by reason of such Entity becoming such a transferee or successor;

i.        Entities that, pursuant to the Plan or on or after the Effective Date, make a loan to any Debtor or Reorganized Debtor, or the Asbestos Personal Injury Trust or to a successor to, or transferee of, any assets of any Debtor or Reorganized Debtor, or the Asbestos Personal Injury Trust, but only to the extent that liability is asserted to exist by reason of it becoming such a lender;

j.        Entities, other than Asbestos Insurers, that are alleged to be directly or indirectly liable for the conduct of, claims against, or Demands on any Debtor or Reorganized Debtor, or the Asbestos Personal Injury Trust, to the extent that such alleged liability arises by reason of one or more of the following:

        1.  such Entity's ownership of a financial interest in any Debtor or Reorganized Debtor, or any past or present affiliate of any of them, or any predecessor in interest of any of them;

        2.  such Entity's involvement in the management of any Debtor, Reorganized Debtor or any predecessor in interest of any of them;

        3.  such Entity's service as an officer, director or employee of any Debtor or Reorganized Debtor, any past or present affiliate of any of them, any predecessor in interest of any of them, or of any entity that owns or at any time has owned a financial interest in any Debtor or Reorganized Debtor, any past or present affiliate of any of them, or any predecessor in interest of any of them;

        4.  such Entity's provision of insurance to any Debtor, Reorganized Debtor, any past or present affiliate of any of them, or any predecessor in interest of any of them, or any entity that owns or at any time has owned a financial interest in any Debtor or Reorganized Debtor, any past or present affiliate of any of them, or any predecessor in interest of any of them; and

        5.  such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of any Debtor, Reorganized Debtor, any past or present affiliate of any of them, any predecessor in interest of any of them, or any entity that owns or at any time has owned a financial interest in any Debtor or Reorganized Debtor, any past or present affiliate of any of them, or any predecessor in interest of any of them.

k.        each Settling Asbestos Insurer.

**104110. "Protected Party Indemnification Claims"** mean any and all claims, including claims for related fees and costs, of a Protected Party under the indemnification described in Section IV.K.4.

~~104a. **"Inter-Insurer Rights"** means the rights of one Asbestos Insurer to recover from any other Asbestos Insurer based on theories of contribution, indemnity, subrogation or other right to reimbursement, whether those rights are based upon contract, statute, equity or case law.~~

~~104b. **"Objecting Excess Insurers"** means Certain Underwriters at Lloyd's, London, Certain London Market Companies, Columbia Casualty Company, National Fire Insurance Company of Hartford, The Continental Insurance Company, Granite State Insurance Company, Lexington Insurance Company, The Insurance Company of the State of Pennsylvania, Evanston Insurance Company, TIG Insurance Company, Allstate Insurance Company, solely as successor in interest to Northbrook Excess & Surplus Insurance Company, formerly Northbrook Insurance Company, First State Insurance Company, New England Reinsurance Company, Allianz Underwriters Insurance Company, Fireman's Fund Insurance Company, and Westchester Fire Insurance Company.~~

~~104c. **"Objecting Excess Insurers' Objections"** means the plan objections and motions to dismiss, set out in docket numbers 919, 1053, 2066, 2067, 2069, 2071, 2073 and 2075 of the Bankruptcy Court Docket, and any objections to any post-confirmation settlement with Truck.~~

**105111. "Quarterly Distribution Date"** means the last Business Day of the month following the end of each calendar quarter after the Effective Date; provided, however, that if the Effective Date is within forty-five (45) days of the end of a calendar quarter, the first Quarterly Distribution Date shall be the last Business Day of the month following the end of the first calendar quarter after the calendar quarter including the Effective Date.

**106112.** "**Recovery Actions**" means, collectively and individually, preference actions, fraudulent conveyance actions and other claims or causes of action under sections 510, 544, 547, 548, 549, 550 and 553(b) of the Bankruptcy Code and other similar state law claims and causes of action.

**107113. "Reinstated"** or **"Reinstatement"** means the treatment of a Claim or Interest, at the applicable Reorganized Debtor's sole discretion, in accordance with one of the following:

      a.    The legal, equitable and contractual rights to which such Claim or Interest entitles the holder will be unaltered; or

      b.    Notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default:

i.   any such default that occurred before the applicable Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, will be cured;

ii.  the maturity of such Claim or Interest as such maturity existed before such default will be reinstated;

iii. the holder of such Claim or Interest will be compensated for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

iv.  the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest will not otherwise be altered.

108114. **"Reorganization Case"** means: (a) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor in the Bankruptcy Court; and (b) when used with reference to all Debtors, the chapter 11 cases pending for the Debtors in the Bankruptcy Court.

109115. **"Reorganized . . ."** means, when used in reference to a particular Debtor, such Debtor on and after the Effective Date.

110116. **"Restructuring Transactions"** means, collectively, those mergers, consolidations, restructurings, dispositions, liquidations, dissolutions or other transactions that the Debtors or Reorganized Debtors determine to be necessary or appropriate to effect a corporate restructuring of their respective businesses or otherwise to simplify the overall corporate structure and intercompany arrangements of the Reorganized Debtors, including without limitation the Restructuring Transactions set forth on Exhibit IV.B.

111117. **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, restated, modified or supplemented.

112118. **"Secured Claim"** means a Claim (other than an Asbestos Personal Injury Claim) that is secured by a lien on property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.

113119. **"Separate Limit Policies"** means those insurance policies described on Exhibit I.A.113119 that provide or may provide coverage for Asbestos Personal Injury Claims and Environmental Claims under separate limits applicable to Asbestos Personal Injury Claims and Environmental Claims.

114120. **"Settling Asbestos Insurer"** means each Asbestos Insurer listed on Exhibit I.A.114120 and any Asbestos Insurer that, after the Confirmation Hearing, enters into a

settlement with the Asbestos Personal Injury Trust that (a), in the determination of the Asbestos Personal Injury Trust, the TAC and the Future Claimants' Representative, justifies treating such Asbestos Insurer as a Protected Party and (b) is approved by the Bankruptcy Court.

~~115~~121. **"Settled Environmental Insurers"** means any Entity that has subscribed or issued an insurance policy that provides coverage for Environmental Claims, which has bought back such coverage from the Debtors pursuant to a settlement agreement approved by the Bankruptcy Court, and is protected by the environmental injunction as set forth in Section IX.B.3 and a bar order under section 363 of the Bankruptcy Code.

~~116~~122. **"Stock Interests of . . ."** means, when used with reference to a particular Debtor, the Interests issued by such Debtor.

~~117~~123. **"Stipulation of Amount and Nature of Claim"** means a stipulation or other agreement between the applicable Debtor or Reorganized Debtor and a holder of a Claim (other than an Asbestos Personal Injury Claim) or Interest establishing the allowed amount or nature of such Claim or Interest that is (a) entered into in accordance with any Claim settlement procedures established in these Reorganization Cases~~,~~; (b) permitted or contemplated by the Plan or (c) approved by order of the Bankruptcy Court.

~~118~~124. **"Surety Bond Claims"** means, collectively, (a) proof of Claim number 4 filed by Zurich American Insurance Company~~,~~; (b) proof of Claim number 5 filed by Fidelity & Deposit Company of Maryland~~;~~ and (c) proof of Claim numbers 22 and 25 filed by Lexon Insurance Company and Bond Safeguard Company.

~~119~~125. **"Surety Bond Program"** means, collectively, the (~~i~~a) Debtors' surety bonds maintained in the ordinary course of business~~,~~; (~~ii~~b) surety payment and indemnity agreements, setting forth a surety's rights against the Debtors, and the Debtors' obligations to pay and indemnify such surety from any loss, cost, or expense that the surety may incur, in each case, on account of the issuance of any surety bonds on behalf of the Debtors~~,~~; (~~iii~~c) surety collateral agreements governing collateral, if any, in connection with the Debtors' surety bonds~~,~~; and/or (~~iv~~d) ordinary course premium payments to the sureties for the Debtors' surety bonds.

~~120~~126. **"Surety Bond Obligations"** means all the Debtors' obligations arising under the Surety Bond Program.

~~121~~127. **"TAC"** means the Trust Advisory Committee for the Asbestos Personal Injury Trust.

~~122~~128. **"Tax"** means: (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental, withholding or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other Entity.

~~123~~**129. "Third Party Disbursing Agent"** means an Entity designated by Reorganized HPCI to act as a Disbursing Agent pursuant to Section VI.~~B~~C.

~~124~~**130. "Timely Claim"** means a Claim (other than an Asbestos Personal Injury Claim) for which a proof of Claim or request for payment of Administrative Claim was Filed by the applicable Bar Date or is otherwise determined to be timely Filed by a Final Order of the Bankruptcy Court.

~~125~~**131. "Truck"** means Truck Insurance Exchange.

~~126~~**132. "Truck Appeal Costs"** means if Truck continues litigation in respect of the Phase 1 Claims following the entry of a decision by the California Court of Appeal, or if there is a remand by that court, the Superior Court, resolving the Phase 1 Claims in favor of the plaintiff, in whole or part, all costs of pursuing the Phase 1 Claims, including reasonable attorneys' fees and expenses, until such litigation is finally resolved either by (a) a court decision or (b) settlement.

~~127~~**133.** "**Uninsured Asbestos Claim**" means an Asbestos Personal Injury Claim for which there is no coverage provided by any Asbestos Insurance Policy.

**B.**     **Rules of Interpretation and Computation of Time**

**1.**     **Rules of Interpretation**

For purposes of the Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan or Confirmation Order; (d) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors, assigns and affiliates; (e) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) the words "includes" or "including" are not limiting; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) subject to the provisions of any contract, certificate of incorporation, by-laws, or similar constituent document, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (j) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

### 2. Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## CLASSES OF CLAIMS AND INTERESTS

Claims and Interests, except Administrative Claims, and Priority Tax Claims, are placed in Classes as follows:

| Class | Claims or Interests |
|-------|---------------------|
| Class 1 | Priority Claims |
| Class 2 | Secured Claims |
| Class 3 | General Unsecured Claims |
| Class 4 | Asbestos Personal Injury Claims |
| Class 5 | Surety Bond Claims |
| Class 6 | Intercompany Claims |
| Class 7 | Stock Interests |

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, and Priority Tax Claims, as described in Section III.A., have not been classified and thus are excluded from the foregoing Classes. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

### A. Unclassified Claims

### 1. Payment of Administrative Claims

#### a. Administrative Claims in General

Except as specified in this Section III.A.1., and subject to the bar date provisions herein, unless otherwise agreed by the holder of an Administrative Claim and the applicable Debtor or Reorganized Debtor, each holder of an Allowed Administrative Claim shall receive, in full satisfaction of its Administrative Claim, cash equal to the allowed amount of such

Administrative Claim either (i) as soon as practicable after the Effective Date or (ii) if the Administrative Claim is not allowed as of the Effective Date, thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order or a Stipulation of Amount and Nature of Claim is executed by the applicable Reorganized Debtor and the holder of the Administrative Claim.

### b. Statutory Fees

On or before the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930, as determined at the Confirmation Hearing by the Bankruptcy Court or the District Court, as applicable, shall be paid in cash equal to the amount of such Administrative Claims. All fees payable pursuant to 28 U.S.C. § 1930 shall be paid by the Reorganized Debtors in accordance therewith until the closing of the Reorganization Cases pursuant to section 350(a) of the Bankruptcy Code.

### c. Ordinary Course Liabilities

Allowed Administrative Claims based on liabilities incurred by a Debtor in the ordinary course of its business (including any Intercompany Claims that are Administrative Claims, Administrative Claims of governmental units for Taxes and Administrative Claims arising from those contracts and leases of the kind described in Section V.E.) shall be satisfied by the applicable Reorganized Debtor pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims, without any further action by the holders of such Administrative Claims or further approval of the Bankruptcy Court.

### d. Bar Dates for Administrative Claims

#### i. General Bar Date Provisions

Except as otherwise provided in Section III.A.1.d.ii., unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors, pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than sixty (60) days after the Effective Date. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their respective property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the requesting party no later than 120 days after the Effective Date.

#### ii. Bar Dates for Certain Administrative Claims

##### A. Professional Compensation

Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of the Bankruptcy Court a Final Fee Application no later than (ninety) 90 days after the Effective Date.

A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Fee Claim pursuant to the Fee Order in its Final Fee Application. Objections to any Final Fee Application must be Filed and served on the Reorganized Debtors and the requesting party by the later of (1) eighty (80) days after the Effective Date or (2) thirty (30) days after the Filing of the applicable Final Fee Application. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court, including the Fee Order, regarding the payment of Fee Claims. Any pending, Filed interim requests for a Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application.

### B. Ordinary Course Liabilities

Holders of Administrative Claims based on liabilities incurred by a Debtor in the ordinary course of its business, including any Intercompany Claims that are Administrative Claims, Administrative Claims of governmental units for Taxes and Administrative Claims arising from those contracts and leases of the kind described in Section V.E., shall not be required to File or serve any request for payment of such Administrative Claims. Such Administrative Claims shall be satisfied pursuant to Section III.A.1.c.

### 2. Payment of Priority Tax Claims

#### a. Priority Tax Claims in General

Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the holder of a Priority Tax Claim and the applicable Debtor or Reorganized Debtor, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Priority Tax Claim, payment in full of the allowed amount of the Priority Tax Claim on the later of the Effective Date or as soon as practicable after the date when such Claim becomes an Allowed Claim.

#### b. Other Provisions Concerning Treatment of Priority Tax Claims

Notwithstanding the provisions of Section III.A.2.a., any Claim on account of any penalty arising with respect to or in connection with an Allowed Priority Tax Claim that does not compensate the holder for actual pecuniary loss shall be treated as a Class 3 Claim, and the holder (other than as the holder of a Class 3 Claim) may not assess or attempt to collect such penalty from the Reorganized Debtors or their respective property.

### B. Classified Claims

**1. Class 1 Claims (Priority Claims) are unimpaired.** On the Effective Date, each holder of an Allowed Claim in Class 1 shall receive cash in an amount equal to such Allowed Claim unless the holder of such Claim agrees to less favorable treatment.

**2. Class 2 Claims (Secured Claims) are unimpaired.** On the Effective Date, unless otherwise agreed by the holder of an Allowed Claim in Class 2 and the applicable Debtor or Reorganized Debtor, each holder of a Claim in Class 2 shall receive treatment in accordance with Option A or B below, at the option of the applicable Debtor or Reorganized Debtor. Any

Allowed Deficiency Claim of a holder of an Allowed Secured Claim shall be entitled to treatment as an Allowed Class 3 Claim.

> **Option A:** Claims in Class 2 that are Allowed Claims and with respect to which the applicable Debtor or Reorganized Debtor elects Option A shall be paid in full in cash.

> **Option B:** Claims in Class 2 that are Timely Claims and with respect to which the applicable Debtor or Reorganized Debtor elects Option B shall be Reinstated.

**3.** **Class 3 Claims (General Unsecured Claims) are unimpaired.** On the Effective Date, each holder of an Allowed Claim in Class 3 shall receive cash in an amount equal to such Allowed Claim including any post-petition interest as ordered by the Bankruptcy Court unless the holder of such Claim agrees to less favorable treatment.

**4.** **Class 4 Claims (Asbestos Personal Injury Claims) are impaired**. On the Effective Date, all Asbestos Personal Injury Claims shall be channeled to the Asbestos Personal Injury Trust, which shall be funded pursuant to Section IV.K.2. All Asbestos Personal Injury Claims shall be resolved pursuant to the terms of Section IV.O.1 and Section IV.O.2., the Asbestos Personal Injury Trust Agreement, the Asbestos Personal Injury Trust Distribution Procedures and any other Asbestos Personal Injury Trust Document. Except as provided in Section IV.O.1, pursuant to section 524(g) of the Bankruptcy Code, the Plan and the Confirmation Order shall permanently and forever stay, restrain and enjoin any Entity from taking any actions against any Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Asbestos Personal Injury Claim, all of which shall be channeled to the Asbestos Personal Injury Trust for resolution as set forth in the Asbestos Personal Injury Trust Agreement and the related Asbestos Personal Injury Trust Distribution Procedures, including permanently and forever staying, restraining and enjoining any Entity from any of the following, with respect to Asbestos Personal Injury Claims:

> **a.** commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including a judicial, arbitral, administrative or other proceeding) in any forum against any Protected Party or any property or interests in property of any Protected Party;

> **b.** enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against any Protected Party or any property or interests in property of any Protected Party;

> **c.** creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party;

> **d.** setting off, seeking reimbursement of, contribution from or subrogation against, or otherwise recouping in any manner, directly or

indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

> e.     proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Personal Injury Trust Documents, except in compliance therewith.

For the avoidance of doubt, no Entity shall be so stayed, enjoined, or restrained from initiating or continuing a suit or other proceeding against any Debtor in name only for the purpose of recovering on an Asbestos Personal Injury Claim from a Non-Settling Asbestos Insurer.

> **5.     Class 5 Claims (Surety Bond Claims) are unimpaired.** On the Effective Date, each Surety Bond Claim in Class 5 shall be Reinstated.

> **6.     Class 6 Claims (Intercompany Claims) are unimpaired.** On the Effective Date, each Intercompany Claim in Class 6 shall be Reinstated.

> **7.     Class 7 Interests (Stock Interests) are unimpaired.** On the Effective Date, Stock Interests of the Debtors shall be Reinstated, and holders of such Stock Interests shall retain such Interests, subject to the Restructuring Transactions provisions of Section IV.B.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.     Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided herein (and subject to the Restructuring Transactions provisions of Section IV.B.), each Debtor will, as a Reorganized Debtor, continue to exist after the Effective Date as a separate corporate or other legal Entity, with all the powers of a corporation or other legal Entity under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable state law. Except as otherwise provided herein (and subject to the Restructuring Transactions provisions of Section IV.B.), as of the Effective Date, all property of the respective Estates of the Debtors, and any property acquired by a Debtor or Reorganized Debtor under the Plan, will vest in the applicable Reorganized Debtor, free and clear of all Claims, Encumbrances and Interests. For the avoidance of doubt, the funds deposited into the General Unsecured Claims Escrows will be used solely to make distributions to holders of Allowed General Unsecured Claims, and the Debtors and Reorganized Debtors will not hold any legal or equitable interest in such funds deposited in the General Unsecured Claims Escrows, in accordance with Section VI.B, below. On and after the Effective Date, each Reorganized Debtor may operate its businesses and may use, acquire and dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, each Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for Professionals' fees, disbursements,

expenses or related support services (including fees and expenses relating to the preparation of Professional fee applications) without application to the Bankruptcy Court.

## B. Restructuring Transactions

On or after the Confirmation Date, the applicable Debtor or Reorganized Debtor may take such actions as the Debtors or Reorganized Debtors determine to be necessary or appropriate to effectuate, implement and consummate the Restructuring Transactions, including without limitation the Restructuring Transactions set forth on Exhibit IV.B.; provided, however, that no Restructuring Transactions other than the Restructuring Transactions set forth on Exhibit IV.B. shall be implemented prior to the Effective Date without the written consent of the Asbestos Personal Injury Committee and the Future Claimants' Representative, which consent shall not be unreasonably withheld. The actions to effectuate, implement and consummate the Restructuring Transactions may include: (1) the execution and delivery of appropriate agreements or other documents that carry out the provisions of the Plan and that satisfy the applicable requirements of applicable state law; and (2) the filing of appropriate instruments pursuant to applicable state law.

## C. Transfers and Lease Transactions

On or after the Confirmation Date, non-debtor Lehigh Cement Company LLC will transfer its interest in certain real property located in Kosse, Limestone County, Texas and Kunkletown, Monroe County, Pennsylvania (together, the "Real Properties"), together with its rights under certain leases related to the Real Properties, to Kaiser Gypsum. The actions to effectuate, implement and consummate these transactions may include: (1) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with the provisions of the Plan and that satisfy the applicable requirements of applicable state law; and (2) the filing of appropriate instruments pursuant to applicable state law.

## D. Corporate Governance, Directors and Officers, Employment-Related Agreements and Compensation Programs and Corporate Action

### 1. Certificates of Incorporation and By-Laws of the Reorganized Debtors

As of the Effective Date, the Certificate of Incorporation and the By-Laws of each Reorganized Debtor will be in such form as the Debtors may determine. The initial Certificate of Incorporation and By-Laws of each Reorganized Debtor, among other things, shall prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a) of the Bankruptcy Code. After the Effective Date, each such Entity shall be permitted to amend and restate its Certificate of Incorporation or By-Laws pursuant to applicable state law and the terms and conditions of such constituent documents.

### 2. Directors and Officers of the Reorganized Debtors

Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, the initial directors and officers of each Reorganized Debtor shall be the directors and officers of such Debtor immediately prior to the Effective Date. Each such director and officer shall serve from and after the Effective Date until his or her successor is duly

elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the terms of the Certificate of Incorporation and By-Laws of the relevant Reorganized Debtor (as the same may be amended after the Effective Date) and applicable state law.

### 3. Employee Arrangements of the Reorganized Debtors

As of the Effective Date, the Reorganized Debtors shall be authorized to: (a) maintain, amend or revise existing employment, indemnification and other arrangements with their active and retired directors, officers and employees, subject to the terms and conditions of any such agreement; and (b) enter into new employment, indemnification and other arrangements with active and retired directors, officers and employees; all as determined by the board of directors of the applicable Reorganized Debtor.

### 4. Corporate Action

Pursuant to section 1142 of the Bankruptcy Code, section 10-1008 of the Arizona Revised Statutes and section 55-14A-01 of the North Carolina Business Corporation Act, the following (which shall occur and be deemed effective as of the date specified in the documents effectuating the same or, if no date is so specified, the Effective Date) shall be authorized and approved in all respects and for all purposes without any requirement of further action by stockholders or directors of any of the Debtors or the Reorganized Debtors or by any other Entity: (a) the initial Certificates of Incorporation and By-Laws of the Reorganized Debtors; (b) the initial directors and officers of the Reorganized Debtors; (c) the Distribution of cash pursuant to the Plan; (d) the creation of the Asbestos Personal Injury Trust, and the funding thereof; (e) other corporate actions that are necessary or appropriate to effectuate, implement and consummate the provisions of the Plan, including the Restructuring Transactions provisions of Section IV.B.; and (f) the adoption, execution, delivery and performance of all contracts, instruments, releases and other agreements and documents related to any of the foregoing (including the Asbestos Personal Injury Trust Agreement and the Payment Note).

### E. Obtaining Cash for Plan Distributions

All cash payments to be made pursuant to the Plan shall be funded by the applicable Reorganized Debtor. All cash necessary for a Reorganized Debtor to fund such cash payments pursuant to the Plan shall be obtained through a combination of one or more of the following: (1) such Reorganized Debtor's cash balances and cash generated by the operations of such Reorganized Debtor; (2) any Tax refunds actually received by such Reorganized Debtor; (3) contributions to or on behalf of such Reorganized Debtor by Lehigh Hanson; (4) proceeds of certain of the Debtors' insurance policies or (5) such other means of financing or funding as determined by the board of directors of such Reorganized Debtor.

On the Effective Date, Lehigh Hanson shall contribute to the Reorganized Debtors, as necessary to satisfy Allowed General Unsecured Claims, up to $28.15 million in cash minus the amount of the Insolvent Insurers Proceeds to which the Debtors are ~~determined to be~~ entitled.

## F. Creation of Asbestos Personal Injury Trust

As of the Effective Date, the Asbestos Personal Injury Trust shall be created. The Asbestos Personal Injury Trust is intended to be one or more "qualified settlement funds" within the meaning of the Treasury Regulations issued under section 468B of the Internal Revenue Code. The purpose of the Asbestos Personal Injury Trust shall be to, among other things: (1) resolve all asserted Asbestos Personal Injury Claims in accordance with the Plan, Asbestos Personal Injury Trust Agreement, the Asbestos Personal Injury Trust Distribution Procedures and the Confirmation Order; (2) preserve, hold, manage, maximize and liquidate the assets of the Asbestos Personal Injury Trust for use in resolving Asbestos Personal Injury Claims; and (3) qualify at all times as one or more qualified settlement funds. On the Effective Date, all right, title, and interest in and to the Asbestos Personal Injury Trust Assets, and any proceeds thereof, will be transferred to, and vested in, the Asbestos Personal Injury Trust, free and clear of all Claims, Demands, Stock Interests, Encumbrances, and other interests of any Entity, without any further action of the Bankruptcy Court or any Entity.

## G. Authority of the Asbestos Personal Injury Trust

As of the Effective Date, without any further action of the Bankruptcy Court or any Entity, except as otherwise expressly set forth in the Plan, the Asbestos Personal Injury Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to or arising from any asset, liability, or responsibility of the Asbestos Personal Injury Trust, including but not limited to any actions arising from or related to the Asbestos Personal Injury Insurance Assets and the Phase 1 Claims.

## H. Appointment of Asbestos Personal Injury Trustee and Delaware Trustee

On the Confirmation Date, effective as of the Effective Date, in accordance with the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures, the Entities selected jointly by the Asbestos Personal Injury Committee and the Future Claimants' Representative to serve as the Asbestos Personal Injury Trustee (as identified in Exhibit IV.H) and the Delaware Trustee shall be appointed to serve as the Asbestos Personal Injury Trustee for the Asbestos Personal Injury Trust. All subsequent Asbestos Personal Injury Trustees and Delaware Trustees shall be appointed in accordance with the terms of the Asbestos Personal Injury Trust Agreement.

## I. Appointment of Future Claimants' Representative and TAC Members

The Future Claimants' Representative shall serve as the legal representative for the purpose of protecting the shared interests of holders of Demands pursuant to the terms of the Asbestos Personal Injury Trust Agreement, on and after the Effective Date, and shall have the functions and rights provided in the Asbestos Personal Injury Trust Documents. The initial members of the TAC will be identified in the Asbestos Personal Injury Trust Agreement.

## J. Document Repository

Prior to or on the Effective Date, the Debtors shall establish a repository containing all the books and records of the Debtors that are necessary for the defense of Asbestos Personal

Injury Claims, including without limitation the historical asbestos personal injury claims database maintained by the Debtors, deposition transcripts, product identification evidence, information regarding sale and use of the products, claims settlement and payment information, and indexes and summaries relating to any such documents, and shall make that repository available to the Entities that are responsible for the processing or defense of Asbestos Personal Injury Claims, and that are entitled to review, copy or use such documents. For the avoidance of doubt, the Asbestos Personal Injury Trust shall have access to materials in this repository only to the extent it is the Entity defending or processing (which term shall not include the mere payment of the deductible portion of an Asbestos Personal Injury Claim) an Uninsured Asbestos Claim or a particular Asbestos Personal Injury Claim, and such determination shall be made by the Reorganized Debtors on a claim-by-claim basis. Any dispute over whether the Asbestos Personal Injury Trust shall have access to the materials in this repository shall be resolved by the Bankruptcy Court. Notwithstanding anything to the contrary herein, holders of Asbestos Personal Injury Claims may pursue and obtain information stored in this repository through discovery to the full extent permitted by applicable law. The Asbestos Personal Injury Trust shall be obligated to compensate the Reorganized Debtors for all out-of-pocket costs reasonably incurred after the Effective Date in connection with establishing and maintaining the repository.

Notwithstanding the foregoing or any other provisions of the Plan, the sole and exclusive remedy for the Asbestos Personal Injury Trust's failure to reimburse such out-of-pocket costs, or for its failure to pay any other amounts due to the Reorganized Debtors, shall be the right of the Reorganized Debtors to assert money damage claims against the Asbestos Personal Injury Trust, and such failure shall not relieve the Reorganized Debtors of any of their obligations hereunder, or otherwise, to the extent such obligations exist.

Pursuant to the Plan and the Confirmation Order, to the extent the Debtors or Reorganized Debtors, as applicable, provide access to the Asbestos Personal Injury Trust to any privileged books and records, such access shall not result in the destruction or waiver of any applicable privileges pertaining to such books and records. If the preservation of privilege pertaining to such books and records is challenged or disapproved by the Bankruptcy Court or the District Court and if the Asbestos Personal Injury Trust determines that it needs access to such information, the Reorganized Debtors will, at the sole cost and expense of the Asbestos Personal Injury Trust (which cost and expense shall be reasonable), enter into arrangements to permit the Asbestos Personal Injury Trust to have access to such books and records, to the extent such access does not result in the destruction or waiver of any applicable privileges. Further, pursuant to the Plan and the Confirmation Order, none of the Debtors, the Reorganized Debtors, Lehigh Hanson, or any Affiliates shall be liable for violating any confidentiality or privacy protections as a result of providing the Asbestos Personal Injury Trust access to the books and records, and the Asbestos Personal Injury Trust shall take appropriate steps to comply with any such applicable protections.

**K.    Transfers of Property to and Assumption of Certain Liabilities by the Asbestos Personal Injury Trust**

**1.    Expenses of the Asbestos Personal Injury Trust**

The Asbestos Personal Injury Trust shall pay all Asbestos Personal Injury Trust Expenses. The Reorganized Debtors shall have no obligation to pay such expenses, except for Debtor Appellate Costs.

**2.    Funding the Asbestos Personal Injury Trust**

On the Effective Date, the Reorganized Debtors and/or Lehigh Hanson, as applicable, shall transfer to the Asbestos Personal Injury Trust the Asbestos Personal Injury Trust Assets as follows:

**a.    Initial Payment**

One or more of the Reorganized Debtors and/or Lehigh Hanson on behalf of and as a contribution to such Reorganized Debtors will pay an aggregate of $49.0 million in cash to the Asbestos Personal Injury Trust.

**b.    Payment Note**

The Reorganized Debtors, as co-obligors, shall issue the Payment Note to the Asbestos Personal Injury Trust.

**c.    Phase 1 Claims**

The Reorganized Debtors shall transfer to the Asbestos Personal Injury Trust the Phase 1 Claims, free and clear of any liens, claims or encumbrances, including any rights of setoff based on any liability of the Debtors. The Debtors or the Reorganized Debtors shall pay all Debtor Appellate Costs. The Asbestos Personal Injury Trust shall pay all Asbestos Personal Injury Trust Appellate Costs. If the Asbestos Personal Injury Trust ultimately obtains any recovery with respect to Phase 1 Claims, whether as a result of settlement or judgment that exceeds $12 million, the Asbestos Personal Injury Trust shall remit to the Debtors or the Reorganized Debtors any amounts remaining, in excess of $12 million, after the Asbestos Personal Injury Trust Appellate Costs have been deducted from the full recovery amount.

**d.    Asbestos Personal Injury Insurance Assets**

The Reorganized Debtors shall transfer to the Asbestos Personal Injury Trust the Asbestos Personal Injury Insurance Assets.

**3.    Assumption of Certain Liability and Responsibility by the Asbestos Personal Injury Trust**

Subject to the provisions of the Plan, and in consideration for the transfer of the Asbestos Personal Injury Trust Assets to the Asbestos Personal Injury Trust pursuant to Section IV.K.2.

and in furtherance of the purposes of the Asbestos Personal Injury Trust and the Plan, the Asbestos Personal Injury Trust shall assume liability and responsibility, financial and otherwise, for all Asbestos Personal Injury Claims. The Asbestos Personal Injury Trust shall have all defenses, cross-claims, offsets and recoupment rights, as well as rights of indemnification, contribution, subrogation and similar rights, and any other rights regarding Uninsured Asbestos Claims that any Debtor, Reorganized Debtor or Protected Party has or would have had under applicable law.

### 4. Indemnification by the Asbestos Personal Injury Trust

The Asbestos Personal Injury Trust shall protect, defend, indemnify and hold harmless each Protected Party from and against any Asbestos Personal Injury Claim; provided, however, the sole and exclusive remedy for the Asbestos Personal Injury Trust's failure to satisfy the indemnification, defense and hold harmless obligations under this Section shall be the right of the Protected Parties to assert money damage claims against the Asbestos Personal Injury Trust.

### 5. Authority of the Debtors

Effective on the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary or appropriate to enable the Reorganized Debtors to implement effectively the provisions of the Plan and the Asbestos Personal Injury Trust Agreement.

### L. Cooperation with Respect to Insurance Matters

### 1. Obligation to Cooperate with Respect to Insurance Matters

The Reorganized Debtors will cooperate with the Asbestos Personal Injury Trust and use reasonable efforts to take or cause to be taken all actions and to do or cause to be done all things that the Asbestos Personal Injury Trust may reasonably consider necessary to effectuate the transfer of the Asbestos Personal Injury Insurance Assets to the Asbestos Personal Injury Trust. By way of illustration and not limitation, the Reorganized Debtors will be obligated: (a) to provide the Asbestos Personal Injury Trust with copies of insurance policies and settlement agreements included within or relating to the Asbestos Personal Injury Insurance Assets; (b) to provide the Asbestos Personal Injury Trust with other information in the Reorganized Debtors' possession, custody or control that is reasonably necessary to the Asbestos Personal Injury Trust's efforts with respect to insurance coverage for Asbestos Personal Injury Claims; (c) to execute further assignments or allow the Asbestos Personal Injury Trust to pursue claims relating to the Asbestos Personal Injury Insurance Assets in a Reorganized Debtor's name (subject to appropriate disclosure of the fact that the Asbestos Personal Injury Trust is doing so and the reasons why it is doing so), including by means of arbitration, alternative dispute resolution proceedings or litigation; and (d) to facilitate actions to enforce judgments obtained by the claimants or the Asbestos Personal Injury Trust against Asbestos Insurers, if necessary.

To the extent that any transfer or portion of a transfer of the Asbestos Personal Injury Insurance Assets to the Asbestos Personal Injury Trust is determined to be invalid by a court of competent jurisdiction, upon request of the Asbestos Personal Injury Trust and at the cost of the Asbestos Personal Injury Trust, the Reorganized Debtors shall: (a) take all reasonable actions,

including those as may be requested by the Asbestos Personal Injury Trust, with respect to such assets, including, but not limited to, prosecution of any insurance coverage and/or breach of contract action or other action, for the benefit of, and to the extent reasonably requested by, the Asbestos Personal Injury Trust; and (b) immediately transfer any amounts recovered under or on account of any such assets to the Asbestos Personal Injury Trust. The Asbestos Personal Injury Trust will be obligated to compensate the Reorganized Debtors for all out-of-pocket costs reasonably incurred on or after the Effective Date in connection with providing assistance to the Asbestos Personal Injury Trust pursuant to this Section, including without limitation out-of-pocket costs and expenses, consultant and expert fees, and attorneys' fees. Any acts taken pursuant to this Section shall not be deemed to waive and shall not constitute a waiver of any applicable privilege, confidence, or work product protection as against any third party. The Reorganized Debtors shall have a continuing obligation to satisfy the Assistance and Cooperation, Inspection and Audit, and Notice of Occurrence Provisions set out in the Asbestos Insurance Policies. Any out-of-pocket costs incurred by the Reorganized Debtors in carrying out such obligations shall be reimbursed by the Asbestos Personal Injury Trust. The sole and exclusive remedy for the Asbestos Personal Injury Trust's failure to reimburse such out-of-pocket costs shall be the right of the Reorganized Debtors to assert money damage claims against the Asbestos Personal Injury Trust.

**2. Enforcement of Reorganized Debtors' Obligations to Cooperate with Respect to Insurance Matters**

**a.** The Reorganized Debtors shall have a continuing obligation to satisfy the Asbestos Insurer Cooperation Obligations. Any out-of-pocket costs incurred by the Reorganized Debtors in carrying out the Asbestos Insurer Cooperation Obligations shall be reimbursed by the Asbestos Personal Injury Trust. The Reorganized Debtors' obligations under this provision shall be ongoing until such time when all Asbestos Insurance Policies have either been settled or exhausted.

**b.** If an Asbestos Personal Injury Insurance Asset does not provide coverage for an Asbestos Personal Injury Claim pursued against the Reorganized Debtors in the tort system pursuant to Section IV.O.1. because a court determines in a Final Order that the Reorganized Debtors failed to satisfy or otherwise perform any of the Asbestos Insurer Cooperation Obligations, the Asbestos Personal Injury Trust, the TAC, the Future Claimants' Representative, and the holder (the "Denied Asbestos Personal Injury Claimant") of the applicable Asbestos Personal Injury Claim (the "Denied Asbestos Personal Injury Claim"), each individually or in any combination jointly, may seek (1) specific performance directing the Reorganized Debtors to cure their breach of the Asbestos Insurer Cooperation Obligations, and/or (2) payment from the Reorganized Debtors for the judgment or settlement amount of the Denied Asbestos Personal Injury Claim. Regardless of which remedy is sought, the party may also seek payment from the Reorganized Debtors for reasonable attorneys' fees expended in pursuing such relief from the Reorganized Debtors.

**c.** Within forty-five (45) calendar days of receiving notice that an Asbestos Insurer contests coverage for an Asbestos Personal Injury Claim asserted against the Reorganized Debtors because the Reorganized Debtors are alleged to have failed to satisfy or otherwise perform the Asbestos Insurer Cooperation Obligations (a "Notice"), the Asbestos Personal Injury Trust and the holder of such Asbestos Personal Injury Claim shall provide to the Reorganized Debtors any documents or information they respectively received from the Asbestos Insurer denying, rejecting or disclaiming coverage. If such information is not provided to the Reorganized Debtors within forty-five (45) days of receipt, then the Reorganized Debtors shall have no obligations under Section IV.L.2 with respect to such Asbestos Personal Injury Claim, unless the failure to provide such information as required did not unfairly prejudice the Reorganized Debtors.

**d.** Within forty-five (45) calendar days of receiving a Notice, the Reorganized Debtors shall provide to the Asbestos Personal Injury Trust and the holder of the applicable Asbestos Personal Injury Claim (1) any documents or information they received from the Asbestos Insurer denying, rejecting or disclaiming coverage and (2) any documentation or other information they have within their possession, custody, or control regarding the Reorganized Debtors' efforts to satisfy any of the Asbestos Insurer Cooperation Obligations in respect of the applicable Asbestos Personal Injury Claim. The Asbestos Personal Injury Trust or the holder of the Asbestos Personal Injury Claim or both may assert an action against the Asbestos Insurer seeking coverage for the Asbestos Personal Injury Claim, and shall provide timely notice to the Reorganized Debtors of any action seeking such coverage. The Reorganized Debtors agree that a finding that they failed to satisfy or otherwise perform any of the Asbestos Insurer Cooperation Obligations may be made regardless of whether they are a named party in any such action and agree to be bound by any such finding in a Final Order. In the event that the action brought against the Asbestos Insurer pursuant to this Section IV.L.2.d results in a Final Order providing that the Asbestos Insurer does not have a coverage obligation for the Asbestos Personal Injury Claim and the basis for the finding that there is no such coverage obligation may be because the Reorganized Debtors failed to satisfy or otherwise perform any of the Asbestos Insurer Cooperation Obligations, then the Asbestos Personal Injury Trust or the holder of the Asbestos Personal Injury Claim or both may bring a subsequent direct action against the Reorganized Debtors for the sole purpose of seeking the finding described in Section IV.L.2.b.

**e.** In the event any of the parties identified in Section IV.L.2.b as having rights with respect to a Denied Asbestos Personal Injury Claim seeks payment or specific performance related to a Denied Asbestos Personal Injury Claim, the Reorganized Debtors shall, within thirty (30) calendar days of receiving notice of the Denied Asbestos Personal Injury Claim, either (a) remit payment of (i) the judgment or settlement amount of the Denied Asbestos Personal Injury Claim to the Asbestos Personal Injury Trust or the

Denied Asbestos Personal Injury Claimant, as applicable, and if payment of the amount of the Denied Asbestos Personal Injury Claim is made to the Asbestos Personal Injury Trust, the Asbestos Personal Injury Trust shall in turn remit payment to the Denied Asbestos Personal Injury Claimant, and (ii) reasonable attorneys' fees expended in enforcing the rights provided in Section IV.L.2, except for any attorneys' fees expended in connection with a direct action against the Reorganized Debtors permitted by Section IV.L.2.d (collectively, the "Legal Fees") to the appropriate party, or (b) attempt to cure the breach of the Asbestos Insurer Cooperation Obligations. If the Reorganized Debtors successfully cure their breach such that the Asbestos Insurer reverses its previous denial of coverage and pays the Denied Asbestos Personal Injury Claim in full, the Reorganized Debtors shall have no obligation to pay the Denied Asbestos Personal Injury Claim; the Reorganized Debtors shall, however, remain liable for paying the Legal Fees, and shall remit payment of such Legal Fees to the appropriate party. If the Reorganized Debtors are unable to cure their breach of the Asbestos Insurer Cooperation Obligations, the Reorganized Debtors shall pay to the Asbestos Personal Injury Trust or the Denied Asbestos Personal Injury Claimant, as applicable, the judgment or settlement amount of the Denied Asbestos Personal Injury Claim and shall remit the Legal Fees to the appropriate party.

**f.** Lehigh Hanson shall fully guarantee the Reorganized Debtors' performance of any payment obligations they incur with respect to the Asbestos Insurance Policies, including, but not limited to, any obligations the Reorganized Debtors incur under Section IV.L.2 and shall pay directly to the Reorganized Debtors, within fourteen (14) calendar days of receiving notice of the Reorganized Debtors' failure to pay a Denied Asbestos Personal Injury Claim and related Legal Fees or otherwise, the amount of any such payment obligation so that the Reorganized Debtors may distribute the funds. Notwithstanding the foregoing, payment obligations of the Reorganized Debtors under this paragraph shall not include any obligation the Asbestos Personal Injury Trust has expressly assumed hereunder, including the Deductibles and any obligations for which the Asbestos Personal Injury Trust has agreed hereunder to reimburse the Reorganized Debtors.

**g.** Nothing in Section IV.L.2 is intended to preclude, limit, or otherwise impair, any other claims, causes of action, or remedies that may be available to the Asbestos Personal Injury Trust, the TAC, the Future Claimants' Representative, or any holders of Asbestos Personal Injury Claims, under otherwise applicable non-bankruptcy law or the Plan and its Exhibits, related to Asbestos Personal Injury Claims. In particular, nothing in Section IV.L.2 is intended to bar or preclude holders of Asbestos Personal Injury Claims from pursuing any action directly against Asbestos Insurers related to Asbestos Personal Injury Claims or Denied Asbestos Personal Injury Claims, including actions under Section 11580 of the California

Insurance Code and its subdivisions, or any related or similar statute in any jurisdiction.

**M.      Compromise of Insurance Policies**

**1.      Dual Policies**

The Reorganized Debtors or their assignee(s) shall not compromise any part of the Dual Policies absent the prior written consent of the TAC, the Future Claimants' Representative and the Asbestos Personal Injury Trust, such consent not to be unreasonably withheld, and the Asbestos Personal Injury Trust (conditioned on the express consent of the TAC and the Future Claimants' Representative) shall not compromise any part of the Dual Policies absent the prior written consent of the Reorganized Debtors or their assignee(s), such consent not to be unreasonably withheld. If a dispute arises as to whether a party's lack of consent is reasonable, such dispute may be presented to the Bankruptcy Court for resolution. After the Effective Date, should the Bankruptcy Court or appellate court, if applicable, find in favor of the party withholding consent, the other party shall pay the reasonable attorneys' fees and costs of the party withholding consent.

**2.      Separate Limit Policies**

The Reorganized Debtors or their assignee(s) are entitled to settle that portion of the Separate Limit Policies that does not provide coverage for Asbestos Personal Injury Claims. The TAC, Future Claimants' Representative and the Asbestos Personal Injury Trust are entitled to notice and review of any proposed settlement but may only object on the grounds that the proposed settlement releases or otherwise impairs coverage for Asbestos Personal Injury Claims. Also with respect to Separate Limit Policies, the Asbestos Personal Injury Trust (conditioned on the express consent of the TAC and the Future Claimants' Representative) is entitled to settle that portion of the Separate Limit Policies that does not provide coverage for Environmental Claims. The Reorganized Debtors or their assignee(s) are entitled to notice and review of any proposed settlement but may object only on the grounds that the proposed settlement releases or otherwise impairs coverage for Environmental Claims. If a dispute arises as to whether a proposed settlement releases or otherwise impairs coverage for Asbestos Personal Injury Claims, or Environmental Claims, as applicable, such dispute may be presented to the Bankruptcy Court for resolution. After the Effective Date, should the Bankruptcy Court, or appellate court if applicable, find in favor of the objecting party, the other party shall pay the reasonable attorneys' fees and costs of the objecting party.

**3.      Insurance Policies that Provide Coverage for Asbestos Personal Injury Claims but not for Environmental Claims**

With respect to insurance policies that provide coverage for Asbestos Personal Injury Claims but not for Environmental Claims (a list of such policies is attached as Exhibit IV.M.3), and also any policies that may provide coverage for Asbestos Personal Injury Claims, but not for Environmental Claims that are not included on Exhibits I.A.60, I.A.~~113~~119, IV.M.3 and IV.M.4, the Asbestos Personal Injury Trust (conditioned on the express consent of the TAC and the

Future Claimants' Representative) may settle such Asbestos Personal Injury Insurance Assets and the Reorganized Debtors or their assignee(s) shall have no standing to object.

### a.  Settlement with Truck

If the Asbestos Personal Injury Trust seeks approval of a settlement with Truck, the Objecting Excess Insurers may object to approval of such settlement (notice, hearing, and the ~~Court's~~Court's approval of which are required before Truck may become a ~~"~~"Settling Asbestos Insurer~~"~~").  The Objecting Excess Insurers may object to the settlement to the same extent and on the same grounds that they could have objected (a) to the settlement if the settlement had been reached, and approval of it had been sought before Confirmation and (b) to the Plan had such a settlement been set forth in the Plan; without limiting the foregoing, any objections based on projections with respect to events that had not occurred as of the Confirmation Hearing shall be based on information that was known or knowable as of the Confirmation Hearing. The Objecting Excess Insurers may not argue that either the Bankruptcy Court or the District Court lacked jurisdiction to confirm the Plan; provided, however, for the avoidance of doubt, the objections set forth in the preceding sentence are preserved. The Asbestos Personal Injury Trust may oppose the Objecting Excess Insurers~~'~~' Objections and assert any additional arguments or bases for opposition to such objections on any ground, including grounds that were or could have been advanced by the Debtors, the Asbestos Personal Injury Committee or the ~~FCR~~Future Claimants' Representative in opposition to the Objecting Excess Insurers~~'~~' Objections. The relief available to the Objecting Excess Insurers, if one or more of them prevails on one or more such objection(s), shall be limited, to (a) denying the motion to approve the settlement with Truck; (b) granting the Objecting Excess Insurers adequate protection of their Inter-Insurer Rights, if any, against Truck; and/or (c) modifying the Asbestos Permanent Channeling Injunction to exclude any restriction on the Objecting Excess Insurers~~'~~' pursuing their Inter-Insurer Rights, if any, against Truck, in all cases subject to the ~~Court's~~Court's determination that such relief is appropriate under principles of law and equity. For the avoidance of doubt, and not by way of limitation, none of the Objecting Excess Insurers~~'~~' Objections will be deemed moot because of substantial consummation of the Plan, ~~confirmation~~Confirmation of the Plan, the Plan becoming final and non-appealable, or the closing of the Reorganization Cases. For the avoidance of doubt, the Objecting Excess Insurers shall not be entitled to, and shall not seek, any other relief with respect to a settlement with Truck against the Debtors, the Reorganized Debtors, Lehigh Hanson or any of their affiliates, nor any relief with respect to the implementation, effectiveness, or consummation of the Plan (as long as the Plan is not materially altered before Confirmation). The Objecting Excess Insurers~~'~~' agreement not to seek such relief, however, shall not operate to limit the relief that may be available to the Objecting Excess Insurers against the Asbestos Personal Injury Trust, or to the Asbestos Personal Injury Trust.

Upon the filing by the Asbestos Personal Injury Trust of a motion to approve a settlement with Truck, the Asbestos Personal Injury Trust shall move the Court to set a status conference on such motion on a date that is no less than twenty (20) days after the filing of such motion, or such other date as directed by the Court, without prejudice to the rights of any party to seek a longer or shorter period of time based upon the facts and circumstances that might then exist. At the status conference, any party may request that the Court set a briefing schedule for any objections to the motion, set an evidentiary hearing to consider the merits of the motion and any objections thereto (unless no party requests an evidentiary hearing), establish a schedule for

discovery relating to the motion and any objections thereto, and any other party may object to such request.

Any settlement between the Asbestos Personal Injury Trust and Truck shall not contain any provision that excuses Truck from its obligation to continue to defend the underlying asbestos personal injury cases until such time as any order approving such settlement (if any such order is entered) has become a Final Order. Further, and notwithstanding anything else contained in the Plan or the Confirmation Order, unless and until the Court enters an order (which has become a Final Order) approving a Truck settlement that might provide otherwise (and without prejudice to the rights of the Objecting Excess Insurers[2'] rights to object to the entry of such an order as provided above), the Objecting Excess Insurers[2'] rights under the law, the Excess CIP Agreement, and the Asbestos Insurance Policies that relate to the defense of the underlying asbestos claims are preserved against Truck if it ceases defending any of the underlying asbestos cases.

### 4. Insurance Policies that Provide Coverage for Environmental Claims but not for Asbestos Personal Injury Claims

With respect to insurance policies that provide coverage for Environmental Claims but not for Asbestos Personal Injury Claims (a list of such policies is attached as Exhibit IV.M.4) and any policies that may provide coverage for Environmental Claims but not for Asbestos Personal Injury Claims that are not included on Exhibits I.A.60, I.A.~~113~~119, IV.M.3 and IV.M.4, the Reorganized Debtors or their assignee(s) may settle such policies and the TAC, Future Claimants' Representative and the Asbestos Personal Injury Trust shall have no standing to object.

### 5. Amendment of Insurance Policy Exhibits

If a dispute regarding the lists of Dual Policies and Separate Limit Policies arises after the Confirmation Hearing, it may be presented to the Bankruptcy Court. After the Confirmation Hearing, Exhibits I.A.60, I.A.~~113~~119, IV.M.3 and IV.M.4 may only be amended by written agreement of the Parties, or if after the Effective Date, the Asbestos Personal Injury Trust, the Reorganized Debtors and Lehigh Hanson. For any Insurance Policy not previously included as an Exhibit to this Plan that the Asbestos Personal Injury Trust, the Reorganized Debtors or Lehigh Hanson contend should be added to Exhibits I.A.60, I.A.~~113~~119, IV.M.3 and IV.M.4 after Confirmation, and about which there is a dispute among such parties, such dispute may be presented to the Bankruptcy Court for resolution.

### N. Truck Obligations Regarding Deductibles

Notwithstanding any provision in any Asbestos Insurance Policy to the contrary, Truck shall have no obligation to pay, and shall not pay, any Deductible under any applicable Asbestos Insurance Policy to holders of Asbestos Personal Injury Claims or any other Entity. The Asbestos Personal Injury Trust shall satisfy such Deductible to holders of Insured Asbestos Claims in accordance with the terms, provisions and procedures of the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures. Other than with respect to Deductibles, the Asbestos Personal Injury Trust shall not assume responsibility

pursuant to the Plan for any other expenses owed to Truck, or that may become owed to Truck in the future, in connection with Asbestos Personal Injury Claims.

## O.  Liquidation of Asbestos Personal Injury Claims

### 1.  Insured Asbestos Claims

Holders of Insured Asbestos Claims may initiate, continue and/or prosecute suit against the Reorganized Debtors in the tort system to obtain the benefit of insurance coverage under the Asbestos Insurance Policies, unless and until the Asbestos Personal Injury Trust, with the consent of the TAC and the Future Claimants' Representative, has settled (other than pursuant to the Excess CIP Agreement) all rights to coverage for Asbestos Personal Injury Claims applicable to the Asbestos Personal Injury Claim of a particular holder, in which event such holder shall pursue payment of its Asbestos Personal Injury Claim from the Asbestos Personal Injury Trust in accordance with the Asbestos Personal Injury Trust Distribution Procedures. In the event that a holder of an Insured Asbestos Claim commences such an action, the complaint may name the applicable Reorganized Debtor(s) as a defendant(s) and shall be deemed by operation of law to be an action against the applicable Reorganized Debtor(s). Notwithstanding the foregoing, the Reorganized Debtors shall have no obligation to answer, appear or otherwise participate in the action in any respect other than as set forth in this Plan and as may be necessary to maintain coverage under the Asbestos Insurance Policies, and any judgment that may be obtained in the action cannot be enforced against the assets of the Reorganized Debtors, other than from the Asbestos Insurance Policies. Such actions may be filed in any court where the applicable Debtor would have been subject to in personam jurisdiction as of the Petition Date or any other court of competent jurisdiction and process may be served upon a person or entity appointed by the Reorganized Debtors to serve as agent, who shall tender such actions to Truck or, if appropriate, to any other applicable Asbestos Insurers in compliance with the notice provisions of the applicable Asbestos Insurance Policies. Nothing in this Section IV.O. is intended to affect any cause of action or right to bring a cause of action held by any holder of an Asbestos Personal Injury Claim directly against any Asbestos Insurer. The portion of any Insured Asbestos Claim that is not covered by any Asbestos Insurance Policy shall be paid in accordance with the terms, provisions and procedures of the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures.

### 2.  Uninsured Asbestos Claims

Each Uninsured Asbestos Claim will be determined and paid in accordance with the terms, provisions and procedures of the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures. The sole recourse of a holder of an Uninsured Asbestos Claim on account of such Claim will be to the Asbestos Personal Injury Trust and such holder will have no right whatsoever at any time to assert its Uninsured Asbestos Claim against any Protected Party.

## P.  Limitations On Judgment Recovery From Non-Settling Asbestos Insurers

To the extent that any Non-Settling Asbestos Insurer has an Asbestos Insurance Policy Claim against one or more Settling Asbestos Insurers with respect to an Asbestos Personal Injury

Claim that it could have asserted against such Settling Asbestos Insurers but for the Asbestos Permanent Channeling Injunction provided under the Plan (hereafter, "Contribution Claims"), the judgment liability (if any) of the Non-Settling Asbestos Insurer to the holder of such Asbestos Personal Injury Claim shall be reduced dollar-for-dollar by the amount (if any) of the Contribution Claims established pursuant to this Section IV.P. The court hearing the Asbestos Personal Injury Claim shall employ such procedures as that court determines are appropriate to determine prior to entry of judgment the validity and amount of any Contribution Claims (and the corresponding reduction in the amount of the holder's recovery) as if, and to the same extent, they were asserted against the Settling Asbestos Insurers. The holder of the Asbestos Personal Injury Claim may assert the legal or equitable rights, if any, of the Settling Asbestos Insurers in the action. The Bankruptcy Court may modify this judgment reduction provision or grant such other relief in any order approving a settlement with any Asbestos Insurer as appropriate and necessary to adequately protect the Inter-Insurer Rights, if any, of any non-settlingNon-Settling Asbestos Insurer.

## Q. Insurance Neutrality

Nothing in the Plan, any Exhibit to the Plan, the Confirmation Order, any finding of fact and/or conclusion of law with respect to the Confirmation of the Plan, or any order or opinion entered on appeal from the Confirmation Order shall limit the right of any Asbestos Insurer to assert any Insurer Coverage Defense; provided, however, that (a) the transfer of rights in and under the Asbestos Personal Injury Insurance Assets to the Asbestos Personal Injury Trust is valid and enforceable and transfers such rights under the Asbestos Personal Injury Insurance Assets as the Debtors may have, and that such transfer shall not affect the liability of any Asbestos Insurer, and (b) the discharge and release of the Debtors and Reorganized Debtors from all Claims and the injunctive protection provided to the Debtors, Reorganized Debtors and Protected Parties with respect to Claims as provided herein shall not affect the liability of any Asbestos Insurer, except to the extent that any such Asbestos Insurer is also a Settling Asbestos Insurer. Notwithstanding anything in this Section IV.Q. to the contrary, nothing in this Section IV.Q. shall affect or limit, or be construed as affecting or limiting, (1a) the binding effect of the Plan and the Confirmation Order on the Debtors, the Reorganized Debtors, the Asbestos Personal Injury Trust or the beneficiaries of the Asbestos Personal Injury Trust or (2b) the protection afforded to any Settling Asbestos Insurer by the Asbestos Permanent Channeling Injunction. Further, nothing in this Section IV.Q. is intended or shall be construed to preclude otherwise applicable principles of res judicata or collateral estoppel from being applied against any Asbestos Insurer with respect to any issue that is actually litigated by such Asbestos Insurer as part of its objections to Confirmation of the Plan.

## R. Preservation of Rights of Action; Settlement of Claims and Releases

### 1. Preservation of Rights of Action by the Reorganized Debtors

Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code and to the fullest extent possible under applicable law, the Reorganized Debtors shall retain and may enforce, and shall have the right to enforce, any claims, demands, rights and causes of action that any Debtor or Estate may hold against any Entity, including any

Recovery Actions. The Reorganized Debtors or their successors or assignees may pursue such retained claims, demands, rights or causes of action, as appropriate, in accordance with the best interests of the Reorganized Debtors or their successors or assignees holding such claims, demands, rights or causes of action. Further, the Reorganized Debtors retain their right to File and pursue, and shall have the sole right to File and pursue, any adversary proceedings against any trade creditor or vendor related to debit balances or deposits owed to any Debtor.

### 2.  Settlement of Certain Estate Claims

a.  Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, any and all claims against the Protected Parties that are or would have been property of the Debtors' Estates or could have been brought by the Debtors' Estates, including without limitation Recovery Actions and any claims based upon a legal or equitable theory of liability in the nature of veil piercing, alter ego, successor liability, vicarious liability, fraudulent transfer, malpractice, breach of fiduciary duty, waste, fraud or conspiracy, except for Intercompany Claims, shall be deemed settled, released and extinguished. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims and the Bankruptcy Court's finding that such compromise or settlement is in the best interest of the Debtors, Reorganized Debtors and their respective Claim and Interest holders and is fair, equitable and reasonable.

b.  Pursuant to Bankruptcy Rule 9019 and in consideration for the releases and other benefits provided under the Plan, any and all claims against the holders of Asbestos Personal Injury Claims who received payments in respect of their claims from the Debtors, Lehigh Hanson, or any predecessor or affiliate of the Debtors or Lehigh Hanson prior to Petition Date, and their professionals (but only with respect to their representation of or work for such holders in connection with such payments), that are or would have been property of any of the Debtors' Estates or could have been brought by any of the Debtors' Estates or any Protected Party, including without limitation Recovery Actions, and any claims based upon a legal or equitable theory of liability, in each case arising out of, based upon or resulting from payments to holders of Asbestos Personal Injury Claims from the Debtors, Lehigh Hanson or any predecessor or affiliate of the Debtors or Lehigh Hanson prior to the Petition Date, shall be deemed settled, released and extinguished.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims and the Bankruptcy Court's finding that such compromise or settlement is in the best interest of the Debtors, the Reorganized Debtors and their respective Claim and Interest holders and is fair, equitable and reasonable.

3. **Releases**

   a. **General Releases of Debtors and Reorganized Debtors**

   Except as otherwise expressly set forth in the Plan, and except to the extent it would diminish, reduce or eliminate the duties or obligations of any Asbestos Insurer under any Asbestos Personal Injury Insurance Asset, as of the Effective Date, the Debtors and the Reorganized Debtors are released from all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, arising out of, based upon or resulting from, directly or indirectly, in whole or in part, any act, omission, transaction or other occurrence taking place on or prior to the Effective Date. __Notwithstanding the foregoing, the releases set forth in this paragraph will not become effective with respect to holders of General Unsecured Claims until the General Unsecured Claims Escrows have been funded as set forth herein.__

   b. **Release by the Debtors, Reorganized Debtors and Lehigh Hanson**

   1. Without limiting any other provision of the Plan, as of the Effective Date, the Debtors and the Reorganized Debtors, on behalf of themselves and their respective affiliates, Estates and successors and assigns, and any and all Entities who may purport to claim by, through, for or because of them, shall be deemed to forever release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, against each of the present and former directors, officers, employees, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives and agents of the Debtors, the DIP Lender and DEQ, in each case acting in such capacity, arising out of, based upon or resulting from, directly or indirectly, in whole or in part, any act, omission, transaction or other occurrence taking place on or prior to the Effective Date with respect to the Reorganization Cases, the Plan or the DEQ Settlement, except for the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

   2. Without limiting any other provision of the Plan, as of the Effective Date, the Debtors, the Reorganized Debtors and Lehigh Hanson, on behalf of themselves and their respective affiliates, Estates and successors and assigns, and any and all Entities who may purport to claim by, through, for or because of them, shall be deemed to forever release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, against holders of Asbestos Personal Injury Claims who received payments in respect of their claims from the Debtors, Lehigh Hanson, or any predecessor or affiliate of the Debtors or

Lehigh Hanson prior to Petition Date, and their professionals (but only with respect to their representation of or work for such holders in connection with such payments), including without limitation Recovery Actions, in each case arising out of, based upon or resulting from payments to holders of Asbestos Personal Injury Claims from the Debtors, Lehigh Hanson or any predecessor or affiliate of the Debtors or Lehigh Hanson prior to Petition Date.

### c.      General Releases by Holders of Claims or Interests

Without limiting any other provision of the Plan or the Bankruptcy Code, as of the Effective Date, in consideration for, among other things, the obligations of the Debtors and the Reorganized Debtors under the Plan, each holder of a Claim or Interest that votes in favor of the Plan or is deemed to accept the Plan shall be deemed to forever release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, against any of the Parties, the Creditors' Committee or any Reorganized Debtor, or any of their respective present or former directors, officers, employees, members, subsidiaries, predecessors, successors, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives and agents, or the DIP Lender, in each case acting in such capacity, arising out of, based upon or resulting from, directly or indirectly, in whole or in part, any act, omission, transaction or other occurrence taking place on or prior to the Effective Date and in any way relating to the Reorganization Cases or the Plan (which release shall be in addition to the discharge of Claims provided herein and under the Confirmation Order and the Bankruptcy Code). Notwithstanding the foregoing, no release or discharge of any of the Parties, the Creditors' Committee or any Reorganized Debtor, or any of their respective present or former directors, officers, employees, members, subsidiaries, predecessors, successors, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives and agents, or the DIP Lender, in each case acting in such capacity, shall diminish, reduce or eliminate the duties or obligations of any Asbestos Insurer under any Asbestos Personal Injury Insurance Asset.

### d.      Injunction Related to Releases

Except as otherwise expressly provided in the Plan, including in Section IV.O.1., the Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities released pursuant to the Plan.

## S.      Release of Encumbrances

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article VI, all Encumbrances against the property of any Estate shall be fully released and discharged, and all

of the right, title and interest of any holder of such Encumbrances, including any rights to any collateral thereunder, shall revert to the applicable Reorganized Debtor and its successors and assigns.

**T.    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes**

Each officer of each Debtor and Reorganized Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements and documents and take such actions as may be necessary or appropriate to effect and implement the provisions of the Plan, including the Restructuring Transactions provisions of Section IV.B. The secretary or any assistant secretary of each Debtor or Reorganized Debtor shall be authorized to certify or attest to any of the foregoing actions. Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp Tax or similar Tax: (1) the creation of any Encumbrances; (2) the making or assignment of any lease or sublease; (3) the execution and implementation of the Asbestos Personal Injury Trust Agreement, including the creation of the Asbestos Personal Injury Trust and any transfers to or by the Asbestos Personal Injury Trust; (4) any Restructuring Transaction; or (5) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments, applications, certificates or statements executed or filed in connection with any of the foregoing or pursuant to the Plan.

**U.    Determination of the Insolvent Insurers Proceeds Dispute**

~~The Bankruptcy Court shall determine the Insolvent Insurers Proceeds Dispute unless it is resolved by agreement among the Debtors, the Asbestos Personal Injury Committee, the Future Claimants' Representative, the Insurance Company of the State of Pennsylvania, First State Insurance Company and New England Reinsurance Corporation, Associated International Insurance Company, and, if prior to the Effective Date, the Creditors' Committee. The Confirmation Order shall establish a schedule, acceptable to the Debtors, the Asbestos Personal Injury Committee, the Future Claimants' Representative, the Insurance Company of the State of Pennsylvania, First State Insurance Company and New England Reinsurance Corporation, Associated International Insurance Company, and, if prior to the Effective Date, the Creditors' Committee for the litigation of the Insolvent Insurers Proceeds Dispute in the Bankruptcy Court.~~

The Confirmation Order shall approve the agreed resolution of the Insolvent Insurers Proceeds Dispute.

**V.    Compliance with QSF Regulations**

The Debtors and the Reorganized Debtors shall take all actions required of them as "transferor," and the Asbestos Personal Injury Trustees shall take all actions required of them as "administrator," pursuant to Treasury Regulations promulgated under section 468B of the Internal Revenue Code. Pursuant to such Treasury Regulations, the Asbestos Personal Injury Trustees as "administrator" shall be responsible for all tax reporting and withholding requirements in respect of distributions made from the Asbestos Personal Injury Trust.

**W.      Surety Bond Obligations**

Notwithstanding any other provisions of the Plan, on the Effective Date, all rights of any party related to the Surety Bond Program shall not be altered by the Plan. The applicable Reorganized Debtor hereby reaffirms and ratifies the Surety Bond Obligations arising under the Surety Bond Program, which shall continue to be in full force and effect, and the Surety Bond Obligations are not discharged or released by the Plan in any way. On the Effective Date, all liens and security interests, if any, granted pursuant to or in connection with the Surety Bond Program shall have the priorities established in respect thereof under applicable non-bankruptcy law, and shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination pursuant to the Plan or the Confirmation Order. The Surety Bond Program and all Surety Bond Obligations shall be treated by the Reorganized Debtors in the ordinary course of business as if the Reorganization Cases had not been commenced. For the avoidance of any doubt, and with a reservation of rights to all parties, any agreements related to the Surety Bond Program to which a Debtor is party will vest in the applicable Reorganized Debtor, and to the extent such agreements are considered to be executory contracts, then, notwithstanding anything contained in Article V to the contrary, the Plan will constitute a motion to assume such agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code. Nothing in the Plan shall affect in any way any surety's rights against any non-debtor, or any non-debtor's rights against a surety, including under the Surety Bond Program or with regard to the Surety Bond Obligations.

**ARTICLE V**

**TREATMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES**

**A.      Executory Contracts and Unexpired Leases to Be Assumed**

**1.      Assumption Generally**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, including the Restructuring Transactions provisions of Section IV.B., on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the applicable Debtor or Reorganized Debtor shall assume each of its respective Executory Contracts and Unexpired Leases other than those listed on Exhibit V.C; provided, however, that the Debtors reserve the right, at any time prior to the Effective Date, to amend Exhibit V.C to: (a) delete any Executory Contract or Unexpired Lease listed therein, thus providing for its assumption pursuant hereto; or (b) add any Executory Contract or Unexpired Lease to Exhibit V.C, thus providing for its rejection pursuant to this Section V.A.1. The Debtors shall provide notice of any amendments to Exhibit V.C to the parties to the Executory Contracts or Unexpired Leases affected thereby and to the parties on the then-applicable service list in the Reorganization Cases. Nothing herein shall constitute an admission by a Debtor or Reorganized Debtor that any contract or lease is an Executory Contract or Unexpired Lease or that a Debtor or Reorganized Debtor has any liability thereunder.

## 2. Assumptions of Executory Contracts and Unexpired Leases

Each Executory Contract or Unexpired Lease assumed under Section V.A.1. shall include any modifications, amendments, supplements or restatements to such contract or lease.

## 3. Approval of Assumptions and Assumption Procedures

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions described in Section V.A.1., pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The procedures for assumption of an Executory Contract or Unexpired Lease are as follows:

     a.    After the entry of the Confirmation Order, the Debtors shall serve upon each party to an Executory Contract or Unexpired Lease being assumed pursuant to the Plan notice of: (i) the contract or lease being assumed or assumed and assigned; (ii) the Cure Amount Claim, if any, that the applicable Debtor believes it would be obligated to pay in connection with such assumption; and (iii) the procedures for such party to object to the assumption or assumption and assignment of the applicable contract or lease or the amount of the proposed Cure Amount Claim.

     b.    Any Entity wishing to object to (i) the proposed assumption of an Executory Contract or Unexpired Lease under the Plan or (ii) the proposed amount of the related Cure Amount Claim must File and serve on counsel to the Debtors a written objection setting forth the basis for the objection within twenty (20) days of service of the notice described in Section V.A.3.a.

     c.    If no objection to the proposed assumption or Cure Amount Claim is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease: (i) the proposed assumption of the Executory Contract or Unexpired Lease shall be approved in accordance with the Plan and the Confirmation Order, effective as of the Effective Date, without further action of the Bankruptcy Court; and (ii) the Cure Amount Claim identified by the Debtors in the notice shall be fixed and shall be paid in accordance with the Plan on or after the Effective Date, without further action of the Bankruptcy Court, to the appropriate contract or lease party identified on the notice.

     d.    If an objection to the proposed assumption or Cure Amount Claim is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease, the Debtors or Reorganized Debtors, as applicable, and the objecting party may resolve such objection by stipulation, without further action of the Bankruptcy Court.

     e.    If an objection to the proposed assumption or Cure Amount Claim is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease and the parties are unable to resolve such objection: (i) the Debtors or Reorganized Debtors may File a

44

reply to such objection no later than thirty (30) days after the Filing and service of such objection and ask the Bankruptcy Court to schedule a hearing on the particular objection and the related reply at an appropriate time; or (ii) the Debtors or Reorganized Debtors, as applicable, may designate the Executory Contract or Unexpired Lease underlying such objection for rejection pursuant to Section V.C. and amend Exhibit V.C. accordingly.

## B. Payments Related to the Assumption of Executory Contracts and Unexpired Leases

To the extent that a Cure Amount Claim constitutes a monetary default, such Cure Amount Claim associated with each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor or Reorganized Debtor assuming such contract or lease or the assignee of such Debtor or Reorganized Debtor, if any: (1) by payment of the Cure Amount Claim in cash on the Effective Date or (2) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease. Pursuant to section 365(b)(2)(D) of the Bankruptcy Code, no Cure Amount Claim shall be allowed for a penalty rate or other form of default rate of interest. If there is a dispute regarding: (1) the amount of any Cure Amount Claim; (2) the ability of the applicable Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (3) any other matter pertaining to assumption of such contract or lease, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption. For assumptions of Executory Contracts or Unexpired Leases between Debtors, the Reorganized Debtor assuming such contract may cure any monetary default (1) by treating such amount as either a direct or indirect contribution to capital or Distribution (as appropriate) or (2) through an intercompany account balance in lieu of payment in cash.

## C. Executory Contracts and Unexpired Leases to Be Rejected and Rejection Procedures

On the Effective Date, each Executory Contract and Unexpired Lease listed on Exhibit V.C shall be rejected pursuant to section 365 of the Bankruptcy Code. Each contract and lease listed on Exhibit V.C shall be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. Listing a contract or lease on Exhibit V.C shall not constitute an admission by a Debtor or Reorganized Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that a Debtor or Reorganized Debtor has any liability thereunder. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The appropriate procedures for rejection of an Executory Contract or Unexpired Lease are as follows:

1. After the entry of the Confirmation Order, the Debtors shall serve upon each party to an Executory Contract or Unexpired Lease being rejected pursuant to the Plan notice of such proposed rejection.

**2.** Any Entity wishing to object to the proposed rejection of an Executory Contract or Unexpired Lease under the Plan must File and serve on counsel to the Debtors a written objection setting forth the basis for the objection within twenty (20) days of service of the notice described in Section V.C.1.

**3.** If no objection to the proposed rejection is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease, the proposed rejection of the applicable Executory Contract or Unexpired Lease shall be approved in accordance with the Plan and the Confirmation Order, effective as of the Effective Date, without further action of the Bankruptcy Court.

**4.** If an objection to the proposed rejection is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease, the Debtors or Reorganized Debtors, as applicable, and the objecting party may resolve such objection by stipulation, without further action of the Bankruptcy Court.

**5.** If an objection to the proposed rejection is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease and the parties are unable to resolve such objection, the Debtors or Reorganized Debtors, as applicable, may File a reply to such objection no later than thirty (30) days after the Filing and service of such objection and ask the Bankruptcy Court to schedule a hearing on the particular objection and the related reply at an appropriate time.

**D.     Obligations to Indemnify Directors, Officers and Employees**

The obligations of each Debtor or Reorganized Debtor to indemnify any individual serving as one of its directors, officers or employees prior to or following the Petition Date by reason of such individual's prior or future service in such a capacity or as a director, officer or employee of any Debtor or other Entity, to the extent provided in the applicable Certificate of Incorporation or By-Laws, by statutory law or by written agreement, policies or procedures of or with such Debtor, shall be deemed and treated as executory contracts that are assumed by the applicable Debtor or Reorganized Debtor pursuant to the Plan and section 365 of the Bankruptcy Code as of the Effective Date. Accordingly, such indemnification obligations shall survive and be unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date.

**E.     Contracts and Leases Entered Into After the Petition Date**

Notwithstanding any other provision of the Plan, and subject to the Restructuring Transactions provisions of Section IV.B., contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, shall be performed by the Debtor or Reorganized Debtor liable thereunder in accordance with the terms and conditions of such contracts and leases in the ordinary course of its business. Accordingly, such contracts and leases and other obligations (including any assumed Executory Contracts and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

## F.    Insurance Policies

### 1.    Assumed Insurance Policies

The Debtors do not believe that the insurance policies issued to any Debtor, including the Insurance Policies, prior to the Petition Date constitute executory contracts. To the extent such insurance policies are considered to be executory contracts, then, notwithstanding anything contained in Article V to the contrary, the Plan will constitute a motion to assume such insurance policies, which include but are not limited to the Debtors' workers' compensation and liability, product and property insurance policies maintained by The Home Insurance Company, and authorize the Reorganized Debtors to pay all future obligations, if any, in respect thereof. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, their respective estates and all parties in interest in the Reorganization Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective date, no payments are required to cure any defaults of any Debtor existing as of the Confirmation Date with respect to each such insurance policy.

### 2.    Reservation of Rights

Nothing contained in the Plan will constitute a waiver of any claim, right or cause of action that a Debtor, a Reorganized Debtor or the Asbestos Personal Injury Trust, as the case may be, may hold against the insurer under any policy of insurance or insurance agreement, except to the extent the insurer is a Settling Asbestos Insurer.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

## A.    Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided in the Plan, Distributions to be made on the Effective Date to holders of Claims that are Allowed Claims as of the Effective Date shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than: (1) sixty (60) days after the Effective Date or (2) such later date when the applicable conditions of Section V.B. (regarding cure payments for Executory Contracts and Unexpired Leases being assumed), Section VI.DE.2. (regarding undeliverable Distributions) or Section VI.G.3. (regarding compliance with Tax requirements) are satisfied. Distributions on account of Claims that become Allowed Claims after the Effective Date shall be made pursuant to Section VI.GH.2. Any Claim that is disallowed by order of the Bankruptcy Court (or the District Court) prior to the Effective Date shall be deemed expunged (to the extent not already expunged) as of the Effective Date without the necessity for further Bankruptcy Court approval and the holder of any such Claim shall not be entitled to any Distribution under the Plan.

**B.** **General Unsecured Claims Escrows**

On the Effective Date, the General Unsecured Claims Escrows shall be fully funded. The Debtors and Reorganized Debtors will not hold any legal or equitable interest in the funds deposited in the General Unsecured Claims Escrows and such funds shall not be considered property of the Reorganized Debtors and any liens, charges, Claims, Encumbrances and Interests granted under the Plan shall not extend to an interest in the funds held in the General Unsecured Claims Escrow. The funds in the General Unsecured Claims Escrow shall be reserved solely for the benefit of the holders of Class 3 General Unsecured Claims, including any General Unsecured Claims that are Disputed Claims, pending determination of their entitlement thereto under the terms of the Plan. To the extent there are funds remaining in any General Unsecured Claims Escrow after payment in full of all Allowed General Unsecured Claims in accordance with the Plan (the "Remaining Funds"), Lehigh Hanson shall hold an interest in those funds and may request one or more distributions from the Escrow Agent for payment of the Remaining Funds.

~~B~~**C.** **Method of Distributions to Holders of Claims**

The Reorganized Debtors or Third Party Disbursing Agents as the Reorganized Debtors may employ in their sole discretion shall make all Distributions of cash and other instruments or documents required under the Plan. Each Disbursing Agent shall serve without bond, and any Disbursing Agent may employ or contract with other Entities to assist in or make the Distributions required by the Plan.

~~C~~**D.** **Compensation and Reimbursement for Services Related to Distributions**

Each Third Party Disbursing Agent providing services related to Distributions pursuant to the Plan shall receive from the Reorganized Debtors, without further Bankruptcy Court approval, reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services. These payments shall be made on terms agreed to with the Reorganized Debtors and shall not be deducted from Distributions to be made pursuant to the Plan to holders of Allowed Claims receiving Distributions.

~~D~~**E.** **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

**1.** **Delivery of Distributions**

Distributions to holders of Allowed Claims (other than Asbestos Personal Injury Claims) shall be made by a Disbursing Agent (a) at the addresses set forth on the respective proofs of Claim Filed by holders of such Claims, (b) at the addresses set forth in any written certification of address change delivered to the Disbursing Agent (including pursuant to a letter of transmittal delivered to a Disbursing Agent) after the date of Filing of any related proof of Claim, or (c) at the addresses reflected in the applicable Debtor's Schedules if no proof of Claim has been Filed and the Disbursing Agent has not received a written notice of a change of address.

### 2. Undeliverable Distributions Held by Disbursing Agents

#### a. Holding and Investment of Undeliverable Distributions

If any Distribution to a holder of an Allowed Claim is returned to a Disbursing Agent as undeliverable, no further Distributions shall be made to such holder unless and until the applicable Disbursing Agent is notified by written certification of such holder's then-current address. Undeliverable Distributions shall remain in the possession of the applicable Disbursing Agent pursuant to this Section VI.~~D~~E.2.a. until such time as a Distribution becomes deliverable. Undeliverable cash shall be held in segregated bank accounts in the name of the applicable Disbursing Agent for the benefit of the potential claimants of such funds. Any Disbursing Agent holding undeliverable cash shall invest such cash in a manner consistent with the Reorganized Debtors' investment and deposit guidelines.

#### b. After Distributions Become Deliverable

On each Quarterly Distribution Date, the applicable Disbursing Agent shall make all Distributions that become deliverable to holders of Allowed Claims (other than Asbestos Personal Injury Claims) during the preceding calendar quarter, to the extent not distributed earlier at the discretion of the applicable Disbursing Agent.

#### c. Failure to Claim Undeliverable Distributions

Any holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable Distribution to be made by a Disbursing Agent within one year after the later of (i) the Effective Date and (ii) the last date on which a Distribution was attempted to be made to such holder shall have its claim for such undeliverable Distribution discharged and shall be forever barred from asserting any such claim against the Reorganized Debtors or their respective property. Unclaimed Distributions shall become property of the respective Reorganized Debtor, free of any restrictions thereon, including the right of any state or other government to escheat such property, and any such Distributions held by a Third Party Disbursing Agent shall be returned to the applicable Reorganized Debtor. Nothing contained in the Plan shall require any Debtor, Reorganized Debtor or Disbursing Agent to attempt to locate any holder of an Allowed Claim.

### ~~E~~F. Distribution Record Date

#### 1. No Recognition of Transfers after the Distribution Record Date

A Disbursing Agent shall have no obligation to recognize the transfer or sale of any interest or participation in, any Claim that occurs after the close of business on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make Distributions only to those holders of Allowed Claims that are holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date.

## 2. Treatment of Certain Transfers

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date shall be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

## FG. Means of Cash Payments

Except as otherwise specified herein, cash payments made pursuant to the Plan to holders of Claims shall be in United States currency by checks drawn on a domestic bank selected by the Reorganized Debtors or Lehigh Hanson, as applicable, or, at the option of the Reorganized Debtors or Lehigh Hanson, as applicable, by wire transfer from a domestic bank; provided, however, that cash payments to foreign holders of Allowed Claims may be made, at the option of the Reorganized Debtors or Lehigh Hanson, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

## GH. Timing and Calculation of Amounts to Be Distributed

### 1. Timing of Distributions Under the Plan

Any Distribution to be made by any Debtor or Reorganized Debtor pursuant to the Plan shall be deemed to have been timely made if made within sixty (60) days after the time therefor specified in the Plan. Except as otherwise provided in the Plan, no interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the Effective Date. However, and for the avoidance of doubt, the funding of (a) the Asbestos Personal Injury Trust pursuant to Section IV.K.2. and (b) the General Unsecured Claims Escrows pursuant to Section VI.B shall occur on the Effective Date.

### 2. Allowed Claims

On the Effective Date, each holder of an Allowed Claim (other than an Asbestos Personal Injury Claim) shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class. On each Quarterly Distribution Date, Distributions also shall be made pursuant to Section VII.C. to holders of Disputed Claims in any such Class that were allowed during the preceding calendar quarter, to the extent not distributed earlier at the discretion of the applicable Disbursing Agent. Such quarterly Distributions also shall be in the full amount that the Plan provides for Allowed Claims in the applicable Class.

### 3. Compliance with Tax Requirements

#### a. Withholding and Reporting

In connection with the Plan, to the extent applicable, each Disbursing Agent shall comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision of the Plan to the contrary, each Disbursing Agent

shall be authorized to take any actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including applying a portion of any cash Distribution to be made under the Plan to pay applicable Tax withholding, requiring Claim holders to submit appropriate certifications or establishing other mechanisms such Disbursing Agent believes are reasonable and appropriate. To the extent that any Claim holder fails to submit appropriate certifications required by a Disbursing Agent or to comply with any other mechanism established by a Disbursing Agent to comply with Tax withholding requirements, such Claim holder's Distribution may, in such Disbursing Agent's reasonable discretion, be deemed undeliverable and subject to Section VI.~~D~~E.2.

### b. Backup Withholding

Without limiting the generality of the foregoing, in accordance with the Internal Revenue Code's backup withholding rules, a holder of a Claim may be subject to backup withholding with respect to Distributions made pursuant to the Plan, unless the holder (i) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (ii) provides at the applicable Disbursing Agent's request a completed IRS Form W-9 (or substitute therefor) on which the holder includes a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income. Among other things, to receive any post-petition interest, if requested by a Disbursing Agent, a holder of an Allowed Claim shall be required to establish an exemption from backup withholding or to make arrangements with respect to the payment of backup withholding. Non-U.S. Allowed Claim holders may be required by the applicable Disbursing Agent to provide a completed IRS Form W-8BEN or W-8BEN-E, as applicable (or other applicable Form W-8 or successor form), to establish an exemption from or a treaty-reduced rate of withholding on interest distributed pursuant to the Plan. Unless a Disbursing Agent, in its discretion, determines otherwise, no Distributions on account of post-petition interest shall be made to a holder of an Allowed Claim until such time as the holder of such Claim establishes exemption from withholding or provides the applicable IRS Form.

### c. Obligations of Distribution Recipients

Notwithstanding any other provision of the Plan, each Entity receiving a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other Tax obligations.

### ~~H~~I. Setoffs

Except with respect to claims of a Debtor or Reorganized Debtor released pursuant to the Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Reorganized Debtors or, as instructed by the applicable Reorganized Debtor, a Third Party Disbursing Agent may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Claim (before any Distribution is made on account of such Claim) the claims, rights and causes of action of any

nature that the applicable Debtor or Reorganized Debtor may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the applicable Debtor or Reorganized Debtor of any claim, right or cause of action that the Debtor or Reorganized Debtor may possess against such a Claim holder.

**I.I.** **Allocation of Payments**

Amounts paid to holders of Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess being allocated to accrued but unpaid interest on such Claims.

## ARTICLE VII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**A.** **Prosecution of Objections to Claims**

**1.** **Objections to Claims**

Objections to Claims (other than Asbestos Personal Injury Claims) must be Filed and served on the holders of such Claims by the Claims Objection Bar Date, and, if Filed prior to the Effective Date, such objections will be served on the parties on the then-applicable service list in the Reorganization Cases. If an objection has not been Filed to a proof of Claim or an amendment has not been made to the Schedules with respect to a scheduled Claim by the Claims Objection Bar Date, the Claim to which the proof of Claim or Schedules relates will be treated as an Allowed Claim if such Claim has not been earlier allowed.

**2.** **Authority to Prosecute Objections**

After the Effective Date, the Reorganized Debtors shall have the authority to File (if applicable), settle, compromise, withdraw or litigate to judgment objections to all Claims (other than Asbestos Personal Injury Claims), including pursuant to any alternative dispute resolution or similar procedures approved by the Bankruptcy Court. After the Effective Date, the Reorganized Debtors may settle, compromise or otherwise resolve any Disputed Claim or any objection or controversy relating to any Claim without approval of the Bankruptcy Court.

**3.** **Authority to Amend Schedules**

The Debtors or the Reorganized Debtors shall have the authority to amend the Schedules with respect to any Claim (other than Asbestos Personal Injury Claims) and to make Distributions based on such amended Schedules without approval of the Bankruptcy Court. If any such amendment to the Schedules reduces the amount of or changes the nature or priority of such Claim, the Debtor or Reorganized Debtor shall provide the holder of such Claim with notice of such amendment and such holder shall have twenty (20) days to File an objection to such amendment with the Bankruptcy Court. If no such objection is Filed, the Debtor or

Reorganized Debtor may proceed with Distributions based on such amended Schedules without approval of the Bankruptcy Court.

**B.     Treatment of Disputed Claims**

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.

**C.     Distributions on Account of Disputed Claims Once Allowed**

On each Quarterly Distribution Date, the applicable Disbursing Agent shall make all Distributions on account of any Disputed Claim that has become an Allowed Claim during the preceding calendar quarter, to the extent not distributed earlier at the discretion of the applicable Disbursing Agent. Such Distributions shall be made pursuant to the provisions of the Plan governing the applicable Class.

**ARTICLE VIII**

**CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN**

**A.     Conditions to Confirmation**

The following shall be conditions to Confirmation unless such conditions shall have been duly waived pursuant to Section VIII.C.:

1.     The Confirmation Order shall have been entered by the Bankruptcy Court and the District Court acting jointly, or by the Bankruptcy Court or the District Court acting separately (and, if the Confirmation Order is entered separately by the Bankruptcy Court, shall have been fully affirmed by the District Court), and shall be reasonably acceptable in form and substance to the Parties.

2.     The Plan shall be acceptable in all respects to the Parties, and all Exhibits to the Plan shall be (a) acceptable in all respects to the Parties and (b) consistent with section 524(g) of the Bankruptcy Code and the terms of the Plan.

3.     The Bankruptcy Court and the District Court acting jointly, or the Bankruptcy Court or the District Court acting separately shall have made the following findings, each of which shall be contained in the Confirmation Order and each of which, if the Confirmation Order is entered separately by the Bankruptcy Court, shall be fully affirmed by the District Court:

a.     The Asbestos Permanent Channeling Injunction is to be implemented in connection with the Plan and the Asbestos Personal Injury Trust.

b.     The Asbestos Personal Injury Trust, as of the Effective Date, shall assume all liability and responsibility, financial and otherwise, for all

Asbestos Personal Injury Claims, and, upon such assumption, no Protected Party shall have any liability or responsibility, financial or otherwise, therefor.

c.      As of the Petition Date, each Debtor had been named as a defendant in a personal injury or wrongful death action seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products.

d.      The Asbestos Personal Injury Trust will be funded in whole or in part by securities of the Reorganized Debtors and by the obligation of the Reorganized Debtors to make future payments, which payments may be funded by contributions from Lehigh Hanson to the Reorganized Debtors.

e.      The Asbestos Personal Injury Trust, by the exercise of rights granted under the Plan, would be entitled to own, if specified contingencies occur, a majority of the voting shares of each of the Reorganized Debtors.

f.      The Asbestos Personal Injury Trust shall use its assets or income to pay Asbestos Personal Injury Claims, including Demands.

g.      Each of the Debtors is likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Claims that are addressed by the Asbestos Permanent Channeling Injunction.

h.      The actual amounts, numbers and timing of such future Demands cannot be determined.

i.      Pursuit of such Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Claims and future Demands.

j.      The terms of the Asbestos Permanent Channeling Injunction, including any provisions barring actions against third parties pursuant to section 524(g)(4)(A) of the Bankruptcy Code, are set out in the Plan.

k.      The Plan establishes, in Class 4 (Asbestos Personal Injury Claims), a separate class of the claimants whose Claims are to be addressed by the Asbestos Personal Injury Trust.

l.      At least two-thirds (2/3) in amount and 75% in number of those voting Claims in Class 4 (Asbestos Personal Injury Claims) have voted in favor of the Plan.

m.      Pursuant to court orders or otherwise, the Asbestos Personal Injury Trust shall operate through mechanisms, such as structured, periodic or supplemental payments, pro rata distributions, matrices or periodic review of estimates of the numbers and values of Asbestos Personal Injury Claims, that

provide reasonable assurance that the Asbestos Personal Injury Trust shall value, and be in a financial position to pay, Asbestos Personal Injury Claims, including Demands, in substantially the same manner.

n.     Each Protected Party is identifiable from the terms of the Asbestos Permanent Channeling Injunction by name or as part of an identifiable group, and each Protected Party is or may be alleged to be directly or indirectly liable for the conduct of, Claims against or Demands on a Debtor to the extent that such alleged liability arises by reason of one or more of the following:

(i)  such Entity's ownership of a financial interest in any Debtor, Reorganized Debtor, any past or present Affiliate of any Debtor or Reorganized Debtor, or any predecessor in interest of any Debtor or Reorganized Debtor;

(ii)  such Entity's involvement in the management of any Debtor, Reorganized Debtor or predecessor in interest of any Debtor or Reorganized Debtor;

(iii)  such Entity's service as an officer, director or employee of any Debtor, Reorganized Debtor, any past or present Affiliate of any Debtor or Reorganized Debtor, or any predecessor in interest of any Debtor or Reorganized Debtor or Entity that owns or at any time has owned a financial interest in any Debtor, Reorganized Debtor, any past or present Affiliate of any Debtor or Reorganized Debtor, or any predecessor in interest of any Debtor or Reorganized Debtor; or

(iv)  such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of any Debtor, Reorganized Debtor, any past or present Affiliate of any Debtor or Reorganized Debtor, any predecessor in interest of any Debtor or Reorganized Debtor or of an Entity that owns or at any time has owned a financial interest in any Debtor, Reorganized Debtor, any past or present Affiliate of any Debtor or Reorganized Debtor, or any predecessor in interest of any Debtor or Reorganized Debtor, including (A) involvement in providing financing (debt or equity) or advice to an Entity involved in such a transaction or (B) acquiring or selling a financial interest in any Entity as part of such transaction.

o.     The Future Claimants' Representative was appointed as part of the proceedings leading to issuance of the Asbestos Permanent Channeling Injunction for the purpose of protecting the rights of all persons, whether known or unknown, that might subsequently assert, directly or indirectly, against any Debtor an Asbestos Personal Injury Claim that is a Demand

addressed in the Asbestos Permanent Channeling Injunction and channeled to the Asbestos Personal Injury Trust.

p.    Identifying each Protected Party (by name or as part of an identifiable group, as applicable) in the Asbestos Permanent Channeling Injunction is fair and equitable with respect to individuals that might subsequently assert Demands against each such Protected Party, in light of the benefits provided, or to be provided, to the Asbestos Personal Injury Trust by or on behalf of any such Protected Party.

q.    The Plan and the Asbestos Personal Injury Trust Documents comply with section 524(g) of the Bankruptcy Code in all respects.

r.    The Plan and its Exhibits are a fair, equitable and reasonable resolution of the liability of the Debtors for the Asbestos Personal Injury Claims.

s.    The Future Claimants' Representative has adequately and completely fulfilled his duties, responsibilities and obligations as the representative for the individuals referred to in the finding set forth in Section VIII.A.3.o. above in accordance with section 524(g) of the Bankruptcy Code.

t.    Adequate and sufficient notice of the Plan and the Confirmation Hearing, as well as all deadlines for objecting to the Plan, has been given to (i) all known creditors and holders of Interests, (ii) parties that requested notice in accordance with Bankruptcy Rule 2002 (including the Asbestos Personal Injury Committee and the Future Claimants' Representative), (iii) all parties to Executory Contracts and Unexpired Leases, (iv) all taxing authorities listed on the Debtors' Schedules or in the Debtors' Claims database, in each case, (v) the Department of the Treasury by service upon the District Director of the IRS, (vi) state attorney generals and state departments of revenue for states in which any of the Debtors have conducted business, and (vii) the Securities and Exchange Commission, (A) in accordance with the solicitation procedures governing such service and (B) in substantial compliance with Bankruptcy Rules 2002(b), 3017 and 3020(b). Such transmittal and service were adequate and sufficient to bind, among other parties, any holder of an Asbestos Personal Injury Claim, and no other or further notice is or shall be required.

u.    The Debtors' conduct in connection with and throughout these Reorganization Cases, including, but not limited to, their negotiations with the ad hoc committee of asbestos personal injury claimants and the pre-petition future claimants' representative, and the commencement of these Reorganization Cases, as well as the drafting, negotiation, proposing, confirmation, and consummation of the Plan, and their opposition to any other plan of reorganization, does not and has not violated any Asbestos Insurer Cooperation Obligations contained in any Asbestos Insurance Policies, nor

was such conduct a breach of any express or implied covenant of good faith and fair dealing. The Objecting Excess Insurers[21] consent to this finding in the particular facts and circumstances of these Reorganization Cases is expressly without prejudice to the rights of any party to contend that such a finding is or is not appropriate in any subsequent bankruptcy case not involving these Debtors.

4.      The Bankruptcy Court and the District Court, as required, shall have entered the Asbestos Permanent Channeling Injunction, which may be included in the Confirmation Order, and the Asbestos Permanent Channeling Injunction and the Confirmation Order are reasonably acceptable to the Parties.

5.      The settlement with the United States, on behalf of the Environmental Protection Agency and the United States Department of Interior, acting through the U.S. Fish and Wildlife Service, and the United States Department of Commerce, acting through the National Oceanic and Atmospheric Administration, the DEQ Settlement and the agreements with certain insurers related to such Claims have been approved by the Bankruptcy Court.

## B.      Conditions to the Effective Date

The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to Section VIII.C.

1.      The District Court or the Bankruptcy Court and the District Court acting jointly shall have entered an order (contemplated to be part of the Confirmation Order) in form and substance reasonably acceptable to the Parties approving and authorizing the Debtors and the Reorganized Debtors to take all actions necessary or appropriate to effectuate, implement and consummate the Plan and the Restructuring Transactions, including the execution, delivery and performance of contracts, instruments, releases and other agreements or documents created in connection with the Plan and the Restructuring Transactions.

2.      The Confirmation Order shall have been entered by the Bankruptcy Court and the District Court acting jointly, or by the Bankruptcy Court or the District Court acting separately (and, if the Confirmation Order is separately entered by the Bankruptcy Court, has been fully affirmed by the District Court) and shall have become a Final Order.

3.      No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

4.      The Confirmation Order and the Asbestos Permanent Channeling Injunction shall be in full force and effect.

5.      No fact or circumstance shall prevent the Asbestos Personal Injury Trust from receiving the Asbestos Personal Injury Trust Assets upon occurrence of the Effective Date.

6.      The Asbestos Personal Injury Trustees shall have been selected and shall have executed and delivered the Asbestos Personal Injury Trust Agreement.

7.      The Asbestos Personal Injury Trust shall have been funded in accordance with Section IV.K.2.

8.      Each of the documents and agreements contemplated by the provisions and Exhibits of the Plan to be executed and delivered as of the Effective Date shall have been fully executed and delivered in form and substance acceptable to the Debtors and to the Asbestos Personal Injury Committee and Future Claimants' Representative and shall be fully enforceable in accordance with their terms.

9.      A settlement agreement in a form acceptable to the Debtors regarding the Lower Duwamish Waterway site and a consent judgment in a form acceptable to the Debtors regarding the St. Helens site have each been approved by a court with jurisdiction to approve such settlement agreement or enter such consent judgment.

10.     All terms and conditions to the effectiveness of the DEQ Settlement, other than the occurrence of the Effective Date, shall have been satisfied or waived in writing.

The Effective Date shall occur as of 12:01 a.m., prevailing Eastern Time on the date that the Debtors or Reorganized Debtors file a notice with the Bankruptcy Court stating that the Effective Date has occurred because each of the conditions to the Effective Date has been satisfied or waived in accordance with the Plan.

## C.      Waiver of Conditions to Confirmation or the Effective Date

The conditions to Confirmation set forth in Section VIII.A. and the conditions to the Effective Date set forth in Section VIII.B. may be waived in whole or part in writing by the Debtors, subject to the consent of Lehigh Hanson, the Asbestos Personal Injury Committee and the Future Claimants' Representative, at any time without an order of the Bankruptcy Court or the District Court; provided, however, waiver of the condition to the Effective Date set forth in Section VIII.B.10. also requires the DEQ's consent. Confirmation and the Effective Date will occur irrespective of whether any claims allowance process or related litigation has been completed.

## D.      Effect of Nonoccurrence of Conditions to the Effective Date

If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section VIII.C., then upon motion by the Debtors, Lehigh Hanson, the Asbestos Personal Injury Committee and/or the Future Claimants' Representative made before the time that each such condition has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the Filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to this Section VIII.D., (1) the Plan shall be null and void in all respects, including with respect to the discharge of Claims; and (2) nothing contained

in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights, including any claims or defenses, of the Parties or any other party in interest.

## ARTICLE IX

## DISCHARGE, INJUNCTION
## AND SUBORDINATION RIGHTS

**A. Discharge of Claims**

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan shall be in exchange for and in complete satisfaction and discharge of all Claims, and including any interest accrued on Claims from the Petition Date. Except as provided in the Plan or in the Confirmation Order, Confirmation shall, as of the Effective Date, discharge the Debtors from all Claims or other liabilities that arose on or before the Effective Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of a Claim based on such debt has accepted the Plan.

In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination, as of the Effective Date, of a discharge of all Claims and other debts and liabilities against the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against a Debtor at any time, to the extent that such judgment relates to a discharged Claim, debt or liability. Nothing contained in the foregoing discharge shall, to the full extent provided under section 524(e) of the Bankruptcy Code, affect the liability of any other Entity on, or the property of any other Entity for, any debt of the Debtors that is discharged under this Plan.

Notwithstanding any provision of the Plan to the contrary, Confirmation shall not discharge (1) the Debtors from any debt of a kind specified in 11 U.S.C. § 1141(d)(6) or (2) the Debtors' obligations under their settlement agreements with the Settled Environmental Insurers.

**B. Injunctions**

**1. General Injunctions**

**a. No Actions on Account of Discharged Claims**

Except as provided in the Plan, including in Section IV.O.1., or the Confirmation Order, as of the Effective Date, all Entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged pursuant to the terms of the Plan shall be permanently enjoined from taking any of the following actions on account of any such discharged Claim, debt or liability: (i) commencing or continuing in any manner any action or other proceeding against any Debtor or Reorganized Debtor, or any of its property, other than to enforce any right to a Distribution pursuant to the Plan; (ii) enforcing, attaching, collecting or recovering in any

manner any judgment, award, decree or order against any Debtor or Reorganized Debtor, or any of its property, other than as permitted pursuant to (i) above; (iii) creating, perfecting or enforcing any lien or encumbrance against any Debtor or Reorganized Debtor, or any of its property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any Debtor or Reorganized Debtor; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

### b. No Actions on Account of Released Claims

Except as provided in the Plan, including in Section IV.O.1., or the Confirmation Order, as of the Effective Date, all Entities that have held, currently hold or may hold any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities that are released pursuant to the Plan shall be permanently enjoined from taking any of the following actions against any released Entity, or any of its property, on account of such released claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released Entity; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

### c. Recipients of Distribution Deemed to Consent

By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim receiving Distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in Section IX.B.

### 2. Asbestos Permanent Channeling Injunction

### a. Asbestos Permanent Channeling Injunction

**Pursuant to section 524(g) of the Bankruptcy Code, and except as otherwise provided in the Plan, including Section IV.O.1., the Plan and the Confirmation Order shall permanently and forever stay, restrain and enjoin any Entity from taking any actions against any Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Asbestos Personal Injury Claim, all of which shall be channeled to the Asbestos Personal Injury Trust for resolution as set forth in the Asbestos Personal Injury Trust Agreement and the related Asbestos Personal Injury Trust Distribution Procedures, including permanently and forever staying, restraining and enjoining any Entity from any of the following:**

**1. commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including a judicial, arbitral, administrative or other proceeding) in any forum against any Protected Party or any property or interests in property of any Protected Party;**

2.      enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against any Protected Party or any property or interests in property of any Protected Party;

3.      creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party;

4.      setting off, seeking reimbursement of, contribution from or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

5.      proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Personal Injury Trust Documents, except in compliance therewith.

For the avoidance of doubt, the Asbestos Permanent Channeling Injunction shall not affect any claims or causes of action under Sections IV.L.1. and IV.L.2. hereof.

3.      **Environmental Injunction**

In consideration of the undertakings of the Settled Environmental Insurers, and other consideration, and pursuant to their respective settlements with the Debtors and to preserve and promote further the agreements between and among the Debtors and any Settled Environmental Insurers, and pursuant to section 105 of the Bankruptcy Code:

a.      any and all Environmental Claims shall be treated, administered, determined and resolved under the procedures and protocols under the Plan as the sole and exclusive remedy with respect to Environmental Claims; and

b.      all Entities are hereby permanently stayed, enjoined, barred and restrained from doing any of the following against the Settled Environmental Insurers:

(i)      commencing or continuing in any manner any action or other proceeding of any kind with respect to any Environmental Claim against any of the Settled Environmental Insurers or against the property of any of Settled Environmental Insurers;

(ii)      commencing or continuing in any manner any contribution, indemnity or other equitable action or other similar proceeding relating to the environmental settlements made in this bankruptcy case against any of the Settled Environmental Insurers or against the property of any of Settled Environmental Insurers;

> **(iii)** enforcing, attaching, collecting or recovering, by any manner or means, from any of the Settled Environmental Insurers, or the property of any of the Settled Environmental Insurers, any judgment, award, decree, payment or order relating to any Environmental Claim against any of the Settled Environmental Insurers; and

> **(iv)** creating, perfecting or enforcing any lien of any kind relating to any Environmental Claim against any of the Settled Environmental Insurers, or the property of the Settled Environmental Insurers.

**The injunction set forth set forth in this Section IX.B.3 (the "Environmental Injunction") is an integral part of the Plan and is essential to the Plan's consummation and implementation. The Environmental Injunction shall inure to the benefit of the Settled Environmental Insurers, but shall not apply to any Debtor or Reorganized Debtor.**

**For the avoidance of doubt, the Environmental Injunction shall not apply to Asbestos Personal Injury Claims, or to Asbestos Insurance Policy Claims arising from the payment of, or obligations arising from, Asbestos Personal Injury Claims.**

## C. Subordination Rights

The classification and manner of satisfying Claims and Interests under the Plan does not take into consideration subordination rights, and nothing in the Plan or Confirmation Order shall affect any subordination rights that a holder of a Claim may have with respect to any Distribution to be made pursuant to the Plan, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code or otherwise.

# ARTICLE X

# RETENTION OF JURISDICTION

## A. Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Reorganization Cases after the Effective Date as is legally permissible, including jurisdiction to:

1. Hear and determine any proceeding that involves the validity, applicability, construction, enforceability or modification of the Asbestos Permanent Channeling Injunction or the application of section 524(g) of the Bankruptcy Code to the Asbestos Permanent Channeling Injunction;

2. Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (other than Asbestos Personal Injury Claims) or Interest, including the resolution of any request for payment of any Administrative Claim or the resolution of any objections to the allowance, priority or classification of Claims (other than Asbestos Personal Injury Claims) or Interests;

3.     Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

4.     Resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor or Reorganized Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any Cure Amount Claims;

5.     Ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6.     Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any application, involving the Debtors that may be pending on the Effective Date or brought thereafter, including issues related to the Insolvent Insurers Proceeds Dispute;

7.     Enter such orders as may be necessary or appropriate to effectuate, implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements and documents entered into or delivered in connection with the Plan or the Confirmation Order;

8.     Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

9.     Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code;

10.     Issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the effectuation, implementation, consummation or enforcement of the Plan or the Confirmation Order;

11.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or Distributions pursuant to the Plan are enjoined or stayed;

12.     Determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan or the Confirmation Order;

13.     Determine matters concerning state, local and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for Taxes;

14.     Adjudicate any claims or causes of action under Section IV.L.2;

15.     Enforce remedies upon any default under the Plan;

16.     Hear and determine any other matters not inconsistent with the Bankruptcy Code; and

17.     Enter a final decree closing the Reorganization Cases.

**B.     Consent to Jurisdiction**

Upon default under the Plan, the Parties consent to the jurisdiction of the Bankruptcy Court, and agree that it shall be the preferred forum for all proceedings relating to any such default.

**C.     Jurisdiction of Litigating Asbestos Personal Injury Claims**

Notwithstanding anything to the contrary in this Article X, the resolution of Asbestos Personal Injury Claims and the forum in which such claims will be litigated shall be governed by and in accordance with the Asbestos Personal Injury Trust Distribution Procedures.

# ARTICLE XI

## MISCELLANEOUS PROVISIONS

**A.     DEQ Settlement**

The DEQ Settlement, as defined herein and subject to the terms and conditions thereof, is incorporated in full in the Plan and shall remain in full force and effect following entry of the Confirmation Order, including the mutual general release among DEQ, Lehigh Hanson, certain affiliates of Lehigh Hanson and the Debtors. For the avoidance of doubt, in the event of any inconsistency between the DEQ Settlement, as defined herein, and any other provision of the Plan, the terms and conditions of the DEQ Settlement shall govern.

**B.     Dissolution of the Creditors' Committee and the Asbestos Personal Injury Committee**

On the Effective Date, the Creditors' Committee and the Asbestos Personal Injury Committee shall dissolve and the respective members of such committees shall be released and discharged from all duties and obligations arising from or related to the Reorganization Cases. The members of and the Professionals retained by the Creditors' Committee or the Asbestos Personal Injury Committee or by the Future Claimants' Representative shall not be entitled to assert any Fee Claim for any services rendered or expenses incurred after the Effective Date, except for services rendered and expenses incurred in connection with (i) any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Section III.A.1.d.ii.A and (ii) participation in an appeal from the Confirmation Order, but only to the extent the appeal raises issues specific

to the treatment of creditors represented by the respective committee or Future Claimants' Representative.

Effective as of the Effective Date, the TAC shall succeed to, and exclusively hold, the attorney-client privilege and any other privilege held by the Asbestos Personal Injury Committee and shall enjoy the work product protections that were applicable or available to the Asbestos Personal Injury Committee before its dissolution. Further, the TAC shall be a party in interest on and after the Effective Date within the meaning of section 1109(b) of the Bankruptcy Code.

## C. Limitation of Liability

### 1. Liability for Actions in Connection with the Reorganization Cases

The Debtors, the Reorganized Debtors, the Future Claimants' Representative, the Asbestos Personal Injury Committee, the Creditors' Committee, the DIP Lender, Lehigh Hanson, DEQ, and their respective directors, officers, employees, affiliates, subsidiaries, predecessors, successors, members, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives and agents, acting in such capacity, shall neither have nor incur any liability to any Entity for any act taken or omitted to be taken in connection with, related to or arising out of the Reorganization Cases or the consideration, formulation, preparation, dissemination, Confirmation, effectuation, implementation or consummation of the Plan or Exhibits or any transaction proposed in connection with the Reorganization Cases or any contract, instrument, release or other agreement or document entered into or delivered, or any other act taken or omitted to be taken, in connection therewith; provided, however, that the foregoing provisions of this Section XI.C.1. shall have no effect on: (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; or (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

### 2. Rights of Action in Connection with the Reorganization Cases

Notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in interest and none of their respective directors, officers, employees, affiliates, subsidiaries, predecessors, successors, members, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives or agents shall have any right of action against any of the Debtors, the Reorganized Debtors, the Creditors' Committee, the Future Claimants' Representative, the Asbestos Personal Injury Committee, the DIP Lender, Lehigh Hanson, and DEQ or any of their respective directors, officers, employees, affiliates, subsidiaries, predecessors, successors, members, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives and agents, acting in such capacity, for any act or omission in connection with, relating to or arising out of the Reorganization Cases or the consideration, formulation, preparation, dissemination, Confirmation, effectuation, implementation or consummation of the Plan or any transaction or document created or entered into, or any other act taken or omitted to be taken, in connection therewith, except for: (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability

under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; or (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

**D.    Modification of the Plan and Exhibits**

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Parties reserve the right to alter, amend or modify the Plan and the Exhibits to the Plan at any time before its substantial consummation.

**E.    Headings**

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**F.    Severability**

After the Effective Date, any provision of the Plan, any Exhibit hereto, any instrument, agreement or other document executed in connection with the Plan, or the Confirmation Order, that is determined to be prohibited, unenforceable, or invalid by a court of competent jurisdiction or any other governmental Entity with appropriate jurisdiction may be deemed ineffective as to any jurisdiction in which such provision is prohibited, unenforceable, or invalidated to the extent of such prohibition, unenforceability, or invalidation, without invalidating the effectiveness of the remaining provisions of the Plan, the Plan Exhibits, any instruments, agreements, or other documents executed in connection with the Plan, or the Confirmation Order or affecting the validity or enforceability of such provision and such remaining provisions in any other jurisdiction.

**G.    Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**H.    Service of Certain Plan Exhibits**

Certain Exhibits are not being Filed or served with copies of the Plan. The Debtors shall File such Exhibits no later than ten (10) days before the deadline to object to Confirmation. Once Filed, the Debtors shall make available for review the relevant Exhibits on their web site at https://cases.primeclerk.com/kaisergypsum.

**I.    Effective Date Actions Simultaneous**

Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

Actions required to be taken after the Effective Date or as soon as thereafter as is reasonably practicable shall be deemed to have been taken on the Effective Date.

**J.      Asbestos Personal Injury Trust Annual Report**

Notwithstanding the closing of the Reorganization Cases under section 350 of the Bankruptcy Code, the Clerk of the Bankruptcy Court shall accept for filing the Asbestos Personal Injury ~~Trust's~~Trust's annual report without the requirement that any party in interest file a request to reopen the case.

**K.      Service of Documents**

Any pleading, notice or other document required by the Plan or Confirmation Order to be served on or delivered to the Debtors, the Reorganized Debtors, the Creditors' Committee, the Future Claimants' Representative, the Asbestos Personal Injury Committee or the Bankruptcy Administrator must be sent by overnight delivery service, courier service or messenger to:

**1.      The Debtors and the Reorganized Debtors**

C. Richard Rayburn, Jr.
John R. Miller, Jr.
RAYBURN COOPER & DURHAM, P.A.
1200 Carillon
227 West Trade Street
Charlotte, North Carolina 28202

-and-

Gregory M. Gordon
Amanda Rush
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201

-and-

Paul M. Green
JONES DAY
717 Texas, Suite 3300
Houston, Texas  77002

2.    **Future Claimants' Representative**

Edwin Harron
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801

        - and-

Felton Parrish
HULL & CHANDLER
1001 Morehead Square Drive, Suite 450
Charlotte, North Carolina 28203

3.    **The Asbestos Personal Injury Committee**

Kevin Maclay
Todd E. Phillips
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle N.W., Suite 1100
Washington, D.C. 20005

        - and-

Sally Higgins
HIGGINS & OWENS
524 East Boulevard
Charlotte, North Carolina 28203

4.    **The Creditors' Committee**

Ira L. Herman
BLANK ROME LLP
405 Lexington1271 Avenue of the Americas
New York, New York 1017410020

        -and-

Jeffrey Rhodes
BLANK ROME LLP
1825 Eye Street NW
Washington, DC 20006

        -and-

Andrew T. Houston
MOON WRIGHT & HOUSTON, PLLC,
121 W. Trade Street, Suite 1950
Charlotte, North Carolina 28202

**5.      The Bankruptcy Administrator for the Western District of North Carolina**

Alexandria Kenny
402 West Trade Street, Suite #200
Charlotte, North Carolina 28202

**6.      Lehigh Hanson, Inc.**

Ben Hawfield, Jr.
Hillary B. Crabtree
MOORE &VAN ALLEN
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202

Dated: ~~October 14~~July 20, ~~2019~~2020          Respectfully submitted,

HANSON PERMANENTE CEMENT
COMPANY


/s/ Charles E. McChesney II
Charles E. McChesney II
Vice President, Secretary and Director

ASBESTOS PERSONAL INJURY          KAISER GYPSUM COMPANY, INC.
COMMITTEE

/s/ Alan R. Brayton
Alan R. Brayton                              /s/ Charles E. McChesney II
                                             Charles E. McChesney II
                                             Vice President, Secretary and Director


FUTURE CLAIMANTS'
REPRESENTATIVE
                                             LEHIGH HANSON, INC.
/s/ Lawrence Fitzpatrick
Lawrence Fitzpatrick

/s/ Carol L. Lowry
Carol L. Lowry
Vice President and General Counsel

| Summary report: | |
|---|---|
| **Litera® Change-Pro for Word 10.4.0.0 Document comparison done on 9/25/2020 10:23:21 AM** | |
| **Style name:** JD Color | |
| **Intelligent Table Comparison:** Inactive | |
| **Original DMS:** iw://NAI/NAI/1505596661/9 | |
| **Modified DMS:** iw://NAI/NAI/1505596661/15 | |
| **Changes:** | |
| Add | 256 |
| Delete | 232 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 4 |
| Table Delete | 4 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 496 |

**EXHIBIT C**

**CONFIRMATION NOTICE**

NAI-1514152687v6

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| KAISER GYPSUM COMPANY, INC., *et al.*,[1] | : | Case No. 16-31602 (JCW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

## NOTICE OF (I) ENTRY OF ORDER CONFIRMING THE JOINT PLAN OF REORGANIZATION OF KAISER GYPSUM COMPANY, INC. AND HANSON PERMANENTE CEMENT, INC.; (II) EFFECTIVE DATE AND (III) BAR DATE FOR CERTAIN ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS AND REJECTION DAMAGES CLAIMS

PLEASE TAKE NOTICE OF THE FOLLOWING:

**1.     Confirmation of the Plan.** On [_____], 2020, the United States Bankruptcy Court for the Western District of North Carolina entered an order (the "Confirmation Order") confirming the Joint Plan of Reorganization of Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc., dated July 20, 2020 (as modified by the Confirmation Order, the "Plan") filed by the above-captioned debtors (together, the "Debtors"). The Confirmation Order was subsequently affirmed by the United States District Court for the Western District of North Carolina. Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings given to them in the Plan and the Confirmation Order.

**2.     Effective Date.** Pursuant to the Confirmation Order, the Debtors hereby certify and give notice that the Plan became effective in accordance with its terms, and the Effective Date occurred, on [_____], 2020.

**3.     Settlement of Claims.**

(a)     Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, any and all claims against the Protected Parties that are or would have been property of the Debtors' Estates or could have been brought by the Debtors' Estates, including without limitation Recovery Actions and any claims based upon a legal or equitable theory of liability in the nature of veil piercing, alter ego, successor liability, vicarious liability, fraudulent transfer, malpractice, breach of fiduciary duty, waste, fraud or conspiracy, except for Intercompany Claims, are deemed settled, released and extinguished. The entry of the Confirmation Order constitutes the Bankruptcy Court's approval,

---

[1]     The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Kaiser Gypsum Company, Inc. (0188) and Hanson Permanente Cement, Inc. (7313). The Debtors' address is 300 E. John Carpenter Freeway, Irving, Texas 75062.

as of the Effective Date, of the compromise or settlement of all such claims and the Bankruptcy Court's finding that such compromise or settlement is in the best interest of the Debtors, Reorganized Debtors and their respective Claim and Interest holders and is fair, equitable and reasonable.

(b)     Pursuant to Bankruptcy Rule 9019 and in consideration for the releases and other benefits provided under the Plan, any and all claims against the holders of Asbestos Personal Injury Claims who received payments in respect of their claims from the Debtors, Lehigh Hanson, or any predecessor or affiliate of the Debtors or Lehigh Hanson prior to Petition Date, and their professionals (but only with respect to their representation or work for such holders in connection with such payments), that are or would have been property of any of the Debtors' Estates or could have been brought by any of the Debtors' Estates or any Protected Party, including without limitation Recovery Actions, and any claims based upon a legal or equitable theory of liability, in each case arising out of, based upon or resulting from payments to holders of Asbestos Personal Injury Claims from the Debtors, Lehigh Hanson or any predecessor or affiliate of the Debtors or Lehigh Hanson prior to the Petition Date, are deemed settled, released and extinguished. The entry of the Confirmation Order constitutes the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims and the Bankruptcy Court's finding that such compromise or settlement is in the best interest of the Debtors, the Reorganized Debtors and their respective Claim and Interest holders and is fair, equitable and reasonable.

**4.     Releases.**

(a)     <u>General Releases of Debtors and Reorganized Debtors</u>. Except as otherwise expressly set forth in the Plan, and except to the extent it would diminish, reduce or eliminate the duties or obligations of any Asbestos Insurer under any Asbestos Personal Injury Insurance Asset, as of the Effective Date, the Debtors and the Reorganized Debtors are released from all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, know or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, arising out of, based upon or resulting from, directly or indirectly, in whole or in part, any act, omission, transaction or other occurrence taking place on or prior to the Effective Date. Notwithstanding the foregoing, the releases set forth in this paragraph will not become effective with respect to holders of General Unsecured Claims until the General Unsecured Claims Escrows have been funded as set forth in Section IV.R.3.a. of the Plan.

(b)     <u>Release by the Debtors, Reorganized Debtors and Lehigh Hanson</u>.

(i)     Without limiting any other provision of the Plan, as of the Effective Date, the Debtors and the Reorganized Debtors, on behalf of themselves and their respective affiliates, Estates and successors and assigns, and any and all Entities who may purport to claim by, through, for or because of them, are deemed to forever release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing

or thereafter arising, in law, equity or otherwise, against each of the present and former directors, officers, employees, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives and agents of the Debtors, the DIP Lender and DEQ, in each case acting in such capacity, arising out of, based upon or resulting from, directly or indirectly, in whole or in part, any act, omission, transaction or other occurrence taking place on or prior to the Effective Date with respect to the Reorganization Cases, the Plan or the DEQ Settlement, except for the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

(ii) Without limiting any other provision of the Plan, as of the Effective Date, the Debtors, the Reorganized Debtors and Lehigh Hanson, on behalf of themselves and their respective affiliates, Estates and successors and assigns, and any and all Entities who may purport to claim by, through, for or because of them, are deemed to forever release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, against holders of Asbestos Personal Injury Claims who received payments in respect of their claims from the Debtors, Lehigh Hanson, or any predecessor or affiliate of the Debtors or Lehigh Hanson prior to Petition Date, and their professionals (but only with respect to their representation of or work for such holders in connection with such payments), including without limitation Recovery Actions, in each case arising out of, based upon or resulting from payments to holders of Asbestos Personal Injury Claims from the Debtors, Lehigh Hanson or any predecessor or affiliate of the Debtors or Lehigh Hanson prior to Petition Date.

(c) <u>General Releases by Holders of Claims or Interests</u>. Without limiting any other provision of the Plan or the Bankruptcy Code, as of the Effective Date, in consideration for, among other things, the obligations of the Debtors and the Reorganized Debtors under the Plan, each holder of a Claim or Interest that voted in favor of the Plan or was deemed to have accepted the Plan is deemed to forever release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, against any of the Parties, the Creditors' Committee or any Reorganized Debtor, or any of their respective present or former directors, officers, employees, members, subsidiaries, predecessors, successors, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives and agents, or the DIP Lender, in each case acting in such capacity, arising out of, based upon or resulting from, directly or indirectly, in whole or in part, any act, omission, transaction or other occurrence taking place on or prior to the Effective Date and in any way relating to the Reorganization Cases or the Plan (which release is in addition to the discharge of Claims provided herein and under the Confirmation Order and the Bankruptcy Code). Notwithstanding the foregoing, no release or discharge of any of the Parties, the Creditors' Committee or any Reorganized Debtor, or any of their respective present or former directors, officers, employees, members, subsidiaries, predecessors, successors, attorneys, accountants, investment bankers, financial advisors, appraisers, representatives and agents, or the

DIP Lender, in each case acting in such capacity, diminishes, reduces or eliminates the duties or obligations of any Asbestos Insurer under any Asbestos Personal Injury Insurance Asset.

(d) <u>Injunction Related to Releases</u>. Except as otherwise expressly provided in the Plan, including in Section IV.O.1., the Confirmation Order permanently enjoins the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities released pursuant to the Plan.

5.      **Discharge of Claims.**

(a)      Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan are in exchange for and in complete satisfaction and discharge of all Claims, and including any interest accrued on Claims from the Petition Date. Except as provided in the Plan or in the Confirmation Order, Confirmation, as of the Effective Date, discharges the Debtors from all Claims or other liabilities that arose on or before the Effective Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (iii) the holder of a Claim based on such debt has accepted the Plan.

(b)      In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order is a judicial determination, as of the Effective Date, of a discharge of all Claims and other debts and liabilities against the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge voids any judgment obtained against a Debtor at any time, to the extent that such judgment relates to a discharged Claim, debt or liability. Nothing contained in the foregoing discharge, to the full extent provided under section 524(e) of the Bankruptcy Code, affects the liability of any other Entity on, or the property of any other Entity for, any debt of the Debtors that is discharged under the Plan.

(c)      Notwithstanding any provision of the Plan or the Confirmation Order to the contrary, Confirmation does not discharge (i) the Debtors from any debt of a kind specified in 11 U.S.C. § 1141(d)(6) or (ii) the Debtors' obligations under the settlement agreements with the Settled Environmental Insurers.

6.      **Asbestos Permanent Channeling Injunctions.**

(a)      Pursuant to section 524(g) of the Bankruptcy Code, and except as otherwise provided in the Plan, including Section IV.O.1., the Plan and the Confirmation Order permanently and forever stays, restrains and enjoins any Entity from taking any actions against any Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Asbestos Personal Injury Claim, all of which are channeled to the Asbestos Personal Injury Trust for resolution as set forth in the Asbestos Personal Injury Trust Agreement and the related Asbestos Personal Injury Trust Distribution Procedures, including permanently and forever staying, restraining and enjoining any Entity from any of the following:

(i)     commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including a judicial, arbitral, administrative or other proceeding) in any forum against any Protected Party or any property or interests in property of any Protected Party;

(ii)     enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against any Protected Party or any property or interests in property of any Protected Party;

(iii)     creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party;

(iv)     setting off, seeking reimbursement of, contribution from or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

(v)     proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Personal Injury Trust Documents, except in compliance therewith.

(b)     For the avoidance of doubt, the Asbestos Permanent Channeling Injunction shall not affect any claims or causes of action under Sections IV.L.1. and IV.L.2. of the Plan.

## 7.     Environmental Injunctions.

(a)     In consideration of the undertaking of the Settled Environmental Insurers, and other consideration, and pursuant to their respective settlements with the Debtors and to preserve and promote further the agreements between and among the Debtors and any Settled Environmental Insurers, and pursuant to section 105 of the Bankruptcy Code:

(i)     any and all Environmental Claims shall be treated, administered, determined and resolved under the procedures and protocols under the Plan as the sole and exclusive remedy with respect to Environmental Claims; and

(ii)     all Entities are hereby permanently stayed, enjoined, barred and restrained from doing any of the following against the Settled Environmental Insurers:

(A)     commencing or continuing in any manner any action or other proceeding of any kind with respect to any Environmental Claim against any of the Settled Environmental Insurers or against the property of any of Settled Environmental Insurers;

(B)     commencing or continuing in any manner any contribution, indemnity or other equitable action or other similar proceeding

relating to the environmental settlements made in this bankruptcy case against any of the Settled Environmental Insurers or against the property of any of Settled Environmental Insurers;

(C)     enforcing, attaching, collecting or recovering, by any manner or means, from any of the Settled Environmental Insurers, or the property of any of the Settled Environmental Insurers, any judgment, award, decree, payment or order relating to any Environmental Claim against any of the Settled Environmental Insurers; and

(D)     creating, perfecting or enforcing any lien of any kind relating to any Environmental Claim against any of the Settled Environmental Insurers, or the property of the Settled Environmental Insurers.

(b)     The injunction set forth set forth in Section IX.B.3 of the Plan is an integral part of the Plan and is essential to the Plan's consummation and implementation. The Environmental Injunction shall inure to the benefit of the Settled Environmental Insurers, but shall not apply to any Debtor or Reorganized Debtor.

(c)     For the avoidance of doubt, the Environmental Injunction shall not apply to Asbestos Personal Injury Claims, or to Asbestos Insurance Policy Claims arising from the payment of, or obligations arising from, Asbestos Personal Injury Claims.

## 8.     General Injunctions.

(a)     <u>No Actions on Account of Discharged Claims.</u> In addition to the Asbestos Permanent Channeling Injunctions and the Environmental Injunctions set forth above, except as provided in the Plan, including in Section IV.O.1., or the Confirmation Order, as of the Effective Date, all Entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged pursuant to the terms of the Plan is permanently enjoined from taking any of the following actions on account of any such discharged Claim, debt or liability: (i) commencing or continuing in any manner any action or other proceeding against any Debtor or Reorganized Debtor, or any of its property, other than to enforce any right to a Distribution pursuant to the Plan; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against any Debtor or Reorganized Debtor, or any of its property, other than as permitted pursuant to (i) above; (iii) creating, perfecting or enforcing any lien or encumbrance against any Debtor or Reorganized Debtor, or any of its property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any Debtor or Reorganized Debtor; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

(b)     <u>No Actions on Account of Released Claims.</u> In addition to the Asbestos Permanent Channeling Injunctions and the Environmental Injunctions set forth above, except as provided in the Plan, including in Section IV.O.1., or the Confirmation Order, as of the Effective Date, all Entities that have held, currently hold or may hold any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities that are

released pursuant to the Plan are permanently enjoined from taking any of the following actions against any released Entity, or any of its property, on account of such released claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released Entity; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

(c)  Recipients of Distributions Deemed to Consent. By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim receiving Distributions pursuant to the Plan is deemed to have specifically consented to the injunctions set forth in Section IX.B of the Plan.

**9.  Bar Dates.**

(a)  Bar Dates for Administrative Claims. Except as otherwise provided in Section III.A.1.d.ii. of the Plan and section 9(b) below, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors, at the addresses set forth in Section XI.K of the Plan, no later than sixty (60) days after the Effective Date (i.e., [_____], 2020).  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their respective property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the requesting party no later than 120 days after the Effective Date (i.e., [_____], 2020).

(b)  Bar Dates for Professional Compensation. With certain limited exceptions, Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of the Bankruptcy Court a Final Fee Application no later than ninety (90) days after the Effective Date (i.e., [_____], 2020). A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Fee Claim pursuant to the Fee Order in its Final Fee Application. Objections to any Final Fee Application must be Filed and served on the Reorganized Debtors and the requesting party by the later of (i) eighty (80) days after the Effective Date or (ii) thirty (30) days after the Filing of the applicable Final Fee Application. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court, including the Fee Order, regarding the payment of Fee Claims. Any pending, Filed interim requests for a Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application.

(c)  Ordinary Course Liabilities. Holders of Administrative Claims based on liabilities incurred by a Debtor in the ordinary course of its business, including any

Intercompany Claims that are Administrative Claims, Administrative Claims of governmental units for Taxes and Administrative Claims arising from those contracts and leases of the kind described in Section V.E. of the Plan, are not required to File or serve any request for payment of such Administrative Claims. Such Administrative Claims shall be satisfied pursuant to Section III.A.1.c. of the Plan.

       (d)    <u>Rejection Damage Claims</u>. Notwithstanding anything in the Bankruptcy Court's Order Establishing Bar Dates for Filing Proofs of Claim Other Than Asbestos Personal Injury Claims and Approving Related Relief [D.I. 553] to the contrary, if the rejection of an Executory Contract or Unexpired Lease pursuant to Section V.C of the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, their respective successors or their properties unless a proof of Claim is Filed and served on the Reorganized Debtors at the addresses set forth in Section XI.K of the Plan, on the latter to occur of (i) sixty (60) days after the Effective Date or (ii) thirty (30) days after the effective date of rejection of such Executory Contract or Unexpired Lease.

       **10.**    **Bankruptcy Court Address**. For purposes of Filing requests for payment of Administrative Claims, applications for allowance of Fee Claims or other documents, the address of the Bankruptcy Court is 401 West Trade Street, Room 111, Charlotte, North Carolina 28202.

       **11.**    **Claims Agent Address.** For purposes of Filing proofs of Claim arising from the rejection of Executory Contracts or Unexpired Leases, Prime Clerk LLC's address is 55 East 52nd Street, 31st Floor, New York, New York 10055.

       **12.**    **Copies of Confirmation Order**. Copies of the Confirmation Order may be obtained free of charge at www.primeclerk.com/kaisergypsum or by sending a request, in writing, to Prime Clerk, LLC, 55 East 52nd Street, 31st Floor, New York, New York 10055 (Attn: Kaiser Gypsum Company, Inc.).

Dated:_____, 2020          BY ORDER OF THE COURT

C. Richard Rayburn, Jr. (NC 6357)
John R. Miller, Jr. (NC 28689)
RAYBURN COOPER & DURHAM, P.A.
1200 Carillon
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 334-0891
Facsimile: (704) 377-1897
E-mail:  rrayburn@rcdlaw.net
        jmiller@rcdlaw.net

-and-

Gregory M. Gordon (TX 08435300)
Amanda Rush (TX 24079422)
JONES DAY
2727 N. Harwood Street
Dallas, Texas  75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
E-mail: gmgordon@jonesday.com
       asrush@jonesday.com

-and-

Paul M. Green (TX 24059854)
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
E-mail: pmgreen@jonesday.com

ATTORNEYS FOR THE REORGANIZED DEBTORS

**EXHIBIT D**

**CONFIRMATION NOTICE — PUBLICATION VERSION**

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| KAISER GYPSUM COMPANY, INC., *et al.*,[1] | : | Case No. 16-31602 (JCW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

## NOTICE OF (I) ENTRY OF ORDER CONFIRMING THE JOINT PLAN OF REORGANIZATION OF KAISER GYPSUM COMPANY, INC. AND HANSON PERMANENTE CEMENT, INC.; (II) EFFECTIVE DATE AND (III) BAR DATE FOR CERTAIN ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS AND REJECTION DAMAGES CLAIMS

PLEASE TAKE NOTICE OF THE FOLLOWING:

      **1.**     **Confirmation of the Plan.** On [_____], 2020, the United States Bankruptcy Court for the Western District of North Carolina entered an order (the "Confirmation Order") confirming the Joint Plan of Reorganization of Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc., dated July 20, 2020 (as modified by the Confirmation Order, the "Plan") filed by the above-captioned debtors (together, the "Debtors"). The Confirmation Order was subsequently affirmed by the United States District Court for the Western District of North Carolina. Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings given to them in the Plan and the Confirmation Order.

      **2.**     **Effective Date.** Pursuant to the Confirmation Order, the Debtors hereby certify and give notice that the Plan became effective in accordance with its terms, and the Effective Date occurred, on [_____], 2020.

      **3.**     **Releases.** The confirmed Plan provides for various debtor and non-debtor releases that became effective as of the Effective Date. Except as otherwise expressly set forth in the Plan, the Debtors and the Reorganized Debtors are released from all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, arising out of, based upon or resulting from, directly or indirectly, in whole or in part, any act, omission, transaction or other occurrence taking place on or prior to the Effective Date. In addition, the Plan contains broad releases in favor of identified, non-debtor third parties granted by (a) the holders of Claims or Interests that voted in favor of the Plan or were deemed

---

[1]     The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Kaiser Gypsum Company, Inc. (0188) and Hanson Permanente Cement, Inc. (7313). The Debtors' address is 300 E. John Carpenter Freeway, Irving, Texas 75062.

to accept the Plan and (b) the Debtors and the Reorganized Debtors, on behalf of themselves and their affiliates, Estates and their respective successors, assigns and any and all Entities who may purport to claim by, through, for or because of them.

**4.     Discharge of Claims.**

a.     Pursuant to the Confirmation Order, with certain limited exceptions, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan are in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date. With certain limited exceptions, Confirmation of the Plan will, as of the Effective Date, discharge the Debtors from all Claims, other liabilities or debts that arose on or before the Effective Date.

b.     In accordance with the foregoing, with certain limited exceptions, the Confirmation Order, as of the Effective Date, discharges all Claims, debts and other liabilities against the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against a Debtor at any time, to the extent that such judgment relates to a discharged Claim, debt or liability.

**5.     Injunctions Issued Pursuant to the Confirmation Order.**

a.     <u>Asbestos Permanent Channeling Injunctions</u>. Pursuant to the Confirmation Order, an injunction was issued, applicable to all persons and entities, that permanently channels to a trust established pursuant to section 524(g) of the Bankruptcy Code for resolution of all claims, remedies, liabilities or demands against the Debtors or certain other protected parties for death or personal injuries caused directly or indirectly by the presence of, or exposure to, asbestos, including any claims or demands for reimbursement, indemnification, subrogation or contribution.

b.     <u>Environmental Injunction</u>. Pursuant to the Confirmation Order, an injunction was issued (i) requiring that all Environmental Claims be treated, administered, determined and resolved under the procedures and protocols set forth in the Plan and (ii) enjoining all persons or entities from taking broad categories of actions against the Settled Environmental Insurers or their respective property.

c.     <u>Other Injunctions</u>. Pursuant to the Confirmation Order, in addition to the injunctions described above, an injunction was issued enjoining all persons and entities from taking broad categories of actions in the pursuit of (i) any Claim against or Interest in the Debtors, the Reorganizing Debtors, or any of their respective property to the extent that such Claim or Interest was discharged, released, waived, settled or deemed satisfied in accordance with the Plan (other than to enforce any right to a Distribution under the Plan) and (ii) any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities against third parties that were released pursuant to the Plan.

**6.**     For the specific terms and conditions of these injunctions and releases and the precise scope of the claims and demands to be channeled, please refer to the specific terms of the Plan, which can be obtained free of charge at www.primeclerk.com/kaisergypsum or by

sending a request, in writing, to Prime Clerk, LLC, 55 East 52nd Street, 31st Floor, New York, New York 10055 (Attn: Kaiser Gypsum Company, Inc.).

## 7. **Bar Dates.**

 a. <u>Bar Dates for Administrative Claims</u>. Except as otherwise provided in Section III.A.1.d.ii. of the Plan and section 7.b below, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors at the addresses set forth in Section XI.K of the Plan, no later than sixty (60) days after the Effective Date (<u>i.e.</u>, [_____], 2020). Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their respective property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the requesting party no later than 120 days after the Effective Date (<u>i.e.</u>, [_____], 2020).

 b. <u>Bar Dates for Professional Compensation</u>. With certain limited exceptions, Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Reorganized Debtors and certain other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of the Bankruptcy Court a Final Fee Application no later than (ninety) 90 days after the Effective Date (<u>i.e.</u>, [_____], 2020). A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Fee Claim pursuant to the Fee Order in its Final Fee Application. Objections to any Final Fee Application must be Filed and served on the Reorganized Debtors and the requesting party by the later of (i) eighty (80) days after the Effective Date or (ii) thirty (30) days after the Filing of the applicable Final Fee Application. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court, including the Fee Order, regarding the payment of Fee Claims. Any pending, Filed interim requests for a Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application.

 c. <u>Ordinary Course Labilities</u>. Holders of Administrative Claims based on liabilities incurred by a Debtor in the ordinary course of its business, including any Intercompany Claims that are Administrative Claims, Administrative Claims of governmental units for Taxes and Administrative Claims arising from those contracts and leases of the kind described in Section V.E. of the Plan, are not required to File or serve any request for payment of such Administrative Claims. Such Administrative Claims shall be satisfied pursuant to Section III.A.1.c. of the Plan.

 d. <u>Rejection Damage Claims</u>. Notwithstanding anything in the Bankruptcy Court's Order Establishing Bar Dates for Filing Proofs of Claim Other Than Asbestos Personal Injury Claims and Approving Related Relief [D.I. 553] to the contrary, if the rejection of an Executory Contract or Unexpired Lease pursuant to Section V.C of the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, their

respective successors or their properties unless a proof of Claim is Filed and served on the Reorganized Debtors at the addresses set forth in Section XI.K of the Plan, on the latter to occur of (i) sixty (60) days after the Effective Date or (ii) thirty (30) days after the effective date of rejection of such Executory Contract or Unexpired Lease.

        **8.**     **Copies of Confirmation Order**. Copies of the Confirmation Order may be obtained free of charge at www.primeclerk.com/kaisergypsum or by sending a request, in writing, to Prime Clerk, LLC, 55 East 52nd Street, 31st Floor, New York, New York 10055 (Attn: Kaiser Gypsum Company, Inc.).

Dated:_____, 2020           BY ORDER OF THE COURT

C. Richard Rayburn, Jr. (NC 6357)
John R. Miller, Jr. (NC 28689)
RAYBURN COOPER & DURHAM, P.A.
1200 Carillon
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 334-0891
Facsimile: (704) 377-1897
E-mail:  rrayburn@rcdlaw.net
         jmiller@rcdlaw.net

-and-

Gregory M. Gordon (TX 08435300)
Amanda Rush (TX 24079422)
JONES DAY
2727 N. Harwood Street
Dallas, Texas  75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
E-mail: gmgordon@jonesday.com
       asrush@jonesday.com

Paul M. Green (TX 24059854)
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
E-mail: pmgreen@jonesday.com

ATTORNEYS FOR THE REORGANIZED DEBTORS