# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division
### No. 3:20-cv-00537-GCM

In re:

KAISER GYPSUM COMPANY, INC. et al.,[1]

                        Debtor.

## EMERGENCY MOTION OF TRUCK INSURANCE EXCHANGE FOR STAY PENDING APPEAL

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Kaiser Gypsum Company, Inc. (0188); and Hanson Permanente Cement, Inc. (7313). The Debtors' address is 300 E. John Carpenter Freeway, Irving, TX 75062.

# CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 1

ARGUMENT ......................................................................................................................... 9

    I.    Truck Is Likely to Succeed on the Merits of Its Appeal .................................... 9

    II.   Truck Will Likely Face Irreparable Harm If the Confirmation Order Is Not Stayed ................................................................................................................... 13

    III.  A Stay Will Not Substantially Harm Other Parties And Any Legitimate Potential Harm Can Be Addressed By A Bond ............................................... 16

    IV.  A Stay Is in the Public Interest ..................................................................... 18

    V.   Emergency Relief Is Required to Prevent Consummation of the Plan From Rendering Truck's Appeal Equitably Moot ................................................... 20

CONCLUSION .................................................................................................................... 20

## Table of Authorities

**Cases**

*In re Adelphia Communications Corp.*,
   361 B.R. 337 (S.D.N.Y. 2007) ...................................................................14, 15, 16, 17, 18

*In re Alpha Nat. Res., Inc.*,
   736 F. App'x 412 (4th Cir. 2018) ..........................................................................13

*Asheville Bldg. Assocs. v. Carlyle Real Estate Ltd. P'ship, VIII*,
   93 B.R. 920 (W.D.N.C.) ...........................................................................................15

*In re Bestwall LLC*,
   606 B.R. 243 (Bankr. W.D.N.C. 2019) (Beyer, J.)...................................................5

*Brinkman v. John Crane, Inc.*,
   2015 WL 13424471 (E.D. Va. Dec. 14, 2015) ..............................................9, 10

*In re Brown*,
   354 B.R. 100 (Bankr. N.D. W. Va. 2006)...............................................................14

*In re Burcam Capital II, LLC*,
   No. 12-04729-8-JRL, 2013 WL 1187882 (Bankr. E.D.N.C. Mar. 21, 2013)........15

*Citibank, N.A. v. Jackson*,
   No. 3:16-CV-712-GCM, 2017 WL 4511348, (W.D.N.C. Oct. 10, 2017) ................8

*In re Congoleum Corp.*,
   362 B.R. 167 (Bankr. D.N.J. 2007) ......................................................................11

*CW Capital Asset Mgmt., LLC v. Burcam Capital II, LLC*,
   No. 5:13-CV-278-F, 2013 WL 3288092 (E.D.N.C. June 28, 2013)................14, 15

*Direx Israel, Ltd. v. Breakthrough Medical Corp.*,
   952 F.2d 802 (4th Cir. 1991) ...................................................................................9

*In re Federal-Mogul Global Inc.*,
   684 F.3d 355 (3d Cir. 2012).....................................................................................5

*In re Garlock Sealing Techs., LLC*,
   504 B.R. 71 (Bankr. W.D.N.C. 2014) (Hodges, J.) .................................................3

*Garlock Sealing Techs., LLC v. Shein*,
   No. 3:14–cv–137, 2015 WL 5155362 (W.D.N.C. Sep. 2, 2015) (Mullen, J.)........3

*Gilliam v. Foster*,
   61 F.3d 1070 (4th Cir. 1995) ...................................................................................9

*Long v. Robinson*,
    432 F.2d 977 (4th Cir. 1970) ......................................................................8

*Mac Panel Co. v. Virginia Panel Corp.*,
    283 F.3d 622 (4th Cir. 2002) ...............................................................12, 13

*Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs.*
    *US, LLC*,
    578 B.R. 325 (E.D. Va. 2017) ..............................................................13, 19

*Nken v. Holder*,
    556 U.S. 418 (2009) ...................................................................................8

*In re One2One Commc'ns, LLC*,
    805 F.3d 428 (3d Cir. 2015) (Krause, *J.*, concurring) ...........................18

*In re Plant Insulation Co.*,
    734 F.3d (9th Cir. 2013) ........................................................................6, 11

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968)..................................................................................18

*In re Pub. Serv. Co. of New Hampshire*,
    116 B.R. 347 (Bankr. D.N.H. 1990) .......................................................9

*In re Tribune Co.*,
    477 B.R. 465 (Bankr. D. Del. 2012) ..................................................15, 17

*In re U.S. Airways Grp., Inc.*,
    369 F.3d 806 (4th Cir. 2004) .................................................................14

*In re UNR Indus., Inc.*,
    20 F.3d 766 (7th Cir. 1994) ...................................................................12

*USACO Coal Co. v. Carbomin Energy, Inc.*,
    689 F.2d 94 (6th Cir. 1982) ...................................................................19

*Wash. Speakers Bureau v. Leading Authorities, Inc.*,
    49 F. Supp. 2d 496 (E.D. Va. 1999) .......................................................9

*Zhenli Ye Gon v. Holt*,
    2014 WL 202112 (W.D. Va. Jan. 17, 2014)....................................9, 10, 11

## Statutes

11 U.S.C. § 524(g) ...........................................................1, 2, 3, 5, 6, 7, 10, 11

11 U.S.C. § 524(g)(2)(B)(i)(I) ......................................................5, 10, 11

11 U.S.C. § 524(g)(2)(B)(i)(III)................................................................5, 6, 11

11 U.S.C. § 524(g)(2)(B)(ii)(III)..............................................................6, 11

11 U.S.C. §1129(a)(3).............................................................................3, 10

**Other Authorities**

H.R. Rep. 103-835, 1994 U.S.C.C.A.N. 3340 (1994) ....................................5

**Rules**

Bankruptcy Rule 3020(e)...........................................................................12

Fed. R. App. Proc. 39(a)............................................................................17

# PRELIMINARY STATEMENT

To prevent immediate and irreparable harm to the rights of Truck Insurance Exchange ("Truck"), this Court should enter a stay pending Truck's appeal in the Court of Appeals for the Fourth Circuit of the Court's order [Dkt. No. 52][2] (the "Confirmation Order") confirming the Joint Plan of Reorganization (the "Plan") of Kaiser Gypsum Company, Inc. ("Kaiser") and Hanson Permanente Cement, Inc. ("HPCI," and together with Kaiser, the "Debtors") proposed by the Debtors, the Asbestos Claimants' Committee (the "ACC") and the Future Claims Representative (the "FCR"). (The Debtors, the ACC and the FCR collectively comprise the "Plan Proponents.") Truck is the Debtors' Primary Asbestos Insurer, opposes confirmation of the Plan, and will appeal the Confirmation Order. Absent a stay there is a material risk that Truck's appeal could be deemed equitably moot, totally precluding appellate review of a ruling with profound consequences for Truck's defense of thousands of asbestos claims currently pending against the Debtors, for Truck's rights under the insurance policies it issued to the Debtors, and, more broadly, for the integrity of asbestos litigation nationwide. Truck therefore submits this Emergency Motion for Stay Pending Appeal (the "Emergency Motion") to prevent the loss of Truck's appellate rights and preserve for review multiple significant legal issues, as to which Truck can show a likelihood of success on the merits.

# STATEMENT OF FACTS

The Plan is the product of a corrupt bargain between the Debtors and the lawyers for their primary creditors—the many thousands of holders of disputed asbestos personal injury claims against the Debtors. That bargain involved the trade of what mattered most to the Debtors—the

---

[2] References to "Dkt. No. __" are to docket entries in the District Court, Case No. 20-cv-537-GCM. References to "Bk. Dkt. No. __" are to docket entries in the Bankruptcy Court, Case No. 16-31602 (Bankr. W.D.N.C.).

claimants' assent to the injunction provided for under section 524(g) of the Bankruptcy Code, which protects the Debtors and their non-bankrupt parents—for what mattered most to the asbestos plaintiffs' bar—the ability to resolve their clients' bankruptcy claims in the tort system, where they are able to fraudulently inflate the value of their clients' claims through a well-documented scheme to withhold and suppress highly material evidence of exposure to asbestos products manufactured or sold by other bankrupt defendants.

What made the corrupt bargain possible is that, aside from the rare uninsured claim, or the even rarer insured claim that leads to a punitive damage award not covered by insurance, the Debtors' financial responsibility for asbestos personal injury claims is fully insured, save for $5,000 deductibles.[3] Truck is responsible for all defense costs and for indemnity payments up to $500,000, with no aggregate limits, and there is additional insurance coverage for claims in excess of $500,000. The Debtors have admitted that as long as the claims are covered by insurance, they do not view the fraudulent inflation of the claims to be their concern. And the claimants' representatives have admitted that they view as unnecessary specific statutory requirements for the issuance of a section 524(g) injunction—requirements designed to ensure that adequate funding exists to satisfy the claims—because they consider the insurance a sufficient substitute for what is required

---

[3] Theoretically, there could be asbestos personal injury claims that arise outside the coverage period of the Truck policies. However, such claims have been exceedingly rare in the Debtors' history and the Debtors were not aware that any of the pending 14,000 asbestos personal injury claims were uninsured. Objection at 22 (citing Bk. Dkt. No. 2420, July 20, 2020 Tr. 87:23-89:21). Should any such claims arise, the Plan mandates that the claims be satisfied by the trust created by the Plan, and the trust is protected against fraudulent claims by the inclusion of fraud prevention measures the Plan Proponents refused to extend to the insured claims. Similarly, there have been only three punitive damage awards in asbestos cases against the Debtors, two of which did not survive post-trial and the third of which was very substantially reduced. Objection at 49 (citing McChesney Declaration, Bk. Dkt. No. 1361 ¶ 17).

under the statute.  Effectively, the Debtors and the claimant body have each agreed to turn a blind eye to the Bankruptcy Code requirements, viewing them as trivial due to the insurance coverage.

There are two fundamental problems with the Plan.  First, it violates the statutory requirement of all bankruptcy plans of reorganization that the plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. §1129(a)(3).  Second, the Plan fails to satisfy numerous express requirements for the issuance of the section 524(g) injunction.  In addition, the Plan contains a finding (the "Insurance Finding"), designed to prevent Truck from enforcing its rights under the policies post-confirmation, that is without factual or legal support.  For all of these reasons, Truck objected to the confirmation of the Plan.

A full recitation of the underlying facts is set forth in Truck's *Brief In Support of Objection of Truck Insurance Exchange to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law Regarding Confirmation of the Joint Plan of Reorganization* [Dkt. No. 26] (the "Objection") at 4–28.  A summary of those facts follows here.  In 2014, the Bankruptcy Court in this District issued a landmark decision finding widespread suppression and manipulation of evidence by plaintiffs' counsel in asbestos cases litigated in the tort system—a scheme to fraudulently increase claim values by denying defendants access to the evidence they need to defend themselves.  *In re Garlock Sealing Techs., LLC*, 504 B.R. 71 (Bankr. W.D.N.C. 2014) (Hodges, J.).  As this Court has also recognized, the asbestos plaintiffs' bar has engaged in a wide-ranging, systematic, and well-concealed scheme against a variety of defendants designed to suppress evidence and fraudulently inflate settlement values of mesothelioma claims.  *Garlock Sealing Techs., LLC v. Shein*, No. 3:14–cv–137, 2015 WL 5155362 at *3 (W.D.N.C. Sep. 2, 2015) (Mullen, J.) (citing Judge Hodges's decision).

The Debtors do not dispute the existence of the scheme, which denies tort system defendants the ability to uncover claims asbestos plaintiffs have asserted or later intend to assert with any of the scores of trusts established to resolve asbestos liabilities of entities that have sought bankruptcy relief. Nor do they dispute that asbestos personal injury claims asserted against them have been impacted by the scheme, which is also confirmed by the unrebutted testimony of Dr. Charles Bates. Nor do the Debtors dispute the testimony of Professor Lester Brickman that the suppressed exposure evidence cannot be obtained through tort system discovery. Nor is there any dispute that since the *Garlock* estimation ruling, it has become standard practice in asbestos bankruptcies to include "fraud prevention measures" specifically to thwart the scheme. Those measures include required mandatory disclosures of all claims asserted or to be asserted against asbestos trusts and authorizations to obtain information from the trusts, as well as the right to later audit the accuracy of the information provided.

Fraud prevention measures are included in the Plan. However, the Debtors acceded to the plaintiffs' bar's insistence that such measures only apply to any uninsured claims to be resolved by the Kaiser Gypsum Trust. The Debtors' representative testified at the confirmation hearing that the measures were not included for insured claims because their deal with the ACC—whose members are asbestos plaintiffs' lawyers, including those who have over the years played a significant role in devising and implementing the scheme—and the FCR, an individual hand-selected by the plaintiffs' bar, gave the ACC and the FCR the exclusive right to determine claims resolution procedures and those parties object to inclusion of the measures. [Bk. Dkt. No. 2420], July 20, 2020 Tr. 150:16-24. The Debtors have long taken the position that preventing the fraudulent resolution of the claims asserted against them that are covered by insurance is not their responsibility. According to their lawyer:

> [A]re the debtors suspicious that maybe they were the subject of misconduct in the tort system? Yes. But . . . we've negotiated an agreement. . . . [A] lot can be said about fraud, a lot, lot of references can be made to *Garlock* . . . , but the point is there's nothing inconsistent in that regard. We didn't think we were treated fairly, either. It is what it is. We've settled and this agreement takes the debtors out of the tort system. And that's the only . . . point that matters from an estate perspective.

[Bk. Dkt. No. 950], May 10, 2018 Tr. 41:19-42:8.  And when asked at the confirmation hearing whether the Debtors cared if the claims against them were fraudulently inflated, the Debtors' representative made clear that what the Debtors cared about was that the claims be covered by insurance.  [Bk. Dkt. No. 2420], July 20, 2020 Tr. 135:20-136:4; 137:13-16.

Beyond the abject bad faith of the Plan, it provides the Debtors and their parent with injunctive relief under 11 U.S.C. § 524(g) even though the Plan fails to satisfy numerous express requirements of that statute.  The injunction is only authorized when "implemented in connection with a trust that, pursuant to the plan of reorganization—is to ***assume the liabilities of a debtor*** which . . . has been named as a defendant in personal injury, wrongful death, or property-damage actions for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products." 11 U.S.C. § 524(g)(2)(B)(i)(I) (emphasis added).  Here, the Plan prohibits holders of insured asbestos claims (which constitute all or nearly all of the asbestos claimants) from presenting those claims to, or seeking recovery from the Trust.  Instead, claimants must sue the Reorganized Debtors in the tort system and seek recovery from Truck.  This violates the

express requirements of the statute and undermines its purpose.[4]  Accordingly, confirmation of the

Plan containing the section 524(g) injunction is improper.[5]

The Plan similarly violates other requirements of section 524(g), including that it "be

funded in whole or in part by the securities of 1 or more debtors involved in such plan and by the

obligation of such debtor or debtors to make future payments, including dividends."  11 U.S.C.

§ 524(g)(2)(B)(i)(II) and that the Trust "own, or by exercise of rights granted under such plan

would be entitled to own if specified contingencies occur, a majority of the voting shares of"

each Debtor.  11 U.S.C. § 524(g)(2)(B)(i)(III).  Here, the specified security is a *di minimis* $1

million promissory note that even the Bankruptcy Court recognized could be deemed "pre-

textual," Proposed Findings and Conclusions at 33 n.15, and the specified contingency—that the

Debtors' parent would abide a default on the note and thus the loss of control of its subsidiaries,

one of which it values at  $179 million [Bittner Declaration, Ex. 22 at 17, 25]—is one that in

practice would never occur.  A plan of reorganization cannot satisfy section 524(g)(2)(B)(i)(III)

by inserting "sham" contingencies that "allow control facially, but not in practice."  *In re Plant

Insulation Co.*, 734 F.3d at 916 (9th Cir. 2013).

Even more fundamentally, a section 524(g) injunction cannot issue unless the court

---

[4]     Congress enacted section 524(g) in response to the asbestos-litigation crisis that had overwhelmed the tort system, and it did so with the express goal of creating a statutory mechanism by which "[p]resent, as well as future, asbestos personal injury claimants" would be given the opportunity to resolve their claims outside the tort system by bringing their "actions against [a] trust."  H.R. Rep. 103-835, 1994 U.S.C.C.A.N. 3340, 3349 (1994); *see In re Bestwall LLC*, 606 B.R. 243, 257 (Bankr. W.D.N.C. 2019) (Beyer, J.) (the "purpose of section 524(g)" is to serve "as a solution to the inefficient resolution of asbestos claims in the traditional tort system" (citing *In re Federal-Mogul Global Inc.*, 684 F.3d 355, 357-62 (3d Cir. 2012))).

[5]   To be clear, mandating that all insured claims be resolved in the tort system is for the ACC and FCR a feature of the Plan—not a bug.  The scheme detailed in *Garlock* was specifically designed to avoid detection in the tort system, *see* Brickman Decl., Ex. 66 ¶¶ 40–41, and under the Plan any claims presented to the Trust would be subject to fraud prevention measures, *see* Bk. Dkt. No. 2420, July 20, 2020 Tr. 171:15–172: 22.

determines that a debtor is likely to be subject to substantial future demands by asbestos claimants and that the pursuit of such demands outside the procedures specified by the plan "is *likely* to threaten the plan's purpose to deal equitably with claims and future demands." 11 U.S.C. § 524(g)(2)(B)(ii)(III). Here, it would be impossible for Debtors to make such a showing given the unlimited insurance coverage available, and Debtors never even attempted to establish such a likelihood. Instead, they effectively re-wrote the statutory provision and argued that there was some unquantified "risk" (which is not borne out by the record in any event) that punitive damage recoveries might ultimately result in inequitable payment of uninsured obligations. This plainly fails to satisfy the statute.

Finally, the Plan contains the Insurance Finding, providing that nothing the Debtors have done prior to or during the bankruptcy, including the Plan negotiations, constitutes a violation of the Debtors' duties under the Truck policies to assist and cooperate with the defense of the asbestos claims. Debtors sought the finding after Truck warned that the Debtors' refusal to insist upon fraud prevention measures necessary to obtain the full and complete asbestos exposure histories of the asbestos claimants could give rise to a policy breach. Rather than agree to assist Truck in obtaining the necessary evidence, the Debtors instead requested the Insurance Finding, to be used as a defense against any potential post-confirmation coverage challenge by Truck. The Insurance Finding was improperly recommended by the Bankruptcy Court and made by the District Court even though the Debtors refused to testify as to what transpired in the negotiations, and despite the absence of any legal authority supporting their assertion that, as a matter of law, their conduct during the bankruptcy could not give rise to a coverage defense.

### THE CONFIRMATION RULING

The confirmation hearing was conducted by the Bankruptcy Court in July 2020. On August 13, 2020, the Bankruptcy Court issued an oral ruling that it was going to recommend

confirmation of the Plan. It was agreed by the Bankruptcy Court and the parties that the Bankruptcy Court would merely propose Findings and Conclusions and that it would be for the District Court to make the actual Findings and Conclusions since only the District Court is empowered to issue an injunction under section 524(g) of the Bankruptcy Code. The Bankruptcy Court requested that the Plan Proponents draft the Proposed Findings and Conclusions, and it was agreed that, to the extent Truck had substantive objections to the Proposed Findings and Conclusions, those were to be addressed with the District Court and not the Bankruptcy Court. With just minor modifications, the Bankruptcy Court entered the Proposed Findings and Conclusions drafted by the Plan Proponents.

On November 4, 2020, Truck filed its Objection to the Proposed Findings and Conclusions. [Dkt. No. 26]. In the Objection, Truck raised myriad errors in the Proposed Findings and Conclusions. Those errors ranged from plain errors of fact finding and legal reasoning, to overruling objections based on arguments not asserted by Truck and failing to address actual arguments made. The Plan Proponents responded to Truck's Objection on December 4, 2020. [Dkt. No. 31–33]. On December 31, 2020, Truck filed a Reply Brief [Dkt. No. 34], specifically noting the numerous arguments and contentions in the Objection to which the Plan Proponents never responded. On June 25, 2021, the District Court conducted a lengthy hearing on the issues raised by the Truck Objection.

On July 28, 2021, the District Court signed and entered the Findings and Conclusions and Confirmation Order proposed by the Bankruptcy Court with just a single modification, deleting a provision that would have waived the statutory 14 day stay of the Confirmation Order under Bankruptcy Rule 3020(e). *Compare* [Bk. Dkt. No. 2486, Dkt. No. 1] *with* [Dkt. No. 52, 53].

The District Court did not specifically address any of the objections to the Findings and Conclusions raised by Truck.

## ARGUMENT

As this Court recently held in *Citibank, N.A. v. Jackson,* "[a] judicial stay pending appellate review is 'an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." No. 3:16-CV-712-GCM, 2017 WL 4511348, at *2 (W.D.N.C. Oct. 10, 2017) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). In considering a motion to stay pending appeal, the Court must consider whether (1) Truck can show it will likely prevail on the merits of the appeal, (2) Truck will likely suffer irreparable injury if the stay is denied, (3) a stay will not substantially harm other parties, and (4) a stay is in the public interest. *Id.; see also Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970) (same). The first two factors are the "most critical." *Nken*, 556 U.S. at 434. Here, Truck has a substantial likelihood of success on the merits and faces a serious risk that it will be irreparably harmed by the loss of its appellate rights. Meanwhile, if necessary, Truck stands ready and willing to post an appellate bond to protect against the harm (if any) that non-moving parties would suffer from the delay involved in resolving Truck's appeal.

### I. Truck Is Likely to Succeed on the Merits of Its Appeal

To establish that it is "likely to succeed on the merits," the moving party must "establish[] sufficiently that [its] appeal presents a substantial legal question on the merits." *Brinkman v. John Crane, Inc.*, 2015 WL 13424471, at *1 (E.D. Va. Dec. 14, 2015); *see also Wash. Speakers Bureau v. Leading Authorities, Inc.*, 49 F. Supp. 2d 496, 499 (E.D. Va. 1999) (same). The likelihood of success factor is thus satisfied when "there is a distinct possibility a panel of judges on the Fourth Circuit may reach a different conclusion than [the district court] on some of th[e]

difficult issues" in the case. *Zhenli Ye Gon v. Holt*, 2014 WL 202112, at *1 (W.D. Va. Jan. 17, 2014). That standard is easily satisfied here.

In weighing Truck's likelihood of success on the merits, this Court must take into account the fact that, as discussed below, Truck will be irreparably harmed if its appeal is held equitably moot, entirely depriving Truck of its appellate rights. *See Gilliam v. Foster*, 61 F.3d 1070, 1078 (4th Cir. 1995) ("[A]s the likelihood of irreparable harm to the party requesting relief increases, the burden of showing likelihood of success on the merits decreases.") (citing *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)). *See also In re Pub. Serv. Co. of New Hampshire,* 116 B.R. 347, 348 (Bankr. D.N.H. 1990) (explaining that in the context of stays pending appeal "likelihood of success" cannot be taken literally, as "[t]he trial court in effect would be saying that it decided the case improperly and should be reversed"). Indeed, in *Citibank,* this Court granted the stay pending appeal even though movant failed to establish that success on appeal was more likely than not, due to the irreparable harm that could be sustained by the movant in the absence of a stay. *Citibank at *2*

***First***, Truck has raised a substantial and important legal question as to whether the Plan was proposed in good faith, and thus satisfies section 1129(a)(3) of the Bankruptcy Code. *See generally* Objection at 29-41. The District Court apparently accepted the Debtors' contention that it had no obligation under section 1129(a)(3) to take steps to prevent the fraudulent inflation of the insured asbestos claims asserted against them. Truck's contention that a Plan does not satisfy section 1129(a)(3) good faith requirement when (a) it has been negotiated with the perpetrators of a fraudulent scheme and (b) is devoid of measures necessary to prevent the scheme from infecting the resolution of the Debtors' insured liabilities is a question of first impression in the Court of Appeals, and clearly presents a "substantial legal question on the merits" as to

10

which there is a "distinct possibility a panel of judges on the Fourth Circuit may reach a different conclusion than [the district court]." *Brinkman v. John Crane, Inc.*, 2015 WL 13424471, at *1; *Zhenli Ye Gon v. Holt*, 2014 WL 202112, at *1.

**Second**, Truck has raised substantial legal questions concerning whether the Plan satisfies multiple express requirements of section 524(g) of the Bankruptcy Code for the injunction authorized by that section and provided for in the Plan. Unlike any of the scores of other section 524(g) plans of reorganization in the 25 years since the enactment of section 524(g), the Plan prohibits most if not all asbestos claimants from presenting their claims to the trust for resolution, in plain violation of the provisions of section 524(g)(2)(B)(i)(I) and (IV) that provide debtors with injunctive relief only if the trust assumes the debtors' asbestos liabilities and uses its assets to pay the claims. *See* Objection at 42-43. Should the Fourth Circuit agree that the Trust must actually assume and pay the asbestos claims, the Plan would be unconfirmable.

In addition, and as discussed in Truck's Objection at pages 44-47, the proposed $1 million note from the Debtors payable to the Trust and secured by 100% of the equity of the Reorganized Debtors is a pretextual sham, designed to exhibit technical but not substantive compliance with the requirements of sections 524(g)(2)(B)(i)(II) and (III), as there is no conceivable circumstance in which the Reorganized Debtors would default on a $1 million note and thereby yield control of a company they value at $179 million and that is projected to generate millions of dollars in positive annual cash flow. In its Proposed Findings and Conclusions, the Bankruptcy Court conceded that the $1 million note "may be pretextual, given its short term and small amount," *id.* at 33 n.15, but sided with the Plan Proponents' position that nothing more need be shown. Other courts have held that such pretextual compliance is insufficient and and should the Fourth Circuit agree, the Plan would be unconfirmable on this basis. *See In re Plant*

*Insulation Co.*, 734 F.3d 900, 916 (9th Cir. 2013) (holding that contingencies that would grant control of the reorganized debtor to asbestos trust "cannot be 'shams' that allow control facially, but not in practice"); *In re Congoleum Corp.*, 362 B.R. 167, 179 (Bankr. D.N.J. 2007) (holding that contingency "that would allow the [trust] to obtain 51% of the shares of only when the shares were not meaningful does not satisfy the requirements of § 524(g)(2)(B)(i)(III)").

Lastly, to be eligible to receive the benefits of a section 524(g) injunction, a debtor must show that it is likely to be subject to substantial future demands for payment by asbestos claimants and that the pursuit of such demands outside the procedures in the plan "is ***likely*** to threaten the plan's purpose to deal equitably with claims and future demands." Section 524(g)(2)(B)(ii)(I) and (III) (emphasis added). The Debtors never even attempted to comply with this provision—nor could they, given that with or without the plan, nearly all of their asbestos claimants would pursue recoveries in the tort system from Truck. Instead, the Debtors attempted to create a standard not consistent with the Bankruptcy Code, but one that they could satisfy—*i.e.*, that there was some (unquantified) ***risk*** of disparate treatment of uninsured claimants, and the Bankruptcy Court (without any comment from the District Court) accepted that revision of the standard. Should the Fourth Circuit insist upon compliance with the statute as it is actually worded, the Plan would be unconfirmable on this basis alone.

***Third,*** for the reasons outlined above, Truck has raised substantial legal questions as to whether the Insurance Finding could be made. Should the Fourth Circuit agree with Truck, the Plan would not be feasible, another Bankruptcy Code confirmation requirement, as inclusion of the Insurance Finding in the Confirmation Order is a precondition to confirmation of the Plan, Plan, [Bk. Dkt. No. 2481] Article VIII.A.3.u , and a condition to consummation of the Plan is that the Confirmation Order become a Final Order, *id.* Article VIII.B.2.

## II. Truck Will Likely Face Irreparable Harm If the Confirmation Order Is Not Stayed

Absent a stay, the Plan could become effective as early as August 11, 2021 (following the 14-day stay of the Confirmation Order that applies automatically under Bankruptcy Rule 3020(e)) setting in motion a series of transactions and creating a serious risk that Truck's appeal could be rendered equitably moot. The Fourth Circuit has described the doctrine of equitable mootness as follows:

> [E]quitable mootness is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable. Applied principally in bankruptcy proceedings because of the equitable nature of bankruptcy judgments, equitable mootness is often invoked when it becomes impractical and imprudent "to upset the plan of reorganization at this late date."

*Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002) (quoting *In re UNR Indus., Inc.,* 20 F.3d 766, 769 (7th Cir. 1994)). Applying the principle of equitable mootness, courts in the Fourth Circuit have frequently dismissed appeals of plan confirmation orders when appellants failed to obtain a stay to prevent consummation of the plan. *See, e.g.*, *Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d at 627; *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. US, LLC*, 578 B.R. 325, 352 (E.D. Va. 2017), aff'd sub nom. *In re Alpha Nat. Res., Inc.*, 736 F. App'x 412 (4th Cir. 2018).

Here, in the absence of a stay to prevent substantial consummation of the Plan, the Plan Proponents are certain to seek a dismissal of Truck's Fourth Circuit appeal on the basis of equitable mootness. Courts consider a number of factors in determining whether an appeal is equitably moot, including:

> (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal

would affect the interests of third parties.

*Mac Panel Co.*, 283 F.3d at 625. Given the unique nature of the Plan here, Truck believes the doctrine of equitable mootness should not apply, even absent a stay. The Plan does not effect a true financial restructuring—Debtors' assets are not being liquidated to satisfy claims, nor are creditors obtaining equity interests in the Debtors in exchange for debts owed to the creditors. The vast majority of the claims, those asserted for asbestos bodily injuries, are to be resolved after Plan consummation the exact same way they are currently being resolved and they would be resolved if confirmation of the Plan were overturned on appeal—in the tort system. And there is no logical reason why the environmental claim settlements included in the Plan could not be effectuated even if Plan confirmation was reversed on appeal—the settlements are primarily being funded by third party insurers, including Truck, and stand on their own non-bankruptcy merits. Nevertheless, absent a stay, the Plan Proponents will inevitably argue that these transactions cannot be unwound without "shak[ing] the reliance that businesses, investors, and the public place on the finality of bankruptcy confirmation orders," *In re U.S. Airways Grp., Inc.*, 369 F.3d 806, 810 (4th Cir. 2004), and therefore that Truck's appeal is equitably moot. Should the Fourth Circuit agree, such a ruling would permanently foreclose appellate review of the Confirmation Order even though neither the Bankruptcy Court nor the District Court has ever specifically addressed Truck's objections to the underlying Findings and Conclusions.

Although courts generally are divided on the question of whether the risk that an appeal would be mooted by the denial of a stay constitutes irreparable harm, the better reasoned view is that "where the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of

error, the irreparable harm requirement is satisfied." *In re Adelphia Communications Corp.,* 361

B.R. 337, 348 (S.D.N.Y. 2007) (emphasis in original).  As stated therein by Judge Scheindlin:

> The ability to review decisions of the lower courts is the guarantee of accountability in our judicial system. In other words, no single judge or court can violate the Constitution and laws of the United States, or the rules that govern court proceedings, with impunity, because nearly all decisions are subject to appellate review. At the end of the appellate process, all parties and the public accept the decision of the courts because we, as a nation, are governed by the rule of law. Thus, the ability to appeal a lower court ruling is a substantial and important right.

*Id.* at 342.

As in the Second Circuit, district courts in the Fourth Circuit have disagreed as to

whether the risk that the moving party will lose its appellate rights absent a stay is irreparable

harm justifying a stay to maintain the status quo.  *Compare CW Capital Asset Mgmt., LLC v.*

*Burcam Capital II, LLC*, No. 5:13-CV-278-F, 2013 WL 3288092, at *7 (E.D.N.C. June 28,

2013) (finding Judge Scheindlin's reasoning *In re Adelphia* "entirely persuasive" and holding

that "the loss of appellate rights alone constitutes irreparable harm") *with In re Brown*, 354 B.R.

100, 112 (Bankr. N.D. W. Va. 2006)  ("[A]n appeal being rendered moot does not itself constitute irreparable harm.") (quotation marks and citation omitted).  Truck submits that it is clear that

the better reasoned view is that the loss of the right to appellate review is a quintessential form of

irreparable harm.  As held in *CW Capital*:

> Our system of Government ensures that litigants are entitled to appellate review of orders from lower courts that affect their substantial rights. For this reason alone, the court is inclined to find that the [appellants] will be irreparably harmed if the court denies their motion to stay. Denying the stay likely results in the [appellants] losing their right to appellate review of the bankruptcy order confirming the plan, a significant, valuable right in our system of Government.

*CW Capital Asset Mgmt., LLC*, 2013 WL 3288092, at *7.  *See also In re Tribune Co.*, 477 B.R.

465 (Bankr. D. Del. 2012) ("strong possibility" of equitable mootness qualified as irreparable

harm).[6] Here, there is a "significant chance" that Truck would be irreparably harmed by the loss of its appellate rights, *CW Capital*, 2013 WL 3288092, at *5, and, by extension, by the continuation of the evidence suppression scheme that inflates asbestos recoveries against the Debtors that Truck insures.

### III. A Stay Will Not Substantially Harm Other Parties And Any Legitimate Potential Harm Can Be Addressed By A Bond

The proposed plan in *Adelphia Communications* involved a highly complex restructuring involving the sale of debtors' assets to Time Warner and Comcast and the resolution of a complex inter-creditor dispute, among many other issues. In considering whether to grant a stay pending appeal, the court observed that the stay "threatens grave harm to thousands of parties who have been waiting for more than four years to obtain sizeable distributions from a group of bankrupt estates…[and the] inability to consummate the Plan resulting from that order could cause the estates to incur more than a billion dollars in additional costs or even cause the Plan to collapse." 361 B.R. at 342. Yet, because of the irreparable harm that could result from the loss of the objecting bondholders' right of appeal, the court granted the stay, albeit with a substantial bond requirement to protect those supporting the plan. *Id.* at 369.

Here, conversely, the potential harms from an appeal are quite limited. To begin with, neither of the Debtors have significant ongoing business operations that would suffer or incur additional financing costs as a result of a temporary stay of the Confirmation Order. When the Debtors filed for chapter 11 in 2016, Kaiser had "no operations [or] material assets" beyond the

---

[6] *Cf. In re Burcam Capital II, LLC*, No. 12-04729-8-JRL, 2013 WL 1187882, at *1 (Bankr. E.D.N.C. Mar. 21, 2013) (declining to find irreparable harm because there was no reasonable likelihood that appeal would be held equitably moot); *Asheville Bldg. Assocs. v. Carlyle Real Estate Ltd. P'ship, VIII*, 93 B.R. 920, 923 (W.D.N.C.) (noting that appeal from lift stay order permitting foreclosure would be rendered moot absent appeal, but that there would be no irreparable harm because "the only harm ABA alleges is loss of equity, which is a monetary injury").

"manage[ment of] its asbestos and environmental liabilities." Oct. 4, 2016 H'rng Transcript at 15:22-25 [A001989]. Meanwhile, HPCI's ongoing operations consist of its ownership of a cement plant and rock quarry, which are leased to a non-debtor affiliate and have operated without incident or interruption throughout the pendency of these chapter 11 cases. *See id.* at 13:22-14:14 [A001987-89]. The Debtors are currently funded by their ultimate parent company, Lehigh Hanson, Inc., which would continue to own and fund them upon consummation of the Plan. *Id.* at 15:6-15 [A001989]. Thus, the Debtors would not incur any additional financing costs as a result of a stay of the Confirmation Order.

Neither should a stay prejudice the Debtors with regard to the pending environmental settlements. Those settlements are to be primarily funded by insurers, including Truck, and the funds for the settlements are sitting in escrow accounts pending consummation of the Plan. Moreover, nothing precludes the parties to the settlements from seeking Court approval to consummate the settlements in advance of Plan confirmation and consummation. And should any environmental claimant elect not to proceed with their deal due to appellate delay, the Debtors would still have the insurance to cover any eventual resolution of such claim. Notwithstanding all of the foregoing, should the Debtors be able to show substantial potential harm from a stay with regard to the environmental settlements, that potential harm can be mitigated by an appropriate bond.

Likewise, a stay would not prejudice unsecured creditors who are to be paid in full in cash under the Plan, except to the extent that the timing of their recovery would be delayed if Truck's appeal is unsuccessful. However, the unsecured creditors can easily be compensated for the time value of money through the payment of interest.

Finally, a stay would not prejudice asbestos personal injury claimants, who comprise the overwhelming majority of the Debtors' creditors. In 2018, the Plan Proponents successfully

moved for relief from the automatic stay to permit said claimants to proceed with the litigation of their claims in the tort system. *See* Order Granting Motion of the Debtors, the Official Committee of Asbestos Personal Injury Claimants and the Future Claims Representative to Lift the Stay, [Bk. Dkt. No. 1108 at A003124]. One of the principal justifications for the lifting of the stay was that it would be unfair to force the claimants to wait until the confirmation of a Plan to pursue their claims. Thus, with or without a confirmed Plan, the asbestos claimants can proceed with their lawsuits against the Debtors, and a stay will not cause them any material harm.

Truck is ready and willing to post an appropriate appeal bond to mitigate legitimate potential harms. In the event that the Confirmation Order is ultimately affirmed, such a bond would reimburse (1) post-confirmation interest accruing on unsecured and environmental claims during the pendency of Truck's appeal, and (2) Plan Proponents' costs on appeal under Fed. R. App. Proc. 39(a). *See In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 368 (S.D.N.Y. 2007) (holding that *supersedeas* bond "would, in large part, ameliorate" potential financial harms from stay of confirmation order); *In re Tribune Co.*, 477 B.R. 465, 478 (Bankr. D. Del. 2012) (same).

Given that the loss of Truck's appellate rights is a permanent and irreparable harm, while any potential harms to non-moving parties are temporary and remediable, the balance of equities tips decisively in favor of issuance of a stay.

## IV. A Stay Is in the Public Interest

A stay of the Confirmation Order is in the public interest for at least two distinct reasons.

***First***, there is a significant public interest in permitting appellate review of the Confirmation Order. "There is a significant public interest in vindicating the rights of the minority and preventing the will of the majority to go unchecked by appellate review." *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 367 (S.D.N.Y. 2007). "[A] plan of reorganization which is unfair to some persons may not be approved by the court even though the vast majority of creditors have

approved it." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 435 (1968). The public interest in protecting appellate rights is particularly strong when, as here, the issues on appeal are of significant interest to similarly-situated parties and the public at large. *Cf. In re One2One Commc'ns, LLC*, 805 F.3d 428, 447 (3d Cir. 2015) (Krause, *J.*, concurring) ("By excising appellate review, equitable mootness not only tends to insulate errors by bankruptcy judges or district courts, but also stunts the development of uniformity in the law of bankruptcy.") The Debtors are not the first and certainly will not be the last companies to file for chapter 11 protection under the strain of substantial asbestos-related liabiltiies. Appellate review of the novel issues presented in this case would offer important guidance in future proceedings that seek to achieve a fair and efficient resolution of asbestos claims through the bankruptcy process.

***Second***, among the principal issues on appeal is the Plan's failure to adequately protect against fraud in the resolution of thousands of bankruptcy cognizable asbestos claims pending against the Debtors. *See supra* at 3–5. There is a strong public interest in the integrity of the courts and the prevention of fraud, *see USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 100 (6th Cir. 1982), which would be undermined if the Plan were to evade appellate scrutiny. Indeed, the importance of preserving this integrity in the bankruptcy process is evidenced by the fact that in every asbestos bankruptcy case since the *Garlock* court first identified the scheme to defraud—other than the instant cases, where the perpetrators of the fraud had a veto right over the very measures that would cut short their scheme—fraud prevention measures have been implemented.

### V. Emergency Relief Is Required to Prevent Consummation of the Plan From Rendering Truck's Appeal Equitably Moot

Time is of the essence in resolving the Emergency Motion since, absent a stay, the Plan may be substantially consummated on August 11, 14 days after the entry of the Confirmation Order. *See Mar-Bow Value Partners, LLC*, 578 B.R. at 349 (holding appeal equitably moot in part because "although [appellant] moved for a stay of the Reorganization Plan . . . [it] did not seek expedited consideration of its Motion to Stay, and the Bankruptcy Court did not hear [the] Motion to Stay until . . . almost one month after the Plan became effective"). To prevent any possibility of Truck's appeal becoming equitably moot, and to allow time if necessary to request stay relief from the Fourth Circuit, Truck requests that the Court hear this Emergency Motion no later than August 6, 2021 and that any responses to the motion be filed at least 48 hours prior to the hearing.

### CONCLUSION

For all the reasons set forth above and in the Objection, Truck respectfully requests that the Court grant this motion and enter the Proposed Order, attached hereto as Exhibit 1, staying the Confirmation Order pending Truck's appeal in the Fourth Circuit.

Respectfully submitted,

Dated: July 30, 2021

Michael A. Rosenthal
(admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Phone:  (212) 351-4000; Fax:  (212) 351-4035
Email:  MRosenthal@gibsondunn.com

Robert B. Krakow (admitted *pro hac vice*)
Allyson N. Ho (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Email:  RKrakow@gibsondunn.com
Email: AHo@gibsondunn.com

Matthew G. Bouslog (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Email:  MBouslog@gibsondunn.com

David W. Casazza (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave, N.W.
Washington, D.C. 20036
Email: DCasazza@gibsondunn.com

*/s/ Michael L. Martinez*

GRIER WRIGHT MARTINEZ, PA
Michael L. Martinez
(N.C. State Bar No. 39885)
521 East Morehead Street, Suite 440
Charlotte, NC 28202
Phone:  (704) 332-0209; Fax:  (704) 332-0215
Email:  mmartinez@grierlaw.com

– and –

PIA ANDERSON MOSS HOYT, LLC
Scott R. Hoyt (admitted *pro hac vice*)
136 E. South Temple, 19th Floor
Salt Lake City, UT 84111
Phone: (817) 454-5678; Fax: (801) 350-9010
Email: SHoyt@pamhlaw.com

*Counsel for Truck Insurance Exchange*

In re:

KAISER GYPSUM COMPANY, INC. et al.,[1]

Debtor.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that copies of the foregoing *EMERGENCY MOTION OF TRUCK INSURANCE EXCHANGE FOR STAY PENDING APPEAL* were served by electronic notification on those parties registered with the United States District Court, Western District of North Carolina, electronic case filing system to receive notices for this case, and the parties listed on the attached creditor mailing matrix by U.S. Mail, postage prepaid, directed to the addresses appearing thereon.

This is the 30th day of July, 2021.

*/s/ Michael L. Martinez*
Michael L. Martinez
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Kaiser Gypsum Company, Inc. (0188); and Hanson Permanente Cement, Inc. (7313). The Debtors' address is 300 E. John Carpenter Freeway, Irving, TX 75062.

| DESCRIPTION | NAME | NOTICE NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | POSTAL CODE | COUNTRY | PHONE | FAX | EMAIL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Counsel for Allstate Insurance Company | Adelman & Gettleman, Ltd. | Attn: Erich S. Buck, Esq. | 53 W. Jackson Boulevard | Suite 1050 | Chicago | IL | 60604 | | 312-435-1050 | 312-435-1059 | ebuck@ag-ltd.com |
| Special Insurance Counsel to the Official Committee of Asbestos Personal Injury Claimants | Anderson Kill, P.C. | Attn: Robert M. Horkovich, Mark Garbowski | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-278-1322; 212-278-1169 | | rhorkovich@andersonkill.com; mgarbowski@andersonkill.com |
| Top 20 Creditor | Apex Companies, LLC | Attention: President or General Counsel | 3015 S.W. First Ave | | Portland | OR | 97201 | | 301-975-00169 | 503-924-4704 | info@apexcos.com |
| Top 20 Creditor | Armstrong World Industries | Attention: President or General Counsel | 1645 Railroad Avenue | | St. Helens | OR | 97051 | | | 503-397-0705 | jenniferjohnson@armstrongceilings.com |
| Bank of America | Bank of America | Attn: Kathy Pecaut, Director | Mail Code TX1-492-16-15 | Bank of America Plaza 901 Main Street, 16th Floor | Dallas | TX | 75202-3714 | | 214-209-2605 | 214-717-8819 | |
| Bankruptcy Administrator | Bankruptcy Administrator | Attn: Alexandria P. Kenny | 402 West Trade Street | Suite #200 | Charlotte | NC | 282802 | | 704-350-7587 | 704-344-6666 | alexandria_p_kenny@ncwba.uscourts.gov |
| Top 30 Asbestos Plaintiff | Baron & Budd | Attn: Steve Baron | 3102 Oak Lawn Avenue | #1100 | Dallas | TX | 75219 | | 800-222-2766 | 214-520-1181 | sbaron@baronbudd.com |
| Top 30 Asbestos Plaintiff | Belluck & Fox | Attn: John W. Belluck | 546 5th Ave. | 4th Floor | New York | NY | 10036 | | 212-681-1575 | | jbelluck@belluckfox.com |
| Top 20 Creditor | Berryessa Light Industrial Center Commercial Condominium Association, Inc. | Attention: President or General Counsel | 3180 Crow Canyon Place | #100 | San Ramon | CA | 94583 | | | | |
| Official Committee of Unsecured Creditors | Blank Rome, LLP | Attn: Ira L. Herman, Esquire & Evan J. Zucker, Esquire | 1271 Avenue of the Americas | | New York | NY | 10020 | | 212-885-5000 | 212-885-5001 | iHerman@BlankRome.com EZucker@BlankRome.com |
| Official Committee of Unsecured Creditors | Blank Rome, LLP | Attn: Jeffrey Rhodes, Esquire | 1825 Eye Street NW | | Washington | DC | 20006 | | 202-420-3150 | 202-420-2201 | JRhodes@BlankRome.com |
| Official Committee of Unsecured Creditors | Blank Rome, LLP | Attn: Regina Stango Kelbon, Esquire | 1201 Market Street | Suite 800 | Wilmington | DE | 19801 | | 302-425-6424 | 302-428-5133 | Kelbon@BlankRome.com |
| Top 20 Creditor | Boeing Corporation | Attention: President or General Counsel | 100 N Riverside Plaza | | Chicago | IL | 60606 | | 312-544-2082 | 312-544-2000 | |
| Counsel to Owens Corning | Bradley Arant Boult Cummings LLP | Attn: Chris Glenos | 214 North Tyron Street | Suite 3700 | Charlotte | NC | 28202 | | 704-338-6057 | | cglenos@bradley.com |
| Top 30 Asbestos Plaintiff | Brayton Purcell, LLP | Attn: Alan R. Brayton | 222 Rush Landing Road | PO Box 6169 | Novato | CA | 94945 | | 415-898-1555 | 415-898-1247 | |
| Top 30 Asbestos Plaintiff | Brent Coon & Associates | Attn: Brent W. Coon | 215 Orleans | | Beaumont | TX | 77701 | | 866-335-2666 | | |
| Top 30 Asbestos Plaintiff | Brookman Rosenberg Brown & Sandler | Attn: Laurence H. Brown | One Penn Square West, 17th Fl. | 30 South 15th Street | Philadelphia | PA | 19102 | | 215-569-4000 | | lbrown@brbs.com |
| Counsel to Asbestos Committee | Caplin & Drysdale, Chartered | Attn: Kevin Maclay, Esq., Todd E. Phillips, James P. Wehner, Kevin M. Davis, Katelin E. Cox, Nathaniel R. Miller | One Thomas Circle N.W. | Suite 1100 | Washington | DC | 20005 | | 202-862-5000 | 202-429-3301 | kmaclay@capdale.com tphillips@capdale.com jwehner@capdale.com kdavis@capdale.com kcox@capdale.com nmiller@capdale.com |
| Top 30 Asbestos Plaintiff | Cappolino Dodd Krebs, LLP | Attn: Richard A. Dodd | 312 S. Houston Ave. | | Cameron | TX | 76520 | | 254-697-4965 | | |
| Top 20 Creditor | City of Seattle | Attention: Peter S. Holmes, City Attorney | 600 Fourth Avenue | | Seattle | WA | 98104 | | 206-684-8284 | 206-684-8228 | Peter.Holmes@seattle.gov |
| Counsel to Associated International Insurance Company and TIG Insurance Company | Clyde & Co US LLP | Attn: Clinton E. Cameron | 55 West Monroe Street | Suite 3000 | Chicago | IL | 60603 | | 312-635-7000 | 312-635-6950 | Kristie.Elliott@kingcounty.gov |
| Top 30 Asbestos Plaintiff | Cooney & Conway | Attn: John D. Cooney | 120 N Lasalle Street | Suite 3000 | Chicago | IL | 60602-2415 | | 888-905-2912 | | |
| Allianz Underwriters Insurance Company f/k/a Allianz Underwriters Inc., Fireman's Fund Insurance Company, and Westchester Fire Insurance Company ("Allianz, FFIC, and Westchester") | Crowell & Moring, LLP | Attn: Mark D. Plevin | Three Embarcadero Center | Suite 2600 | San Francisco | CA | 94111 | | 415-986-2800 | 415-986-2827 | mplevin@crowell.com |
| Counsel to Transport Insurance Company | Davis Wright Tremaint LLP | Attn: Everett Jack, Jr. & Lawrence B. Burke | 1300 SW Fifth Avenue, Suite 2400 | | Portland | OR | 97201 | | 503-778-5239 | 503-778-5299 | larryburke@dwt.com |
| Top 30 Asbestos Plaintiff | Deblase Brown Eyerly, LLP | Attn: Eric Brown | 680 South Santa Fe Avenue | | Los Angeles | CA | 90021 | | 310-575-9955 | 310-575-9919 | |
| Counsel to Certain Underwriters at Lloyd's, London, and Certain London Market Companies, Columbia Casualty Company, National Fire Insurance Company of Hartford and The Continental Insurance Company | Duane Morris, LLP | Attn: Philip R. Matthews, Brian A. Kelly | Spear Tower | One Market Plaza, Suite 2200 | San Francisco | CA | 94105 | | 415-957-3000 | 415-957-3001 | prmatthews@duanemorris.com bakelly@duanemorris.com |
| Counsel to Certain Underwriters at Lloyd's, London, and Certain London Market Companies, Columbia Casualty Company, National Fire Insurance Company of Hartford and The Continental Insurance Company | Duane Morris, LLP | Attn: Russell W. Roten & Jeff D. Kahane | 865 S. Figueroa Street | Suite 3100 | Los Angeles | CA | 90017 | | 213-689-7400 | 213-689-7401 | RWRoten@duanemorris.com JKahane@duanemorris.com |
| Top 30 Asbestos Plaintiff | Early, Lucarelli, Sweeney & Meisenkothen | Attn: Brian Early | 360 Lexington Ave. | 20th Floor | New York | NY | 10017 | | 212-986-2233 | 212-986-2255 | |
| Top 30 Asbestos Plaintiff | Flint & Associates | Attn: Ethan A Flint | 112 Magnolia Drive | PO Box 930 | Glen Carbon | IL | 62034 | | 618-288-4777 | | eflint@flintfirm.com |
| Counsel to Truck Insurance Exchange | Gibson, Dunn & Crutcher LLP | Attn: David W. Casazza | 1050 Connecticut Avenue, N.W. | | Washington | DC | 20036-5306 | | 202-887-3724 | 202-530-9547 | dcasazza@gibsondunn.com |
| Counsel to Truck Insurance Exchange | Gibson, Dunn & Crutcher LLP | Attn: Matthew G. Bouslog | 3161 Michelson Drive | | Irvine | CA | 92612-4412 | | 949-451-4030 | 949-475-4640 | mbouslog@gibsondunn.com |
| Counsel to Truck Insurance Exchange | Gibson, Dunn & Crutcher LLP | Attn: Michael A. Rosenthal | 200 Park Avenue | | New York | NY | 10166 | | 212-351-3969 | 212-351-6258 | mrosenthal@gibsondunn.com |
| Counsel to Truck Insurance Exchange | Gibson, Dunn & Crutcher LLP | Attn: Robert B. Krakow, Russell H. Falconer, Allyson N. Ho | 2001 Ross Ave., Suite 2100 | | Dallas | TX | 75201 | | 214-698-3124 | 214-571-2934 | rkrakow@gibsondunn.com rfalconer@gibsondunn.com aho@gibsondunn.com |
| Top 30 Asbestos Plaintiff | Goldenberg Heller & Antognoli, PC | Attn: Peter D'Angelo | 2227 South State Route 157 | Post Office Box 959 | Edwardsville | IL | 62025 | | 618-656-5150 | | |
| Top 30 Asbestos Plaintiff | Gori Julian & Associates, PC | Attn: Beth Gori | 156 North Main Street | | Edwardsville | IL | 62025 | | 618-307-4085 | 618-659-9834 | beth@gorijulianlaw.com |
| Counsel to Truck Insurance Exchange | Grier Furr & Crisp, PA | Attn: Michael Martinez & Joseph Grier | 101 North Tryon Street, Suite 1240 | | Charlotte | NC | 28246 | | 704-332-0201; 704-332-0209 | | jgrier@grierlaw.com mmartinez@grierlaw.com |
| Counsel to Truck Insurance Exchange | Grier Wright Martinez, PA | Attn: Michael Martinez | 521 East Morehead Street, Suite 440 | | Charlotte | NC | 28202 | | 704-375-3720 | 704-332-0215 | mmartinez@grierlaw.com |
| Counsel for Patricia Hoff, Individually and as Personal Representative of David Hoff, Ronald and Shirlee Auen, and Richard and Charlene Hoffmeister | Hamilton Stephens Steele + Martin, PLCC | Attn: Glenn C. Thompson | 201 South College Street | Charlotte Plaza, Suite 2020 | Charlotte | NC | 28244-2020 | | 704-344-1117 | | gthompson@lawhssm.com |
| Counsel to Official Committee of Asbestos Personal Injury Claimants | Higgins & Owens, PLLC | Attn: Sara (Sally) W. Higgins | 524 East Boulevard | | Charlotte | NC | 28203 | | 704-366-4607 | 704-749-9451 | shiggins@higginsowens.com |

| DESCRIPTION | NAME | NOTICE NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | POSTAL CODE | COUNTRY | PHONE | FAX | EMAIL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Counsel to Glacier Northwest, Inc. | Hillis Clark Martin & Peterson P.S. | Attn: Amit D. Ranade | 999 Third Avenue | Suite 4600 | Seattle | WA | 98104 | | 206-623-1745 | 206-623-7789 | amit.ranade@hcmp.com |
| Counsel to Future Claimants' Representative | HULL & CHANDLER, P.A. | Attn: Felton E. Parrish | 1001 Morehead Square Drive, Suite 450 | | Charlotte | NC | 28203 | | 704-375-8488 | 704-512-0525 | |
| Attorney for TIG Insurance Company (formerly known as Transamerica Company and as successor by merger to International Insurance Company) and AssociatedInternational Insurance Company | IFRAH LAW | Attn: George R. Calhoun, V | 1717 Pennsylvania Avenue, NW | Suite 650 | Washington | DC | 20006 | | 202-524-4140 | 202-524-4141 | george@ifrahlaw.com |
| IRS Insolvency Section | Internal Revenue Service | Attn: Centralized Insolvency Operation | 2970 Market St. | | Philadelphia | PA | 19104-5016 | | 800-973-0424 | 855-235-6787 | Mimi.M.Wong@irscounsel.treas.gov |
| IRS Insolvency Section | Internal Revenue Service | Attn: Centralized Insolvency Operation | PO Box 7346 | | Philadelphia | PA | 19101-7346 | | 800-973-0424 | 855-235-6787 | Mimi.M.Wong@irscounsel.treas.gov |
| Counsel to Glacier Northwest, Inc. | Johnston, Allison & Hord, P.A. | Attn: Scott R. Miller, Kenneth Lautenschlager | 1065 East Morehead Street | | Charlotte | NC | 28204 | | 704-332-1181 | 704-376-1628 | smiller@jahlaw.com klauten@jahlaw.com |
| Counsel to Debtors | Jones Day | Attn: Greg M. Gordon, Dan B. Prieto, Amanda M. Suzuki, Amanda Rush | 2727 N. Harwood Street | | Dallas | TX | 75201 | | 214-220-3939 | 214-969-5100 | gmgordon@jonesday.com dbprieto@jonesday.com asuzuki@jonesday.com csmith@JonesDay.com asrush@jonesday.com |
| Counsel to Debtors | Jones Day | Attn: Paul Green | 717 Texas, Suite 3300 | | Houston | TX | 77002 | | 832-239-3939 | 832-239-3600 | pmgreen@jonesday.com |
| Debtors | Kaiser Gypsum Company, Inc. | Attn: Charles McChesney | 600 River Avenue | Suite 201 | Pittsburgh | PA | 15212-5994 | | | | charles.mcchesney@trmi.biz Mary.Wright@trmi.biz |
| Top 30 Asbestos Plaintiff | Keahey Law Firm | Attn: G Patterson Keahey | One Independence Plaza | Ste. #612 | Birmingham | AL | 35209 | | 800-291-0050 | | |
| Counsel to King County | King County Prosecuting Attorney's Office | Attn: Kristie C. Elliott - Deputy Prosecuting Attorney | 900 King County Administration Building | 500 Fourth Avenue | Seattle | WA | 98104 | | 206-296-0430 | 206-296-0415 | Kristie.Elliott@kingcounty.gov |
| Top 20 Creditor | King County, Washington | Executive Office | King County Chinook Building | 401 5th Ave. Suite 800 | Seattle | WA | 98104 | | 202-296-0194 | 206-263-9600 | kcexec@kingcounty.gov |
| Counsel to King County | Klehr Harrison Harvey Branzburg, LLP | Attn: Raymond H. Lemisch | 919 N. Market St | Suite 1000 | Wilmington | DE | 19801 | | 302-426-1189 | 302-426-9193 | rlemisch@klehr.com |
| Counsel to Ash Grove Cement Company | Lathrop & GPM LLP | Attn: Stephen K. Dexter, Esq. | 1515 Wynkoop Street | Suite 600 | Denver | CO | 80202 | | 720-931-3200 | 720-931-3201 | stephen.dexter@lathropgpm.com |
| Top 30 Asbestos Plaintiff | Law Offices of A. Dale Bowers, PA | Attn: A. Dale Bowers | 242 North James Street | Suite 100 | Newport News | DE | 19804 | | 302-691-3786 | 302-691-3790 | dblegal@comcast.net |
| Top 30 Asbestos Plaintiff | Law Offices of Clifford Cuniff | Attn: Clifford W. Cuniff | 914 Bay Ridge Road | #240 | Annapolis | MD | 21403 | | 410-269-1461 | | CWCuniff@aol.com |
| Top 30 Asbestos Plaintiff | Law offices of Peter Angelos | Attn: Peter G. Angelos, Armand J. Volta, Jr. | 100 North Charles Street | | Baltimore | MD | 21201 | | 410-649-2000 | 410-649-2101 | |
| DIP Lender | Lehigh Hanson, Inc. | Attn: William H. Venema | 300 E. John Carpenter Freeway | | Irving | TX | 75062 | | 972-653-5500 | | |
| Top 30 Asbestos Plaintiff | Maune Raichle Hartley French & Mudd, LLC | Attn: David L. Amell | 2000 Powell St | Suite 400 | Emeryville | CA | 94608 | | 800-358-5922 | | damell@mrhfmlaw.com |
| Counsel to Ford Motor Company | McGuirewoods, LLP | Attn: K. Elizabeth Sieg | Gateway Plaza | 800 East Canal Street | Richmond | VA | 23219 | | 804-775-1000 | 804-775-1061 | bsieg@mcguirewoods.com |
| Counsel to Ford Motor Company | McGuirewoods, LLP | Attn: General Counsel | 201 North Tryon Street | Suite 3000 | Charlotte | NC | 28202-2146 | | 704-343-2071 | 704-444-8766 | |
| Counsel to the Debtors | Miller Nash Graham & Dunn LLP | Attn: C. Marie Eckert, Seth H. Row | 3400 U.S. Bancorp Tower | 111 S.W. Fifth Avenue | Portland | OR | 97201 | | 503-224-5858 | 503-224-0155 | marie.eckert@millernash.com Seth.Row@MillerNash.com |
| Official Committee of Unsecured Creditors | Moon Wright & Houston, PLLC | Attn: Richard S.Wright & Andrew T. Houston | 121 West Trade Street | Suite 1950 | Charlotte | NC | 28202 | | 704-944-6560 | 704-944-0380 | smyers@mwhattorneys.com rwright@mwhattorneys.com ahouston@mwhattorneys.com |
| Counsel to Lehigh Hanson, Inc. | Moore & Van Allen, PLLC | Attn: Hillary Crabtree, Douglas R. Ghidina, Ben Hawfield | 100 North Tryon Street | Suite 4700 | Charlotte | NC | 28202-4003 | | 704-331-3000 | 704-331-3661; 704-339-5968; 704-331-1159 | hillarycrabtree@mvalaw.com dougghidina@mvalaw.com benhawfiled@mvalaw.com |
| Top 30 Asbestos Plaintiff | Napoli Shkolnick, PLLC | Attn: Paul J. Napoli | 360 Lexington Avenue | 11th Floor | New York | NY | 10017 | | 212-397-1000 | | |
| Allianz Underwriters Insurance Company f/k/a Allianz Underwriters Inc., Fireman's Fund Insurance Company, and Westchester Fire Insurance Company ("Allianz, FFIC, and Westchester") | Nexsen Pruet PLLC | Attn: Christine L. Myatt | 18 Sturbridge Ln | | Greensboro | NC | 27408-3842 | | 919-783-2869 | 919-783-1075 | |
| Counsel for City of Seattle | Northen Blue, LLP | Attn: John Paul H. Cournoyer | 1414 Raleigh Road | Suite 435 | Chapel Hill | NC | 27517 | | 919-968-4441 | | jpc@nbfirm.com |
| Top 20 Creditor | Oregon Department of Environmental Quality | Central Services Division, Financial Services, Revenue Branch | 811 S.W. Sixth Avenue | | Portland | OR | 97204-1390 | | 503-229-6124 | 503-229-5696 | |
| Counsel to State of Oregon, Department of Environmental Quality | Oregon Department of Justice | Attn: Carolyn G. Wade | Senior Assistant Attorney General | 1162 Court Street NE | Salem | OR | 97301-4096 | | 503-934-4400 | 503-373-7067 | carolyn.g.wade@doj.state.or.us |
| Top 20 Creditor | Owens Corning | Attention: President or General Counsel | 1 Owens Corning Parkway | | Toledo | OH | 43659 | | 800-824-9472 | 419-248-8000 | |
| Counsel to Attorney for The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, Granite State Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pennsylvania and AIU Insurance Company | Parker Poe Adams & Bernstein, LLP | Attn: Ashley A. Edwards, Esq. | 401 South Tryon Street | Suite 3000 | Charlotte | NC | 28202 | | 704-372-9000 | | ashleyedwards@parkerpoe.com |
| Top 30 Asbestos Plaintiff | Paul, Reich & Myers, PC | Attn: Robert E. Paul | 1608 Walnut Street | Suite 500 | Philadelphia | PA | 19103 | | 215-735-9200 | 215-735-3888 | |
| Counsel to The Boeing Company | Perkins Coie, LLP | Attn: Alan D. Smith | 1201 Third Avenue | Suite 4900 | Seattle | WA | 98101 | | 206-359-8410 | 206-359-9410 | adsmith@perkinscoie.com |
| Counsel to Owens Corning | Perkins Coie, LLP | Attn: Douglas R. Pahl | 1120 NW Couch Street | 10th Floor | Portland | OR | 97209 | | 503-727-2000 | 503-346-2222 | |
| Top 20 Creditor | Port of Seattle | Attention: Craig Watson, General Counsel | 2711 Alaskan Way | | Seattle | WA | 98121 | | 206-728-3280 | 206-787-3000 | info@portseattle.org |
| Allianz Underwriters Insurance Company f/k/a Allianz Underwriters Inc., Fireman's Fund Insurance Company, and Westchester Fire Insurance Company ("Allianz, FFIC, and Westchester") | Poyner Spruill | Attn: Kristen P. Miller | 301 S. College Street | Suite 2900 | Charlotte | NC | 28202-0903 | | 252-972-7042 | 919-783-1075 | |
| Financial Advisor | PricewaterhouseCoopers | Attn: Robert Rath Jr. | One North Wacker | | Chicago | IL | 60606 | | 312-298-2747 | | robert.j.rath@us.pwc.com |
| Claims Agent | Prime Clerk LLC | Attn: Joshua Karotkin | 830 3rd Avenue | 9th Fl. | New York | NY | 10022 | | 844-205-4335 | 646-328-2851 | KaisergypsumInfo@PrimeClerk.com serviceqa@primeclerk.com |
| Counsel to Debtors | Rayburn Cooper & Durham, P.A. | Attn: C. Richard Rayburn, Jr., John R. Miller, Jr., Matthew L. Tomsic, Julia Robinson | 227 West Trade Street | Suite 1200 | Charlotte | NC | 28202 | | 704-334-0891 | 704-377-1897 | rrayburn@rcdlaw.net jmiller@rcdlaw.net |
| Top 30 Asbestos Plaintiff | Reyes, O'Shea & Coloca, PA | Attn: Angel M. Reyes | 345 Palermo Ave. | | Coral Gables | FL | 33134 | | 305-374-8110 | 305-374-8112 | |

| DESCRIPTION | NAME | NOTICE NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | POSTAL CODE | COUNTRY | PHONE | FAX | EMAIL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Securities and Exchange Commission - Headquarters | Securities & Exchange Commission | Attn: Secretary of the Treasury | 100 F St., N.E. | | Washington | DC | 20549 | | 202-942-8088 | | secbankruptcy@sec.gov NYROBankruptcy@sec.gov |
| Securities and Exchange Commission - Regional Office | Securities & Exchange Commission – NY Office | Attn: Bankruptcy Dept. | 950 East Paces Ferry, N.E. | Suite 900 | Atlanta | GA | 30326-1382 | | 404-842-7600 | | atlanta@sec.gov |
| Counsel to National Casualty Company and Great Southwest Fire Insurance Company | Selman Breitman | Attn: Elizabeth M. Brockman | 11766 Wilshire Blvd. | 6th Fl. | Los Angeles | CA | 90025-6538 | | 310-445-0800 | 310-473-2525 | ebrockman@selmanlaw.com |
| Top 30 Asbestos Plaintiff | Shrader & Associates | Attn: Ross D. Stomel | 22 A Ginger Creek Parkway | | Glen Carbon | IL | 62034 | | 618-659-0001 | | ross@shraderlaw.com |
| Top 30 Asbestos Plaintiff | Simmons Hanly Conroy | Attn: Perry J. Browder | One Court Street | | Alton | IL | 62002 | | 618-259-2222 | | info@simmonsfirm.com rcohn@simmonsfirm.com |
| State of North Carolina Attorney General | State of North Carolina Attorney General | Attention Bankruptcy Dept | 9001 Mail Service Center | | Raleigh | NC | 27699-9001 | | 919-716-6400 | 919-716-6750 | |
| Counsel to Attorney for The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, Granite State Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pennsylvania and AIU Insurance Company | Steptoe & Johnson, LLP | Attn: Joshua R. Taylor, Esq. | 1330 Connecticut Avenue, NW | | Washington | DC | 20036 | | 202-429-6281 | | jrtaylor@steptoe.com |
| Top 30 Asbestos Plaintiff | SWMK Law | Attn: Benjamin R. Schmickle, Lauren E. Boaz | 701 Market Street | Suite 1000 | St. Louis | MO | 63101 | | 314-480-5180 | 314-932-1566 | ben@swmklaw.com lauren@swmklaw.com |
| Top 30 Asbestos Plaintiff | The Deaton Law Firm | Attn: John E. Deaton | 450 N Broadway | | East Providence | RI | 02914 | | 401-351-6400 | 401-351-6401 | |
| Top 30 Asbestos Plaintiff | The Ferraro Law Firm | Attn: James L. Ferraro | 600 Brickell Ave. | 38th Floor | Miami | FL | 33131 | | 305-375-0111 | 305-379-6222 | |
| Top 30 Asbestos Plaintiff | THE LANIER LAW FIRM, PC | Attn: W. Mark Lanier | 6810 FM 1960 West | | Houston | TX | 77069 | | 713-659-5200 | 713-659-2204 | mark.lanier@lanierlawfirm.com |
| Top 30 Asbestos Plaintiff | The Nemeroff Law Firm | Attn: Rick Nemeroff | 3355 W Alabama Street | Suite 650 | Houston | TX | 77098 | | 281-378-5970 | | ricknemeroff@nemerofflaw.com |
| Top 30 Asbestos Plaintiff | The Williams Law Firm, PC | Attn: Joseph P. Williams | 245 Park Ave. | 39th Floor | New York | NY | 10167 | | 212-668-1122 | 212-792-4001 | Jwilliams@wlfpc.com |
| Top 20 Creditor | Truck Insurance Exchange | Attention: President or General Counsel | 6303 Owensmouth Avenue | Floor 1 | Woodlands Hills | CA | 91367-2200 | | 323-932-3200 | 323-932-3101 | |
| Counsel to the United States of America ("USA") | U.S. Attorney's Office | Attn: Gill P. Beck, Assistant United States Attorney | Room 233, U.S. Courthouse | 100 Otis Street | Asheville | NC | 28801 | | 828-271-4661 | 828-271-4327 | GILL.BECK@USDOJ.GOV |
| Counsel to the United States of America ("USA") | U.S. Attorney's Office | Attn: James M. Sullivan, Assistant United States Attorney | 22 West Trade Street | Carillon Building, Suite 1650 | Charlotte | NC | 28202 | | 704-344-6222 | 704-344-6629 | JAMES.SULLIVAN2@USDOJ.GOV |
| Counsel to United States of America, on behalf of the Department of Health and Human Services (HHS) | U.S. Department of Justice | Attn: J. Taylor McConkie | Civil Division | 1100 L Street, N.W., Room 7016 | Washington | DC | 20005 | | 202-307-0244 | 202-514-9163 | john.t.mcconkie@usdoj.gov |
| Counsel to United States of America, on behalf of the Department of Health and Human Services (HHS) | U.S. Department of Justice | Attn: Jonathan E. Jacobson | Civil Division | 1100 L Street, N.W., 7th Floor | Washington | DC | 20005 | | 202-353-7971 | 202-514-9163 | |
| Counsel to United States of America, on behalf of the Department of Health and Human Services (HHS) | U.S. Department of Justice | Attn: Seth B. Shapiro | Civil Division | 1100 L Street, N.W., Room 7016 | Washington | DC | 20005 | | 202-514-7164 | 202-514-9163 | seth.shapiro@usdoj.gov |
| United States Attorney's Office for the Western District of North Carolina | US Attorney for Western District of North Carolina | Attn: Bankruptcy Division | 227 West Trade Street | Suite 1650 | Charlotte | NC | 28202 | | 704-344-6222 | | Lia.Bantavani@usdoj.gov |
| Top 20 Creditor | US EPA | Attn: Avi Garbow, General Counsel | MC 2310A | 1200 Pennsylvania Avenue, N.W. | Washington | DC | 20460 | | | 202-564-8040 | |
| Counsel to Cheryl Untermann as Successor in Interest to Melvin Desin | Wallace & Graham, PA | Attn: Edward L. Pauley | 525 N. Main St. | | Salisbury | NC | 28144 | | 704-633-5244 | 704-633-9434 | epauley@wallacegraham.com |
| Counsel to State of Washington Department of Ecology | Washington Attorney General's Office | Ecology Division | Attn: Allyson C. Bazan, Assistant Attorney General | PO Box 40117 | Olympia | WV | 98504-0117 | | 360-586-3589 | 360-586-6760 | Allyson.Bazan@atg.wa.gov |
| Top 30 Asbestos Plaintiff | Weitz & Luxenberg, PC | Attn: Perry Weitz | 700 Broadway | | New York | NY | 10003 | | 212-558-5500 | 212-344-5461 | lbusch@weitzlux.com |
| Top 30 Asbestos Plaintiff | Wilentz, Goldman & Spitzer, PA | Attn: Deirdre Woulfe Pacheco, Esq. | 90 Woodbridge Center Drive | Suite 900 Box 10 | Woodbridge | NJ | 07085-0958 | | 732-855-6189 | 732-726-6627 | dpacheco@wilentz.com |
| Counsel to Allstate Insurance Company | Williams Mullen | Attn: Holmes P. Harden, Esquire | PO Box 1000 | | Raleigh | NC | 27602 | | 919-981-4000 | 919-981-4300 | hharden@williamsmullen.com |
| Counsel to Armstrong World Industries | Womble Carlyle Sandridge & Rice, LLP | Attn: General Counsel | PO Box 10208 | | Greenville | SC | 29603 | | 864-255-5404 | 864-255-5484 | |
| Counsel to the Future Claimants' Representative | Young Conaway Stargatt & Taylor, LLP | Attn: Edwin Harron, Esq. | 1000 North King Street | | Wilmington | DE | 19801 | | | | Eharron@ycst.com |