# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re | : | |
| | : | |
| KAISER GYPSUM COMPANY, INC., *et al.*,[1] | : | 20-cv-00537-GCM |
| | : | |
| Debtors. | : | |
| | : | |

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| KAISER GYPSUM COMPANY, INC., *et al.*, | : | Bankruptcy Case No. 16-31602 (JCW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

## DEBTORS' OBJECTION TO TRUCK INSURANCE EXCHANGE'S MOTION FOR STAY PENDING APPEAL OF THE FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER CONFIRMING JOINT PLAN OF REORGANIZATION

Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc., debtors in the above-captioned cases (together, the "Debtors"), file this objection to the Emergency Motion of Truck Insurance Exchange for Stay Pending Appeal [Dkt. 53] (the "Stay Motion") filed by Truck Insurance Exchange ("Truck").

## Preliminary Statement

The Court should deny the Stay Motion because Truck has failed to satisfy the heavy burden required to obtain a stay pending appeal. Critically, Truck, which is not harmed by the Plan,[2] is likewise not harmed by confirmation of the Plan. Truck only identifies one harm

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Kaiser Gypsum Company, Inc. (0188) and Hanson Permanente Cement, Inc. (7313). The Debtors' address is 300 E. John Carpenter Freeway, Irving, Texas 75062.

[2] Capitalized terms not otherwise defined herein have the meaning given to them in the Findings of Fact and Conclusions of Law Regarding Confirmation of the Joint Plan of Reorganization of Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc., as Modified [Dkt. 51] (the "Findings and Conclusions").

that it could suffer absent the entry of a stay pending appeal—that its appeal, or some portion thereof, might be determined to be equitably moot. But, having identified this potential single harm, Truck then admits that the harm will not actually occur— "Given the unique nature of the Plan here, Truck believes the doctrine of equitable mootness should not apply, even absent a stay." Stay Mot., 14. On this basis alone, the Stay Motion should be denied.

Truck also applies an incorrect legal standard. Authority within this circuit demonstrates that the bar for achieving the extraordinary relief requested in the Stay Motion is much higher than the standard articulated by Truck. Truck cannot satisfy the requirements for a stay because it cannot demonstrate harm; it cannot demonstrate that it is likely to succeed in reversing a ruling by this Court that is supported by an extensive evidentiary record and significant legal authority; it cannot demonstrate that the Debtors and their estates will not suffer substantial harm if the order confirming the Plan [Dkt. 52] (the "Confirmation Order") is stayed; and it cannot demonstrate that staying the Confirmation Order is in the public interest.

Significantly, the Plan "returns Truck to the tort system exactly as it was prepetition." Findings and Conclusions, 52. By contrast, the Stay Motion, if granted, would needlessly delay the Debtors' reorganization and threaten to jeopardize the many settlements and agreements underpinning the Plan.

Truck has sought to thwart the Debtors' reorganization efforts throughout these cases. It was the sole party contesting confirmation before both this Court and the Bankruptcy Court and is the sole party seeking to delay consummation of the Plan. After considering an extensive evidentiary record, lengthy briefing (submitted before both courts) and oral argument (at separate hearings before both courts), this Court and the Bankruptcy Court ruled against Truck. Truck now seeks not only to press these same arguments before the United States Court

of Appeals for the Fourth Circuit, but also the extraordinary relief of a stay that would prevent the parties from implementing the Confirmation Order while it does so. These cases have been pending for nearly five years (since September 30, 2016). It is time for the Debtors' reorganization, which (a) is supported by all the court-appointed estate representatives in these cases as well as the Debtors' U.S. parent company, (b) has been accepted by 100% of the asbestos claimants who voted on the Plan, (c) provides for the payment in full of all other creditors, (d) consensually resolves a myriad of disputes in these cases, (e) returns Truck to the exact same position it was in prior to the commencement of these cases, and (f) has been approved by this Court and the Bankruptcy Court, to be effectuated.

### Relevant Background

1.      On July 20, 2020 and July 22, 2020 the Bankruptcy Court held a hearing (the "Confirmation Hearing") to consider confirmation of the Plan and on August 13, 2020 the Bankruptcy Court issued an oral ruling setting forth certain proposed findings of fact and conclusions of law and recommending confirmation the Plan.

2.      On September 28, 2020, the Bankruptcy Court entered the Order Recommending Entry of Proposed Findings of Fact and Conclusions of Law and Order Confirming Joint Plan of Reorganization [Bankr. Dkt. 2486] (the "Recommendation Order"). On the same day, the Recommendation Order was docketed with this Court [Dkt. 1].

3.      On November 4, 2020, Truck objected to the Bankruptcy Court's proposed findings of fact and conclusions of law and proposed confirmation order [Dkts. 25, 26] (together, the "Truck Objection"). On December 4, 2020, the Debtors filed a response in opposition to the Truck Objection and in support of the Recommendation Order [Dkt. 31]. Lehigh Hanson, the Future Claimants' Representative (the "FCR") and the Official Committee of Asbestos Personal Injury Claimants (the "ACC") also filed responses in opposition to the

Truck Objection on December 4, 2020 [Dkts. 29, 32, 33].  On December 31, 2020, Truck filed a reply brief in support of the Truck Objection [Dkt. 34].

4.  On March 31, 2021, the Court entered an order setting a hearing for June 25, 2021 with respect to the Recommendation Order and the parties' related briefing [Dkt. 47]. On June 25, 2021, that hearing occurred.

5.  On July 28, 2021, the Court entered the Findings and Conclusions and the Confirmation Order.  The Findings and Conclusions as well as the Confirmation Order are in substantially the same form as those proposed by the Bankruptcy Court pursuant to the Recommendation Order.

6.  On July 30, 2021, Truck filed the Stay Motion and therein requested an emergency hearing on August 6, 2021.  On August 3, 2021, the Court, via email communication with the parties, indicated that it would issue a ruling on August 6, 2021, and requested that briefs in opposition to the Stay Motion be submitted by 12:00 P.M. ET on August 5, 2021.

## Argument

7.  "The decision whether to grant a stay pending appeal lies within the sound discretion of the court, and the burden on the movant seeking the extraordinary relief of a stay is a heavy one." In re Franklin, No. 19-80661, 2020 WL 603900, at *3 (Bankr. M.D.N.C. 2020).  Courts in the Fourth Circuit consider four factors when ruling on requests for stays pending appeal:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Allen v. Fitzgerald, 590 B.R. 352, 356 (W.D. Va. 2018) (citing Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).

8. Various courts within the Fourth Circuit have held that the movant must demonstrate that all four of these requirements weigh in favor of a stay pending appeal.[3] BDC Capital, Inc. v. Thoburn Ltd. P'ship, 508 B.R. 633, 636-37 (E.D. Va. 2014) ("All four requirements must be satisfied."); see also In re Foster, No. 18-80466, 2019 WL 7841547, at *12 (Bankr. M.D.N.C. 2019).[4] Moreover, the applicant for a stay has the burden of proof on each of the four elements. Schweiger, 578 B.R. at 736-37. Thus, a stay pending appeal "is not a matter of right . . . as the parties and the public . . . are also entitled to the prompt execution of orders . . . ." Allen, 590 B.R. at 360 (quotation omitted).

9. Truck has failed to show that it meets any of the four factors, much less all of them, and thus is not entitled to a stay pending appeal.

## I. Truck Has Not Demonstrated and Cannot Demonstrate Irreparable Harm

10. Truck has not met, and cannot meet, its burden of showing that it "will be irreparably injured absent a stay." Allen, 590 B.R. at 356. As an initial matter, the Plan (and its confirmation) will not harm Truck. As a result, both the Bankruptcy Court and this Court found that Truck lacked standing to object to the Plan on all but one issue (insurance neutrality). Findings and Conclusions, 52. Truck similarly lacks standing to appeal the issues it raises in the Stay Motion (which are identical to the issues raised below). Truck, seemingly acknowledging the lack of harm, articulates only a single harm in the Stay Motion—a risk that

---

[3] Truck appears to argue that all four requirements need not be satisfied and that the Court can engage in balancing if some of the factors are met but others are not, see Stay Mot., 10, and cites to this Court's opinion in Citibank, N.A. v. Jackson, Civil Action No. 3:16-CV-712-GCM, 2017 WL 4511348, at *2 (W.D.N.C. Oct. 10, 2017) to support its argument. See Stay Mot., 9-10. However, it does not appear that any party in Citibank argued before the Court that all four factors must be met to achieve a stay pending appeal but instead agreed on the applicability of the balancing test applied by the Court. Nevertheless, because Truck cannot carry its burden with respect to any of the factors, it is not entitled to a stay pending appeal whether some or all of the factors must be satisfied.

[4] See, e.g., In re Schweiger, 578 B.R. 734, 736-37 (Bankr. D. Md. 2017) (and citing cases); In re Braxton, 516 B.R. 787, 793-94 (E.D.N.C. 2014); BDC Capital, 508 B.R. at 636-37; Franklin, 2020 WL 603900, at *3.

the appellate court may find that its appeal is equitably moot. Truck, the party that must carry

the heavy burden of establishing irreparable harm, then undercuts its own argument, stating that

it is unlikely that consummation of the Plan will equitably moot Truck's appeal:

> Given the unique nature of the Plan here, **Truck believes the doctrine of equitable mootness should not apply**, even absent a stay. The Plan does not effect a true financial restructuring—Debtors' assets are not being liquidated to satisfy claims, nor are creditors obtaining equity interests in the Debtors in exchange for debts owed to the creditors. The vast majority of the claims, those asserted for asbestos bodily injuries, are to be resolved after Plan consummation the exact same way they are currently being resolved and they would be resolved if confirmation of the Plan were overturned on appeal—in the tort system. And there is no logical reason why the environmental claim settlements included in the Plan could not be effectuated even if Plan confirmation was reversed on appeal—the settlements are primarily being funded by third party insurers, including Truck, and stand on their own non-bankruptcy merits.

Stay Mot., 14 (emphasis added). However, even if Truck had established a risk of harm as a

result of equitable mootness, as set forth below, such risk is also not sufficient to demonstrate

irreparable harm. Accordingly, Truck has failed to satisfy its burden of demonstrating

irreparable harm.

### A. Truck Will Not Be Harmed by the Plan

11.     Truck is not harmed by the Plan, or by extension, the Confirmation Order.

The Court's detailed Findings and Conclusions clearly demonstrate the absence of harm. For

instance, the Court has found that the Plan "returns Truck to the tort system **exactly as it was**

**prepetition**." Findings and Conclusions, 52 (emphasis added). Similarly, the Court has found

that "the Plan restores each insurer [including Truck] to the position it was in immediately prior

to the Petition Date, **with its rights and obligations under the applicable Asbestos Insurer**

**Policies left undisturbed, as if the Debtors' bankruptcy had never occurred**." Id.

(emphasis added). "Such treatment does not diminish Truck's rights or increase its burdens under the Truck Policies." Id. The Bankruptcy Court's findings mirror this Court's findings.

12. Both courts' findings and conclusions were based upon substantial records. The Bankruptcy Court issued its findings of fact and conclusions of law supporting confirmation of the Plan following (a) its review of hundreds of pages of briefing, (b) a two-day evidentiary contested confirmation hearing and (c) subsequent briefing and a hearing on the initial set of proposed findings and conclusions prepared by the Debtors at the Bankruptcy Court's request. This Court, by agreement of the parties and the Bankruptcy Court, then considered the Bankruptcy Court's proposed findings of fact and conclusions of law upon *de novo* review. It did so following further substantial briefing by all parties (including a 70 page brief by Truck), upon a review of the evidentiary record (submitted by Truck) and after a "lengthy hearing."[5] Stay Mot., 8.

13. Even Truck struggles to articulate the "irreparable harm" it will face if the Stay Motion is not granted. Left with no other basis to complain, Truck relies upon the possibility of its appeal being rendered equitably moot (which possibility it concurrently argues is unlikely). See Stay Mot., 13-14. But, as Truck recognizes, there is substantial disagreement regarding whether the risk of equitable mootness alone could ever constitute irreparable harm. See Stay Mot., 14-15. One of the cases upon which Truck relies, CWCapital Asset Mgmt.,

---

[5] Truck argues that this Court "did not specifically address any of the objections to the Findings and Conclusions raised by Truck." Stay Mot., 9. Given that Truck made the same arguments to this Court that it advanced before the Bankruptcy Court (Compare Obj. of Truck to Confirmation of the Plan [Bankr. Dkt. 2070], 5, 16, 24, 32, 33 (arguing the Plan does not satisfy the good faith requirement of section 1129(a)(3) of the Bankruptcy Code, the Plan does not comply with section 524(g) of the Bankruptcy Code, the inclusion of the Plan Finding makes the Plan unconfirmable, the Plan is not insurance neutral and Truck has standing to object to confirmation) with Br. in Supp. of Obj. of Truck to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law Regarding Confirmation of the Plan [Dkt 26], 29, 41, 50, 60 (same arguments)) and the Findings and Conclusions address all of those arguments, it is unclear on what basis Truck advances this assertion.

LLC v. Burcam Capital II, LLC, Nos. 5:13-CV-278-F, 5:13-CV-279-F, 2013 WL 3288092, at *7 (E.D.N.C. June 28, 2013), recognized this substantial disagreement—"The court recognizes that this holding is at odds with a number of bankruptcy decisions in this circuit. These courts have held that the loss of appellate rights, standing alone, is not sufficient to show irreparable harm." At least one court in this circuit acknowledges that Truck's position reflects a minority view: "it appears that a majority of the cases which have considered the issue have found that the risk that an appeal may become moot does not, standing alone, constitute irreparable injury." In re MAC Panel Co., No. 98-10952C-11G, 2000 WL 33673784, at *4 (Bankr. M.D.N.C. Mar. 8, 2000).

14. This apparent majority view is well-reasoned and logical. Among other things, permitting a risk of equitable mootness to be *per se* sufficient to establish irreparable harm in every case, particularly if the court employs a balancing test, could reduce the test for a stay pending appeal to a question of whether a party can merely establish a risk of equitable mootness. This would be inconsistent with significant precedent holding that a request for a stay pending appeal, like "[p]reliminary injunctive relief is an extraordinary measure and the party requesting relief must make a substantial showing on each of the [four required] factors." CWCapital Asset Mgmt., 2013 WL 3288092, at *2; see also Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir. 1991, as amended 1992). Moreover, even under a balancing analysis, diminishing the showing required to obtain a stay pending appeal in such a manner would be inappropriate and inconsistent with "the Fourth Circuit view that establishing only a risk of irreparable harm/injury is insufficient to warrant the issuance of a preliminary injunction" and by extension, a stay pending appeal. MAC Panel Co., 2000 WL 33673784, at *4.

15.    The circumstances of the <u>CWCapital Asset</u> case, on which Truck relies, are significantly distinguishable from the facts here.  As an initial matter, the court in that case did not employ a balancing test and required the moving party to make a "substantial showing" that each of the four factors was satisfied.  2013 WL 3288092, at *2.  As a result, its finding that equitable mootness could constitute irreparable harm did not vitiate an analysis of the remaining factors; to the contrary, the court found each of the four factors to have been satisfied.  <u>Id.</u>

16.    In particular, the <u>CWCapital Asset</u> court found that the balance of the equities weighed in favor of the moving party.  The moving party in that case, unlike Truck, was the "largest creditor in the case by far" and "essentially the only creditor in [the] case." <u>Id.</u> *7, 8.  That creditor had consented to the payment of the relatively *de minimis* unsecured claims held by third parties notwithstanding a stay.  <u>Id.</u> at *8.  Additionally, there was no argument by the debtor that, like here, the stay would put at risk significant settlements achieved in the bankruptcy case or would impact third party rights and expectations.[6]  Rather, the debtor, a commercial development owner, argued that remaining in bankruptcy would harm its ability to attract new tenants and the court noted that the debtor would be burdened by the continued costs of remaining in bankruptcy.  Although the court recognized the validity of these risks, in its view, the risk to the creditor's appellate rights was more significant.  <u>Id.</u> *8.

17.    Finally, the court was persuaded that the creditor was likely to succeed on the merits of its appeal.  The plan separately classified unsecured claims purchased by the moving creditor (also the largest secured creditor in the case) from the *de minimis* claims of

---

[6]    Indeed the court noted that only two of fifteen creditors in a separately classified class of unsecured creditors had voted on the plan (and voted in favor of the plan).  Here, thousands of asbestos claimants have voted to accept the Plan.

other unsecured creditors. Given the magnitude of the moving creditor's claims, this separate classification enabled the debtor to achieve confirmation of the plan. Id. *3-4. The court found that the debtor's justification for separate classification—a desire to more quickly pay trade creditors—did not appear, on the facts of the stay motion, to be a "legitimate business reason for separate classification." Id. *4. In addition, the court found that on the record before it, it was "highly likely that [the debtor] proposed [the plan's] classification scheme for the sole purpose of manipulating the vote to confirm the plan." Id.

18.     Here, Truck is not objecting in its capacity as a creditor (nor could it, given that its unsecured claim is unimpaired and will be paid in full under the Plan), and it certainly is not the largest creditor in the case. As set forth below, the Debtors will be significantly harmed by a stay of the Confirmation Order (various settlements and agreements underpinning the Plan could be placed in jeopardy), and Truck is not likely to succeed on the merits. A risk of equitable mootness cannot be enough, in such circumstances, to justify a stay of the Confirmation Order.

19.     Regardless, Truck's attempt to assert a risk of equitable mootness is internally inconsistent—it argues both that "Truck believes the doctrine of equitable mootness should not apply, even absent a stay, " Stay Mot., at 14, and at the same time that "there is a 'significant chance' that Truck would be irreparably harmed by the loss of its appellate rights . . . ." Id. at 16. Even if a risk of equitable mootness were a proper basis for finding irreparable harm, a proposition that is far from settled, Truck has failed to make any showing, much less the required substantial showing, that it would be an appropriate basis for a stay in this case. See Braxton, 516 B.R. at 798 (refusing to find irreparable harm where allegations were "speculative"); In re Deluxe Cleaners of Durham, Inc., No. 07-80327, 2010 WL 4810822, at *2

(Bankr. M.D.N.C. 2010) (refusing to find irreparable harm when movant "provided no evidence"); <u>Allen</u>, 590 B.R. at 356 (not sufficient for movant to allege "some possibility of irreparable injury").

**B.** **Truck Lacks Standing to Appeal Confirmation of the Plan**

20.     Nowhere in the Stay Motion does Truck contest, or mention, this Court's and the Bankruptcy Court's findings that Truck lacked standing to contest confirmation of the Plan except on the basis of insurance neutrality.  <u>See</u> Findings and Conclusions, 52 ("Truck has limited standing to object to the Plan solely on the grounds that the Plan is not insurance neutral. . . .").  The alleged "two fundamental problems with the Plan" Truck argues in the Stay Motion—that the Plan "violates the statutory requirement of all bankruptcy plans of reorganization that the plan be proposed in good faith" and "fails to satisfy numerous express requirements for the issuance of the section 524(g) injunction"—were raised before the Bankruptcy Court and this Court.  Stay Mot., 3.  Truck lacks standing to object as to both of these issues, as both courts expressly found.  Findings and Conclusions, 52 ("Truck does not have standing to advance confirmation issues such as contentions that:  the Plan is collusive and not in good faith; the Debtors are not entitled to a discharge; or the elements of 11 U.S.C. § 524(g) are not met.").

21.     Truck likewise lacks standing to appeal these issues.  As the Debtors argued before this Court and the Bankruptcy Court, to establish Article III standing, a party must demonstrate that it (a) suffered an injury in fact, (b) that is fairly traceable to the alleged conduct of a counter-party and (c) that is likely to be redressed by a favorable juridical decision.  <u>See</u> <u>Spokeo, Inc. v. Robins</u>, 136 S.Ct. 1540, 1547 (2016).  An injury in fact "must be concrete. . . distinct and palpable."  <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155 (1990); <u>see also</u> <u>Trustgard Ins. Co. v. Collins</u>, 942 F.3d 195, 199 (4th Cir. 2019) ("The 'irreducible

constitutional minimum of standing' requires the petitioner to allege a concrete injury that is 'actual or imminent, not conjectural or hypothetical.'") (quoting <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992)).  As the Findings and Conclusions demonstrate, Truck—which will be placed in the same position it was in before the Debtors filed their bankruptcy petitions— cannot allege the requisite concrete injury.

22.      Moreover, courts, including the Fourth Circuit, have long applied a more stringent "persons aggrieved" standard in the context of bankruptcy appellate standing.  <u>See</u>, <u>e.g.</u>, <u>In re Alpha Nat. Res., Inc.</u>, 736 Fed. App'x 412, 413 (4th Cir. 2018), *cert. denied*, 139 S.Ct. 1601 (2019); <u>In re Urban Broad. Corp.</u>, 401 F.3d 236, 243-44 (4th Cir. 2005); <u>Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. US, LLC</u>, 578 B.R. 325, 328 (E.D. Va. 2017); <u>In re Technicool Sys., Inc.</u>, 896 F.3d 382, 384 (5th Cir. 2018); <u>In re Revstone Indus. LLC</u>, 690 F. App'x 88, 89 (3d Cir. 2017); <u>In re Ernie Haire Ford, Inc.</u>, 764 F.3d 1321, 1325 (11th Cir. 2014); <u>In re Am. Ready Mix, Inc.</u>, 14 F.3d 1497, 1500 (10th Cir. 1994); <u>In re Andreuccetti</u>, 975 F.2d 413, 416–17 (7th Cir. 1992); <u>In re Johns-Manville Corp.</u>, 36 B.R. 743, 747 (Bankr. S.D.N.Y. 1984).  "It is well-established that a person aggrieved is a party directly and adversely affected pecuniarily."  <u>Urban Broad. Corp.</u>, 401 F.3d at 243-44. "In other words, in order to have standing to appeal a bankruptcy court order, the appellant must show that the order . . . diminishes [its] property, increases [its] burdens[,] or impairs [its] rights."  <u>Mar-Bow Value Partners</u>, 578 B.R. at 354.

23.      This higher standard applicable to bankruptcy appellate standing is justified to avoid "endless appeals" that could potentially be asserted by "the myriad of parties who are indirectly affected by every bankruptcy order."  <u>Id.</u>  That is precisely the case here.  As set forth above, Truck can demonstrate no harm, pecuniary or otherwise.  Accordingly, it

cannot (nor has it attempted to) demonstrate standing under Article III, much less the more stringent persons aggrieved standard applicable to bankruptcy appellate standing. Truck should not be permitted to delay the consummation of the Plan by asserting what amount to nothing more than meritless generalized concerns that do not affect its rights or interests.

## II.    Imposing a Stay Will Substantially Injure the Debtors

24.    In contrast to the, at most, single speculative harm identified by Truck, a stay of the Confirmation Order pending appeal "will substantially injure" the Debtors and their estates. Allen, 590 B.R. at 356. Truck cavalierly dismisses the harms a stay would cause, noting that the "potential harms from an appeal are quite limited." Stay Mot., 16. This is far from accurate.

25.    As an initial matter, Truck's contention that the "Debtors would not incur any additional financing costs as a result of a stay of the Confirmation Order" is inaccurate. Id. at 17. Although it is not entirely clear what "financing costs" Truck refers to, the Debtors would incur additional costs in funding these cases if the Confirmation Order is stayed while Truck pursues its appeal. These cases have been funded primarily by, as agreed by the parties, Debtor HPCI's nonpayment of its monthly obligation to fund capital expenditures and reclamation under the Permanente Leases, subject and without prejudice to Lehigh Southwest's right to accrue those ongoing obligations. Findings and Conclusions, 5. These obligations owed to Lehigh Southwest under the Permanente Leases, which are reinstated pursuant to the Plan, will continue to accrue and the accrual will continue to grow in amount as these cases remain pending. See Plan § III.B.6.

26.    Truck also argues that a stay would not prejudice the Debtors with regard to the pending environmental settlements. Stay Mot., 17. This assertion is likewise inaccurate and belied by the record. Over $150 million in Environmental Claims were asserted against the

Debtors.  The Debtors negotiated settlements with respect to all but one of the environmental claims asserted against them.[7]  These settlements were reached after significant and lengthy negotiations, including with the assistance of a mediator.  Each of the Debtors' environmental settlements was approved as fair and reasonable and in the best interests of the Debtors and their estates by orders of the Bankruptcy Court, following notice and a hearing (and in the case of the settlement with the United States, on behalf of the EPA and the United States Department of Interior, acting through the U.S. Fish and Wildlife Service, and the United States Department of Commerce, acting through the National Oceanic and Atmospheric Administration, subject to formal publication and public comments).  See Findings and Conclusions, 13-15.  Those settlements resolve substantially all of the Debtors' environmental liability.

27.  A number of the settlements are conditioned upon the entry of the Confirmation Order.  In fact, the Debtors' $67 million settlement of the Oregon Department of Environmental Quality's (the "DEQ") $150 million proof of claim can be terminated by written notice by the DEQ at any time (it became terminable 365 days following the entry of the order approving the settlement).  While the DEQ has thus far not elected to terminate the settlement, there is no guarantee it will not make such election if the case is stayed indefinitely pending an appeal.  The DEQ settlement agreement also provides that the DEQ can terminate the settlement if the DEQ's agreed claims are not paid in full on or before 60 days following

---

[7]     The sole unsettled environmental claim was adjudicated to an allowed claim amount by an order of the Bankruptcy Court. See Findings of Fact, Conclusions of Law, and Order [Bankr. Dkt. 2554].  Glacier Northwest, Inc. ("Glacier") did not commence any appeal of the Bankruptcy Court's adjudication, and Glacier's allowed claim amount—like the settled environmental claims—will be paid in full under the Plan.

confirmation of the Plan by the Bankruptcy Court and the District Court. [Bankr. Dkt. 1595, Ex. B].[8]

28.     Similarly, most of the Debtors' numerous settlement agreements with their environmental insurers, pursuant to which the insurers have agreed to pay the Debtors nearly $23 million in the aggregate to buy back certain of the Debtors' rights to environmental insurance coverage, provide that the applicable insurer can instruct the escrow agent holding the insurance settlement funds to return the insurers' settlement amount to the insurer if the effective date of the Plan does not occur on or before 6 months following the deposit of the insurers' funds in the escrow account.[9] See, e.g., Findings and Conclusions, 15-16; see, e.g., Bankr. Dkts. 2053; 2057; 2060; 2061; 2077; 2083; 2136. Those insurers have already agreed to extend that period to September 30, 2021. In addition, the Debtors' environmental settlement with Truck allows Truck to instruct the escrow agent holding the insurance settlement funds to return the Truck environmental settlement payment of $5 million if the effective date does not occur by April 26, 2022 (i.e., within 18 months of Truck's payment on October 26, 2020). See Bankr. Dkts. 2062, 2523. Thus, there should be no doubt that a delay in the effectiveness of the Plan could jeopardize both the settlement of the Debtors' substantial environmental liabilities and the insurer funding of those settlements that are needed to pay the Debtors' unsecured creditors in full.

---

[8]     Two of the Debtors' settlements with potentially responsible parties at the St. Helens Oregon site (which environmental liabilities the DEQ settlement resolves) are contingent upon the effectiveness of the Debtors' settlement with the DEQ. See Bankr. Dkts. 1539; 1551; 1556; 1570; 1589; 1601. Accordingly, any termination of the DEQ settlement could adversely impact those settlements as well.

[9]     The agreements provide that the parties can waive the conditions to the effectiveness of the settlement agreements and also that the parties can agree to a longer than six month escrow period. See, e.g., Bankr. Dkts. 2053; 2057; 2060; 2061; 2077; 2083; 2136. While many of these insurers have agreed to extend the six month escrow period to September 30, 2021, it is unclear whether further extensions could be achieved with each of the many insurers that are parties to the settlements should a stay pending appeal be granted.

29. Truck's suggestion that the parties could seek Bankruptcy Court approval to consummate the environmental and insurance settlements before the Plan is consummated, see Stay Mot., 17, is woefully speculative. But more importantly, it is directly contrary to the settlement agreements' explicit terms and would require the parties to renegotiate the settlements (which required many years of negotiations to achieve) or reach waiver agreements with respect to nearly two dozen different parties at this late date. It is Truck's burden to demonstrate that the balance of harms favors Truck; the fact that the Debtors may theoretically be able to ameliorate the harm a stay may cause by attempting to amend their settlement agreements with numerous insurers and environmental claimants, does not eliminate the harm. In short, the Debtors should not be forced to bear the risk that these counterparties will not agree to amend their settlement agreements.

30. Similarly, Truck's contention that the "Debtors would still have the insurance to cover any eventual resolution of," see Stay Mot., 17, any environmental claims as to which settlements are terminated as a result of a stay of the Confirmation Order both acknowledges that granting the Stay Motion will harm the Debtors (by putting certain of their key environmental settlements at risk) and ignores that this harm cannot be addressed by the Debtors' environmental insurance. As Truck, a settling environmental insurer itself, is aware, the Debtors' rights to environmental insurance coverage were vigorously contested by all the environmental insurers up to the time the settlements were reached. Indeed, the Debtors litigated environmental insurance issues in coverage litigation pending in both Oregon and California state courts during the pendency of their bankruptcy cases. The environmental insurance settlements, among other things, resolved that coverage litigation and as set forth

above, will, when consummated, result in the payment of over $50 million to the Debtors.

Granting the Stay Motion will place these funds at risk.

31.     Further, the Debtors also will be harmed if the environmental insurance settlements remain in place but certain of the Debtors' key environmental claims settlements unravel.  The amount of the Debtors' liquidated environmental liability (as determined by the environmental claims settlements) was a critical component of the Debtors' entry into the environmental insurance settlements.  It is unclear if those insurance settlements would continue to be in the best interest of the estates if the Debtors' alleged liability for environmental claims becomes unliquidated in substantial part and subject to potential increase.

32.     Moreover, Truck's contention that the only harm to unsecured creditors would be delay in payment, which could be addressed by the payment of interest, Stay Mot., 17, again entirely misses (or ignores) the settlements, and critically the environmental settlements, underpinning the Debtors' ability to satisfy unsecured creditors in full.  First, environmental creditors constitute the largest of the Debtors' unsecured creditors aside from the asbestos claimants.  See Findings and Conclusions, 9-10, 13-16.  There is no certainty that the Debtors will be able to satisfy unsecured creditors in full if key environmental claim settlements are vitiated.  Additionally, the Debtors' ability to satisfy in full all environmental claims depends upon the agreement of the Debtors' parent Lehigh Hanson to contribute up to $28.15 million in cash, less certain Insolvent Insurer Proceeds, to the Reorganized Debtors to satisfy unsecured claims.  There is no certainty that Lehigh Hanson would increase its contribution if the Debtors' environmental settlements are jeopardized.

33.     Given the interrelated nature of the Debtors' environmental claims settlements and environmental insurance settlements, the Debtors' cannot simply rely on

contested insurance if the Debtors' environmental claims settlements are unwound; indeed, in

such a situation there can be no doubt that the Debtors will be harmed because years of

litigation and settlement efforts will be lost, the scope of the liabilities will become

unquantified, and the availability of the insurance assets will be recontested. And, there is no

guarantee that, if the Debtors' settlements are unwound, the Debtors will be able to satisfy

unsecured creditors in full. Payment of interest will not alleviate those harms.

34.     In the alternative, Truck states that it is "ready and willing" to post an

appropriate appeal bond to "mitigate legitimate potential harms." Stay Mot., 18. As set forth

above, Truck greatly understates the harm the estates would face if the Confirmation Order is

stayed. A bond in the amount of post-petition interest plus appellate costs would be woefully

insufficient. Indeed, given that the environmental settlements and related agreements are a

critical component of the Plan, it is uncertain whether the Plan would be confirmable in the

absence of those settlements and agreements and it is uncertain whether any bond could protect

the estates from that potential damage.

35.     If a bond were posted, however, it must be significant and seek to redress

the actual harm to the estates a stay pending appeal could cause. At a minimum, such an appeal

bond must include:  the (a) full amount of the environmental claims asserted against the

Debtors as to environmental claims settlements at risk of being invalidated, including an

estimated amount sufficient to satisfy unliquidated amounts claimed by those creditors; (b) full

amount of any settled claims not subject to being invalidated; (c) total amount of Lehigh

Hanson's current agreed contribution to satisfy environmental claims; (d) estimated amount of

any costs (including attorneys' fees and related costs) that would be incurred by the Debtors if

they are forced to resume environmental coverage litigation as a result of environmental

insurance settlements being nullified; (e) estimated amount of any costs (including attorneys' fees and related costs) that would be incurred by the Debtors if they are forced to resume environmental claims litigation; (f) continued costs of maintaining the bankruptcy cases, including the costs of the ACC, the FCR and the Creditors' Committee; and (g) costs sufficient to cover Lehigh Hanson's cost of capital in continuing to fund these cases. The Debtors estimate the total bond required to adequately protect them from all of these financial risks would be in excess of $250 million.[10]

36.     For all these reasons, Truck cannot carry its burden of showing a lack of substantial harm to the Debtors and their estates.

## III.     Truck Is Unlikely to Succeed on the Merits of an Appeal

37.     Truck also is unlikely to succeed on the merits of an appeal. Nowhere in the Stay Motion does Truck even attempt to address its standing to appeal, nor does Truck challenge the Findings and Conclusions related to Truck's limited standing. As set forth above, Truck lacks standing to appeal the entry of the Confirmation Order. For that reason alone, Truck is unlikely to succeed on the merits of an appeal. See Rose, 2014 WL 3616380, at *3 ("[T]his Court found that Appellant did not have standing to bring an appeal, and thus, Appellant will likely not succeed on the merits of an appeal in the Fourth Circuit based on this threshold question.").

38.     Second, Truck has failed to make a "strong showing" that it is "likely to succeed." Allen, 590 B.R. at 356. Substantial authority within the Fourth Circuit indicates that it is not sufficient for Truck to show a "substantial possibility" of success on appeal, Schweiger,

---

[10]     This amount includes (a) the liquidated portion of the DEQ's asserted claim as well as the amounts asserted by other environmental claimants whose settlements would be put at risk, (b) the full amount of any settled claims not subject to being invalidated, and (c) the total accrued but unpaid capital expenditure and reclamation costs of Lehigh Southwest.

578 B.R. at 736-37, or that it is "just as likely as the other parties to succeed on appeal," BDC Capital, 508 B.R. at 637-38. To the contrary, the "requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the merits is far stricter than the Blackwelder requirement that the plaintiff demonstrate only a grave or serious *question* for litigation." Real Truth About Obama v. FEC, 575 F.3d 342, 346-47 (4th Cir. 2009) (emphasis in original, holding with respect to related preliminary injunction standard).[11]

39.     However, even under the more lenient "substantial legal question" standard Truck cites, see Stay Mot., 9, Truck has failed to demonstrate a likelihood of success on appeal.[12]  Truck has done little other than restate the same objections it previously raised, and nothing in the Stay Motion undermines the extensive findings, based upon a significant record considered by two separate courts, that support entry of the Confirmation Order.  These findings, which are well-supported by substantial evidence and law, will be subject to the deferential clear error standard.  See In re Merry-Go-Round Enters., Inc., 400 F.3d 219, 224 (4th Cir. 2005) (noting that the Fourth Circuit "review[s] the judgment of a district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court. Specifically, [it] review[s] the bankruptcy court's factual findings for clear error, while [it] review[s] questions of law de novo.").  Numerous courts within the

---

[11]     See also Van Wagner v. Atlas Tri–State SPE, LLC, Civil Action No. 3:11–CV–75, 2011 WL 10621664, at *5 (N.D.W.Va. Nov. 1, 2011) (using the Real Truth test and noting the increased burden upon the moving party to satisfy the likelihood of success on the merits element because the party had failed on the merits at the initial stage of the claim); Lanier v. Branch Bank & Trust, Civil Action No. 3:12–416–MBS–SVH, 2012 WL 667034, at *2 (D.S.C. Feb. 28, 2012) (applying the Real Truth test and discussing the unlikelihood of movants showing success on the merits because the court had previously ruled adversely to them on the issues at hand).

[12]     Truck suggests that a showing of irreparable harm can be sufficient to warrant a stay pending appeal, even when there is no likelihood of success on the merits.  As set forth above, substantial authority within the Fourth Circuit indicates that a court must find all four factors to be satisfied to grant a stay pending appeal. However, even if all four factors need not be satisfied, Truck has failed to demonstrate irreparable harm and thus cannot satisfy even a discretionary "sliding scale" standard.

Fourth Circuit have found that a movant fails to demonstrate a likelihood of success on the merits under similar circumstances. In re Alpha Nat. Res., Inc., 556 B.R. 249, 263-64 (Bankr. E.D. Va. 2016) (finding that movant "failed to meet its burden to make a strong showing that it would succeed on the merits on appeal" when movant failed to "undermine[ ] the extensive findings supporting the [challenged] provisions"); BDC Capital, 508 B.R. at 637–38 (denying stay pending appeal and finding that "[the movant] has not offered any case law or any other authority to support its contention that the Bankruptcy Court erred or abused its discretion. The Court cannot accept [the movant's] argument that it is just as likely as the other parties to succeed on appeal. . . ."); Rose, 2014 WL 3616380, at *3 (holding that the movant failed to meet the burden of showing likelihood of success on the merits because the movant did little but "repeat contentions previously considered" and did "little to counter [the court's prior] findings," and placing weight on the fact that the bankruptcy court had made multiple findings of fact in favor of the appellee); O'Brien v. Appomattox Cty., No. Civil Action 6:02 CV 00043, 2002 WL 31663226, at *1, 2002 U.S. Dist. LEXIS 22554, at *3 (W.D.Va. Nov. 15, 2002) ("The Defendants have not produced any new evidence which would support a likelihood of success on the merits with respect to the state law claims. Therefore, this Court concludes that the Defendants do not have a likelihood of success on the merits . . . ."). Truck likewise has failed to marshal facts or law that counter the extensive findings and conclusions included in the Confirmation Order.

## IV.     A Stay Is Not in the Public Interest

40.     Finally, the public interest weighs against staying confirmation of the Plan to permit an insurer, which two courts have found lacks standing to even raise the issues it seeks to appeal, to continue its misguided efforts to derail the Debtors' reorganization for its own benefit. "The public interest favors . . . the expeditious administration of bankruptcy

estates." In re Brown, 354 B.R. 100, 113 (Bankr. N.D.W. Va. 2006). Truck, largely repeating

its harm argument, argues that the availability of appellate review is in the public interest. This

may be so, but that interest is irrelevant with respect to a party that is not harmed by the Plan or

its confirmation and lacks standing to pursue its appeal. The Plan simply requires Truck, and

the Debtors' other insurers, to honor their prepetition contractual obligations. As the Court has

found, "[b]ankruptcy is not intended to relieve insurers of their contractual liabilities, or to

improve their position under their insurance contracts in the tort system." Findings and

Conclusions, 26.

41.     Importantly, Truck is alone in contesting confirmation of the Plan and

seeking to delay its consummation. No other insurer contests the entry of the Confirmation

Order. No creditor or estate representative contests the entry of the Confirmation Order. The

Plan was unanimously approved by the only class of creditors entitled to vote on it and reflects

agreements among the Debtors, Lehigh Hanson, the ACC, the FCR, the EPA, the DEQ and the

Debtors' insurers and multiple environmental claimants. See Findings and Conclusions, 25.

Truck should not be permitted to disrupt the "delicate balance of settlements involving

numerous parties . . . [and] the hard-fought global peace achieved among the Debtors and all of

their major stakeholders that is memorialized in the confirmed Plan." Alpha Nat. Res., 556

B.R. at 265. "Public policy is not achieved by allowing that global peace to be disturbed." Id.

42.     In further support of its public interest argument, Truck merely repeats its

arguments relating to fraud and asserts that they implicate the public interest. Stay Mot., 19-20.

But this is insufficient to meet Truck's burden on this factor. See Braxton, 516 B.R. at 799

(disregarding alleged public interest factors that simply "go to the merits of [movant's]

arguments on appeal"). Moreover, Truck is unlikely to succeed on the merits of an appeal

because two courts have now rejected Truck's fraud-related arguments following the submission of extensive evidence, hundreds of pages of briefing and lengthy hearings.  <u>See</u> Findings and Conclusions, 25-27.  This Court's thorough findings underpinning the entry of the Confirmation Order are unlikely to be overturned on appeal (even if Truck could establish that it has standing to appeal such issues).

43.     A stay of the Confirmation Order is decidedly not in the public interest.

## <u>Conclusion</u>

44.     The Debtors respectfully request that the Court deny the Stay Motion.

Dated: August 5, 2021
Charlotte, North Carolina

Respectfully submitted,

*/s/ Ross R. Fulton*
C. Richard Rayburn, Jr. (NC 6357)
Ross R. Fulton (NC 31538)
John R. Miller, Jr. (NC 28689)
RAYBURN COOPER & DURHAM, P.A.
227 West Trade Street, Suite 1200
Charlotte, NC  28202
Telephone:  (704) 334-0891
Facsimile:  (704) 377-1897
E-mail:  rrayburn@rcdlaw.net
         rfulton@rcdlaw.net
         jmiller@rcdlaw.net

-and-

Gregory M. Gordon (admitted *pro hac vice*)
Amanda Rush (admitted *pro hac vice*)
JONES DAY
2727 N. Harwood Street
Dallas, TX  75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100
E-mail:  gmgordon@jonesday.com
         asrush@jonesday.com

-and-

Paul M. Green (admitted *pro hac vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone:  (832) 239-3939
Facsimile:  (832) 239-3600
E-mail:  pmgreen@jonesday.com

ATTORNEYS FOR DEBTORS